# Exhibit 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

TIEGEL MANU CO.,                )
                                )
              Plaintiff,         )
                                )
        v.                       )      Civil Action No. 84-483
                                )
GLOBE-UNION, INC.,               )
                                )
              Defendant.         )


                            Wilmington, Delaware
                            October 5, 1984
                            2:25 o'clock p.m.


BEFORE:

        THE HON. WALTER K. STAPLETON, Chief Judge


        A P P E A R A N C E S

For Plaintiff:

        COLLINS J. SEITZ, JR., ESQUIRE
        Connolly, Bove, Lodge & Hutz
        FRANK J. BENASUTTI, ESQUIRE
        C. FREDERICK KOENIG, III, ESQUIRE

For Defendant:

        MARY B. GRAHAM, ESQUIRE
        Morris, Nichols, Arsht & Tunnell
        GARY CLARK, ESQUIRE [By conference telephone]
        JAN WEIR, ESQUIRE [By conference telephone]

1    [The following occurred in Chambers:]

2    THE COURT: We are going to have one

3 participant from California whose name is --

4    MS. GRAHAM: Gary Clark.

5    MR. SEITZ: Your Honor, if this is a good

6 time for you, I'd like to move to admit Mr. Frank Benasutti

7 and Mr. Fred Koenig from Benasutti & Murray in

8 Philadelphia pro hac vice for this case.

9    THE COURT: All right. Happy to grant your

10 motion. Welcome back, gentlemen.

11    MR. BENASUTTI: Thank you, your Honor.

12    MR. SEITZ: Thank you, your Honor.

13    [The Court then turned on the telephone

14 conference box.]

15    THE COURT: Mr. Clark, are you on the

16 line?

17    MR. CLARK: Yes, your Honor.

18    THE COURT: Can you hear us all right?

19    MR. CLARK: Yes, I can.

20    THE COURT: All right. I believe it is

21 your application.

22    MR. CLARK: Yes, sir. May I, with

23 permission, your Honor, put you on the speaker phone so I

24 can have my hands free?

25    THE COURT: Certainly.

1    MR. CLARK:  Thank you.

2       Your Honor, I have with me here in the

3    office Jan Weir, an associate in our firm, who is of

4    record in the case.

5       Your Honor, we brought this motion because

6    we think that the nature of the discovery that they have

7    sought is more properly conducted by interrogatories.

8       When we received the notice, I called

9    personally Mr. Volpe, of Mr. Bensautti's firm, and explained

10   the situation to him and suggested that we would be very

11   willing to answer interrogatories directed to essentially

12   the same subject.  He said he'd get back to me the next

13   day.  When he did, he said discovery by interrogatory

14   wasn't acceptable because they needed the discovery before

15   the preliminary injunction hearing.

16       I then offered to turn interrogatory

17   answers around in very short order, within a matter of

18   days, so that he would have them before the preliminary

19   injunction hearing, but I was told that that solution

20   wasn't acceptable, which was rejected out of hand without

21   an explanation.

22       We are now told that the discovery that

23   they need is urgent for the preliminary injunction hearing.

24   I don't think that this argument can be taken very

25   seriously.

4

Your Honor may recall that they were originally prepared to have their preliminary injunction motion heard within one week's time and in such short order that they obviously did not leave any time for discovery before it could be heard, and when they were taking that position, they had our answer in hand and they knew what our denials were.  So the position they are taking now that there are denials in the answer which raise new matters necessary to be explored on discovery before the preliminary injunction hearing I think simply is not well taken.

I would also note, in connection with their argument, that this is designed to elicit discovery for preliminary injunction, that the deposition notice very mechanically lists each and every denial of our answer to the complaint as an area of inquiry on deposition, without any apparent regard to the relevance of each and every point to their motion.

Category No. 3 is a prime example.  They want to know the basis upon which we first sued Tiegel in Los Angeles asserting venue over them there, but that has no relevance to the preliminary injunction motion.  And, more than that, it has already been the subject of briefs, affidavits, and a hearing in Los Angeles.

So they are certainly well aware of our

position in that regard and do not need the discovery before the preliminary injunction hearing on an issue such as that.

We think that there would also be substantial prejudice to Globe-Union from having to give an oral deposition on the subjects of the bases for our denials in the answer, particularly in the time frame in which they want to take the deposition.

We have made the point that the answer is outside counsel's work product.  Outside counsel is uniquely qualified to state the basis for each denial. Those denials obviously require an application by counsel of law as facts based upon the facts as counsel understand them, which is a far different thing from getting discovery of merely underlying facts after interrogatories have identified the factual basis and the witnesses and documents that can support them.

So we think that the deposition creates a risk of undue waiver of privilege and work product and that it would be more appropriate for them to take it by interrogatory.

I would also like to make the point that the deposition comes at a time that could not be more disruptiv for both parties.  During the week that they have noticed the deposition to take place we have had to spend substanti

time preparing our reply brief on the transfer motion that is before your Honor. Today we are filing an opposition to a stay motion that they had on file in San Francisco in connection with that action. On Monday, we have due our opposition to the preliminary injunction motion. And on Tuesday or Wednesday we have an extensive status report due in San Francisco for Judge Schwartzer.

They have an answer due to our amended complaint in San Francisco on Monday or Tuesday. They have answers due to our interrogatories and document production requests in San Francisco due on Tuesday or Wednesday of next week. They have to put together a reply to our preliminary injunction motion, and they have to assist us in putting together the joint status report next week for Judge Schwartzer.

So it seems to me that there are so many things going on that we can't possibly also squeeze a deposition in.

In that regard, I'd like to conclude my remarks by saying that it is unique in my experience that counsel will file a motion such as this motion for prelimina injunction, seek a hearing in very short order, and then get their memo and supporting affidavits on file, and then come to the Court and take the position that the motion isn't adequately supported without additional discovery, discovery

1    which would only take place now after our opposition to their

2    motion is in.

3    It seems to me that the more appropriate

4    relief that they should be getting here is a postponement

5    of their preliminary injunction motion so that all parties

6    can have adequate time and we of course can have an

7    adequate opportunity to respond in writing to whatever

8    facts they think they might uncover in discovery and

9    utilize in supporting their preliminary injunction motion.

10    Thank you.

11    THE COURT:  All right.  Is it Tiegel -- is

12    that the way your client's name is pronounced?

13    MR. BENASUTTI:  Yes, your Honor.

14    THE COURT:  Who wants to speak on behalf of

15    Tiegel?

16    MR. BENASUTTI:  I will, your Honor.

17    I have a great deal of difficulty with

18    recounting of all of those facts.  I think the record will

19    show that at least the one that seemed to be most important

20    to them is that we filed the motion before their answer

21    came in in this case.  We filed the motion because our

22    client in my belief is being grievously injured, right at

23    this very moment --

24    MR. CLARK:  Your Honor, I'm afraid we can't

25    hear at this end.

THE COURT:  All right.  Do you want to speak up, Mr. Benasutti?

MR. BENASUTTI:  I believe that we are being grievously injured by --

MR. CLARK:  Hello --

THE COURT:  Do you want to speak up?

MR. BENASUTTI:  We're trying to speak up, but if you make any noise on the other end, the problem is that these boxes cut out the voice.

MR. CLARK:  I understand that.  We have not been making any noise, but we haven't been able to hear anything for about the last 30 or 45 seconds.

MR. BENASUTTI:  All right.  I am wondering if I could pick up a telephone and talk into that and then talk to the Court.  In that way I wouldn't have to shout at the Court.  Is that possible?

[The Court then moved the telephone conference box.]

MR. BENASUTTI:  Can you hear me now?

MR. CLARK:  Yes, I can.

MR. BENASUTTI:  All right.  They moved the speaker a little closer.  I'll start from the beginning.

First of all, we didn't have their answer, your Honor, when we filed our motion for a preliminary injunction.  We brought this suit to stop them from suing us

and to stop them from suing our customers, which is
something they are doing right now, and therefore we want
action right now, and I think we are entitled to that
action as quick as possible. So we brought the motion.

We then got their answer. Now, in the
answer they have made denials. The denials are to the
very same things that we brought the motion on. We
brought the motion on the complaint, on the substance of
the complaint. If they have made denials, the usual course
of discovery is to take depositions to find out what the
substance of those denials is, what are the facts.

Counsel just mentioned that he has a factual
basis from which lawyers raise legal conclusions. We are
entitled to the facts of those things. The fact of the
matter is, interrogatories are generally used to identify
people and to identify things or documents, which you then
go through when you get document discovery, and then down
the line you start taking depositions. We want to avoid
all that. We want to avoid all this lawsuit. All we are
saying is, if you have facts that you are going to bring
to this Court's attention at next Monday's hearing, we have
a right now to find out what they are because we are out
front with what our position is and they have no business
covering up what their position is.

The purpose of this motion, as I see it, is

10

simply to keep us from getting those facts before the
hearing.  If that is true, then it is simply a motion
interposed for delay because they have indicated in their
motion that they are going to supply us with all the
answers we need.

All we have to do is ask every conceivable
question in the world and they are going to be able to
answer it by the end of next week, from what I hear now.
That is the first time, incidentally, that we have heard
that, but let's assume that it is true.

They are going to answer every question, and
every question has to be based on everything we know now.
In other words, we find out a fact and I guess we'd have to
write them another question, and then if we find another
fact, then we'd have to write them another question.  It is
an impossible proceeding to get done.

The way to handle that is, you bring in a
witness and you have him testify.  Unfortunately, a lot of
attorneys -- and it is all of our fault -- consider that the
Federal Rules are an apple that you can take one bite out
of before they get stopped.

I would submit to this Court that this
client has already had their one bite this year.  In the
co-pending case that I mentioned in my papers, involving
two of the same patents that are in suit, which is pending

1    now in the Southern District of Indiana, there was an

2    Order entered by Judge Sarah Evans Barker earlier this

3    year requiring them to comply with Rule 30[b][6] and to

4    provide a witness and to prepare that witness to fully and

5    completely answer questions posed at a deposition. And the

6    Judge went on to say, "Further, Johnson is now deemed on

7    notice as to the specific areas in which the defendants will

8    be making discovery inquiries when the deposition is

9    rescheduled." She said that the Court views their past

10   conduct in this matter to be such as to warrant a further

11   reminder of the sanctions available for the abuse of

12   discovery proceedings.

13              Here they are again with the same kind of

14   tactic. They are not going to produce a witness. The only

15   witness is -- if you look at all the different papers that

16   have been filed, the only place you will see a witness

17   appear is on paper -- it is as mysterious as it is

18   ubiquitous, because every time a paper is filed here,

19   well, the witness is over here. If you file a paper out

20   there, well, the witness is over there. The latest paper

21   they filed they don't even identify the witness and then

22   say to the Court, "Pay for him to come to the deposition."

23   We don't know if he is here in Wilmington. We don't know

24   who he is.

25              The purpose of 30[b][6] and the purpose of

laying out, as my colleague, Mr. Koenig did in a very detailed and narrow attachment to notice a deposition, is saying, this is the specific question or the specific issue that we want to talk to that witness about.

This is not a broad general 30[b][6] covering every aspect of the litigation. We want to go down the little areas where they have made denials of specific things that we have raised, and I think we are entitled to do that, and I certainly hope that the Court would want to have answers to that sort of thing at the time that the Court is ready to rule on a motion for preliminary injunction.

A motion for a preliminary injunction is not like a TRO. We are not coming in here and taking a swat at it. We are saying that they should be put out of business on this lawsuit by laches and estoppel, and they are saying that their conduct up to now doesn't warrant that, and I think we are entitled to investigate into what the basis for that is.

Now, we laid out in our brief in support of our motion for preliminary injunction a very detailed statement of each and every paper that we are relying on to support our motion. We said, On such and such a date so-and-so wrote so-and-so, and that sort of thing. And I think we are entitled to see what their position is before we go to

1    Court.

2                    THE COURT: All right. Mr. Clark?

3                    MR. CLARK: Yes, your Honor. We're not

4    trying to deny them access to the underlying facts of which

5    they are speaking. In fact, that is the reason we offered

6    to answer interrogatories. That offer was specifically

7    made by me to Mr. Volpe, who I understand is not there,

8    unfortunately, and it was rejected. To think that we are

9    now going to go ahead on a preliminary injunction motion

10   and try to conceal from the Court the basis for our denials

11   to their answer -- or denying the relief they have asked for

12   in the preliminary injunction motion is really untenable.

13                    Our opposition to that motion is due on

14   Monday. We have prepared affidavits, exhibits, and of

15   course our legal memorandum in opposition to that

16   motion. It will be filed on Monday, and  counsel at that

17   point, as is proper under the local rules of the Court,

18   will be apprised of everything upon which we rely in

19   opposition to the preliminary injunction motion.

20                    So it is not the fact that he is going to

21   go into the hearing on the preliminary injunction motion on

22   Monday naked, totally unadvised of the basis of our

23   denial.

24                    THE COURT: Does anybody else want to say

25   anything?

[No response.]

THE COURT:  I view the noticed discovery as being contention discovery.  It has been the consistent position of this Court that a lay person shouldn't be required to formulate a party's contention in response to deposition questioning and that not even a lawyer should be required to formulate trial strategy and contentions in immediate response to questions on deposition.  And it has accordingly been the consistent practice to require that contention discovery, which is clearly permissible and very constructive in narrowing the issues, but to confine it to interrogatories to a party, period.

Now, we appear to have a time problem here, although I am not sure whether we have a time problem or not.  When did you say you are prepared -- what did you say your turnaround time on interrogatories would be, Mr. Clark?

MR. CLARK:  Your Honor, of course it would depend on the number and the scope of them, but I think that within a matter of -- if they were served on us, for instance, on Monday, I think by Thursday or Friday we could probably have answers for them, assuming that they are of a scope limited to the issues raised on preliminary injunction

MR. BENASUTTI:  Your Honor, I might just add one thing to this, and I think I covered it in my papers,

1   but as I understand what he is saying is -- and you

2   mentioned the word "lay person", and I would agree with you

3   as to the lay person -- I was asking a lay person only for

4   factual positions.  For example, their Mr. Burkhart and

5   other people who took affidavits had factual contentions,

6   and it is those things I think that I was entitled to.

7          But if their contention is that outside

8   counsel is in the possession -- and on page 9 of their

9   brief they say that he is in possession of all the

10  information with respect to what their positions are,

11  including what was in their mind when they did certain acts,

12  then it seems to me I am entitled to take the deposition

13  and in fact call as a witness whatever counsel that was,

14  because I think that when you set up the mind of counsel

15  as being your defense -- you know, it is just like an

16  advice of counsel defense; when you put up an advice of

17  counsel defense, you are entitled to get all of the

18  attorney-client privilege documents and take that counsel's

19  ~~deposition.~~

20         So I think there are maybe two questions,

21  if we bifurcate this thing.  First of all, if they have

22  facts that they are relying on, then a fact witness should

23  be provided.  But if they are saying that it is contentions

24  of counsel just on legal issues, that is one thing, but if

25  it is legal advice that they are hiding behind, then I thin

1    that we are entitled to take his deposition, or even call

2    him as a witness at our preliminary injunction hearing.

3                    THE COURT:  Let me express what I assume was

4    implicit, and that is, I'm not ruling on anything other

5    than the discovery that has been proposed and which is the

6    subject of the protective order.  It well may be that

7    Tiegel has the right to take the deposition of one or more

8    lawyers.  There are cases and issues where it is appropriate

9    to take the deposition of lawyers as fact witnesses.  I am

10   not taking any position with respect to anything other than

11   the protective order that is before me, and I am telling

12   you that as far as the subject matter as currently cast in

13   the notice of deposition, it is cast in my opinion as

14   contention discovery, and if you want to ask those kinds of

15   questions, I'm going to require that you do it by

16   interrogatory.  And I think certainly, under the circum-

17   stances, an offer to provide responses in three or four

18   days seems to me to be a reasonable undertaking.  If that

19   means you want to move back the current argument date on

20   your application for a preliminary injunction, I certainly

21   will be happy to consider that.

22                    MR. BENASUTTI:  We want to go ahead with

23   that.

24                    THE COURT:  Okay.

25                    MR. BENASUTTI:  My only position would have

been that we really -- the use of the word "basis" I guess

is what seems to be troubling the Court, and what we

wanted was the factual basis. We don't care about their

contentions. They are already set out in their answer.

We know what their contentions are. I don't really have

too much to ask him in that regard. His contention is he

didn't do it, but I want to know what the basis for that

is, and that means, what is the factual basis for it.

If you interpret the word "basis" to mean "contention", I

already know what it is. He says -- his contention is that

he denies the allegation. He contends that he didn't

do it. So I was using the word "basis" in this context,

and I would limit it in any deposition that I got to factual

basis, not legal contention. I am not interested in his

legal contentions. They are already a matter of record.

          So I would again say to the Court, if we

want to file interrogatories as to legal contentions, maybe

we can think of some, but that certainly wasn't our object

in preparing this notice of deposition to use the word

"basis" to mean "contention". Basis meant basis in

fact.

          In fact, I think the notice says that

somebody is going to testify as to facts. I think it says

that, testify as to facts.

          THE COURT: Well, if contention

1   interrogatories are filed on Monday, I will require a

2   response by service -- I am talking on the other side --

3   by 5:00 o'clock on Thursday.  If fact discovery is noticed,

4   I will look at it and we will see whether it is

5   appropriate or not appropriate.  And we will keep the

6   5:00 o'clock Monday, October 15 time for presentation of

7   both the motion for a preliminary injunction and the

8   transfer motion.  Is that right?

9                   [Counsel indicate in the affirmative.]

10                  THE COURT:  All right.  Thank you.

11                  MR. CLARK:  Your Honor --

12                  THE COURT:  Yes.  Is there anything else we

13  can profitably address?

14                  MR. CLARK:  Your Honor, in connection with

15  your Order allowing them to serve interrogatories, could it

16  require that their service of them be in such a manner that

17  it gets it in the hands of all counsel on Globe-Union's

18  side of the case on Monday, including the house counsel in

19  ▓▓▓▓▓▓▓ he is listed -- I guess he is not listed on

20  ▓▓▓▓▓▓▓▓, but I can provide that identity to counsel

21  for Tiegel.

22                  MR. BENASUTTI:  I wonder if we could have

23  the identity of this witness who is going to testify on

24  your behalf, the one that is mentioned in your brief.

25  Could we have the identity of that person?

19

1        THE COURT:  Could you hear that?

2        MR. CLARK:  I didn't, your Honor.

3        MR. BENASUTTI:  I wonder if we could have

4   the identity of the person listed --

5        MR. CLARK:  Joseph Gofman.  He's on the

6   pleadings of the San Francisco action.

7        MR. BENASUTTI:  Excuse me.  You didn't let

8   me finish the question.  I know he is your in-house counsel

9   in Milwaukee, along with John Ryan.  I wonder if we could

10  have the identity of the person who is otherwise unidentified

11  in your brief who is going to testify with respect to the

12  matters raised by our motion for a preliminary injunction.

13        THE COURT:  I am  not sure I understood the

14  question.

15        MR. BENASUTTI:  The question is, your

16  Honor, that they mention in their motion for a protective

17  order that they would have to bring a certain witness in to

18  testify in response to 30[b][6], and I want to know who

19  that person is because, as your Honor has indicated, we

20  could make application to take fact information from that

21  person, and I'd like to know who he is and where he is,

22  because we might want to take his deposition in the

23  meantime as to the facts.

24        THE COURT:  I don't think you can ask

25  somebody to designate a 30[b] witness when you don't know

1   what the subject matter is.  So when you -- pardon me; if

2   you can't hear, please sing out, Mr. Clark.

3              MR. CLARK:  All right, I will.  We didn't

4   hear the last bit.

5              THE COURT:  What I said was that it turns

6   out that Mr. Benasutti was asking you to designate your

7   30[b] witness as to a hypothetical deposition that he is

8   considering taking apparently in some fact areas, and I

9   told him that I didn't think I could in fairness require you

10  to designate a witness until such time as the fact area to

11  be explored in such a deposition was identified.

12             MR. BENASUTTI:  I guess I made myself

13  unclear and I apologize to the Court.  I was asking for the

14  identity of the witness which they mentioned in their

15  brief.  They mentioned a witness.  All I want is the

16  identity of the person they had in mind, not the identifying

17  of somebody who is hypothetical.  This is a person that

18  they mentioned in their brief as being in existence.  And

19  all I'd like to know is who he is or she or them.

20             THE COURT:  There isn't going to be the

21  deposition that is the subject matter of these papers, and

22  I don't want to spend time discussing something that is not

23  going to come to pass.

24             Is there anything else we can profitably

25  discuss?

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MR. CLARK:  No, your Honor, I think not.

THE COURT:  Okay.  Thank you.

MR. CLARK:  Thank you.

MR. BENASUTTI:  Thank you, your Honor.

[Hearing concluded.]

- - - -

Exhibit 2

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

ELF ATOCHEM NORTH AMERICA, INC.,     :
                                     :
            Plaintiff                :
                                     :
v.                                   : Civil Action
                                     : No. 94-670-RRM
LIBBEY-OWENS-FORD COMPANY, INC.,     :
                                     :
            Defendant                :
- - - - - - - - - - - - - - - - - -
LIBBEY-OWENS-FORD COMPANY, INC.,     :
                                     :
            Counter-Claimant         :
                                     :
v.                                   :
                                     :
ELF ATOCHEM NORTH AMERICA, INC.,     :
                                     :
            Counter-Defendant        :

                              Wilmington, Delaware
                              Friday, February 24, 1995
                              11:10 a.m.


BEFORE:  HONORABLE RODERICK R. McKELVIE, U.S.D.C.J.


APPEARANCES:

            Connolly, Bove, Lodge & Hutz
            BY:  STANLEY C. MACEL, III, ESQ.
            1220 Market Building
            Wilmington, Delaware  19801
                      -and-
            Finnegan, Henderson, Farabow, Garrett & Dunner
            BY:  JOHN C. LOWE, ESQ.
                 JAMES B. MONROE, ESQ.
            1300 I Street, N.W.
            Washington, D.C.  20005-3315
                      -and-


                              Heather G. Slate
                              Official Court Reporter

1    issue, if your Honor feels that that would be helpful.

2          THE COURT:  A couple thoughts, and it's easy for

3    me to say, which is I very much want lawyers who appear in

4    this courtroom to know that when they're out doing discovery

5    that they have a judge who expects them to be reasonable and

6    will hold the other side to be reasonable, and that will

7    protect you from unreasonable conduct.  And it's easy for me

8    to say because I'm the one who defines what's reasonable,

9    and you never know what it might quite be from one day to

10   the next.

11         I like people to know if you bend over backwards

12   to try to be reasonable to the other side, I'll try to

13   protect you.  So I say give me a call anytime if you think

14   you're being treated unfairly and I'll see what I can do to

15   protect you.

16         And I think the thing to do here is to speak in

17   the context of particular requests and walk through them and

18   see whether it makes sense and whether it's reasonable.

19         I'm not familiar with Judge Stapleton's decision

20   and the law on the topic of contention depositions, but I

21   can tell you that they never make much sense to me because,

22   even at a trial, when a lawyer asks a witness or a party

23   what they're contending, I don't let -- I don't require a

24   witness to answer that in front of a jury.  And I will

25   generally tell lawyers I don't think it's productive to try

1    to pull from a witness what their contentions are because

2    they may have relied on what their lawyer views as legal

3    issues raised by facts and duties in a particular situation.

4    And with regard to contention interrogatories, and

5    contentions generally, I encourage the parties to file

6    contention interrogatories and to answer contention

7    interrogatories and use my standard of reasonableness, which

8    is if you ask somebody to identify every document and state

9    every fact that they rely on, I know that you can't answer

10   that, and that what I look for and what I tell people is

11   that if you make -- I think I've done it in an opinion or

12   two -- if you make your best effort at answering a

13   contention interrogatory, that's fine. And if you don't

14   make your best effort, I'll bar you from offering evidence

15   on that point at the trial.

16   And it's a little like my theory about expert

17   witnesses, which is that if you show me you're treating the

18   other side fairly, I'll protect you. And if you haven't

19   treated the other side fairly, I'll bar you from obtaining

20   relief on opposing issues at the trial.

21   So on the 30(b)(6), I don't mind, you can do

22   documents first, depositions first, witness once. I know

23   there's some case law out there that says you can't depose

24   witnesses twice. But if there's a good reason why a witness

25   should be deposed twice, I don't mind, if you can show me a