IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALLERGAN, INC., ALLERGAN SALES, LLC,<br><br>           Plaintiffs,<br><br>      v.<br><br>ALCON, INC., ALCON LABORATORIES, INC., and ALCON RESEARCH, LTD.,<br><br>           Defendants. | Civil Action No. 04-968-GMS |

## JOINT CLAIM CHART

**'337 Patent**

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| **Claim 1** | | | |
| 1. A therapeutically effective ophthalmic composition comprising: | The claim requires a therapeutically effective ophthalmic composition, and the term "therapeutically effective" is used in its ordinary sense. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| an alpha-2-adrenergic agonist component in an amount effective to provide a therapeutic benefit to a patient in whom the composition is administered; and | The claimed composition must contain an alpha-2-adrenergic agonist component in an amount that is effective to provide a therapeutic benefit to a patient. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| a solubility enhancing component other than a cyclodextrin | The parties dispute the construction of this limitation. | The claimed composition contains a solubility | The claimed composition must contain an anionic component, other than a cyclodextrin, in an |

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| in an amount effective to increase the solubility of the alpha-2-adrenergic agonist component in the composition relative to the solubility of an identical alpha-2-adrenergic agonist component in a similar composition without the solubility enhancing component. | | enhancing component, which is a component that enhances the solubility of the alpha-2-adrenergic agonist component, and any solubility enhancing component other than a cylclodextrin is covered by the claim. The solubility enhancing component must be present in such an amount that the solubility of the alpha-2-adrenergic agonist component in the composition is increased relative to its solubility in a similar composition without the solubility enhancing component.<br><br>Support for proposed construction: '337 patent, abstract, col. 2, lines 13-20, col. 4, lines 60-65, col. 6, lines 17-41, '337 patent file history, Reply to Office Action, Dated June 16, 2003. | amount effective to increase the solubility of the alpha-2-adrenergic agonist component in the composition relative to the solubility of the alpha-2-adrenergic agonist component in an otherwise identical composition without the anionic component. In addition, the "solubility enhancing component" cannot be polyvinyl alcohol, povidone (polyvinylpyrrolidone), hydroxypropylcellulose, poloxamers or hydroxymethylcellulose.<br><br>Support for proposed construction: Application No. 09/904,018 (parent application of the application which issued as the '337 patent): Office Action mailed September 18, 2002; Response to Restriction Requirement received by PTO on October 22, 2002; Office Action dated January 9, 2003; Interview Summary, mailed 3/3/03; Reply to Office Action, received by the PTO March 17, 2003 including Declaration of Orest Olejnik; '337 patent, Office Action, mailed March 13, 2003; Reply to Office Action, dated June 16, 2003. |

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| **Claim 2** | | | |
| 2. The composition of claim 1 wherein the alpha-2-adrenegic component is selected from the group consisting of imino-imidazolines, imidazolines, imidazoles, azepines, thiazines, oxazolines, guanidines, catecholamines, derivatives thereof, and mixtures thereof. | Claim 2 contains all the limitations of claim 1, with the additional requirement that the alpha-2-adrenergic agonist component must be: an imino-imidazoline, imidazoline, imidazole, azepine, thiazine, oxazoline, guanidine, catecholamine, derivative of one of the foregoing, or a mixture of one of the foregoing. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| **Claim 3** | | | |
| 3. The composition of claim 1 wherein the therapeutically active component includes a quinoxaline component. | Claim 3 includes all the limitations of claim 1, with the further requirement that the composition must contain a quinoxaline component. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| **Claim 4** | | | |
| 4. The composition of claim 3 wherein the quinoxaline component is selected from the group consisting of quinoxaline, derivatives thereof, and mixtures thereof. | Claim 4 includes all the limitations of claims 1 and 3, with the further requirement that the quinoxaline component must be a quinoxaline, a derivative of quinoxaline, or mixture of two or more of the foregoing. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| **Claim 6** | | | |
| 6. The composition of claim 1 wherein the solubility enhancing component is effective to increase the solubility in a biological environment of the alpha-2-adrenergic agonist component relative to the solubility in a biological environment of an identical alpha-2-adrenergic agonist component in a similar composition without the solubility enhancing component. | The parties dispute the construction of this limitation. | Claim 6 includes all the limitations of claim 1, with the further requirement that the solubility enhancing component is effective to increase the solubility in a biological environment of the alpha-2-adrenergic agonist component relative to its solubility in a similar composition without the solubility enhancing component.

Support for proposed construction: '337 patent, col. 1, lines 58-64, col. 4, lines 41-47. | Claim 6 contains all the limitations of claim 1, with the further requirement that the "solubility enhancing component" must be effective to increase the solubility in a biological environment of the alpha-2-adrenergic agonist component relative to the solubility in the same biological environment of the alpha-2-adrenergic agonist component in an otherwise identical composition without the "solubility enhancing component."

Support for proposed construction: As relevant to the construction of claim 6, Alcon incorporates its comment to claim 1. |
| **Claim 9** | | | |
| The composition of claim 1 which further comprises an effective amount of a preservative. | Claim 9 includes all the limitations of claim 1 with the further requirement that the composition must contain a component that assists in the preservation of the composition. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| **Claim 10** | | | |
| The composition of claim 6 which further comprises an effective amount of a preservative. | Claim 10 includes all the limitations of claim 6 with the further requirement that the composition must contain an effective amount of a component that assists in the preservation of the composition. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |

**'834 Patent**

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| **Claim 1** | | | |
| 1. A therapeutically effective aqueous ophthalmic composition comprising: | The claim requires a therapeutically effective ophthalmic composition, and the term "therapeutically effective" is used in its ordinary sense. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| up to about 0.15% (w/v) of 5-bromo-6-(2-imidozolin-2-ylamino) quinoxaline tartrate, | The parties dispute the construction of this limitation. | The claimed composition contains up to approximately 0.15% (w/v) brimondine tartrate.<br><br>Support for proposed construction: The term "about" is used in its ordinary sense, meaning "approximately." *See Merck & Co. v. Teva Pharms., Inc.*, 395 F.3d 1364 (Fed. Cir. 2005). *See also* '834 patent, Figure 1, col. 1, lines 33-53, col. 2, lines 48-52, col. 3, lines 23-36, col. 6, lines 8-16, col. 11, lines 1-6, | The claimed composition must contain up to 0.155% (w/v) (the upper limit of 0.15 ± 0.005% (w/v)) of brimondine tartrate.<br><br>The specification (including the claims as originally filed) and prosecution history of the '834 patent only reflect testing of brimonidine tartrate solutions at concentrations of 0.5% (w/v) and 0.2% (w/v) and thus provide no teaching or |

5

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| | | Example 2 and descriptive text, Table IV and descriptive text, Application No. 09/904,018 (parent application of the application which issued as the '834 patent, including the original claims), '834 patent file history, Reply to Office Action, dated Mar. 24, 2003. | guidance supporting the terms "up to about 0.15% (w/v)," "up to 0.15% (w/v)," or "about 0.15% (w/v)" nor do they disclose that such compositions are within the scope of the alleged invention. In *Merck & Co. v. Teva Pharms., Inc.*, 395 F.3d 1364 (Fed. Cir. 2005), the court rejected the patentee's attempt to define the terms "about 70 mg" and "about 35 mg" as limited to the precise numerical values disclosed, without any surrounding range. Thus, in order to supply a range, but in light of the absence of any teaching in the specification as guidance for the same, Alcon proposes that the term "about" be interpreted to encompass the full range of values that would normally be rounded up or down to 0.15%. |
| the composition having a pH of about 7.0 or greater, | The parties dispute the construction of this limitation. | The claimed composition has a pH of approximately 7.0 or greater.<br><br>Support for proposed construction: The term "about" is used | The composition must have a pH of 6.95 (the lower limit of $7.0 \pm 0.05$) or greater.<br><br>The specification (including the |

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
| --- | --- | --- | --- |
| | | in its ordinary sense, meaning "approximately." *See Merck & Co. v. Teva Pharms., Inc.*, 395 F.3d 1364 (Fed. Cir. 2005). *See also* '834 patent, Figure 1, col. 4, lines 22-33, col. 11, lines 1-6, Example 2 and descriptive text, Application No. 09/904,018 (parent application of the application which issued as the '834 patent, including the original claims), '834 patent file history, Reply to Office Action, dated Mar. 24, 2003. | claims as originally filed) and the prosecution history of the '834 patent provide no teaching regarding the scope of the pH limitation. Thus, Alcon proposes that the term "about" be interpreted to encompass the full range of values that would normally be rounded up or down to pH 7.0. |
| and the 5-bromo-6-(2-imidozolin-2-ylamino) quinoxaline tartrate being soluble in the composition at about 21° C. | The parties dispute the construction of this limitation. | The brimonidine tartrate must be soluble in the composition at approximately 21° C.

Support for proposed construction: The term "about" is used in its ordinary sense, meaning "approximately." *See Merck & Co. v. Teva Pharms., Inc.*, 395 F.3d 1364 (Fed. Cir. 2005). *See also* '834 patent, Figure 1, Example 2 and descriptive text, Application No. 09/904,018 (parent application of the application which issued as the '834 patent, including the original claims), '834 | The brimondine tartrate must be soluble in the composition at 21 ± 0.5C

The specification (including the claims as originally filed) and the prosecution history of the '834 patent provide no teaching regarding the scope of the temperature limitation. Thus, Alcon proposes that the term "about" be interpreted to encompass the full range of values that would normally be rounded up or down to a temperature of 21°C. |

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| | | patent file history, Reply to Office Action, dated Mar. 24, 2003. | |
| **Claim 2** | | | |
| 2. The composition of claim 1 which includes up to 0.15% (w/v) of 5-bromo-6-(2-imidozolin-2-ylamino) quinoxaline tartrate. | Claim 2 includes all the limitations of claim 1, with the additional requirement that the composition must include up to 0.15% (w/v) brimonidine tartrate. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| **Claim 3** | | | |
| 3. The composition of claim 1 which includes about 0.15% (w/v) of 5-bromo-6-(2-imidozolin-2-ylamino) quinoxaline tartrate. | The parties dispute the construction of this limitation. | Claim 3 includes all the limitations of claim 1, with the additional requirement that the composition must include approximately 0.15% brimonidine tartrate.<br><br>Support for proposed construction: The term "about" is used in its ordinary sense, meaning "approximately." *See Merck & Co. v. Teva Pharms., Inc.*, 395 F.3d 1364 (Fed. Cir. 2005). *See also* '834 patent, Figure 1, col. 1, lines 33-53, col. 2, lines 48-52, col. 3, lines 23-36, col. 6, lines 8-16, col. 11, lines 1-6, Example 2 and descriptive text, Table IV and descriptive text, Application No. 09/904,018 (parent application of the application which | Claim 3 contains all the limitations of claim 1, with the additional requirement that the composition must include 0.15% ± 0.005% (w/v) brimondine tartrate.<br><br>Support for proposed construction: As relevant to the construction of claim 3, Alcon incorporates its comments to claim 1. |

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| | | issued as the '834 patent, including the original claims), '834 patent file history, Reply to Office Action, dated Mar. 24, 2003. | |
| **Claim 4** | | | |
| 4. The composition of claim 1 which included 0.15% (w/v) of 5-bromo-6-(2-imidozolin-2-ylamino) quinoxaline tartrate. | Claim 4 includes all the limitations of claim 1, with the additional requirement that the composition must include 0.15% (w/v) brimonidine tartrate. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| **Claim 5** | | | |
| 5. The composition of claim 1 having a pH of 7.0 or greater. | Claim 5 includes all the limitations of claim 1, with the additional requirement that the pH of the composition must be 7.0 or greater. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| **Claim 6** | | | |
| 6. The composition of claim 1 which further comprises a preservative selected from the group consisting of an oxy-chloro component and a quaternary ammonium compound in an amount effective to at least assist in preserving the composition. | Claim 6 includes all the limitations of claim 1 and further requires that the composition must contain either an oxy-chloro or quaternary ammonium preservative in an amount effective to assist in preserving the composition. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| **Claim 8** | | | |
| 8. The composition of claim 1 which is substantially free of anionic cellulosic derivatives. | Claim 8 includes all the limitations of claim 1 and further requires that the composition is | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |

9

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| | substantially free of anionic cellulosic derivatives. | | |
| **Claim 9** | | | |
| The composition of claim 1 which is substantially free of carboxymethyl cellulose. | Claim 9 includes all the limitations of claim 1 and further requires that the composition is substantially free of carboxymethyl cellulose. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| **Claim 10** | | | |
| 10. A therapeutically effective aqueous ophthalmic composition comprising: | The claim requires a therapeutically effective ophthalmic composition, and the term "therapeutically effective" is used in its ordinary sense. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| up to about 0.15% (w/v) of a component selected from the group consisting of 5-bromo-6-(2-imidozolin-2-ylamino) quinoxaline, salts of 5-bromo-6-(2-imidozolin-2-ylamino) quinoxaline, esters of 5-bromo-6-(2-imidozolin-2-ylamino) quinoxaline and mixtures thereof, | The parties dispute the construction of this limitation. | The claimed composition contains up to approximately 0.15% (w/v) brimondine, salts of brimonidine, esters of brimonidine, or mixtures of the foregoing.<br><br>Support for proposed construction: The term "about" is used in its ordinary sense, meaning "approximately." *See Merck & Co. v. Teva Pharms., Inc.*, 395 F.3d 1364 (Fed. Cir. 2005). See also '834 patent, Figure 1, col. 1, lines 33-53, col. 2, lines 48-52, col. 3, lines 23-36, col. 6, lines 8-16, col. 11, lines 1-6, Example 2 and | The claimed composition must contain up to 0.155% (w/v) (the upper limit of 0.15 ± 0.005% (w/v)) of brimondine, salts of brimonidine, esters of brimonidine, or mixtures of two or more of the foregoing.<br><br>The specification (including the claims as originally filed) and prosecution history of the '834 patent only reflect testing of brimonidine tartrate solutions at concentrations of 0.5% (w/v) and 0.2% (w/v) and thus provide no teaching or |

10

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| | | descriptive text, Table IV and descriptive text, Application No. 09/904,018 (parent application of the application which issued as the '834 patent, including the original claims), '834 patent file history, Reply to Office Action, dated Mar. 24, 2003. | guidance supporting the terms "up to about 0.15% (w/v)," "up to 0.15% (w/v)," or "about 0.15% (w/v)" nor do they disclose that such compositions are within the scope of the alleged invention. In *Merck & Co. v. Teva Pharms., Inc.*, 395 F.3d 1364 (Fed. Cir. 2005), the court rejected the patentee's attempt to define the terms "about 70 mg" and "about 35 mg" as limited to the precise numerical values disclosed, without any surrounding range. Thus, in order to supply a range, but in light of the absence of any teaching in the specification as guidance for the same, Alcon proposes that the term "about" be interpreted to encompass the full range of values that would normally be rounded up or down to 0.15%. |
| the composition having a pH of about 7.0 or greater, | The parties dispute the construction of this limitation. | The claimed composition has a pH of approximately 7.0 or greater.<br><br>Support for proposed construction: The term "about" is used | The claimed composition must have a pH of 6.95 (the lower limit of 7.0 $\pm$ 0.05) or greater. The specification (including the |

11

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| | | in its ordinary sense, meaning "approximately." *See Merck & Co. v. Teva Pharms., Inc.*, 395 F.3d 1364 (Fed. Cir. 2005). *See also* '834 patent, Figure 1, col. 4, lines 22-33, col. 11, lines 1-6, Example 2 and descriptive text, Application No. 09/904,018 (parent application of the application which issued as the '834 patent, including the original claims), '834 patent file history, Reply to Office Action, dated Mar. 24, 2003. | claims as originally filed) and the prosecution history of the '834 patent provide no teaching regarding the scope of the pH limitation. Thus, Alcon proposes that the term "about" be interpreted to encompass the full range of values that would normally be rounded up or down to pH 7.0. |
| and the component being soluble in the composition at about 21° C. | The parties dispute the construction of this limitation. | The brimonidine tartrate must be soluble in the composition at approximately 21° C.<br><br>Support for proposed construction: The term "about" is used in its ordinary sense, meaning "approximately." *See Merck & Co. v. Teva Pharms., Inc.*, 395 F.3d 1364 (Fed. Cir. 2005). *See also* '834 patent, Figure 1, Example 2 and descriptive text, Application No. 09/904,018 (parent application of the application which issued as the '834 patent, including the original claims), '834 patent file history, | The component must be soluble in the composition at 21 ± .5°C.<br><br>The specification (including the claims as originally filed) and the prosecution history of the '834 patent provide no teaching regarding the scope of the temperature limitation. Thus, Alcon proposes that the term "about" be interpreted to encompass the full range of values that would normally be rounded up or down to a temperature of 21°C. |

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| | | Reply to Office Action, dated Mar. 24, 2003. | |
| **Claim 11** | | | |
| 11. The composition of claim 10 which includes up to 0.15% (w/v) of the component. | Claim 11 includes all the limitations of claim 10, with the additional requirement that the composition must include up to 0.15% (w/v) of the component selected from the group described in claim 10. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| **Claim 12** | | | |
| 12. The composition of claim 10 which includes about 0.15% (w/v) of the component | The parties dispute the construction of this limitation. | Claim 12 includes all the limitations of claim 10, with the additional requirement that the composition must include approximately 0.15% (w/v) of the component selected from the group described in claim 10.<br><br>Support for proposed construction: The term "about" is used in its ordinary sense, meaning "approximately." *See Merck & Co. v. Teva Pharms., Inc.*, 395 F.3d 1364 (Fed. Cir. 2005). *See also* '834 patent, Figure 1, col. 1, lines 33-53, col. 2, lines 48-52, col. 3, lines 23-36, col. 6, lines 8-16, col. 11, lines 1-6, Example 2 and descriptive text, | The claimed composition must include all the limitations of claim 10, with the additional requirement that the composition must include 0.15 ± 0.005% (w/v) of the component listed in claim 10.<br><br>As relevant to the construction of claim 12, Alcon incorporates its comments to claim 10. |

13

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| | | Table IV and descriptive text, Application No. 09/904,018 (parent application of the application which issued as the '834 patent, including the original claims), '834 patent file history, Reply to Office Action, dated Mar. 24, 2003. | |
| **Claim 13** | | | |
| 13. The composition of claim 10 which includes 0.15% (w/v) of the component | Claim 13 includes all the limitations of claim 10, with the additional requirement that the composition must include 0.15% (w/v) of the component selected from the group described in claim 10. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| **Claim 14** | | | |
| 14. The composition of claim 10 having a pH of 7.0 or greater. | Claim 14 includes all the limitations of claim 10, with the additional requirement that the pH of the composition must be 7.0 or greater. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| **Claim 17** | | | |
| 17. The composition of claim 10 which is substantially free of anionic cellulosic derivatives. | Claim 17 includes all the limitations of claim 10 and further requires that the composition is substantially free of anionic cellulosic derivatives. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| **Claim 18** | | | |
| 18. The composition of claim 10 which is | Claim 18 includes all the limitations of claim 10 and further | The parties do not dispute the construction of this | The parties do not dispute the construction of this |


| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| substantially free of carboxymethyl cellulose. | requires that the composition is substantially free of carboxymethyl cellulose. | limitation. | limitation. |
| **Claim 20** | | | |
| 20. The composition of claim 10 which further comprises a preservative selected from the group consisting of an oxy-chloro component and a quaternary ammonium compound in an amount effective to at least assist in preserving the composition. | Claim 20 includes all the limitations of claim 10 and further requires that the composition must contain either an oxy-chloro or quaternary ammonium preservative in an amount effective to assist in preserving the composition. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |

FISH & RICHARDSON P.C.

By: /s/ William J. Marsden, Jr.
    William J. Marsden, Jr. (#2247)
    Sean P. Hayes (#4413)
    919 N. Market Street, Suite 1100
    P.O. Box 1114
    Wilmington, DE 19899-1114
    (302) 652-5070

    Jonathan E. Singer
    Michael J. Kane
    Deanna J. Reichel
    3300 Dain Rauscher Plaza
    60 South Sixth Street
    Minneapolis, MN 55402

    Juanita Brooks
    W. Chad Shear
    12390 El Camino Real
    San Diego, CA 92130

YOUNG CONAWAY STARGATT & TAYLOR, LLP

By: /s/ Josy W. Ingersoll
    Josy W. Ingersoll (#1088)
    The Brandywine Building, 17th Floor
    1000 West Street
    P.O. Box 391
    Wilmington, DE 19899-0391
    (302) 571-6600

    Brian D. Coggio, Esq.
    Orrick, Herrington & Sutcliffe LLP
    666 Fifth Avenue
    New York, NY 10103-0001

80024116.doc