# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALLERGAN, INC., and ALLERGAN SALES, LLC.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>ALCON INC., ALCON LABORATORIES, INC., and ALCON RESEARCH, LTD.,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No: 04-968-GMS<br>)<br>)<br>)<br>)<br>)<br>) |

## ALCON'S CLAIM CHART

Defendants, Alcon Inc., Alcon Laboratories, Inc. and Alcon Research, Ltd. (collectively, "Alcon") submit their claim chart herewith. For ease of comparison and review, Alcon has utilized the claim limitations set forth in plaintiffs' claim chart.

The '834 Patent

| Asserted Claim | Allergan's Construction | Alcon's Construction | Alcon's Evidence Relevant To Claim Construction |
|---|---|---|---|
| **Claim 1** | | | |
| 1. A therapeutically effective aqueous ophthalmic composition comprising: | The claim requires a therapeutically effective aqueous ophthalmic composition. | To the extent that Allergan is using the term "therapeutically effective" in its ordinary sense, Alcon does not disagree with Allergan's proposed construction. | Although the specification and prosecution history of the '834 patent use the term "therapeutically effective," they provide no teaching or guidance as to any specific meaning of this term or the characteristics of compositions exhibiting such property, nor do they limit the broad scope of the term in any way. |
| up to about 0.15% (w/v) of 5-bromo-6-(2-imidozolin-2-ylamino) quinoxaline tartrate, | The claimed composition contains up to approximately 0.15% brimondine tartrate. | The claimed composition must contain up to 0.1501% (w/v) (the upper limit of 0.15 ± 0.0001% (w/v)) of 5-bromo-6-(2-imidozolin-2-ylamino) quinoxaline tartrate. | The specification (including the claims as originally filed) and prosecution history of the '834 patent provide no teaching or guidance supporting the terms "up to about 0.15% (w/v)," "up to 0.15% (w/v)," or "about 0.15% (w/v)" nor do they disclose that such compositions are within the scope of the alleged invention. However, Table IV shows that the % concentration (w/v) can be measured within 0.0001%. |
| the composition having a pH of about 7.0 or greater, | The claimed composition has a pH of approximately 7.0 or greater. | The composition must have a pH of 7.0 ± 0.01 or greater. | The specification of the '834 patent at Figure 1 and Tables II and IV. Application No. 10/236,566: Preliminary amendment September 6, 2002; Summary of Interview on February 25, 2003; Reply to Office Action received by the PTO March 28, 2003; Undated Declaration of Amy Batoosingh, received by the PTO March 24, 2003 and accompanying article Katz et al., J. |

-5-

| Asserted Claim | Allergan's Construction | Alcon's Construction | Alcon's Evidence Relevant To Claim Construction |
|---|---|---|---|
| and the 5-bromo-6-(2-imidozolin-2-ylamino) quinoxaline tartrate being soluble in the composition at about 21° C. | The brimonidine tartrate must be soluble in the composition at approximately 21° C. | The 5-bromo-6-(2-imidozolin-2-ylamino) quinoxaline tartrate must be soluble in the composition at 21 ±1° C by virtue of a "solubility enhancing component" present in an amount effective to enhance the solubility of the quinoxaline component. | Glaucoma, 11(2): 119 (2002). '834 patent: Abstract; col. 1, lns. 15-19; 57-64; col. 2, ln. 9-col. 3, ln. 17; col. 4, lns. 11 – 65; col. 5, lns. 59-64; col.6, ln.18- col. 9, ln. 22; col. 13, ln. 49; Table IV; Example 1; and Example 2. |
| **Claim 2** | | | |
| 2. The composition of claim 1 which includes up to 0.15% (w/v) of 5-bromo-6- (2-imidozolin-2-ylamino) quinoxaline tartrate. | Claim 2 includes all the limitations of claim 1, with the additional requirement that the composition must include up to 0.15% brimonidine tartrate. | Claim 2 contains all the limitations of claim 1 as construed above by Alcon and incorporated herein, with the additional requirement that the composition must include up to 0.15 % (w/v) 5-bromo-6- (2-imidozolin-2-ylamino) quinoxaline tartrate. | As relevant to the construction of claim 2, Alcon incorporates its comments to claim 1. |
| **Claim 3** | | | |
| 3. The composition of claim 1 which includes about 0.15% (w/v) of 5-bromo-6- (2-imidozolin-2-ylamino) quinoxaline tartrate. | Claim 3 includes all the limitations of claim 1, with the additional requirement that the composition must include approximately 0.15% brimonidine tartrate. | Claim 3 contains all the limitations of claim 1 as construed above by Alcon and incorporated herein, with the additional requirement that the composition must include 0.15% ± 0.0001% (w/v) 5-bromo-6- (2-imidozolin-2-ylamino) quinoxaline tartrate. | As relevant to the construction of claim 3, Alcon incorporates its comments to claim 1. |
| **Claim 4** | | | |

-6-

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALLERGAN, INC., and ALLERGAN SALES, LLC.,<br><br>Plaintiffs,<br><br>v.<br><br>ALCON INC., ALCON LABORATORIES, INC., and ALCON RESEARCH, LTD.,<br><br>Defendants. | Civil Action No: 04-968-GMS |

## ALCON'S RESPONSES TO ALLERGAN'S FIRST SET OF INTERROGATORIES (Nos. 1-7)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, defendants, Alcon Inc., Alcon Laboratories, Inc., and Alcon Research, Ltd. (collectively "Alcon"), hereby respond to the First Set of Interrogatories (Nos. 1-7) of plaintiffs, Allergan, Inc. and Allergan Sales, LLC (collectively "Allergan"), with the following objections and answers:

## GENERAL OBJECTIONS

To the extent applicable, Alcon incorporates by reference the General Objections set forth in its responses to Allergan's First Set of Requests for Production of Documents and Things (Nos. 1-57), served concurrently herewith.

## SPECIFIC RESPONSES

**INTERROGATORY NO. 1**

State fully and with particularity all the facts and reasons upon which Alcon bases the contentions made in the Second and Fourth Counterclaims and the Third and Sixth Affirmative Defenses of its Answer and Counterclaims that the patents-in-suit are invalid under 35 U.S.C. §§ 102, 103, and/or 112, including, but not limited to, the identity of the specific statutory provision relied upon for invalidity; the identity of the claim that Alcon contends is rendered invalid; a description of all evidence that Alcon contends renders any claim invalid; a claim chart comparing each and every element of the asserted invalid claims to the location of said claim elements in any asserted prior art; and any portions of the specification or prosecution history of the patents-in-suit relied upon for any invalidity claim; as well as the identity of each person with factual information supporting Alcon's allegations including the nature and extent of the information known to such person and an identification of all documents that refer or relate to Alcon's allegations.

**RESPONSE TO INTERROGATORY NO. 1**

### 1. The '834 Patent

The claims of the '834 patent are invalid under 35 U.S.C. § 112 for lack of written description because there is no support in the specification or the claims originally filed in the parent application or the application for the '834 patent for the claim term "up to about 0.15%(w/v)", "about 0.15%(w/v)" or "0.15% (w/v)." Allergan did not cite to any disclosure to support the term when it was introduced by preliminary amendment upon filing of the continuation application. Furthermore, the specification teaches away from a 0.15% limitation in that all compositions disclosed in the specification have a concentration of drug that is 0.2% (w/v) and higher. Thus, all of the claims of the '834 patent are invalid under 35 U.S.C. §112 first paragraph because there is no support for the 0.15% (w/v) limitation in the specification or in the claims originally filed with the parent application.

Also, claims 1-5, 8-14, and 17-18 that do not require an SEC or a preservative are not supported by the specification and are invalid for lack of written description under 35 U.S.C.

-2-

§112 as well, because the specification shows that at least one of such ingredients is always present in the compositions disclosed.

As discussed below, the claims are not supported in the specification or in the original disclosure of the parent application, and therefore they are not entitled to the priority date of the parent application.

The specification of the '834 patent is replete with descriptions of the invention as a composition of the drug with an SEC at higher pHs than had previously been in use. Indeed, the prosecution history of the '834 patent reveals that in prosecuting the USSN 10/236,566 application filed on September 6, 2002, the inventors characterized their invention as "drawn to surprising new therapeutic compositions comprising at least a 25% lower concentration of brimonidine than previous ophthalmic formulations, at pH closer both to the solubility limits of brimonidine, and to the pKa of the compound."

An invention requiring the 0.15% limitation is new matter unsupported by the disclosure of the parent application USSN 09/904,018. The claims of the '834 patent are thus only entitled to the filing date of application USSN 10/236,566, September 6, 2002. Allergan's Alphagan®P product was approved by the FDA on March 16, 2001 and the product label for Alphagan®P was posted on the FDA's website on August 21, 2001, as the "Approved Labeling" for NDA 21-262. That labeling bears a copyright notice dated 2000 and describes the Alphagan®P product as containing 0.15% brimonidine tartrate, with the brimonidine tartrate soluble in the product vehicle at pH 7.2. It also indicates that Alphagan®P product has a pH of 6.6 – 7.4. This posted labeling is prior art under 35 U.S.C. §102 (b) because it was published in August 2001, more than one year prior to the September 6, 2002, filing date of USSN 10/236,566 to which the

claims of the '834 patent are entitled. Thus, claims 1-7, 10-16, 20 and 22 of the '834 patent are not entitlted to the priority date of July 14, 2000 and are therefore invalid as anticipated over the Alphagan®P product label as prior art under 35 U. S. C. § 102(b).

Claims 8, 9, 17-19 and 21 (i.e., claims that specify that the composition is substantially free of an anionic cellulosic derivative or that the composition comprises benzalkonium chloride as a preservative) are invalid under 35 U.S.C. §103 as obvious over a combination of the posted labeling and Burke U.S. Patent No. 5,215,991. Burke discloses a composition containing an alpha 2 agonist and benzalkonium chloride that is free of an anionic cellulose derivative (see, for example, Table II of Burke).

Furthermore, the claims of the '834 patent are invalid because the best mode of practicing the claimed invention was not disclosed. Nothing in the specification or in the original claims of the '834 patent discloses the claimed compositions as preferred formulations; indeed, the specification does not disclose any formulations with concentrations of up to 0.15% of active ingredient. Yet, Allergan's inventors must have known of the preferred method of practicing the invention when the application that led to the '210 parent patent was filed on July 14, 2000 because Allergan had already selected a 0.15% formulation for its Alphagan®P product.

All claims of the '834 patent are unenforceable because the applications failed to inform the Examiner about the prior public sales of Alphagan®P and publication of the Alphagan®P label.

2.     **The '337 Patent**