# EXHIBIT N

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALLERGAN, INC., ALLERGAN SALES,
LLC,

        Plaintiffs,

    v.

ALCON, INC., ALCON
LABORATORIES, INC., and
ALCON RESEARCH, LTD.,

        Defendants.

Civil Action No. 04-968-GMS

## JOINT CLAIM CHART

**'337 Patent**

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| **Claim 1** | | | |
| 1. A therapeutically effective ophthalmic composition comprising: | The claim requires a therapeutically effective ophthalmic composition, and the term "therapeutically effective" is used in its ordinary sense. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| an alpha-2-adrenergic agonist component in an amount effective to provide a therapeutic benefit to a patient in whom the composition is administered; and | The claimed composition must contain an alpha-2-adrenergic agonist component in an amount that is effective to provide a therapeutic benefit to a patient. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| a solubility enhancing component other than a cyclodextrin | The parties dispute the construction of this limitation. | The claimed composition contains a solubility | The claimed composition must contain an anionic component, other than a cyclodextrin, in an |

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| in an amount effective to increase the solubility of the alpha-2-adrenergic agonist component in the composition relative to the solubility of an identical alpha-2-adrenergic agonist component in a similar composition without the solubility enhancing component. | | enhancing component, which is a component that enhances the solubility of the alpha-2-adrenergic agonist component, and any solubility enhancing component other than a cyclodextrin is covered by the claim. The solubility enhancing component must be present in such an amount that the solubility of the alpha-2-adrenergic agonist component in the composition is increased relative to its solubility in a similar composition without the solubility enhancing component.<br><br>Support for proposed construction: '337 patent, abstract, col. 2, lines 13-20, col. 4, lines 60-65, col. 6, lines 17-41, '337 patent file history, Reply to Office Action, Dated June 16, 2003. | amount effective to increase the solubility of the alpha-2-adrenergic agonist component in the composition relative to the solubility of the alpha-2-adrenergic agonist component in an otherwise identical composition without the anionic component.  In addition, the "solubility enhancing component" cannot be polyvinyl alcohol, povidone (polyvinylpyrrolidone), hydroxypropylcellulose, poloxamers or hydroxymethylcellulose.<br><br>Support for proposed construction: Application No. 09/904,018 (parent application of the application which issued as the '337 patent): Office Action mailed September 18, 2002; Response to Restriction Requirement received by PTO on October 22, 2002; Office Action dated January 9, 2003; Interview Summary, mailed 3/3/03; Reply to Office Action, received by the PTO March 17, 2003 including Declaration of Orest Olejnik; '337 patent, Office Action, mailed March 13, 2003; Reply to Office Action, dated June 16, 2003. |

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| **Claim 2** | | | |
| 2. The composition of claim 1 wherein the alpha-2-adrenegic component is selected from the group consisting of imino-imidazolines, imidazolines, imidazoles, azepines, thiazines, oxazolines, guanidines, catecholamines, derivatives thereof, and mixtures thereof. | Claim 2 contains all the limitations of claim 1, with the additional requirement that the alpha-2-adrenergic agonist component must be: an imino-imidazoline, imidazoline, imidazole, azepine, thiazine, oxazoline, guanidine, catecholamine, derivative of one of the foregoing, or a mixture of one of the foregoing. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| **Claim 3** | | | |
| 3. The composition of claim 1 wherein the therapeutically active component includes a quinoxaline component. | Claim 3 includes all the limitations of claim 1, with the further requirement that the composition must contain a quinoxaline component. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| **Claim 4** | | | |
| 4. The composition of claim 3 wherein the quinoxaline component is selected from the group consisting of quinoxaline, derivatives thereof, and mixtures thereof. | Claim 4 includes all the limitations of claims 1 and 3, with the further requirement that the quinoxaline component must be a quinoxaline, a derivative of quinoxaline, or mixture of two or more of the foregoing. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| **Claim 6** | | | |
| 6. The composition of claim 1 wherein the solubility enhancing component is effective to increase the solubility in a biological environment of the alpha-2-adrenergic agonist component relative to the solubility in a biological environment of an identical alpha-2-adrenergic agonist component in a similar composition without the solubility enhancing component. | The parties dispute the construction of this limitation. | Claim 6 includes all the limitations of claim 1, with the further requirement that the solubility enhancing component is effective to increase the solubility in a biological environment of the alpha-2-adrenergic agonist component relative to its solubility in a similar composition without the solubility enhancing component.<br><br>Support for proposed construction: '337 patent, col. 1, lines 58-64, col. 4, lines 41-47. | Claim 6 contains all the limitations of claim 1, with the further requirement that the "solubility enhancing component" must be effective to increase the solubility in a biological environment of the alpha-2-adrenergic agonist component relative to the solubility in the same biological environment of the alpha-2-adrenergic agonist component in an otherwise identical composition without the "solubility enhancing component."<br><br>Support for proposed construction: As relevant to the construction of claim 6, Alcon incorporates its comment to claim 1. |
| **Claim 9** | | | |
| The composition of claim 1 which further comprises an effective amount of a preservative. | Claim 9 includes all the limitations of claim 1 with the further requirement that the composition must contain a component that assists in the preservation of the composition. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |

4

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| **Claim 10** | | | |
| The composition of claim 6 which further comprises an effective amount of a preservative. | Claim 10 includes all the limitations of claim 6 with the further requirement that the composition must contain an effective amount of a component that assists in the preservation of the composition. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |

**'834 Patent**

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| **Claim 1** | | | |
| 1. A therapeutically effective aqueous ophthalmic composition comprising: | The claim requires a therapeutically effective ophthalmic composition, and the term "therapeutically effective" is used in its ordinary sense. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| up to about 0.15% (w/v) of 5-bromo-6-(2-imidozolin-2-ylamino) quinoxaline tartrate, | The parties dispute the construction of this limitation. | The claimed composition contains up to approximately 0.15% (w/v) brimonidine tartrate. Support for proposed construction: The term "about" is used in its ordinary sense, meaning "approximately." *See Merck & Co. v. Teva Pharms., Inc.*, 395 F.3d 1364 (Fed. Cir. 2005). *See also* '834 patent, Figure 1, col. 1, lines 33-53, col. 2, lines 48-52, col. 3, lines 23-36, col. 6, lines 8-16, col. 11, lines 1-6, | The claimed composition must contain up to 0.155% (w/v) (the upper limit of 0.15 ± 0.005% (w/v)) of brimonidine tartrate. The specification (including the claims as originally filed) and prosecution history of the '834 patent only reflect testing of brimonidine tartrate solutions at concentrations of 0.5% (w/v) and 0.2% (w/v) and thus provide no teaching or |

5

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| | | Example 2 and descriptive text, Table IV and descriptive text, Application No. 09/904,018 (parent application of the application which issued as the '834 patent, including the original claims), '834 patent file history, Reply to Office Action, dated Mar. 24, 2003. | guidance supporting the terms "up to about 0.15% (w/v)," "up to 0.15% (w/v)," or "about 0.15% (w/v)" nor do they disclose that such compositions are within the scope of the alleged invention. In *Merck & Co. v. Teva Pharms., Inc.*, 395 F.3d 1364 (Fed. Cir. 2005), the court rejected the patentee's attempt to define the terms "about 70 mg" and "about 35 mg" as limited to the precise numerical values disclosed, without any surrounding range. Thus, in order to supply a range, but in light of the absence of any teaching in the specification as guidance for the same, Alcon proposes that the term "about" be interpreted to encompass the full range of values that would normally be rounded up or down to 0.15%. |
| the composition having a pH of about 7.0 or greater, | The parties dispute the construction of this limitation. | The claimed composition has a pH of approximately 7.0 or greater.<br><br>Support for proposed construction: The term "about" is used | The composition must have a pH of 6.95 (the lower limit of 7.0 ± 0.05) or greater.<br><br>The specification (including the |

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| | | in its ordinary sense, meaning "approximately." *See Merck & Co. v. Teva Pharms., Inc.*, 395 F.3d 1364 (Fed. Cir. 2005). *See also* '834 patent, Figure 1, col. 4, lines 22-33, col. 11, lines 1-6, Example 2 and descriptive text, Application No. 09/904,018 (parent application of the application which issued as the '834 patent, including the original claims), '834 patent file history, Reply to Office Action, dated Mar. 24, 2003. | claims as originally filed) and the prosecution history of the '834 patent provide no teaching regarding the scope of the pH limitation. Thus, Alcon proposes that the term "about" be interpreted to encompass the full range of values that would normally be rounded up or down to pH 7.0. |
| and the 5-bromo-6-(2-imidozolin-2-ylamino) quinoxaline tartrate being soluble in the composition at about 21° C. | The parties dispute the construction of this limitation. | The brimonidine tartrate must be soluble in the composition at approximately 21° C.<br><br>Support for proposed construction: The term "about" is used in its ordinary sense, meaning "approximately." *See Merck & Co. v. Teva Pharms., Inc.*, 395 F.3d 1364 (Fed. Cir. 2005). *See also* '834 patent, Figure 1, Example 2 and descriptive text, Application No. 09/904,018 (parent application of the application which issued as the '834 patent, including the original claims), '834 | The brimondine tartrate must be soluble in the composition at 21 ± 0.5C<br><br>The specification (including the claims as originally filed) and the prosecution history of the '834 patent provide no teaching regarding the scope of the temperature limitation. Thus, Alcon proposes that the term "about" be interpreted to encompass the full range of values that would normally be rounded up or down to a temperature of 21°C. |

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| | | patent file history, Reply to Office Action, dated Mar. 24, 2003. | |
| **Claim 2** | | | |
| 2. The composition of claim 1 which includes up to 0.15% (w/v) of 5-bromo-6-(2-imidozolin-2-ylamino) quinoxaline tartrate. | Claim 2 includes all the limitations of claim 1, with the additional requirement that the composition must include up to 0.15% (w/v) brimonidine tartrate. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| **Claim 3** | | | |
| 3. The composition of claim 1 which includes about 0.15% (w/v) of 5-bromo-6-(2-imidozolin-2-ylamino) quinoxaline tartrate. | The parties dispute the construction of this limitation. | Claim 3 includes all the limitations of claim 1, with the additional requirement that the composition must include approximately 0.15% brimonidine tartrate.<br><br>Support for proposed construction: The term "about" is used in its ordinary sense, meaning "approximately." *See Merck & Co. v. Teva Pharms., Inc.*, 395 F.3d 1364 (Fed. Cir. 2005). *See also* '834 patent, Figure 1, col. 1, lines 33-53, col. 2, lines 48-52, col. 3, lines 23-36, col. 6, lines 8-16, col. 11, lines 1-6, Example 2 and descriptive text, Table IV and descriptive text, Application No. 09/904,018 (parent application of the application which | Claim 3 contains all the limitations of claim 1, with the additional requirement that the composition must include 0.15% ± 0.005% (w/v) brimondine tartrate.<br><br>Support for proposed construction: As relevant to the construction of claim 3, Alcon incorporates its comments to claim 1. |

8

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| | | issued as the '834 patent, including the original claims), '834 patent file history, Reply to Office Action, dated Mar. 24, 2003. | |
| **Claim 4** | | | |
| 4. The composition of claim 1 which included 0.15% (w/v) of 5-bromo-6-(2-imidozolin-2-ylamino) quinoxaline tartrate. | Claim 4 includes all the limitations of claim 1, with the additional requirement that the composition must include 0.15% (w/v) brimonidine tartrate. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| **Claim 5** | | | |
| 5. The composition of claim 1 having a pH of 7.0 or greater. | Claim 5 includes all the limitations of claim 1, with the additional requirement that the pH of the composition must be 7.0 or greater. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| **Claim 6** | | | |
| 6. The composition of claim 1 which further comprises a preservative selected from the group consisting of an oxy-chloro component and a quaternary ammonium compound in an amount effective to at least assist in preserving the composition. | Claim 6 includes all the limitations of claim 1 and further requires that the composition must contain either an oxy-chloro or quaternary ammonium preservative in an amount effective to assist in preserving the composition. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| **Claim 8** | | | |
| 8. The composition of claim 1 which is substantially free of anionic cellulosic derivatives. | Claim 8 includes all the limitations of claim 1 and further requires that the composition is | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |

9

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| | substantially free of anionic cellulosic derivatives. | | |
| **Claim 9** | | | |
| The composition of claim 1 which is substantially free of carboxymethyl cellulose. | Claim 9 includes all the limitations of claim 1 and further requires that the composition is substantially free of carboxymethyl cellulose. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| **Claim 10** | | | |
| 10. A therapeutically effective aqueous ophthalmic composition comprising: | The claim requires a therapeutically effective ophthalmic composition, and the term "therapeutically effective" is used in its ordinary sense. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| up to about 0.15% (w/v) of a component selected from the group consisting of 5-bromo-6-(2-imidozolin-2-ylamino) quinoxaline, salts of 5-bromo-6-(2-imidozolin-2-ylamino) quinoxaline, esters of 5-bromo-6-(2-imidozolin-2-ylamino) quinoxaline and mixtures thereof, | The parties dispute the construction of this limitation. | The claimed composition contains up to approximately 0.15% (w/v) brimondine, salts of brimonidine, esters of brimonidine, or mixtures of the foregoing.<br><br>Support for proposed construction: The term "about" is used in its ordinary sense, meaning "approximately." *See Merck & Co. v. Teva Pharms., Inc.,* 395 F.3d 1364 (Fed. Cir. 2005). See also '834 patent, Figure 1, col. 1, lines 33-53, col. 2, lines 48-52, col. 3, lines 23-36, col. 6, lines 8-16, col. 11, lines 1-6, Example 2 and | The claimed composition must contain up to 0.155% (w/v) (the upper limit of 0.15 ± 0.005% (w/v)) of brimondine, salts of brimonidine, esters of brimonidine, or mixtures of two or more of the foregoing.<br><br>The specification (including the claims as originally filed) and prosecution history of the '834 patent only reflect testing of brimonidine tartrate solutions at concentrations of 0.5% (w/v) and 0.2% (w/v) and thus provide no teaching or |

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| | | descriptive text, Table IV and descriptive text, Application No. 09/904,018 (parent application of the application which issued as the '834 patent, including the original claims), '834 patent file history, Reply to Office Action, dated Mar. 24, 2003. | guidance supporting the terms "up to about 0.15% (w/v)," "up to 0.15% (w/v)," or "about 0.15% (w/v)" nor do they disclose that such compositions are within the scope of the alleged invention. In *Merck & Co. v. Teva Pharms., Inc.*, 395 F.3d 1364 (Fed. Cir. 2005), the court rejected the patentee's attempt to define the terms "about 70 mg" and "about 35 mg" as limited to the precise numerical values disclosed, without any surrounding range. Thus, in order to supply a range, but in light of the absence of any teaching in the specification as guidance for the same, Alcon proposes that the term "about" be interpreted to encompass the full range of values that would normally be rounded up or down to 0.15%. |
| the composition having a pH of about 7.0 or greater, | The parties dispute the construction of this limitation. | The claimed composition has a pH of approximately 7.0 or greater.<br><br>Support for proposed construction: The term "about" is used | The claimed composition must have a pH of 6.95 (the lower limit of $7.0 \pm 0.05$) or greater. The specification (including the |

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| | | in its ordinary sense, meaning "approximately." *See Merck & Co. v. Teva Pharms., Inc.*, 395 F.3d 1364 (Fed. Cir. 2005). *See also* '834 patent, Figure 1, col. 4, lines 22-33, col. 11, lines 1-6, Example 2 and descriptive text, Application No. 09/904,018 (parent application of the application which issued as the '834 patent, including the original claims), '834 patent file history, Reply to Office Action, dated Mar. 24, 2003. | claims as originally filed) and the prosecution history of the '834 patent provide no teaching regarding the scope of the pH limitation. Thus, Alcon proposes that the term "about" be interpreted to encompass the full range of values that would normally be rounded up or down to pH 7.0. |
| and the component being soluble in the composition at about 21° C. | The parties dispute the construction of this limitation. | The brimonidine tartrate must be soluble in the composition at approximately 21° C.<br><br>Support for proposed construction: The term "about" is used in its ordinary sense, meaning "approximately." *See Merck & Co. v. Teva Pharms., Inc.*, 395 F.3d 1364 (Fed. Cir. 2005). *See also* '834 patent, Figure 1, Example 2 and descriptive text, Application No. 09/904,018 (parent application of the application which issued as the '834 patent, including the original claims), '834 patent file history, | The component must be soluble in the composition at 21 ± .5°C.<br><br>The specification (including the claims as originally filed) and the prosecution history of the '834 patent provide no teaching regarding the scope of the temperature limitation. Thus, Alcon proposes that the term "about" be interpreted to encompass the full range of values that would normally be rounded up or down to a temperature of 21°C. |

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| | | Reply to Office Action, dated Mar. 24, 2003. | |
| **Claim 11** | | | |
| 11. The composition of claim 10 which includes up to 0.15% (w/v) of the component. | Claim 11 includes all the limitations of claim 10, with the additional requirement that the composition must include up to 0.15% (w/v) of the component selected from the group described in claim 10. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| **Claim 12** | | | |
| 12. The composition of claim 10 which includes about 0.15% (w/v) of the component | The parties dispute the construction of this limitation. | Claim 12 includes all the limitations of claim 10, with the additional requirement that the composition must include approximately 0.15% (w/v) of the component selected from the group described in claim 10.<br><br>Support for proposed construction: The term "about" is used in its ordinary sense, meaning "approximately." *See Merck & Co. v. Teva Pharms., Inc.,* 395 F.3d 1364 (Fed. Cir. 2005). *See also* '834 patent, Figure 1, col. 1, lines 33-53, col. 2, lines 48-52, col. 3, lines 23-36, col. 6, lines 8-16, col. 11, lines 1-6, Example 2 and descriptive text. | The claimed composition must include all the limitations of claim 10, with the additional requirement that the composition must include $0.15 \pm 0.005\%$ (w/v) of the component listed in claim 10.<br><br>As relevant to the construction of claim 12, Alcon incorporates its comments to claim 10. |

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| | Table IV and descriptive text, Application No. 09/904,018 (parent application of the application which issued as the '834 patent, including the original claims), '834 patent file history, Reply to Office Action, dated Mar. 24, 2003. | | |
| **Claim 13** | | | |
| 13. The composition of claim 10 which includes 0.15% (w/v) of the component | Claim 13 includes all the limitations of claim 10, with the additional requirement that the composition must include 0.15% (w/v) of the component selected from the group described in claim 10. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| **Claim 14** | | | |
| 14. The composition of claim 10 having a pH of 7.0 or greater. | Claim 14 includes all the limitations of claim 10, with the additional requirement that the pH of the composition must be 7.0 or greater. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| **Claim 17** | | | |
| 17. The composition of claim 10 which is substantially free of anionic cellulosic derivatives. | Claim17 includes all the limitations of claim 10 and further requires that the composition is substantially free of anionic cellulosic derivatives. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |
| **Claim 18** | | | |
| 18. The composition of claim 10 which is | Claim 18 includes all the limitations of claim 10 and further | The parties do not dispute the construction of this | The parties do not dispute the construction of this |

| Asserted Claim | Agreed Upon Construction | Allergan's Proposed Construction | Alcon's Proposed Construction |
|---|---|---|---|
| substantially free of carboxymethyl cellulose. | requires that the composition is substantially free of carboxymethyl cellulose. | limitation. | limitation. |
| **Claim 20** | | | |
| 20. The composition of claim 10 which further comprises a preservative selected from the group consisting of an oxy-chloro component and a quaternary ammonium compound in an amount effective to at least assist in preserving the composition. | Claim 20 includes all the limitations of claim 10 and further requires that the composition must contain either an oxy-chloro or quaternary ammonium preservative in an amount effective to assist in preserving the composition. | The parties do not dispute the construction of this limitation. | The parties do not dispute the construction of this limitation. |

FISH & RICHARDSON P.C.

By: /s/ William J. Marsden, Jr.
    William J. Marsden, Jr. (#2247)
    Sean P. Hayes (#4413)
    919 N. Market Street, Suite 1100
    P.O. Box 1114
    Wilmington, DE 19899-1114
    (302) 652-5070

    Jonathan E. Singer
    Michael J. Kane
    Deanna J. Reichel
    3300 Dain Rauscher Plaza
    60 South Sixth Street
    Minneapolis, MN 55402

    Juanita Brooks
    W. Chad Shear
    12390 El Camino Real
    San Diego, CA 92130

80024116.doc

YOUNG CONAWAY STARGATT & TAYLOR, LLP

By:/s/ Josy W. Ingersoll
    Josy W. Ingersoll (#1088)
    The Brandywine Building, 17th Floor
    1000 West Street
    P.O. Box 391
    Wilmington, DE 19899-0391
    (302) 571-6600

    Brian D. Coggio, Esq.
    Orrick, Herrington & Sutcliffe LLP
    666 Fifth Avenue
    New York, NY 10103-0001

# EXHIBIT O

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALLERGAN, INC., ALLERGAN SALES,
LLC,

        Plaintiffs,

        v.

ALCON, INC., ALCON
LABORATORIES, INC., and
ALCON RESEARCH, LTD.,

        Defendants.

Civil Action No. 04-968-GMS

## PLAINTIFFS' RESPONSE TO DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSIONS (NOS. 1-26)

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiffs Allergan, Inc. and Allergan Sales, LLC ("Plaintiffs") hereby respond and provide objections to Defendants Alcon, Inc., Alcon Laboratories, Inc. and Alcon Research, Ltd.'s ("Defendants") First Set of Requests for Admissions. The responses and objections are made according to the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Delaware and are based upon information presently available to Plaintiffs. These responses and objections are without prejudice to Plaintiffs' right to use or rely on subsequently discovered information.

### GENERAL OBJECTIONS

The following objections apply to each and every request contained in Alcon's First Set of Requests for Admissions. Allergan's responses are made without prejudice to any position as to admissibility at trial.

1.      Allergan objects to Alcon's First Set of Requests for Admissions on the ground that they seek admissions or denials which would necessarily include information protected by attorney-client and/or work product privileges.

2.     Allergan objects to Alcon's First Set of Requests for Admissions on the ground that they seek admissions or denials as to asserted claims that have not yet been construed by the court.

3.     Allergan objects to Alcon's First Set of Requests for Admissions to the extent they seek to impose a duty on Allergan that exceeds the permissible scope of discovery under Rule 26 of the Federal Rules of Civil Procedure.

4.     By responding to any of Alcon's Requests for Admissions or providing any information herewith, Allergan does not waive and expressly preserves the objections set forth herein and does not concede the relevancy or admissibility of the response.

5.     Allergan objects to Alcon's Requests for Admissions as overly broad, unduly burdensome, cumulative, and to the extent they seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

6.     Allergan objects to the definitions and instructions to the extent they are inconsistent with or beyond the scope of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Delaware.  Allergan will abide by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Delaware in its responses.

## RESPONSES TO REQUESTS FOR ADMISSIONS

REQUEST FOR ADMISSION NO. 1:

1.     Admit that the carboxymethyl cellulose ("CMC") contained in the ALPHAGAN®P product acts as a viscosity enhancer.

RESPONSE TO REQUEST FOR ADMISSION NO. 1:

Subject to the General Objections, Allergan responds as follows:

Allergan admits that CMC acts a viscosity enhancer in ALPHAGAN®P but denies that it acts only in that manner.

2

REQUEST FOR ADMISSION NO. 2:

Admit that the carboxymethyl cellulose ("CMC") contained in the

ALPHAGAN®P product has no pharmacological activity.

RESPONSE TO REQUEST FOR ADMISSION NO. 2:

Allergan objects to this Request to the extent that the term "pharmacological

activity" is vague and ambiguous. Subject to this objection and the General Objections,

Allergan responds as follows:

Allergan admits that CMC acts at least as viscosity enhancer and solubility

enhancing component in ALPHAGAN®P.

REQUEST FOR ADMISSION NO. 3:

Admit that CMC has no utility in the ALPHAGAN®P product other than as a

viscosity enhancer.

RESPONSE TO REQUEST FOR ADMISSION NO. 3:

Subject to the General Objections, Allergan responds as follows:

Denied.

REQUEST FOR ADMISSION NO. 4:

Admit that there is no difference in the solubility of brimonidine tartrate in a

0.15% (w/v) brimonidine tartrate solution at pH 7.0 that contains povidone compared to

the solubility of the brimonidine tartrate in an otherwise identical solution that does not

contain povidone.

RESPONSE TO REQUEST FOR ADMISSION NO. 4:

Allergan objects to this Request as incorporating Alcon's proposed claim

interpretation. Allergan also objects to this Request as vague and ambiguous in that it is

not limited to any temperature range. Subject to these and the General Objections,

Allergan responds as follows:

Denied.

3

REQUEST FOR ADMISSION NO. 5:

Admit that there is no difference in the solubility of brimonidine tartrate in a 0.15% (w/v) brimonidine tartrate solution at pH 7.1 that contains povidone compared to the solubility of the brimonidine tartrate in an otherwise identical solution that does not contain povidone.

RESPONSE TO REQUEST FOR ADMISSION NO. 5:

Allergan objects to this Request as incorporating Alcon's proposed claim interpretation. Allergan also objects to this Request as vague and ambiguous in that it is not limited to any temperature range. Subject to these and the General Objections, Allergan responds as follows:

Denied.

REQUEST FOR ADMISSION NO. 6:

Admit that there is no difference in the solubility of brimonidine tartrate in a 0.15% (w/v) brimonidine tartrate solution at pH 7.2 that contains povidone compared to the solubility of the brimonidine tartrate in an otherwise identical solution that does not contain povidone.

RESPONSE TO REQUEST FOR ADMISSION NO. 6:

Allergan objects to this Request as incorporating Alcon's proposed claim interpretation. Allergan also objects to this Request as vague and ambiguous in that it is not limited to any temperature range. Subject to these and the General Objections, Allergan responds as follows:

Denied.

REQUEST FOR ADMISSION NO. 7:

Admit that there is no difference in the solubility of brimonidine tartrate in a 0.15% (w/v) brimonidine tartrate solution at pH 7.3 that contains povidone compared to the solubility of the brimonidine tartrate in an otherwise identical solution that does not contain povidone.

4

RESPONSE TO REQUEST FOR ADMISSION NO. 7:

Allergan objects to this Request as incorporating Alcon's proposed claim interpretation. Allergan also objects to this Request as vague and ambiguous in that it is not limited to any temperature range. Subject to these and the General Objections, Allergan responds as follows:

Denied.

REQUEST FOR ADMISSION NO. 8:

Admit that there is no difference in the solubility of brimonidine tartrate in a 0.15% (w/v) brimonidine tartrate solution at pH 7.4 that contains povidone compared to the solubility of brimonidine tartrate in an otherwise identical solution that does not contain povidone.

RESPONSE TO REQUEST FOR ADMISSION NO. 8:

Allergan objects to this Request as incorporating Alcon's proposed claim interpretation. Allergan also objects to this Request as vague and ambiguous in that it is not limited to any temperature range. Subject to these and the General Objections, Allergan responds as follows:

Denied.

REQUEST FOR ADMISSION NO. 9:

Admit that Burke U.S. Patent No. 5,215,991 discloses the use of carboxymethyl cellulose in ophthalmic compositions containing alpha-2-adrenergic agonists, including pharmaceutically acceptable salts of 5-bromo-6-(2 imidazoline-2-ylamino) quinoxaline.

RESPONSE TO REQUEST FOR ADMISSION NO. 9:

Subject to the General Objections, Allergan responds as follows:

Denied.

REQUEST FOR ADMISSION NO. 10:

Admit that Burke U.S. Patent No. 5,215,991 discloses the use of povidone (polyvinylpyrrolidone) in ophthalmic compositions containing alpha-2-adrenergic

5

agonists, including pharmaceutically acceptable salts of 5-bromo-6-(2 imidazoline-2-ylamino)quinoxaline.

RESPONSE TO REQUEST FOR ADMISSION NO. 10:

Subject to the General Objections, Allergan responds as follows:

Denied.

REQUEST FOR ADMISSION NO. 11:

Admit that prior to instituting this suit, Allergan did not conduct any experiments to determine whether povidone functions as a "solubility enhancing component" in compositions containing alpha-2-adrenergic agonists as that term is used in the claims of U.S. Patent No. 6,673,337.

RESPONSE TO REQUEST FOR ADMISSION NO. 11:

Allergan objects to this Request to the extent that it seeks information subject to work product protection and/or information subject to the attorney-client privilege. Allergan also objects to this Request as vague and ambiguous to the extent that it is unclear what Alcon means by "experiments." Allergan also objects to this Request and vague and ambiguous insofar as it is unclear whose construction of "solubility enhancing component" is to be applied. Subject to these and the General Objections, Allergan responds as follows:

This request improperly seeks information regarding Allergan's pre-suit investigation. Alcon has not made and has no basis to make a claim that Allergan did not have legitimate grounds for bringing this suit and on that basis, Allergan denies the request.

REQUEST FOR ADMISSION NO. 12:

Admit that Allergan has no evidence that povidone functions as a "solubility enhancing component" in compositions containing alpha-2-adrenergic agonists as that term is used in the claims of U.S. Patent No. 6,673,337.

6

RESPONSE TO REQUEST FOR ADMISSION NO. 12:

  Allergan objects to this Request to the extent that it seeks information subject to work product protection and/or information subject to the attorney-client privilege. Allergan also objects to this Request and vague and ambiguous insofar as it is unclear whose construction of "solubility enhancing component" is to be applied. Subject to these and the General Objections, Allergan responds as follows:

  Denied.

REQUEST FOR ADMISSION NO. 13:

  Admit that Fig. 1 of the patents-in-suit shows that brimonidine tartrate at a concentration of 1500 ppm is soluble in the disclosed composition without a "solubility enhancing component" at a pH of up to about 7.0.

RESPONSE TO REQUEST FOR ADMISSION NO. 13:

  Allergan objects to this Request to the extent that it seeks information subject to work product protection and/or information subject to the attorney-client privilege. Allergan also objects to this Request as vague and ambiguous insofar as it is unclear whose constructions of "solubility enhancing component" and "about" are to be applied. Allergan also objects to this Request as vague and ambiguous insofar as the term "disclosed composition" is unclear, and no temperature is specified. Subject to these and the General Objections, Allergan responds as follows:

  Allergan admits that Fig. 1 and the data in Table IV of the patents-in-suit shows that, at a temperature of about 21° C, brimonidine tartrate at a concentration of 1500 ppm is soluble in the tested composition without a "solubility enhancing component" at a pH of up to 7.0. Except as specifically admitted, denied.

REQUEST FOR ADMISSION NO. 14:

  Admit that Fig. 1 of the patents-in-suit shows that brimonidine tartrate at a concentration of 1500 ppm is soluble in the disclosed composition without a "solubility enhancing component" at a pH of up to about 7.1.

RESPONSE TO REQUEST FOR ADMISSION NO. 14:

Allergan objects to this Request to the extent that it seeks information subject to work product protection and/or information subject to the attorney-client privilege. Allergan also objects to this Request as vague and ambiguous insofar as it is unclear whose constructions of "solubility enhancing component" and "about" are to be applied. Allergan also objects to this Request as vague and ambiguous insofar as the term "disclosed composition" is unclear, and no temperature is specified. Subject to these and the General Objections, Allergan responds as follows:

Allergan admits that Fig. 1 and Table IV of the patents-in-suit shows that, at a temperature of about 21° C, brimonidine tartrate at a concentration of 1500 ppm is soluble in the tested composition without a "solubility enhancing component" at a pH of up to 7.1. Except as specifically admitted, denied.

REQUEST FOR ADMISSION NO. 15:

Admit that Fig. 1 of the patents-in-suit shows that brimonidine tartrate at a concentration of 1500 ppm is soluble in the disclosed composition without a "solubility enhancing component" at a pH of up to about 7.2.

RESPONSE TO REQUEST FOR ADMISSION NO. 15:

Allergan objects to this Request to the extent that it seeks information subject to work product protection and/or information subject to the attorney-client privilege. Allergan also objects to this Request as vague and ambiguous insofar as it is unclear whose constructions of "solubility enhancing component" and "about" are to be applied. Allergan also objects to this Request as vague and ambiguous insofar as the term "disclosed composition" is unclear, and no temperature is specified. Subject to these and the General Objections, Allergan responds as follows:

Denied.

8

REQUEST FOR ADMISSION NO. 16:

Admit that Fig. 1 of the patents-in-suit shows that brimonidine tartrate at a concentration of 1500 ppm is soluble in the disclosed composition without a "solubility enhancing component" at a pH of up to about 7.3.

RESPONSE TO REQUEST FOR ADMISSION NO. 16:

Allergan objects to this Request to the extent that it seeks information subject to work product protection and/or information subject to the attorney-client privilege. Allergan also objects to this Request as vague and ambiguous insofar as it is unclear whose constructions of "solubility enhancing component" and "about" are to be applied. Allergan also objects to this Request as vague and ambiguous insofar as the term "disclosed composition" is unclear, and no temperature is specified. Subject to these and the General Objections, Allergan responds as follows:

Denied.

REQUEST FOR ADMISSION NO. 17:

Admit that Fig. 1 of the patents-in-suit shows that brimonidine tartrate at a concentration of 1500 ppm is soluble in the disclosed composition without a "solubility enhancing component" at a pH of up to about 7.4.

RESPONSE TO REQUEST FOR ADMISSION NO. 17:

Allergan objects to this Request to the extent that it seeks information subject to work product protection and/or information subject to the attorney-client privilege. Allergan also objects to this Request as vague and ambiguous insofar as it is unclear whose constructions of "solubility enhancing component" and "about" are to be applied. Allergan also objects to this Request as vague and ambiguous insofar as the term "disclosed composition" is unclear, and no temperature is specified. Subject to these and the General Objections, Allergan responds as follows:

Denied.

9

REQUEST FOR ADMISSION NO. 18:

Admit that no Example in U.S. Patent No. 6,641,843 describes the administration of a composition containing an alpha-2-adrenergic agonist component to an animal or a human.

RESPONSE TO REQUEST FOR ADMISSION NO. 18:

Allergan objects to this Request to the extent that it seeks information subject to work product protection and/or information subject to the attorney-client privilege. Allergan also objects to this Request as vague and ambiguous. Subject to these and the General Objections, Allergan responds as follows:

Admitted as to U.S. Patent No. 6,641,843.

REQUEST FOR ADMISSION NO. 19:

Admit that the specification of U.S. Patent No. 6,641,843 does not provide any experimental data resulting from the administration of a composition containing an alpha-2-adrenergic agonist component to an animal or a human.

RESPONSE TO REQUEST FOR ADMISSION NO. 19:

Allergan objects to this Request to the extent that it seeks information subject to work product protection and/or information subject to the attorney-client privilege. Allergan also objects to this Request as vague and ambiguous. Subject to these and the General Objections, Allergan responds as follows:

Admitted as to U.S. Patent No. 6,641,843.

REQUEST FOR ADMISSION NO. 20:

Admit that the specification of U.S. Patent No. 6,641,843 does not describe the administration of a composition containing an alpha-2 adrenergic agonist component to an animal or a human.

RESPONSE TO REQUEST FOR ADMISSION NO. 20:

Allergan objects to this Request to the extent that it seeks information subject to work product protection and/or information subject to the attorney-client privilege.

10

Allergan also objects to this Request as vague and ambiguous. Subject to these and the General Objections, Allergan responds as follows:

Admitted as to U.S. Patent No. 6,641,843.

REQUEST FOR ADMISSION NO. 21:

Admit that the specification of U.S. Patent No. 6,641,834 does not disclose a therapeutically effective aqueous ophthalmic composition containing approximately 0.15% (w/v) of 5-bromo-6-(2-imidozolin-2-ylamino) quinoxaline tartrate.

RESPONSE TO REQUEST FOR ADMISSION NO. 21:

Subject to the General Objections, Allergan responds as follows:

Denied.

REQUEST FOR ADMISSION NO. 22:

Admit that the specification of U.S. Patent No. 6,641,834 does not disclose a therapeutically effective aqueous ophthalmic composition containing 0.15% (w/v) of 5-bromo-6-(2-imidozolin-2-ylamino) quinoxaline tartrate.

RESPONSE TO REQUEST FOR ADMISSION NO. 22:

Subject to the General Objections, Allergan responds as follows:

Denied.

REQUEST FOR ADMISSION NO. 23:

Admit that the specification of U.S. Patent No. 6,641,834 does not disclose that a therapeutically effective amount of brimonidine tartrate is 0.15% (w/v) or less.

RESPONSE TO REQUEST FOR ADMISSION NO. 23:

Subject to the General Objections, Allergan responds as follows:

Denied.

REQUEST FOR ADMISSION NO. 24:

Admit that the specification of U.S. Patent No. 6,641,834 does not disclose a therapeutically effective aqueous ophthalmic solution of brimonidine tartrate that does not contain a "solubility enhancing component" as that term is used in the patent.

11

RESPONSE TO REQUEST FOR ADMISSION NO. 24:

Allergan objects to this Request as vague and ambiguous insofar as it is unclear whose construction of "solubility enhancing component" is to be applied. Subject to this and the General Objections, Allergan responds as follows:

Denied.

REQUEST FOR ADMISSION NO. 25:

Admit that the specification of U.S. Patent No. 6,641,834 does not disclose a therapeutically effective aqueous ophthalmic solution containing up to about 0.15% (w/v) of brimonidine tartrate that does not contain a "solubility enhancing component" as that term is used in the patent.

RESPONSE TO REQUEST FOR ADMISSION NO. 25:

Allergan objects to this Request as vague and ambiguous insofar as it is unclear whose construction of "solubility enhancing component" is to be applied. Subject to this and the General Objections, Allergan responds as follows:

Denied.

REQUEST FOR ADMISSION NO. 26:

Admit that Allergan's 0.2% Alphagan® product was approved for the pH range pH 5.6 - 6.6.

RESPONSE TO REQUEST FOR ADMISSION NO. 26:

Allergan objects to this Request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Allergan further objects to this Request as vague and ambiguous insofar as the term "approved" in unclear. Subject to these and the General Objections, Allergan responds as follows:

Allergan admits that the FDA-approved labeling for Alphagan® indicates that the product has a pH of 5.6-6.6. Except as specifically admitted, denied.k

12

Dated:  May 6, 2005                     FISH & RICHARDSON P.C.


By: _____

William J. Marsden, Jr. (marsden@fr.com)
Sean P. Hayes (hayes@fr.com)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone:  (302) 652-5070

Jonathan E. Singer
Michael J. Kane
Deanna J. Reichel
FISH & RICHARDSON, P.C., P.A.
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN  55402
Telephone:  (612) 335-5070

Juanita Brooks
W. Chad Shear
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070

Attorneys for Plaintiffs
ALLERGAN, INC. and ALLERGAN SALES, LLC

13

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2005, I hereby served PLAINTIFFS' RESPONSE

TO DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSIONS (NOS. 1-26) on

the following counsel of record at the address listed:

Brian D. Coggio, Esq.
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, NY 10103-0001


Josy W. Ingersoll
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, DE  19899-0391

William J. Marsden, Jr.

60288377.doc

# EXHIBIT P

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALLERGAN, INC., ALLERGAN SALES,
LLC,

        Plaintiffs,

      v.

ALCON, INC., ALCON
LABORATORIES, INC., and
ALCON RESEARCH, LTD.,

        Defendants.

Civil Action No. 04-968-GMS

## PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND SET OF INTERROGATORIES (No. 12)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Allergan, Inc. and

Allergan Sales, LLC. ("Plaintiffs") object to and answer Defendants Alcon, Inc., Alcon

Laboratories, Inc. and Alcon Research, Ltd. ("Defendants") Second Set of Interrogatories

(No. 12) as follows. The objections and answers are made according to the Federal Rules

of Civil Procedure and the Local Rules of the United States District Court for the District

of Delaware and are based upon information presently available to Plaintiffs. These

objections and answers are without prejudice to Plaintiffs' right to use or rely on

subsequently discovered information.

## GENERAL OBJECTIONS

1.    Plaintiffs object to the interrogatories, definitions, and instructions to the

extent they are inconsistent with or are beyond the scope of the Federal Rules of Civil

Procedure and the Local Rules of the United States District Court for the District of

Delaware. Plaintiffs will abide by the Federal Rules of Civil Procedure and the Local

Rules of the United States District Court for the District of Delaware in responding to

defendant's interrogatories.

2.     Plaintiffs object to each interrogatory to the extent it is vague, ambiguous, indefinite, overly broad, unduly burdensome, oppressive and/or does not reasonably identify the information sought.

3.     Plaintiffs object to each interrogatory to the extent it would impose an unreasonable burden or expense on Plaintiffs to answer the interrogatory.

4.     Plaintiffs object to each interrogatory that seeks discovery of information or production of documents or things that are in the public domain and, therefore, of no greater burden for Defendant to obtain than Plaintiffs.

5.     Plaintiffs object to each interrogatory to the extent it seeks disclosure of documents or information protected by the attorney-client privilege, work-product doctrine, or other applicable privilege or immunity.

6.     Plaintiffs object to each interrogatory to the extent that it seeks disclosure of confidential, proprietary, trade secret, or other competitively sensitive information. Plaintiffs will provide confidential information in this case once a suitable protective order is entered in this action or when defendant's counsel agrees to treat all information disclosed on an outside counsel only basis until a suitable protective order is entered in this action, at which time the information shall be treated according to the protective order.

7.     Plaintiffs object to each interrogatory to the extent that it may be construed as limiting or restricting Plaintiffs' right to rely upon any information or document for any purposes whatsoever, including, but not limited to, the use of information or responsive documents as evidence at any subsequent hearing, trial, or other proceeding.

8.     Allergan reserves the right to supplement, amend, modify, or correct its objections and responses.

The foregoing General Objections are incorporated into each of Plaintiffs' responses to Defendants' interrogatories irrespective of whether such Objection is expressly referred to by Plaintiffs' answer to a specific Interrogatory. The repetition or

2

omission of a particular General Objection or Objection to a Definition in a specific answer is not a waiver of any of Plaintiffs' General Objections.

## RESPONSE TO SECOND SET OF INTERROGATORIES

INTERROGATORY NO. 12:

For each denial made in response to any request in Defendants' First Set of Requests for Admissions (Nos. 1-26), describe fully and with particularity all facts and reasons upon which Allergan bases the denial, and identify all documents that refer or relate to such denial.

RESPONSE TO INTERROGATORY NO.12:

Allergan objects to Interrogatory No. 12 because it is portrayed as a single interrogatory, when it should properly be counted as 26 separate interrogatories. Allergan further objects to Interrogatory No. 12 Interrogatory to the extent it calls for the disclosure of information protected by the attorney-client privilege and/or work product doctrine. Subject to these and the General Objections, Allergan responds that it denied Alcon's Requests for Admissions, in whole or in part, for at least the following reasons:

3.    In addition to having utility as a viscosity enhancer, CMC also has, at a minimum, utility as a solubility enhancing component in the Alphagan® P product.

4.    The specification of the '337 patent identifies povidone as a soubility enhancing component. In addition, the references produced in this litigation show that povidone acts as a solubility enhancing component. Finally, Alcon's own tests show that povidone acts to increase the solubility of brimonidine tartrate.

5.    The specification of the '337 patent identifies povidone as a soubility enhancing component. In addition, the references produced in this litigation show that povidone acts as a solubility enhancing component. Finally, Alcon's own tests show that povidone acts to increase the solubility of brimonidine tartrate.

3

6.    The specification of the '337 patent identifies povidone as a soubility enhancing component. In addition, the references produced in this litigation show that povidone acts as a solubility enhancing component. Finally, Alcon's own tests show that povidone acts to increase the solubility of brimonidine tartrate.

7.    The specification of the '337 patent identifies povidone as a soubility enhancing component. In addition, the references produced in this litigation show that povidone acts as a solubility enhancing component. Finally, Alcon's own tests show that povidone acts to increase the solubility of brimonidine tartrate.

8.    The specification of the '337 patent identifies povidone as a soubility enhancing component. In addition, the references produced in this litigation show that povidone acts as a solubility enhancing component. Finally, Alcon's own tests show that povidone acts to increase the solubility of brimonidine tartrate.

9.    The Burke patent does not provide an example of carboxymethyl cellulose in ophthalmic compositions containing alpha-2-adrenergic agonists, including pharmaceutically acceptable salts of 5-bromo-6-(2-imidazoline-2-ylamino) quinoxaline.

10.    The Burke patent does not provide an example of povidone in ophthalmic compositions containing alpha-2-adrenergic agonists, including pharmaceutically acceptable salts of 5-bromo-6-(2-imidazoline-2-ylamino) quinoxaline.

11.    The specification of the '337 patent identifies povidone as a solubility enhancing component. Further, the specification of the '337 patent describes experiments in which solubility enhancing components are used in compositions containing alpha-2-adrenergic agonists to increase the solubility of the alpha-2-adrenergic agonists. In addition, the references produced in this litigation show that povidone acts as a solubility enhancing component. Finally, Alcon's own tests show that povidone acts to increase the solubility of brimonidine tartrate.

12.    The specification of the '337 patent identifies povidone as a solubility enhancing component. In addition, the references produced in this litigation show that

4

povidone acts as a solubility enhancing component. Finally, Alcon's own tests show that povidone acts to increase the solubility of brimonidine tartrate.

15.    Figure 1 is a set of solubility curves showing the solubility of brimonidine tartrate in various compositions tested under a particular set of conditions. The solubility curves of Figure 1 were created based on the data of Table IV. Table IV does not have a data point showing the solubility of 1500 ppm of brimonidine tartrate at a pH of about 7.2. As a result, Allergan denies this request.

16.    Figure 1 is a set of solubility curves showing the solubility of brimonidine tartrate in various compositions tested under a particular set of conditions. The solubility curves of Figure 1 were created based on the data of Table IV. Table IV does not have a data point showing the solubility of 1500 ppm of brimonidine tartrate at a pH of about 7.3. As a result, Allergan denies this request.

17.    Figure 1 is a set of solubility curves showing the solubility of brimonidine tartrate in various compositions tested under a particular set of conditions. The solubility curves of Figure 1 were created based on the data of Table IV. Table IV does not have a data point showing the solubility of 1500 ppm of brimonidine tartrate at a pH of about 7.4. As a result, Allergan denies this request.

21.    Please refer to the parties' Joint Claim Chart, Allergan's Supplemental Response to Defendants' Interrogatories Nos. 2 and 3, and Allergan's Opening Markman Brief. Additional information may be found in Allergan's Response to Alcon's Summary Judgment Motion, to be filed May 16, 2005.

22.    Please refer to the parties' Joint Claim Chart, Allergan's Supplemental Response to Defendants' Interrogatories Nos. 2 and 3, and Allergan's Opening Markman Brief. Additional information may be found in Allergan's Response to Alcon's Summary Judgment Motion, to be filed May 16, 2005.

23.    Please refer to the parties' Joint Claim Chart, Allergan's Supplemental Response to Defendants' Interrogatories Nos. 2 and 3, and Allergan's Opening Markman

5

Brief. Additional information may be found in Allergan's Response to Alcon's Summary Judgment Motion, to be filed May 16, 2005.

24.    Please refer to the parties' Joint Claim Chart, Allergan's Supplemental Response to Defendants' Interrogatories Nos. 2 and 3, and Allergan's Opening Markman Brief. Additional information may be found in Allergan's Response to Alcon's Summary Judgment Motion, to be filed May 16, 2005.

25.    Please refer to the parties' Joint Claim Chart, Allergan's Supplemental Response to Defendants' Interrogatories Nos. 2 and 3, and Allergan's Opening Markman Brief. Additional information may be found in Allergan's Response to Alcon's Summary Judgment Motion, to be filed May 16, 2005.

Dated:  April 12, 2005                    FISH & RICHARDSON P.C.


By: _____
    William J. Marsden, Jr. (marsden@fr.com)
    Sean P. Hayes (hayes@fr.com)
    919 N. Market Street, Suite 1100
    P.O. Box 1114
    Wilmington, DE 19899-1114
    Telephone:  (302) 652-5070


    OF COUNSEL:
    Jonathan E. Singer
    Michael J. Kane
    Deanna J. Reichel
    FISH & RICHARDSON, P.C., P.A.
    3300 Dain Rauscher Plaza
    60 South Sixth Street
    Minneapolis, MN  55402
    Telephone:  (612) 335-5070

    Juanita Brooks
    W. Chad Shear
    FISH & RICHARDSON P.C.
    12390 El Camino Real
    San Diego, CA 92130
    Telephone: (858) 678-5070

Attorneys for Plaintiffs
ALLERGAN, INC. and ALLERGAN SALES, LLC

7

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2005, I hereby served PLAINTIFFS' RESPONSE

TO DEFENDANTS' SECOND SET OF INTERROGATORIES (No. 12) on the

following counsel of record at the address listed:

Brian D. Coggio, Esq.
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, NY 10103-0001


Josy W. Ingersoll
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, DE  19899-0391

William J. Marsden, Jr.

60288398 (2).doc