IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALLERGAN, INC., ALLERGAN SALES, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ALCON, INC., ALCON LABORATORIES, INC., and ALCON RESEARCH, LTD., <br><br> Defendants. | Civil Action No. 04-968-GMS <br><br> **[REDACTED VERSION]** |

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' OPENING MARKMAN BRIEF**

Dated: May 31, 2005

William J. Marsden, Jr. (marsden@fr.com)
Sean P. Hayes (hayes@fr.com)
FISH & RICHARDSON P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070

Jonathan E. Singer
Michael J. Kane
Deanna J. Reichel
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 335-5070

Juanita Brooks
W. Chad Shear
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070

Attorneys for Plaintiffs
ALLERGAN, INC. and ALLERGAN SALES, LLC

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................1

II.   SUMMARY OF THE ARGUMENT ....................................................1

III.  ARGUMENT...........................................................................................2

    A.    The Asserted Claims of the '337 Patent Are Not Limited
          to Anionic SECs and Alcon's Arguments Seeking to
          Read the Word "Anionic" Into the '337 Patent Claims
          Are Not Supported By the Intrinsic Evidence or By the
          Cited Case Law. ...........................................................................2

          1.    The Ordinary Meaning and the Specification
                Both Demonstrate that the Claims of the '337
                Patent Cover SECs of Any Ionic State. ........................3

          2.    The Statements from the '210 Patent Prosecution
                History Relied Upon by Alcon Were Directed to
                Claims that Had Already Been Narrowed to
                Include the Term "Anionic" and Cannot Limit
                the Scope of the Broader Term "Solubility
                Enhancing Component." ................................................4

          3.    Alcon Continues to Mischaracterize Allergan's
                Statements from the '210 Patent Prosecution to
                Create a Disclaimer of Subject Matter Where
                None Occurred. ..............................................................8

          4.    Allergan Properly Amended the Claims to Speed
                Prosecution During the '210 Patent Prosecution
                and Did Not Lose its Right to Resubmit Broader
                Claims for the Later '337 Patent..................................10

    B.    The Ordinary Meaning of the Term "About" is
          "Approximately" and Alcon's Attempts to Impose an
           Additional Limitation are Without Support............................11

    C.    The Phrase "Similar Composition" Requires No
          Construction Because the Ordinary Meaning is Clear.............13

IV.   CONCLUSION......................................................................................14

i

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Advanced Cardiovascular System, Inc. v. Medtronic, Inc.,*
  265 F.3d 1294 (Fed. Cir. 2001)........................................................................4-5, 6, 7

*In re Chu,*
  66 F.3d 292 (Fed. Cir. 1995)....................................................................................9

*Conopco, Inc. v. May Dep't Stores Co.,*
  46 F.3d 1556 (Fed. Cir. 1994)............................................................................11, 12

*Comark Communications, Inc. v. Harris Corp.,*
  156 F.3d 1182 (Fed. Cir. 1998)................................................................................4

*In re Davies,*
  475 F.2d 667 (CCPA 1973) .....................................................................................9

*Elkay Manufacturing Co. v. Ebco Manufacturing Co.,*
  192 F.3d 973 (Fed. Cir. 1999)..................................................................................7

*Home Diagnostics, Inc. v. LifeScan, Inc.,*
  381 F.3d 1352 (Fed. Cir. 2004)..............................................................................10

*Johnson Worldwide Assocs. v. Zebco Corp.,*
  175 F.3d 985 (Fed. Cir. 2000).................................................................................11

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
  358 F.3d 898 (Fed. Cir. 2004).................................................................................10

*Merck & Co. v. Teva Pharms. USA, Inc.,*
  395 F.3d 1364 (Fed. Cir. 2005)...............................................................................11

*Metabolite Labs., Inc.  v. Lab. Corp. of Am. Holdings,*
  370 F.3d 1354 (Fed. Cir. 2004)................................................................................3

*Omega Eng'g, Inc. v. Raytek Corp.,*
  334 F.3d 1314 (Fed. Cir. 2003)................................................................................7

*Pall Corp. v. Micron Separations, Inc.,*
  66 F.3d 1211 (Fed. Cir. 1995).................................................................................12

*Rexnord Corp. v. Laitram Corp.,*
  274 F.3d 1336 (Fed. Cir. 2001)................................................................................4

*Storage Tech. Corp. v. Cisco System, Inc.,*
  329 F.3d 823 (Fed. Cir. 2003)...............................................................................3, 4

*Vanguard Products Corp. v. Parker Hannifin Corp.,*
  234 F.3d 1370 (Fed. Cir. 2000)................................................................................4

ii

## <u>TABLE OF AUTHORITIES (cont'd)</u>

<u>Page(s)</u>

*Tex. Digital Sys., Inc. v. Telegenix, Inc.*,
    308 F.3d 1193 (Fed. Cir. 2002)..............................................................................2

### OTHER AUTHORITY

Manual of Patent Examining Procedure § 716.02(f) (8th ed. 2004)....................................9

*Webster's Third New International Dictionary* (1993) ...............................................11, 13

I.     **INTRODUCTION**

The Court's task in construing the disputed claims in this case is very simple—all the terms in dispute should receive their ordinary and accustomed meaning.  Each of the contested limitations—"solubility enhancing component," "about," and "similar"—has an easy to understand ordinary meaning that is consistent with the specifications and prosecution histories of the patents-in-suit.  Under established Federal Circuit precedent, the plain meaning thus controls.

By contrast, Alcon's proposed claim constructions run from these plain meanings.  In its vain effort to create a disclaimer where none exists on the term "solubility enhancing component," Alcon rewrites the '210 patent prosecution history, and misreads (and ignores) relevant case law.  Similarly, Alcon attempts to set arbitrary numerical limits on the limitation "about" in the claims of the '834 patent.  But these numerical limitations appear out of thin air, and their arbitrary nature is perhaps best demonstrated by the different limits that Alcon has advocated during the *Markman* process.  Finally, after not even bothering to argue the point in its opening brief, Alcon wrongly asks the Court to replace the word "similar" in the '337 patent claims with the words "otherwise identical."  This request has no basis in the intrinsic evidence and Alcon's after-the-fact claim that it does misstates the record.

None of Alcon's proposed constructions comport with well-established precedent or the intrinsic evidence.  The Court should reject Alcon's proposed claim constructions and adopt Allergan's proposed constructions.

II.    **SUMMARY OF THE ARGUMENT**

- The term "solubility enhancing component" in the claims of the '337 patent is not limited to anionic SECs.  Alcon's arguments run counter to the patent's plain language and specification, as well as the actual prosecution history, as opposed to the one created by Alcon.  Alcon ignores the simple fact that <u>all</u> of Allergan's statements in the '210 prosecution history about an "invention of selection" and

1

the advantages of anionic SECs were made in support of the patentability of claims that <u>had already been amended to recite an anionic SEC</u>, the preferred embodiment disclosed in the specification. Alcon also ignores Allergan's explicit reservation of rights to resubmit and argue for broader claims, which Allergan did successfully. As a matter of law, there was no "clear and unmistakable" surrender of subject matter because the statements were made in support of a different claim term.

- The term "about" in the claims of the '834 patent should be given its ordinary meaning of "approximately." Alcon's proposed constructions deviate from the plain meaning and impose artificial limits that are unsupported by any competent evidence.

- The term "similar composition" in the claims of the '337 patent needs no construction because the meaning of the term is plain on its face. Alcon's attempt to rewrite the claims by substituting the words "otherwise identical" for the word "similar" has no basis in the intrinsic record.

## III.  ARGUMENT

### A.  The Asserted Claims of the '337 Patent Are Not Limited to Anionic SECs and Alcon's Arguments Seeking to Read the Word "Anionic" Into the '337 Patent Claims Are Not Supported By the Intrinsic Evidence or By the Cited Case Law.

Allergan proposes that the term "solubility enhancing component" be construed as follows: "A component that enhances the solubility of the alpha-2-adrenergic agonist component, and any component other than a cyclodextrin is covered by the claim." This proposed construction applies the plain meaning of the term and therefore is consistent with the "heavy presumption" afforded to the plain meaning by Federal Circuit precedent. *See Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1201-02 (Fed. Cir. 2002).

2

In its brief (D.I. 67), Alcon never disputes that Allergan's proposed construction properly reflects the ordinary meaning of the claim terms; instead, Alcon improperly downplays the importance of the ordinary meaning and moves immediately to the prosecution history of the parent application in an attempt to create a disclaimer of subject matter where none is otherwise apparent. This argument, however, runs afoul of basic Federal Circuit precedent requiring that no disclaimer be found in the absence of a "clear and unambiguous" surrender of subject matter. *See Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 833-34 (Fed. Cir. 2003). No such surrender occurred in this case.

1. **The Ordinary Meaning and the Specification Both Demonstrate that the Claims of the '337 Patent Cover SECs of Any Ionic State.**

As is implicit from Alcon's disclaimer argument, the claim language and specification both support Allergan's construction. Alcon's brief gives mere lip service to this language, as well as to the broad explanation of SECs in the specification of the '337 patent, which, consistent with the ordinary meaning, explains that "[a]ny suitable SEC may be employed in accordance with the present invention" and lists numerous examples of SECs, some of which are non-ionic and some of which are anionic. '337 patent, col. 6, line 17 – col. 7, line 9. [*See* Marsden Markman Decl. Ex. B, at AGN0065329-30. (D.I. 58)] As the Federal Circuit has stated, the specification is generally considered the best source of meaning. *See Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1360 (Fed. Cir. 2004).

Indeed, one of the non-anionic SECs explicitly identified in the patent is polyvinylpyrrolidone (povidone), '337 patent, col. 6, lines 18-20 [Marsden Markman Decl., Ex. B, at AGN0065329 (D.I. 58)], which Alcon uses in its proposed product— hence, the root of Alcon's argument. The same portion of the specification that identifies the component Alcon uses also repeatedly refers to anionic SECs as mere "preferred embodiments," and not as the invention itself. *Id.* at col. 6, lines 18-23 ("In a <u>preferred</u>

3

embodiment, the SECs include polyanionic components." (emphasis added)). Besides its

obvious litigation-inspired basis, Alcon's attempt to limit the claims to "anionic" SECs

thus violates a basic canon of claim construction by seeking to limit the claimed

invention to the preferred embodiment. *See Comark Communications, Inc. v. Harris*

*Corp.*, 156 F.3d 1182, 1186-87 (Fed. Cir. 1998).

> **2.    The Statements from the '210 Patent Prosecution History Relied Upon by Alcon Were Directed to Claims that Had Already Been Narrowed to Include the Term "Anionic" and Cannot Limit the Scope of the Broader Term "Solubility Enhancing Component."**

It is black-letter law that prosecution history statements may only be used to limit

the claims if they demonstrate a <u>clear and unambiguous</u> surrender of subject matter. *See*

*Storage Tech.*, 329 F.3d at 833-34 (refusing to limit scope of claim term because the

applicants' prosecution statements were not found "to be a clear and unambiguous

disavowal of claim scope as required to depart from the meaning of the term provided by

the written description"). The Federal Circuit has consistently declined to find disclaimer

in cases where there is any ambiguity in the prosecution statements. *See, e.g., Rexnord*

*Corp. v. Laitram Corp.*, 274 F.3d 1336, 1347 (Fed. Cir. 2001) (refusing to limit the

ordinary meaning of the claim because the alleged disclaimer in the file wrapper was at

best "inconclusive"); *Vanguard Prods. Corp. v. Parker Hannifin Corp.*, 234 F.3d 1370,

1372 (Fed. Cir. 2000) (refusing to narrow the asserted claim based on prosecution

disclaimer because "the prosecution history does not support [the infringer]'s argument

that the Vanguard inventors 'expressly disclaimed' claim scope beyond products made by

co-extrusion").

Here, there is not even any ambiguity to the file histories—they show no

disclaimer at all. As detailed in Allergan's responsive *Markman* brief (D.I. 71), <u>all</u> the

prosecution history statements from the parent file history that are relied upon by Alcon

were made in support of claims that had <u>already been amended</u> to require anionic SECs,

and relate to particular advantages of this preferred embodiment. As a matter of law, the

4

statements cannot limit the later, broader claim term. *See Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1305 (Fed. Cir. 2001) (refusing to limit claim to require that balloon be coaxial with guidewire lumen because, unlike the claims of the parent patents, the claims of the patent-in-suit did not contain that term).

In its brief, Alcon simply refuses to acknowledge the actual sequence of events in the prosecution history. Particularly egregious is Alcon's heavy reliance on a statement in the Interview Summary about an "invention of selection." [Alcon Markman Response Br. at 3. (D.I. 67)] The "invention of selection" discussed at the interview, however, was in the context of proposed amended claims to the anionic SEC preferred embodiment. It was <u>not</u> a characterization of the broader invention as a whole. Indeed, one day <u>before</u> the interview, which took place on February 25, 2003, Allergan sent a facsimile to Examiner Bennett containing amended claims for discussion at the interview. [Marsden Markman Decl., Ex. J, at AGN00221888-91. (D.I. 58)] These draft claims are attached to the interview summary, and were the topic of the interview, <u>not</u> the broader original claims. [*Id.* at AGN00221886-91.]

For example, before the interview, Allergan proposed to amend claim 1 as follows:

1. (Amended) <u>A therapeutically effective aqueous</u> composition comprising:

~~an alpha-2-adrenergic agonist component~~ <u>a therapeutically active component selected from the group consisting of 5-bromo-6-(2-imidozolin-2-ylamino) quinoxaline, a slat thereof, and an ester thereof</u> in an amount effective to provide a therapeutic benefit to a patient to whom the composition is administered; <u>and</u>

<u>an anionic</u> solubility enhancing component in an amount effective to increase the solubility of the alpha-2-adrenergic agonist component in the composition relative to the solubility of an identical alpha-2-adrenergic agonist component in a similar composition without the solubility enhancing component~~; and~~

~~a liquid carrier component.~~

5

[*Id*; *see also* amended claim 28 at AGN0221890.]

In the interview summary, Examiner Bennett then stated that "[t]he attorney agreed to file a declaration of unexpected results with regards to the anionic solubility enhancing agent." [*Id.* at AGN0221886.] This statement refers only to the amended draft claims that Allergan had submitted for discussion. It is not an indication that all SECs must be anionic or that the entire invention only encompasses anionic SECs.

Alcon also wrongly implies that Allergan first made patentability arguments in its office action response and the declaration from Dr. Olejnik, and only "thereafter" (Alcon's words) was forced by the Examiner to amend the claims. [Alcon Markman Response Br. at 4. (D.I. 67)] This is wishful thinking taken to the extreme of mischaracterization. In reality, all the '210 prosecution statements cited by Alcon were made in support of the claims that had already been amended to recite the anionic SEC preferred embodiment. The sequence of events is as follows: 1) Examiner Bennett initially rejected the broad claims; 2) Allergan proposed narrow draft claims to be discussed at the interview; 3) the interview was conducted; and 4) Allergan made its office action reply and attached declaration in support of the claims that had already been amended to contain either the term "polyanionic solubility enhancing component" or "anionic solubility enhancing component." [Marsden Markman Decl., Ex. J, at AGN0221893-903. (D.I. 58)] None of the '210 patent prosecution statements relied upon by Alcon were made in support of the broad claims.

As a matter of law, none of these statements in support of the narrower, amended claims may restrict the scope of the broader term "solubility enhancing component." *See Advanced Cardiovascular*, 265 F.3d at 1305. The prosecution history of a related patent may only be used to limit a related patent if that prosecution history addresses a common claim term. *Id.* As the Federal Circuit explained in *Advanced Cardiovascular*, a case that Alcon does not cite, let alone attempt to distinguish, in its brief:

6

Indeed, the present case involves the absence of a claim term. The patentee's whole point in filing the application that resulted in the '233 patent was to secure broader claims. As Medtronic admits in its opening brief, "none of the '233 Patent claims explicitly state the guidewire tube runs inside a balloon catheter."

*Id.* at 1306.

The facts here are the same. The later '337 patent does not contain the limitation ("anionic") that was added to the parent '210 patent. As such, the '210 parent prosecution history may not limit the claims of the '337 patent.

Alcon also wrongly relies on *Omega Eng'g., Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003), in support of its argument that Allergan surrendered subject matter during prosecution of the '210 parent patent. That case, however, supports Allergan's position rather than Alcon's. In *Omega*, the Federal Circuit was explicit that a disclaimer of subject matter will not be found unless the statements in the prosecution history are "both so clear as to show reasonable clarity and deliberateness" and "so unmistakable as to be unambiguous evidence." *Omega*, 334 F.3d at 1325. The Federal Circuit in *Omega* was also careful to distinguish *Advanced Cardiovascular*, explaining that, in *Advanced Cardiovascular*, there were no common claim terms in dispute and therefore no disclaimer of subject matter. *Id.* at 1334. Alcon, of course, does not even discuss *Advanced Cardiovascular*.

For this same reason, Alcon's reliance on cases such as *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999), which apply the prosecution history of a parent application to a later patent that "contain[s] the same claim limitation," *id.*, is improper because the claim terms here are not the same. The claim term "anionic solubility enhancing component" in the '210 patent has a different scope than the claim term "solubility enhancing component" in the '337 patent, and arguments relating to the narrower term have no applicability to the broader one.[1]

---

[1]    The same is true for the claim limitations "polyanionic solubility enhancing component" and "anionic cellulose derivative" in the '210 patent.

7

3.    **Alcon Continues to Mischaracterize Allergan's Statements from the '210 Patent Prosecution to Create a Disclaimer of Subject Matter Where None Occurred.**

Alcon continues to mischaracterize Allergan's statements in the prosecution of the '210 patent as saying that the non-ionic vehicles disclosed in Burke "are incapable of functioning as SECs in the claimed invention." [Alcon Markman Response Brief, at 4. (D.I. 67)] Allergan made no such statements.

In Dr. Olejnik's declaration, he explained that CMC, the only anionic polymer on the list of vehicles disclosed in Burke, "possesses the surprising advantages of <u>both</u> increasing the solubility of brimonidine in solution, as shown in Table 1, and causing such solutions to have superior adherence to cell surfaces, including ocular surfaces such as the cornea." [Marsden Markman Decl., Ex. J, at AGN0221903 (emphasis added). (D.I. 58)] Dr. Olejnik then went on to explain that the other "vehicles" in Burke, which were nowhere described in Burke as having an effect on solubility, would not possess the "surprising <u>combination</u> of advantages" of the anionic SECs recited in the narrow claims. [*Id.*]

There is nothing in this declaration that implies in any way that Dr. Olejnik believed that the other vehicles disclosed in Burke and referenced in his declaration would not be effective as solubility enhancing components.[2] Indeed, his patent-in-suit says the opposite. In his declaration, Dr. Olejnik simply stated that the anionic preferred embodiment, to which the amended claims were directed at that time, possessed the additional surprising advantage of increased adherence to the eye surfaces and were thus separately patentable. He did not say that other, non-anionic vehicles would not work as SECs.

_____

[2]    Dr. Olejnik also noted that Burke does not disclose that <u>any</u> of its "vehicles" (which included, by way of example, water) could be used as solubility enhancing components. [Marsden Markman Decl., Ex. J, at AGN0221902-03 (noting that Burke is "silent concerning the purpose of these prospective vehicles"). (D.I. 58)]

8

The same is true of the reply to the office action, also relied upon by Alcon. In the reply, Allergan argued that the other "vehicles" disclosed in Burke did not have the same characteristics as the claimed anionic SECs because the anionic SECs provided a surprising advantage in "adsorbing to cellular surfaces, such as the cornea ... while simultaneously increasing solubility." [Marsden Markman Decl., Ex. J, at AGN0221898-99. (D.I. 58)] Nowhere in the office action reply or the declaration did Allergan state that non-anionic components would not work as SECs or circumscribe the term "SEC" to include only anionic components. Allergan merely highlighted additional advantages to an anionic preferred embodiment, which the claims then being sought had been amended to recite. Indeed, the fact that Allergan used the term "anionic solubility enhancing component" strongly suggests that the term "solubility enhancing component" on its own is not limited to only anionic components.

Alcon attempts to downplay all this by wrongly asserting that Allergan may not rely on this additional advantage in adherence because it is not disclosed in the specification. [Alcon Markman Response Br., at 3 n.6. (D.I. 67)] The sole case cited by Alcon in support of this argument is *In re Davies*, 475 F.2d 667, 670 (CCPA 1973), which deals with validity rather than claim construction and is thus irrelevant. But even on that score, Alcon is wrong. Allergan's arguments to the PTO were made to overcome an obviousness rejection, and the Federal Circuit has held that patentees are entitled to make arguments and submit evidence not found in the specification in such circumstances. *See In re Chu*, 66 F.3d 292, 299 (Fed. Cir. 1995) ("We have found no cases supporting the position that a patent applicant's evidence and/or arguments traversing a § 103 rejection must be contained within the specification."); *see also* MPEP § 716.02(f) (8th ed. 2004) ("The totality of the record must be considered when determining whether a claimed invention would have been obvious to one of ordinary skill in the art at the time the invention was made. Therefore, evidence and arguments directed to advantages not disclosed in the specification cannot be disregarded.").

9

Alcon's implicit suggestion that the Court is free to ignore Allergan's argument related to the additional unexpected advantages provided by anionic SECs is wholly without merit and its repeated misstatements about Dr. Olejnik's declaration are not sound argument.

4.    **Allergan Properly Amended the Claims to Speed Prosecution During the '210 Patent Prosecution and Did Not Lose its Right to Resubmit Broader Claims for the Later '337 Patent.**

During prosecution of the '210 patent, Allergan always made clear that it was not disclaiming anything. To the contrary, Allergan explicitly stated that it was reserving the right to resubmit the broader claims when it stated that the:

> claim amendments and cancellations have been made solely in order to enable early allowance of certain aspects of the invention; Applicants have cancelled and/or amended claims in this application with the understanding that they may present the unamended and non-cancelled versions thereof in a subsequent patent application.

[Marsden Markman Decl., Ex. J, at AGN0221897. (D.I. 58)]

Accordingly, Allergan did not "disclaim" anything. Indeed, its earlier acceptance of narrower, amended claims and later pursuit of claims to cover the invention more broadly is common practice for patentees. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 909 (Fed. Cir. 2004) ("The omission of reference to a pressure jacket in many of the claims of the applications that matured into the [patents-in-suit] is a strong indication that the applicants intended those claims to reach injectors that did not use pressure jackets."); *see also Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1357-58 (Fed. Cir. 2004) (refusing to limit claims in a later patent to a predetermined method because the "progression, from 'predetermined time period' to 'predetermined incubation period' to 'suitably stable endpoint,' shows that LifeScan purposefully sought in the '162 patent claim scope broader than the predetermined timing method.")

While it is perhaps understandable that Alcon does not like this explicit reservation of rights, it is not proper simply to ignore it, which effectively is what Alcon asks this Court to do. Just as in these other cases, Allergan first obtained relatively

narrow claims directed to a preferred embodiment—an anionic solubility enhancing component—in the '210 parent patent, and then later sought and obtained broad claims covering any type of solubility enhancing component other than a cyclodextrin in the '337 patent. Allergan intentionally sought broader coverage in the '337 patent by choosing not to include the word "anionic" in the claims. Alcon cannot ignore this fact and seek to read in a limitation that was deliberately and properly omitted. The disputed claim term "solubility enhancing component" should be given its ordinary meaning and Alcon's disclaimer arguments fail completely.

> **B.    The Ordinary Meaning of the Term "About" is "Approximately" and Alcon's Attempts to Impose an Additional Limitation are Without Support.**

The ordinary meaning of the term "about" is "with some approach to exactness in quantity, number, or time: approximately," *Webster's Third New International Dictionary* 5 (1993). Because the patent does not suggest any deviation from this ordinary meaning, the claims should be construed consistent with this meaning. *See Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 2000) ("In short, a court must presume that the terms in the claim mean what they say, and, unless otherwise compelled, give full effect to the ordinary and accustomed meaning of claim terms.").

Contrary to Alcon's suggestions, the Federal Circuit plainly understands "approximately" to be the generally accepted meaning of "about." In *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1369-70 (Fed. Cir. 2005), the Federal Circuit reversed a district court's narrow construction of "about" and "h[e]ld that such term should be given its ordinary meaning of 'approximately.'" Likewise, in *Conopco, Inc. v. May Dep't Stores Co.*, 46 F.3d 1556, 1561 n.2 (Fed. Cir. 1994), the Federal Circuit also noted that the ordinary meaning of "about" is "approximately."

In the face of this authority, Alcon offers nothing but attorney argument to redefine the scope of the claims. To the extent Alcon is making such a claim, it must be

supported by evidence of how one of skill would view the claims. But just as with its "written description" invalidity claims, Alcon's proposed re-construction of "about" is unsupported by any evidence of how one of ordinary skill in the art would view the term. *See Conopco*, 46 F.3d at 1561 ("Thus, one of skill in the art, the vantage point from which the proper interpretation of a claim is ultimately determined, would have no reason to believe that the term 'about' meant other than what it says; on the contrary, there would be every reason to believe that the term should be given its ordinary meaning."). Allergan, on the other hand, submitted a declaration from Dr. Valentino Stella stating that a person skilled in the art would interpret "about" consistent with its ordinary meaning. [Stella Decl. Para. 20, 34. (D.I. 73)]

Alcon inappropriately attempts to construe "about 0.15%" as 0.15% ± 0.005%, although this is more restrictive than the ordinary meaning and Alcon can point to no intrinsic evidence to support this construction. While Alcon falsely accuses Allergan of providing no references in the specification to support the ordinary meaning construction of "approximately," the burden is on Alcon to show that a construction other than the ordinary meaning is appropriate. Here, the specification never indicates that a construction other than the ordinary meaning was intended.

Moreover, if any numerical limit is to be imposed, it must be one that makes sense in light of the technology. *See Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1217 (Fed. Cir. 1995). As explained by Dr. Stella, the only numerical limitation on "about 0.15%" that would make any sense in light of the technology and the views of one of skill in the art would be a construction of 0.15% ± 10%,

**REDACTED**

[Allergan Markman Response Br., Ex. 2 and 3; Stella Decl. Para 31-32. (D.I. 73)]

Alcon similarly provides no support for its proposed construction of "a pH of about 7.0 or greater" to mean "a pH of 6.95 and above." Once again, nothing in the

12

specification deviates from the ordinary meaning of "approximately," and no other limitation should be imposed. Likewise, Alcon provides no reason to interpret "about 21° C" as "21° C ± 0.5° C." Alcon cites to nothing in the specification or prosecution history showing that Allergan clearly intended to deviate from the accepted ordinary meaning of "approximately."

Lastly, we note that the arbitrary nature of Alcon's proposed numerical limitations is demonstrated by the different numerical limits that Alcon has proposed at different times during this litigation. Alcon can easily shift from one numerical limit to another because none of the limits are grounded in the intrinsic evidence. No credence should be given to discussions of alleged "scientific" principles that are unsupported by any competent evidence, and that morph to reflect whatever version of a defense a party desires to put forward at that moment. The Court should reject Alcon's arguments and construe "about" to mean "approximately."

**C.    The Phrase "Similar Composition" Requires No Construction Because the Ordinary Meaning is Clear.**

The claims of the '337 patent recite "a solubility enhancing component other than a cyclodextrin in an amount effective to increase the solubility of the alpha-2-adrenergic agonist component in the composition relative to the solubility of an identical alpha-2-adrenergic agonist component in a similar composition without the solubility enhancing component." Allergan proposes that the term "similar composition" does not need to be construed, as its ordinary meaning is plain.[3] After not even bothering to raise the argument in its opening brief, Alcon now wrongly seeks to replace the word similar with the phrase "otherwise identical."

Alcon first attempts to support its construction with vague notions of scientific principles—principles that are merely attorney argument and unsupported by any expert

---

[3] To the extent any construction is required, the dictionary definition of "similar" should be applied. "Similar" is defined as "having characteristics in common: very much alike: comparable." *Webster's Third New International Dictionary* 2120 (1993).

testimony—but gives no reasoned basis for ignoring the plain language and rewriting the claim. Alcon then alleges that its interpretation, which attempts to change the words of the claim, is supported by the specification. This is patently false. According to Alcon, the experiments described in the '337 patent specification compared the solubility of brimonidine with and without CMC in "otherwise identical" compositions, and "did not use 'similar' compositions with different components, or even the same components at different concentrations of active ingredient." [Alcon Markman Response Br., at 8. (D.I. 67)] On the contrary, the experiments described in the examples and depicted in Figure 1 used varying concentrations of brimonidine, the active ingredient, in the solubility comparisons. Even a cursory look at Table IV and Figure 1 demonstrates this. The solubility of brimonidine is compared in "similar" compositions, with varying concentrations of SEC and varying concentrations of brimonidine. For example, Table IV, under the 0.5% CMC column, shows brimonidine amounts of 1.4464%, 0.3693%, 0.1451%, 0.0313%, and 0.0250%. [Marsden Markman Decl., Ex. B, at AGN0065334. (D.I. 58)]

The specification also describes the proper comparison as being between "similar" compositions rather than otherwise identical compositions: "Preferably, the alpha-2-adrenergic agonist components are more soluble in the present compositions having, for example, pH's of about 7 or greater, relative to similar compositions without the SECs." '337 patent, col. 2, lines 17-20. [Marsden Markman Decl., Ex. B, at AGN0065327. (D.I. 58)]   Just like the rest of its proposed constructions, there is simply no basis for Alcon's afterthought attempt to rewrite the claim by substituting its choice of narrower term for the broader term actually used in the claim.

## IV.    CONCLUSION

Allergan's proposed claim constructions are consistent with the ordinary meaning of the claim terms, while Alcon's proposed constructions ignore the plain language and misread Federal Circuit precedent by seeking to read in artificial limitations from the

specifications or prosecution histories. Allergan therefore respectfully requests that the

Court adopt the following claim constructions of the disputed terms:

Solubility enhancing component: The claimed composition contains a solubility enhancing component, which is a component that enhances the solubility of the alpha-2-adrenergic agonist component, and any solubility enhancing component other than a cylclodextrin is covered by the claim.

About: The term "about" carries its ordinary meaning of "approximately" in all its uses in the claims of the '834 patent.

Similar composition: The term "similar composition" needs no construction because the meaning is clear from the plain language of the words themselves.

Dated: May 23, 2005                           FISH & RICHARDSON P.C.


By: _____
William J. Marsden, Jr. (marsden@fr.com)
Sean P. Hayes (hayes@fr.com)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070

Jonathan E. Singer
Michael J. Kane
Deanna J. Reichel
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 335-5070

Juanita Brooks
W. Chad Shear
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070

Attorneys for Plaintiffs
ALLERGAN, INC. and ALLERGAN SALES, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2005, I electronically filed with the Clerk of Court the REDACTED VERSION OF PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' OPENING MARKMAN BRIEF using CM/ECF which will send notification of such filing(s) to the following:

Josy W. Ingersoll, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, DE  19899-0391

I hereby certify that on May 31, 2005, I have sent by Federal Express, the above document to the following non-registered participants:

Brian D. Coggio, Esq.
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, NY 10103-0001

*/s/ William J. Marsden, Jr.  (#2247)*
William J. Marsden, Jr.

Final Markman Reply.doc

1