# EXHIBIT SJ 13

Case 1:04-cv-00968-GMS   Document 92-2   Filed 06/09/2005   Page 1 of 14

**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALLERGAN, INC., and ALLERGAN SALES, LLC., <br><br> Plaintiffs, <br><br> v. <br><br> ALCON INC., ALCON LABORATORIES, INC., and ALCON RESEARCH, LTD., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) )     Civil Action No: 04-968-GMS |

### DEFENDANTS ALCON INC., ALCON LABORATORIES, INC., AND ALCON RESEARCH, LTD.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS (Nos. 1-26)

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, defendants, Alcon Inc., Alcon Laboratories, Inc., and Alcon Research, Ltd. (collectively "Alcon"), hereby request that plaintiffs, Allergan, Inc. and Allergan Sales, LLC (collectively "Allergan"), produce and permit Alcon to inspect, examine, and copy the following documents and things at the offices of Orrick, Herrington & Sutcliffe LLP, located at 666 Fifth Avenue, New York, New York 10103, within thirty days of service hereof, or at some other mutually agreeable place and time.

### DEFINITIONS

The following definitions and instructions apply to these requests:

1.     The term "the '834 patent" shall mean United States Patent No. 6,641,834.

2. The term "the '337 patent" shall mean United States Patent No. 6,673,337.

3. The term "Allergan" shall mean Allergan, Inc. and Allergan Sales, LLC, their corporate parents, predecessors, successors, affiliated entities, including all divisions and subsidiaries, and the officers, directors, employees, agents, attorneys, and representatives of each of the foregoing.

4. The term "Alcon" shall mean Alcon Inc., Alcon Laboratories, Inc., and Alcon Research, Ltd., their corporate parents, predecessors, successors, affiliated entities, including all divisions and subsidiaries, and the officers, directors, employees, agents, attorneys, and representatives of each of the foregoing.

5. The term "communication" shall mean every manner or means of disclosure, transfer or exchange of information (in the form of facts, ideas, inquiries, or otherwise) including oral conversations, telephone calls, written correspondence, memoranda or notes, email, facsimile transmissions, meetings, video conferences, or document transmittals.

6. The term "concerning" shall mean analyzing, containing, constituting, dealing with, defining, describing, discussing, embodying, evidencing, explaining, identifying, mentioning, referring to, relating to, reflecting, setting forth, showing, stating, summarizing, supporting, or in any way pertaining to the area of inquiry.

7. The terms "and" as well as "or" shall be read in the disjunctive, conjunctive, or both, as the case may be, consistent with an interpretation that results in the more extensive document production.

8. The term "document" shall have the broadest meaning accorded to it by Rule 34(a) of the Federal Rules of Civil Procedure and include, without limitation all:

    (i)    writings of whatever type, nature, or description, whether typed, handwritten, printed, or otherwise memorialized;

    (ii)    tape or other sound or video recordings, computer tapes, discs, and other electronic or mechanical recordings, however produced or reproduced; and

    (iii)    information stored in a computer, including emails, archive files and backup tapes, whether or not ever printed or displayed.

A draft is a separate document from the final text, and each non-identical copy is a separate document.

9. The term "person" shall mean any natural person, alive or deceased, any corporation, company, organization, partnership, limited liability partnership, joint venture, sole proprietorship, joint stock company, and other business entity or association.

10. The term "prosecution" shall include, but is not limited to, any reexamination, reissue, or interference proceedings before the United States Patent and Trademark Office.

11. The term "PTO" shall mean the United States Patent and Trademark Office.

12. The term "FDA" shall mean the United States Food and Drug Administration.

13. The term "including" shall be construed to mean "including, but not limited to."

14. The terms "applications for the patents-in-suit" shall mean any application from which any of the patents-in-suit issued or claims priority.

15. The term "related patent" shall mean:

    (i)    any United States patent prosecuted as a divisional, continuation, or continuation-in-part from any application for the patent-in-suit, as defined above, or from which the patent-in-suit claims priority under 35 U.S.C. § 120;

    (ii)    any foreign counterpart to the patent-in-suit; or

WP3:1061903.1        63534.1001

  (iii) any foreign counterpart to any United States patent prosecuted as a divisional, continuation, or continuation-in-part from any application as defined above for the patent-in-suit, or from which the patent-in-suit claims priority under 35 U.S.C. § 120.

16. The term "related patent application" shall mean:

  (i) any pending or abandoned United States continuation application, continuation-in-part application or divisional application arising from any application for the patent-in-suit as defined above, or from which the patent-in-suit claims priority under 35 U.S.C. § 120;

  (ii) any pending or abandoned foreign application arising from applications that resulted in foreign counterparts to the patent-in-suit, or from which the patent-in-suit claims priority under 35 U.S.C. § 120; or

  (iii) any pending or abandoned foreign application arising from applications that resulted in foreign counterparts to any United States patent prosecuted as a divisional, continuation or continuation-in-part from any application as defined above for the patent-in-suit, or from which the patent-in-suit claims priority under 35 U.S.C. § 120.

## INSTRUCTIONS

1. Allergan shall produce all responsive documents (including those stored by electronic or optical means) and things. Should Allergan withhold any documents or things responsive to these document requests, Allergan is requested to state the basis for withholding the documents and things in a manner sufficient to enable Alcon and the trial court to assess the validity of Allergan's basis for withholding such documents, including, in the case of any documents and things withheld on the grounds of attorney-client privilege or work product or other immunity from discovery, the following information for each document:

  (i) The date appearing on the document and thing, and if no date appears thereon, so state and give the date, or approximate date on which the document or thing was prepared;

      (ii)      The type or general nature of the document (*e.g.*, whether it is a letter, memorandum, minutes of a meeting, etc.) or thing (*e.g.*, box, bottle, machinery);

      (iii)     The name, title, and company affiliation of the person who signed the document, and if the document is unsigned, the name or names of the persons who prepared the document;

      (iv)     The name, title, and company affiliation of each person to whom the document was disclosed, including the person or persons to whom it was addressed and the person or persons to whom the document, or copies of the document, were sent;

      (v)      The name, title, and company affiliation of the person or persons who maintain custody of the document or thing; and

      (vi)     The general subject matter of the document or the nature of the thing and the basis for withholding the document or thing, in a manner sufficient for Alcon and the trial court to determine the validity of Allergan's claim of privilege and/or work product or immunity from discovery.

2. Should Allergan find that the meaning of any term in these requests is unclear, Allergan should assume a reasonable meaning, state what that assumed meaning is, and answer the request on the basis of that meaning. To expedite discovery, Allergan is requested to contact Alcon's undersigned counsel before the response due date to seek clarification of any request, definition, or term that Allergan: (i) does not understand; or (ii) believes to be improper (*i.e.*, objectionable as vague, irrelevant, premature, overbroad, or overly burdensome).

3. These requests for documents and things are deemed to be continuing in nature, and Allergan is requested to amend and/or supplement its responses in accordance with the Federal Rules of Civil Procedure, as is necessary to maintain the accuracy of its responses.

4. In the event that more than one copy of a document exists, Allergan shall produce every copy on which there appears any notation or marking of any sort not appearing on any other copy (including routing or filing instructions) or any copy containing different attachments from any other copy.

-5-

## DOCUMENT REQUESTS

### Document Request No. 1

All documents concerning the preparation and/or prosecution of any applications for the patents-in-suit or any related patents or related patent applications.

### Document Request No. 2

All documents concerning any declarations, affidavits or other statements submitted under penalty of perjury to the PTO or foreign patent offices during prosecution of any applications for the patents-in-suit or any related patents or related patent applications.

### Document Request No. 3

All documents concerning the conception of the alleged inventions claimed in the patents-in-suit including, but not limited to, those documents that evidence such conception.

### Document Request No. 4

All documents concerning the actual reduction to practice, if any, of the alleged inventions claimed in the patents-in-suit, including but not limited to, those documents that evidence such reduction to practice.

### Document Request No. 5

All documents concerning any invention disclosure, record of invention, or similar documents concerning the alleged inventions claimed in the patents-in-suit.

### Document Request No. 6

All documents concerning the first disclosure or demonstration of the alleged inventions claimed in the patents-ion-suit.

**Document Request No. 7**

All documents concerning the first offer for sale or sale of any product incorporating any of the alleged inventions claimed in the patents-in-suit.

**Document Request No. 8**

All documents, including but not limited to, laboratory notebooks, reports, data compilations, concerning research and development and testing of the alleged inventions claimed in the patents-in-suit.

**Document Request No. 9**

All documents, including but not limited to, laboratory notebooks, reports, data compilations, concerning the research, development or testing of ALPHAGAN®P.

**Document Request No. 10**

All documents submitted to the FDA in connection with NDA No. 21-262 for ALPHAGAN®P.

**Document Request No. 11**

All documents concerning any investigations, tests, studies, evaluations, or reports supporting, contradicting, or relating to the allegation in paragraph 12 of the Complaint that

"ALPHAGAN®P is covered by at least one claim of each of the '834 and '337 patents," including but not limited to, tests concerning whether such product contains a solubility enhancing component as that term is used in the patents-in-suit.

**Document Request No. 12**

All documents concerning any investigations, tests, studies, evaluations or reports supporting, contradicting or relating to the allegation in paragraph 18 of the Complaint that "[t]he commercial manufacture, use, offer for sale, sale and/or importation of Alcon's Brimonidine Tartrate Ophthalmic Solution 0.15% product will constitute an act of infringement of the '834 patent."

**Document Request No. 13**

All documents concerning any investigations, tests, studies, evaluations or reports supporting, contradicting or relating to the allegation in paragraph 22 of the Complaint that "[t]he commercial manufacture, use, offer for sale, sale, and/or importation of Alcon's Brimonidine Tartrate Ophthalmic Solution 0.15% product will constitute an act of infringement of the '337 patent."

**Document Request No. 15**

All documents concerning any investigations, tests, studies, or evaluations conducted by or on behalf of Allergan with respect to Alcon's Brimonidine Tartrate Ophthalmic Solution 0.15% product, including but not limited to, tests concerning whether such product contains a solubility enhancing component as that term is used in the patents-in-suit.

**Document Request No. 16**

All documents concerning any investigations, tests, studies, evaluations, or reports regarding any information set forth in the patents-in-suit, including but not limited to, the data reported in Examples 1-3 and Tables I-IV of the patents-in-suit.

**Document Request No. 17**

All documents concerning any investigations, tests, studies, or evaluations conducted to determine whether any ingredient or component in Alcon's Brimonidine Tartrate Ophthalmic Solution 0.15% product, including but not limited to Povidone, is present "in an amount effective to increase the solubility of the alpha-2-adrenergic agonist component in the composition relative to the solubility of an identical alpha-2-adrenergic agonist component in a similar composition without the solubility enhancing component" as required by claim 1 of the '337 patent-in-suit.

**Document Request No. 18**

All documents concerning any investigations, tests, studies, evaluations or reports supporting, contradicting or relating to the representations of Dr. Orest Olejnik, one of the inventors of the patents-in-suit, in the Declaration received by the PTO on March 17, 2003, during the prosecution of the application resulting in U.S. Patent No. 6,627,210, the parent application for the patents-in-suit, that:

    (i)    "I have discovered as a result of work done and/or directed by me at Allergan that CMC possesses the surprising advantages of both increasing the solubility of brimonidine in solution as shown in Table 1, and causing such solutions to have superior adherence to cell surfaces, including ocular surfaces such as the cornea" (para. 7); and

    (ii)    "It is also my belief that brimonidine solutions made using the other 'vehicles' mentioned in the Burke patent would not possess this surprising combination of advantages." (para. 8).

**Document Request No. 19**

All documents concerning any investigations, tests, studies, evaluations, or reports supporting, contradicting or relating to the statement contained in the Amendment dated March 11, 2003, signed by Carlos A. Fischer, attorney of record, Allergan, Inc., during the prosecution of the application resulting in U.S. Patent No. 6,627,210, the parent application of the patents-in-suit, that:

> "Of the 'vehicles' specifically disclosed by the Burke patent, all will function to increase viscosity of a liquid aqueous composition. However, of these vehicles only carboxymethylcellulose (CMC) is an anionic polymer. All of the other polymers are non-ionic. They may act to increase the solution's viscosity, but they do not have the same characteristics as an anionic polymer such as CMC." (page 6).

**Document Request No. 20**

All documents concerning any investigations, tests, studies, evaluations, or reports supporting, contradicting, or relating to the statements submitted in the Amendment received by the PTO on March 24, 2003, signed by Carlos A. Fischer, attorney of record, Allergan, Inc., during prosecution of the application resulting in U.S. Patent No. 6,641,834, that:

    (i)    "[P]revious brimonidine solutions for ophthalmic use have been formulated at a pH of about 6.3-6.5 and a concentration of 0.2% (w/v)" (page 4);

    (ii)    "The present invention is the result of the surprising finding that increasing the pH of a brimonidine solution to a pH of greater than about

     7.0 leads to similar efficacy at a 25% lower concentration . . . that is seen in a brimonidine solution at a pH of about 6.6-6.8" (page 4); and

 (iii) "[A] greater amount of the active drug is able to enter the cornea of the eye at a given solution concentration . . . ." (page 4).

**Document Request No. 21**

All documents concerning any investigations, tests, studies, evaluations or reports reflecting any comparison conducted by or on behalf of or otherwise known to Allergan between anionic versus non-ionic and/or cationic polymers and their effect on the solubility of alpha-2-adrenergic agonists, including but not limited to brimonidine or brimonidine tartrate.

**Document Request No. 22**

All documents concerning any investigations, tests, studies, evaluations, or reports reflecting any comparisons between ALPHAGAN® and ALPHAGAN®P.

**Document Request No. 23**

All documents concerning any communications regarding the validity, enforceability, or infringement of the patents-in-suit, including legal opinions, drafts of such opinions, and all documents referred to in such opinions or considered or relied upon in the preparation of such opinions.

**Document Request No. 24**

-11-

All documents concerning any allegations of invalidity, unenforceability, or non-infringement of any claims of the patents-in-suit.

**Document Request No. 25**

All documents comprising or concerning any notice received by Allergan reflecting the filing of ANDA or section 505(b)(2) application by any entity other than Alcon.

**Document Request No. 26**

All documents identified in Allergan's responses to Alcon's First Set of Interrogatories.

Dated: November 24, 2004

_____
Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street
Wilmington, Delaware 19801
Tel: (302) 571-6600
Fax: (203) 571-1253

Attorneys for defendants
Alcon, Inc., Alcon Laboratories, Inc.
and Alcon Research, Ltd.

Of Counsel

Daniel J. Thomasch
Brian D. Coggio
M. Veronica Mullally
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, NY 10103
Tel: (212) 506-5000
Fax (212) 506-5151

-12-

## CERTIFICATE OF SERVICE

I, John W. Shaw, Esquire hereby certify that copies of the foregoing document were caused to be served on November 24, 2004 upon the following counsel of record:

### BY HAND DELIVERY

William J. Marsden, Jr., Esquire
Fish & Richardson, P.A.
919 N. Market Street, Suite 1100
Wilmington, DE 19801

### BY FEDERAL EXPRESS

Jonathan E. Singer, Esquire
Fish & Richardson, P.A.
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402

John W. Shaw (No. 3362)