# UNREPORTED CASES

Westlaw.

Not Reported in F.Supp.2d

2000 WL 1456297 (D.Del.)

**(Cite as: 2000 WL 1456297 (D.Del.))**

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
Michael JORDAN, Plaintiff,
v.
Captain BELLINGER, et al., Defendants.
**No. Civ.A. 98-230-GMS.**

Sept. 21, 2000.
Michael Jordan, for Plaintiff, pro se.

Ophelia M. Waters, Department of Justice, Wilmington, DE, for Defendants.

*ORDER*

SLEET, J.

*1 After reviewing the defendants' submission of September 15, 200, IT IS HEREBY ORDERED that the court's August 28, 2000 memorandum opinion is amended as follows:

1. The last paragraph on page 9 shall read:
   Here, Jordan contends that the three defendants intentionally interfered with his property by seizing it during their search of his cell. In their opening brief, the only relevant defense which Bellinger, Tailor and Burton raised to Jordan's conversion claim is that they should receive immunity for their actions under the Delaware State Tort Claims Act. *See* Del.Code Ann. tit. 10, § 4001 (1999). [FN1] Section 4001 exempts state employees from civil liability for their actions if their conduct (i) arose out of and in connection with the performance of an official duty which involved the exercise of discretion, (ii) was undertaken in good faith and with the belief that the public interest would best be served by their actions and (iii) was performed without gross or wanton negligence. *See, e.g., Wiers v. Barnes,*

925 F, Supp. 1079, 1091-92 (D.Del.1996). As Judge Quillen has explained, when a defendant acts intentionally, immunity under the State Tort Claims Act may not be appropriate. *See In re Taylor v. Barwick,* 1997 WL 527970, at *2 (Del.Super. Ct. Jan 10, 1997) ("[S]ince battery requires an intentional act, the third element [of Section 4001] is brought into question."). In addition, when a defendant acts in bad faith or without the belief that the public interest would be served by his conduct, statutory immunity is equally inappropriate. *See Wiers,* 925 F.Supp. at 1092. As previously explained, in this case, Jordan is claiming that Bellinger, Tailor and Burton acted intentionally when they confiscated his personal property. Although Jordan may not have specifically alleged that these three defendants were acting in "bad faith," this court must interpret his pleadings liberally. *See Zilch v. Lucht,* 981 F.2d 694, 694 (3d Cir.1992) (citing *Haines v. Kerner,* 404 U.S. 519, 520 (1972)). In his submissions, Jordan has essentially claimed that Bellinger, Tailor and Burton conducted a baseless search of his cell as he was going to the bathroom. In the process, they ordered him to get off of the toilet and refused to allow him to get dressed. Jordan also claims that they subsequently conducted some sort of body cavity search which might have occurred in front of other inmates. When this evidence is viewed in the light most favorable to Jordan, a reasonable jury could conclude that Bellinger, Tailor and Burton were attempting to harass or humiliate Jordan when they searched his cell and his person. A reasonable jury could, therefore, conclude that these correctional officers were not acting in good faith or lacked the requisite belief that their actions were serving the public interest when they also confiscated Jordan's property. For these reasons, the court cannot dismiss Jordan's conversion claim at this stage of the proceedings.

FN1. Although the defendants also claim

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 2

2000 WL 1456297 (D.Del.)

**(Cite as: 2000 WL 1456297 (D.Del.))**

that the property which was seized was "in excess of what was allowable" under the prison rules and, therefore, confiscated pursuant to prison policy, this argument was not raised in the defendants' opening brief. Instead, it was included in their reply brief. However, under the Local Rules, "[t]he party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief." *See* D. Del. L.R. 7.1.3(c)(2) (1995). Therefore, the court will not consider this argument at this time.

2000 WL 1456297 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

2002 WL 531555 (D.Del.)

(Cite as: 2002 WL 531555 (D.Del.))

Page 1

▷

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
ROCKWELL TECHNOLOGIES, LLC, Plaintiff,
v.
SPECTRA-PHYSICS LASERS, INC. and Opto
Power Corporation, Defendants.
**No. Civ.A.00-589 GMS.**

March 26, 2002.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

*1 The plaintiff, Rockwell Technologies, LLC
("Rockwell") filed the above-captioned action
against Spectra-Physics Lasers, Inc. ("Spectra") and
Opto Power Corporation ("Opto") on June 16,
2000. In its complaint, Rockwell alleges that
Spectra and Opto are infringing U.S. Patent No.
4,368,098 ("the '098 patent").

Presently before the court is Rockwell's motion for
partial summary judgment. In this motion, Rockwell
asks the court to find that the '098 patent is not
invalid due to alleged inequitable conduct that
occurred in the prosecution of the patent
application. For the reasons that follow, the court
will grant this motion in part and deny it in part.

II. STANDARD OF REVIEW

The court may grant summary judgment "if the
pleadings, depositions, answers to interrogatories,
and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to
judgment as a matter of law." Fed.R.Civ.P. 56(c);
*see also Boyle v. County of Allegheny,
Pennsylvania,* 139 F.3d 386, 392 (3d Cir.1998).
Thus, the court may grant summary judgment only
if the moving party shows that there are no genuine
issues of material fact that would permit a
reasonable jury to find for the non-moving party.
*See Boyle,* 139 F.3d at 392. A fact is material if it
might affect the outcome of the suit. *Id.* (citing
*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,
247-248 (1986)). An issue is genuine if a
reasonable jury could possibly find in favor of the
non-moving party with regard to that issue. *Id.* In
deciding the motion, the court must construe all
facts and inferences in the light most favorable to
the non-moving party. *Id.; see also Assaf v. Fields,*
178 F.3d 170, 173-174 (3d Cir.1999).

With these standards in mind, the court will
describe the facts and procedural history that led to
the motion presently before the court.

III. BACKGROUND

A. Prosecution of the '098 Patent

The patent-in-suit relates to a process for forming
"an epitaxial film of group III-V semiconductor
disposed on a single crystal substrate." Dr. Harold
Manasevit ("Manasevit") developed the process
described in the '098 patent. On February 13, 1968,
Rockwell filed a patent application with the United
States Patent and Trademark Office ("PTO"). As
the application contained both process and product
claims, the PTO required that Rockwell choose one
to proceed with first. Rockwell elected to give
precedence to the product claims.

In 1978, Rockwell retained the law firm of Staas
and Halsey to prosecute the Manasevit patent
application with respect to the process claims. Jack

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 2

2002 WL 531555 (D.Del.)

**(Cite as: 2002 WL 531555 (D.Del.))**

Staas ("Staas") was the Staas and Halsey attorney primarily responsible for this prosecution. On April 7, 1978, Rockwell filed a divisional application seeking a patent for the process claims. This application issued as the '098 patent on January 11, 1983. It expired on January 11, 2000.

B. Alleged Prior Art

*2 In 1957, Thomas R. Scott obtained patents from Japan (the "Japanese Scott patent") and the United Kingdom (the "UK Scott patent"). Spectra and Opto allege that the UK Scott patent came to the attention of Rockwell's in-house patent attorneys while Rockwell was prosecuting the Manasevit process patent application in Great Britain. In response to that application, the UK Patent Office identified the UK Scott patent and five other prior art references. The UK Patent Office directed Rockwell's attention to those references.

Rockwell's UK patent counsel informed Rockwell's in-house patent counsel Robert Rogers ("Rogers") of the UK Scott patent and the five other references on September 29, 1972. In response to the UK patent counsel's request on how to respond to that information, Rockwell employee Martin E. Gerry prepared detailed instructions for amending Rockwell's claims to avoid the cited references. The UK patent counsel subsequently informed Rogers that it was removing from the application the original prior art cited in the application because the UK Scott patent and the other references constituted "the closest prior art."

Rockwell also applied for a Japanese patent on Manasevit's invention. On that application, Rockwell listed Frederick Hamann ("Hamann") as its representative. Hamann supervised Rockwell's in-house patent department from 1970 to 1995. As in the prosecution of the UK patent application, Scott's work was cited against the Japanese patent application.

On June 18, 1974, the Japanese patent office issued a rejection against the pending claims in Rockwell's Japanese patent application . [FN1] Rockwell's Japanese patent counsel sent the rejection to

Hamann on July 6, 1974, along with a discussion of the Japanese Scott patent. The Japanese counsel also sent Hamann a copy of this patent. Rockwell's in-house patent counsel G. Donald Weber ("Weber") responded by asking for an English abstract of the Japanese Scott patent. The Japanese patent counsel complied on August 8, 1974. Weber subsequently sent them instructions on how to amend Rockwell's Japanese claims in light of the Scott patent.

> FN1. Spectra and Opto allege that the claims in Rockwell's Japanese patent application were substantively the same as the claims in the '098 patent.

C. Procedural History

On August 30, 1993, Rockwell brought an action against the United States in the United States Court of Federal Claims. In May 1995, Rockwell initiated an action against Spectra in the Northern District of California. Spectra then intervened in the Court of Federal Claims action as a third-party defendant. The Northern District of California stayed its action pending a resolution of that action.

In 1998, the United States and Rockwell settled. This settlement deprived the Claims Court of jurisdiction over the dispute between Rockwell and Spectra. Thus, on January 13, 1999, the Northern District of California court lifted its stay and reopened the matter. On July 24, 2001, the court denied Rockwell's motion for partial summary judgment on the issue of inequitable conduct.

Rockwell brought the present infringement action on June 16, 2000.

IV. DISCUSSION

*3 Spectra and Opto assert that the inventor, Dr. Harold M. Manasevit, and Rockwell's attorney Jack Staas were guilty of inequitable conduct by failing to disclose material references to the PTO. [FN2]

> FN2. Spectra and Opto deny basing their inequitable conduct claims on the Rule 132

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Declaration that Manasevit filed with the PTO (the "Manasevit Declaration") Further, in their opposition papers, Spectra and Opto state that they do not oppose the portion of Rockwell's summary judgment motion directed to the Manasevit Declaration. Likewise, they deny alleging that Rockwell itself, as a corporate entity, could be liable for inequitable conduct. Accordingly, it is undisputed that only Manasevit's and counsel for Rockwell's conduct is at issue.

As an initial matter, Rockwell argues for the first time in its reply brief that Spectra and Opto failed to plead inequitable conduct with particularity in their answer to the complaint and have thus waived their right to assert this affirmative defense. However, Rockwell's tactic of reserving new arguments for its reply brief amounts to impermissible "sandbagging." *See Jordan v. Bellinger,* 2000 U.S. Dist. LEXIS 19233, *18 (D. Del. April 28, 2000) (declining to address new arguments reserved for the reply brief); *see also* D. DEL. L.R. 7.1.3(c)(2) (1995). Accordingly, the court declines to address Rockwell's arguments on this issue and will turn instead to the substantive merits of the motion.

Patent applicants and their legal representatives have a duty to prosecute applications with candor, good faith, and honesty. *See Molins PLC v. Textrom, Inc.,* 48 F.3d 1172, 1178 (Fed.Cir.1995). Breach of this duty can lead to a finding that the applicant engaged in inequitable conduct before the PTO. *See Life Tech., Inc. v. Clontech Lab., Inc.,* 224 F.3d 1320, 1324 (Fed.Cir.2000). The effect of such inequitable conduct is to render the affected patent unenforceable. *See id.*

In order to prove inequitable conduct, the defendants bear the burden of providing clear and convincing evidence that: (1) omitted or false information was material; (2) the applicant had knowledge of the existence and material nature of the information; and (3) the applicant intended to deceive the PTO. *See Molins,* 48 F.3d at 1178. "Materiality and intent to deceive are distinct factual inquiries, and each must be shown by clear

and convincing evidence." *Life Tech,* 224 F.3d at 1324. Information is considered material "when there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent." *Molins,* 48 F.3d at 1179. The court may infer intent from the facts and circumstances surrounding the applicant's overall conduct. *See Merck & Co. v. Danbury Pharmacal, Inc.,* 873 F.2d 1418, 1422 (Fed.Cir.1989). However, in making its inferences, the court must be aware that "[a]lthough the intent element of fraud or inequitable conduct may be proven by a showing of acts the natural consequence of which were presumably intended by the actor, this requires the fact finders to evaluate all the facts and circumstances in each case. Such an evaluation is rarely enabled in summary proceedings." *KangaROOS U.S.A., Inc. v. Caldor, Inc.,* 778 F.2d 1571, 1577 (Fed.Cir.1985) (citation omitted).

In its moving papers, Rockwell declines to address the materiality of the Scott references. The Scott patents, however, were cited by foreign patent offices against Manasevit's process. This raises at least an inference that the references are material. *See Molins,* 48 F.3d at 1180. Further, Rockwell amended the claims in its foreign patents to overcome the Scott references. Accordingly the court finds that there is a triable issue of fact with regard to the materiality of the Scott patents.

**\*4** The court likewise concludes that granting summary judgment on the issue of intent would be improvident. Rockwell submits that Manasevit and Staas have each stated that they were unaware of the Scott patents. The Federal Circuit has stated, however, that "[f]ailure to cite to the PTO a material reference cited elsewhere in the world justifies a strong inference that the withholding was intentional." *Molins,* 48 F.3d at 1182. Moreover, the court expresses concern over Rockwell's argument that the named inventor of the '098 patent, who is also the named inventor of the British and Japanese patents that were amended in light of the Scott patents, was not aware of the Scott patents.

When faced with a similar motion for summary

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2002 WL 531555 (D.Del.)

**(Cite as: 2002 WL 531555 (D.Del.))**

Page 4

judgment based on inequitable conduct with regard to these parties, the District Court for the Northern District of California explicitly reserved judgment on whether the actions of Staas and his fellow Rockwell attorneys were inequitable. [FN3] *See Rockwell v. SDL, Inc.,* No. C-95-1729, at 12, n. 11 (N.D.Cal. July 24, 2000). That court further expressed a concern identical to that which the court has in the present case arising from Manasevit's failure to disclose the Scott patents to the PTO.

> FN3. Based on the California court's denial of summary judgment on a similar issue, Spectra and Opto argue that Rockwell is now collaterally estopped from further litigating this issue. The court must disagree because a determination that there remain genuine issues of material fact is not a "final decision." *See Johnson v.. Jones,* 515 U.S. 304, 313 (1995); *see also Whitford v. Boglino,* 63 F.3d 527, 530 (7th Cir.1995) (stating that the denial of summary judgment is not a final judgment, but rather an interlocutory order in the *res judicata* context.)

While mindful of the heavy burden the defendants bear, the court is persuaded that there remain substantial questions regarding Manasevit's and Staas's knowledge and intent that are better left to trial. *See Baker Oil Tools, Inc. v. Geo Vann, Inc.,* 828 F.2d 1558, 1566 (Fed.Cir.1988) (noting that, "[i]f the facts of materiality or intent are reasonably disputed the issue is not amenable to summary disposition.")

Finally, Rockwell requests leave to file a further motion for summary judgment on inequitable conduct. Rockwell contends that this is appropriate because it was waiting for Spectra's and Opto's expert reports assessing the materiality of additional prior art references that were allegedly not disclosed to the PTO. However, as Spectra and Opto argue, the references at issue are articles that Manasevit himself wrote. Manasevit's and Rockwell's own experts were surely capable of assessing the materiality of Manasevit's work.

Accordingly, the court declines to grant Rockwell additional time to file a motion that could have been filed with the instant motion for summary judgment.

V. CONCLUSION

The parties do not dispute that the corporate entity Rockwell is not being accused of inequitable conduct. Nor do they dispute that the charges of inequitable conduct are not based on the Manasevit Declaration. Thus, the court will grant Rockwell's motion with regard to these issues. However, there remain genuine issues of material fact with regard to the remaining inequitable conduct allegations.

For these reasons, IT IS HEREBY ORDERED that:
   1. Rockwell's motion for partial summary judgment (D.I.149) is GRANTED in part and DENIED in part.
   2. Rockwell's request to file a further motion for summary judgment on inequitable conduct (D.I.149) is DENIED.

2002 WL 531555 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:00CV00589  (Docket)
(Jun. 19, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

2004 WL 609329 (D.Del.)

(Cite as: 2004 WL 609329 (D.Del.))

Page 1

c

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
In re: STUDENT FINANCE CORPORATION,
Debtor.
STUDENT FINANCE CORPORATION, Plaintiff,
v.
ROYAL INDEMNITY CO., Defendant.
No. 02-11620, Civ.A. 03-507 JJF, 02-6803 LK.

March 23, 2004.

L. Jason Cornell, of Fox Rothschild LLP,
Wilmington, Delaware, Hal Baume, of Fox
Rothschild LLP, Lawrenceville, New Jersey, David
A. Gradwohl, Andrew W. Bonekemper, and
Anthony P. DeMichele, of Fox Rothschild LLP,
Lansdale, Pennsylvania, for Plaintiff/Debtor Student
Finance Corporation, of counsel.

Lawrence C. Ashby, Philip Trainer, Jr., and
Gregory A. Taylor, of Ashby & Geddes,
Wilmington, Delaware, Michael H. Barr, Peter D.
Wolfson, and Kenneth J. Pfaehler, of Sonnenschein
Nath & Rosenthal, New York, New York, Alan S.
Gilbert, of Sonnenchein Nath & Rosenthal,
Chicago, Illinois, for Defendant Royal Indemnity
Company, of counsel.

*OPINION*

FARNAN, J.

**\*1** Presently before the Court is Defendant Royal
Indemnity Company's ("Royal") Motion To
Dismiss. (D.I.6.) [FN1] For the reasons set forth
below, the Court will grant in part and deny in part
Royal's Motion.

FN1. The docket item numbers referenced
herein are the docket items in the
adversary proceeding *Student Finance
Corporation v. Royal Indemnity Co.,*
Adversary Proceeding Number 02-06803
LK.

BACKGROUND
This is an adversary proceeding arising from the
Chapter 11 bankruptcy filing *In re Student Finance
Corporation.* The parties to this adversary
proceeding stipulated to the withdrawal of the
reference to the bankruptcy court, which was
granted by Chief Judge Robinson. The instant
action was subsequently assigned to this Court.

Student Finance Corporation ("SFC") engages in
the origination and purchasing of student loans,
primarily for truck driving school students. [FN2]
SFC, along with its affiliates, obtained funds to
purchase and originate student loans from
warehouse lines of credit provided by the
Wilmington Trust Co. and PNC Bank. Once SFC
exhausted these warehouse lines of credit, SFC and
its affiliates packaged loans it purchased or
originated into portfolios and sold them on the
secondary market (the "securitizations") to financial
institutions or insurance companies. To continue
selling its portfolios on the secondary market, SFC
required credit risk insurance which it obtained
from AIG. In 1999, AIG discontinued this line of
insurance. Thereafter, SFC obtained credit risk
insurance from Royal.

FN2. As the instant motion is a motion to
dismiss, the Court has taken the facts from
SFC's Complaint.

Royal continued to provide SFC with credit risk
insurance for its securitizations through November
of 2001. In December of 2001, SFC alleges that
Royal verbally agreed to issue it one more credit
risk insurance policy. In February of 2002, Royal

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 609329 (D.Del.)

(Cite as: 2004 WL 609329 (D.Del.))

was told by its parent company to discontinue issuing credit risk insurance. Royal subsequently announced that it was exiting the credit risk insurance business; however, SFC alleges that Royal assured it that Royal would issue one last policy. SFC alleges that Royal later stated that it would only consider doing so if SFC executed two promissory notes (the "Notes") whereby SFC agreed to borrow approximately twelve million dollars from Royal that would be used to make forbearance payments to Wells Fargo, who was the trustee of the securitizations. All the proceeds of the Notes went directly to Wells Fargo.

SFC alleges that after it complied with Royal's request Royal never issued SFC the credit risk insurance policy as promised. SFC alleges that, in reliance on Royal's promises, it continued to approve and fund student loans. In its Complaint (D.I.1), SFC asserts six claims against Royal. This is Royal's Motion to Dismiss Counts I and II pursuant to Rule 9(b) and Counts I-VI pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STANDARDS OF REVIEW

### I. Rule 9(b)

Rule 9(b) requires a party alleging fraud or mistake to plead with particularity the circumstances constituting its claims. Fed.R.Civ.P. 9(b). The intent behind Rule 9(b) is to give defendants notice of the claims against them and to reduce the number of frivolous actions. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1418 (3d Cir.1997). Rule 9(b) does not require the recitation of "every material detail of the fraud such as date, location and time[; however,] plaintiffs must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud." ' *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir.2002) (quoting *In re Nice Sys .,* 135 F.Supp.2d 551, 557 (D.N.J.2001)).

### II. Rule 12(b)(6)

*2 A motion to dismiss tests the legal sufficiency of the complaint. *Conley v. Gibson,* 355 U.S. 41,

45-56 (1957). In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts "must accept as true the factual allegations in the [c]omplaint and all reasonable inferences that can be drawn therefrom." *Langford v. City of Atlantic City,* 235 F.3d 845, 847 (3d Cir.2000). A court will grant a motion to dismiss only when it appears that a plaintiff could prove no set of facts that would entitle him or her to relief. *Id.*

## DISCUSSION

I. Whether SFC Has Pled With Particularity Fraud And Negligent Misrepresentation

Royal contends that Counts I, negligent misrepresentation, and II, fraud, of SFC's Complaint should be dismissed because SFC has failed to plead these claims with particularity as required by Rule 9(b). Royal contends that SFC's Complaint does not identify the speaker of the alleged misrepresentations nor, with one exception, to whom the false statements were made. Royal also contends that SFC asserts only generalized and conclusory descriptions of misrepresentations made by Royal. SFC responds that the Rule 9(b) standard is generous in the Third Circuit and that its allegations of fraud and negligent misrepresentation satisfy Rule 9(b)'s requirements. In addition, SFC requests, in the event the Court agrees with Royal, that it be granted leave to amend its Complaint.

After reviewing the Complaint in light of the Rule 9(b) standards recited above, the Court concludes that SFC has failed to satisfy the pleading requirements of Rule 9(b). Nowhere in its Complaint does SFC identify the speaker of Royal's alleged misrepresentations. This is a failure to satisfy the particularity requirements of Rule 9(b). *See Klein v. Gen. Nutrition Co., Inc.,* 186 F.3d 338, 345 (3d Cir.1999) (stating that Rule 9(b) "requires, at a minimum, that the plaintiff identify the speaker of the fraudulent statements .") Although SFC contends that, according to *Brown v. SAP America, Inc.,* 1999 WL 803888 (D.Del. Sept. 13, 1999), a plaintiff need not identify the speaker of the alleged misrepresentation to satisfy Rule 9(b)'s requirements, to the extent *Brown'* s holding

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 609329 (D.Del.)

**(Cite as: 2004 WL 609329 (D.Del.))**

conflicts with *Klein v. General Nutrition Co., Inc.,* the Court declines to extend *Brown* to the facts in this case. *See also F.D.I.C. v. Bathgate,* 27 F.3d 850, 876 (3d Cir.1994) (holding that a failure to identify the speaker of alleged misrepresentations amounted to a failure to satisfy Rule 9(b)); *Liafail, Inc. v. Learning 2000, Inc.,* 2002 WL 31667861, at *4 (D.Del. Nov. 25, 2002).

The Court also concludes that SFC's allegations of material omissions fail to satisfy Rule 9(b)'s pleading requirements. SFC bases, in part, its fraud and negligent misrepresentation claims on material omissions by Royal, yet never identifies what facts withheld by Royal induced SFC to act. Moreover, although courts cannot expect plaintiffs to have access to information sufficient to satisfy a detailed application of Rule 9(b) in all cases, in the instant case, SFC does not contend that information it needs to satisfy Rule 9(b)'s particularity requirements is exclusively within Royal's control. *See F.D.I.C.,* 27 F.3d at 876. Therefore, SFC has given the Court no reason to relax "the normally rigorous particularity rule" based upon lack of knowledge or control. *Burlington,* 114 F.3d at 1418 . Accordingly, to the extent Counts I and II of SFC's Complaint are based on material omissions by Royal, the Court concludes that SFC has failed to satisfy Rule 9(b). [FN3]

> FN3. Royal also contends that *Brug v. The Enstar Group, Inc.,* 755 F.Supp. 1247 (D.Del.1991), and *Brown v. The Buschman Co.,* 2002 WL 389139 (D.Del.2002), compel the Court to dismiss Counts I and II of SFC's Complaint for failure to adequately plead scienter. Because the Court concludes that *Brug* and *Brown* are distinguishable from the facts in this case, the Court disagrees. The plaintiffs in *Brug* and *Brown* made only general averments, without any supporting facts, of intent or scienter. *Brug,* 755 F.Supp. at 1254-55; *Brown,* 2002 WL 389139, at *8. Therefore, the *Brug* and *Brown* courts concluded that they had no choice but to dismiss the plaintiffs' claims. In this case, however, SFC has identified

facts by which the Court infers intent. In paragraphs 31 and 33 of its Complaint (D.I.1), SFC alleges that Royal indicated that it would extend additional credit risk insurance following its announcement that it was leaving the credit risk insurance business if SFC would agree to borrow money from Royal to be used in making forbearance payments to Wells Fargo. SFC alleges that it complied with Royal's condition, but that Royal never extended additional credit risk insurance. The Court concludes that these facts are sufficient by which to infer intent or scienter.

**\*3** In sum, the Court concludes that Counts I and II of SFC's Complaint fail to satisfy the pleading requirements of Rule 9(b). [FN4]

> FN4. In its reply brief (D.I.18), Royal contends for the first time that all of SFC's claims are based on allegations of fraud, and therefore, if the Court finds that SFC has failed to properly plead Counts I and II, then all of SFC's claims must be dismissed. Without addressing the merits of Royal's arguments, the Court concludes that Royal is not entitled to dismissal of the remaining claims of SFC's Complaint on Rule 9(b) grounds. Rule 7.1.3 of the Local Rules for the District of Delaware ("Local Rule 7.1.3") provides that "[t]he party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief." D. Del. L.R. 7.1.3(c)(2). The practice of reserving arguments for reply briefs "amounts to impermissible 'sandbagging.'" ' *Rockwell Tech., LLC v. Spectra-Physics Lasers, Inc.,* 2002 WL 531555 (D.Del. March 26, 2002) (quoting *Jordan v. Bellinger,* 2000 U.S. Dist. LEXIS 19233, *18 (D. Del. April 28, 2000)). By waiting until its reply brief to assert that all of SFC's claims should be dismissed pursuant to Rule 9(b), Royal has violated Local Rule 7.1.3. Accordingly, the Court rejects Royal's attempt to dismiss

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 609329 (D.Del.)

(Cite as: 2004 WL 609329 (D.Del.))

Page 4

SFC's remaining claims under Rule 9(b).

II. Whether Counts I-VI State A Claim Upon Which Relief May Be Granted

A. *Counts I And II, Negligent Misrepresentation And Fraud*

Under Delaware law, to state a claim of common law fraud a plaintiff must plead: 1) a false representation made by the defendant, usually one of fact; 2) the defendant's knowledge or belief that the statement was false; 3) an intent to induce the plaintiff to act; 4) the plaintiff's justifiable reliance upon the representation; and 5) damage to the plaintiff as a result. *Stephenson v. Capano Dev., Inc.,* 462 A.2d 1069, 1074 (Del.1983). The only difference between an action for fraud and negligent misrepresentation is that, with a claim of negligent misrepresentation, the plaintiff need not plead that the defendant knew or believed that his or her statement was false or that he or she proceeded in a reckless disregard for the truth. *Id.* By its Motion, Royal seeks to dismiss Counts I and II for failure to plead elements 1, 4, and 5.

1. *Statement Of A Material Fact*

Royal contends that SFC has not adequately pled the existence of a material fact because the statements SFC alleges were false or negligent concern future undertakings. (D.I. 7 at 8.) SFC responds that the Court should not be persuaded by Royal's arguments because a claim for fraud may be based upon statements of future results.

Under Delaware law, "[o]pinions and statements as to probable future results are not generally fraudulent even though they relate to material matters." *Esso Standard Oil Co. v. Cunningham,* 114 A.2d 380, 383 (Del. Ch.1955); *Craft v. Bariglio,* 1984 WL 8207, at *8 (Del. Ch. March 1, 1984). Applying this principle and the Rule 12(b)(6) standard of review to the allegations in SFC's Complaint, the Court concludes that it would be premature to dismiss Counts I and II for failure to plead a material fact.

In its Complaint, SFC alleges that after Royal made a public announcement that it was leaving the credit risk insurance business, "Royal continued to represent to SFC that one more policy *would* be issued to SFC." (D.I. 1 at ¶ 31) (emphasis added). Further, SFC alleges that Royal contacted SFC's CEO and "told him that Royal would consider providing credit risk insurance for another securitization if SFC agreed to borrow money from Royal to be used to make 'forbearance payments' to Wells Fargo." *Id.* at ¶ 33. Taken as true, SFC's assertions constitute more than mere "[o]pinions and statements as to probable future results." *See Esso Standard,* 114 A.2d at 383. Thus, the Court concludes that the combined effect on SFC of Royal's statements of intent to issue a new policy suffice, for the purposes of this Motion, to plead the existence of misstatements or negligent misrepresentations made to induce SFC to borrow money from Royal.

2. *Justifiable Reliance*

*4 Royal contends that SFC has not pled justifiable reliance because, in the circumstances of this case, a reasonable person would not have relied upon a verbal commitment that Royal would issue an additional credit risk insurance policy. In response, SFC contends that its reliance upon Royal's misrepresentations was justifiable because, unlike the precedent relied upon by Royal, in this case there was no written agreement between the parties that made Royal's oral assurances unworthy of SFC's reliance.

Delaware courts follow the Restatement's definition of justifiable reliance. *See Lock v. Schreppler,* 426 A.2d 856, 863 (Del.Super.1981), *superceded by statute in part on other grounds as stated in, Amato & Stella Assoc. v. Florida North Inv ., Ltd.,* 678 F.Supp. 445, 448 (D.Del.1988). In order to plead justifiable reliance based on a statement of intention, a plaintiff must allege facts demonstrating that "the intention is material and the recipient has reason to believe that it will be carried out." Restatement (Second) of Torts § 544 (1977). Applying these standards to SFC's Complaint, the Court concludes that SFC has adequately pled

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

justifiable reliance in order to survive dismissal.

Royal directs the Court to *Debakey Corp. v. Raytheon Service Co .,* 2000 WL 1273317 (Del. Ch. Aug. 25, 2000), for support of its contention that SFC failed to adequately plead justifiable reliance. [FN5] In *Debakey,* the plaintiff sued for fraudulent inducement because of an oral promise by defendants that they would provide funding in excess of $2 million to the parties' joint venture. 2000 WL 1273317, at *22. A subsequent written contract, however, stated that the defendants had the right to unilaterally decide not to extend funding once the $2 million limit was reached. *Id.* Once the $2 million limit was reached, the defendants declined to extend the plaintiffs additional funding. *Id.*

> FN5. Royal does not contest that the statements at issue are material.

Following a bench trial, the *Debakey* court concluded that the written contract precluded the plaintiff from establishing justifiable reliance. *Id.* The court reasoned that reliance on the defendants' prior oral representations that they would provide funding in excess of $2 million when a subsequent express contract "unambiguously" permitted the defendants to terminate the joint venture "once the $2 million funding limit was reached" was unreasonable. *Id.*

The Court concludes that *Debakey* is both factually and procedurally distinguishable from the instant case. Here, unlike *Debakey,* there is no express contract that would make SFC's reliance on Royal's oral representations unjustifiable. Further, the *Debakey* court reached its conclusions after a bench trial and post-trial briefing, clearly not subject to the liberal 12(b)(6) standard of review. When reviewing SFC's Complaint under the correct standard of review, the Court concludes that SFC has adequately pled justifiable reliance. As noted above, SFC alleges that Royal made two statements to it indicating Royal's intent to issue a new credit risk insurance policy. (D.I. 1 at ¶ 31, 33.) Further, SFC alleges that Royal made these two representations following Royal's public

announcement that it was exiting the credit risk insurance business (D.I. 1 at ¶ 29), thereby justifying SFC's belief that Royal would issue one more policy despite its announcement.

**\*5** Based on these allegations, the Court cannot conclude that SFC could prove no set of facts establishing justifiable reliance. *See Langford,* 235 F.3d at 47. Accordingly, the Court will deny Royal's Motion to Dismiss Counts I and II for failure to plead justifiable reliance.

*3. Damages*

The Court is not persuaded by Royal's contention that SFC has failed to plead damages as a result of Royal's allegedly fraudulent and negligent misrepresentations. In paragraph 36, SFC alleges that it borrowed over $12 million from Royal "that provided no benefit to SFC." (D.I.1.) Further, in paragraph 45, SFC alleges that based on Royal's misrepresentations, Royal continued to receive pecuniary benefits that it was not entitled to from SFC's business. *Id.* Based on these allegations, the Court concludes that SFC has pled damages that are a consequence of Royal's alleged misrepresentations and false statements.

*4. Duty To Speak*

Royal also contends that SFC has failed to state a claim of fraud or negligent misrepresentation because, to the extent SFC bases Counts I and II on material omissions by Royal, SFC has not alleged that Royal had a duty to speak. In Delaware, a duty to speak may arise from circumstances other than a fiduciary or confidential relationship. *See Matthews Office Designs, Inc. v. Taub Inv.,* 647 A.2d 382 (Del.1993) (relying on the Restatement (Second) of Torts § 551(2) (1976) for the circumstances in which a duty to speak may arise). In relevant part, the Restatement (Second) of Torts § 551 provides that a party to a business transaction has a duty to exercise reasonable care to disclose: 1) information known due to the existence of a confidential or fiduciary relationship; 2) information that if undisclosed will cause its partial statements of facts to be misleading; or 3) facts basic to the transaction

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 609329 (D.Del.)

(Cite as: 2004 WL 609329 (D.Del.))

"if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts." *Id.; see also Mentis v. Delaware Am. Life Ins. Co.,* 1999 WL 744430 (Del.Super. July 28, 1999) (holding that a duty to speak may arise from a pre-existing relationship between the parties or from a partial disclosure of facts that requires further disclosure to prevent a misleading impression) (citations omitted).

Royal moves to dismiss Counts I and II only on the basis that SFC has not alleged the existence of a confidential or fiduciary relationship between the parties. Therefore, the Court will deny Royal's Motion because Royal has not established, under all the circumstances articulated by Section 551 of the Restatement (Second) of Torts, that SFC has failed to plead facts sufficient to establish a duty to speak.

B. *Count III, Breach Of The Duty Of Good Faith And Fair Dealing*

Royal contends that Count III of SFC's Complaint, breach of the duty of good faith and fair dealing, should be dismissed because there was no contract by which a covenant of good faith and fair dealing may be implied. In response, SFC contends that it has alleged facts sufficient to support its breach of the duty of good faith and fair dealing claim because the case Royal relies upon implied a covenant of good faith and fair dealing before the execution of any written contract. Further, SFC contends that part of its good faith and fair dealing claim involves actions that took place after the Notes were executed.

*6 Delaware courts recognize an implied covenant in contracts requiring the parties to act with good faith toward the other party with respect to their contract. *Katz v. Oak Indus. Inc.,* 508 A.2d 873, 880 (Del. Ch.1986) (citing Restatement (Second) of Contracts, § 205 (1981)). A party must "act reasonably to fulfill the intent of the parties to the agreement." *Gloucester Holding Corp. v. U.S. Tape & Sticky Prod., LLC,* 832 A.2d 116, 128 (Del.

Ch.2003) (quoting *Kelly v. McKesson HBOC, Inc.,* 2002 WL 88939 at * 10 (Del.Super.Jan. 16, 2002)). Applying these principles to the allegations in SFC's Complaint, the Court will grant Royal's Motion to Dismiss SFC's claim for breach of the duty of good faith and fair dealing.

SFC contends that it has sufficiently alleged a claim for breach of the duty of good faith and fair dealing because it alleged in its Complaint that "at the time the parties negotiated the Notes, SFC reasonably expected Royal to issue the new policy based on Royal's misrepresentations and omissions." (D.I. 14 at 21.) SFC alleges that its reasonable expectations are based upon Royal's representations to SFC's CEO that Royal would consider providing additional credit risk insurance for another securitization if SFC executed the Notes that Royal would use to make forbearance payments to Wells Fargo. (D.I. 1 at ¶ 33.) SFC further alleges that it executed the Notes requested by Royal, but that Royal never fulfilled its promise to issue a new credit risk insurance policy. *Id.* at ¶ 59-60.

The Court concludes that SFC's allegations are complaints about Royal's bad faith in bargaining or negotiation, and therefore, do not fall within the scope of the duty of good faith and fair dealing in contracts. *See* Restatement (Second) of Contracts § 205 comment (c) (1981). "The duty of good faith is ... not imposed on parties until they have reached agreement and does not bind them during their earlier negotiations." E. Allen Farnsworth, 2 *Farnsworth on Contracts* § 7.17 (2d ed.2001). SFC's allegations involve contract invalidating claims dealing with fraudulent inducement or fraud, not breach of the duty of good faith and fair dealing. Accordingly, the Court will grant Royal's Motion to Dismiss Count III of SFC's Complaint for failure to state a claim upon which relief may be granted on grounds of breach of the duty of good faith and fair dealing.

C. *Count IV, Unjust Enrichment*

Royal contends that Count IV, unjust enrichment, should be dismissed because payment of the loan

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 609329 (D.Del.)

**(Cite as: 2004 WL 609329 (D.Del.))**

proceeds was carried out as contemplated by the parties. Further, Royal contends that because unjust enrichment is a quasi-contract claim, it is not available when, as here, an express contract covers the same subject matter. SFC responds that it has sufficiently pled an action for unjust enrichment because actions for unjust enrichment are permitted when the validity of a contract is challenged, as in the instant case.

*7 "Unjust enrichment is 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Total Care Physicians, P.A. v. O'Hara,* 798 A.2d 1043, 1056 (Del.Super.2001) (quoting *Fleer Corp. v. Topps Chewing Gum, Inc.,* 539 A.2d 1060, 1062 (Del.1988)). " 'The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." ' *Id.* (quoting *Jackson Nat'l Life Ins. Co. v. Kennedy,* 741 A.2d 377, 393 (Del. Ch.1993). Applying these principles to the facts alleged in SFC's Complaint, the Court concludes that SFC has adequately alleged facts in support of its unjust enrichment claim to survive Royal's Motion to Dismiss.

The Court is not persuaded by Royal's contention that SFC may not maintain a claim for unjust enrichment because the parties executed documents, i.e. the Notes, providing for payment to Wells Fargo. Although the Court agrees with the general contract principle cited by Royal, in this case, SFC alleges that the Notes should be rescinded because of fraudulent statements and omissions made by Royal. Therefore, accepting SFC's factual allegations, the Court concludes that SFC's unjust enrichment claim must survive the instant motion because if the Notes are rescinded due to fraudulent conduct or omissions, there is no valid contract that would preclude SFC's unjust enrichment theory.

Further, the Court rejects Royal's assertion that SFC has failed to allege that Royal received any unjust retention of a benefit. Royal contends that

because the parties specifically contemplated that the proceeds from the Notes would be paid to Wells Fargo, SFC cannot now complain of any unfairness that may have resulted from that agreement. SFC is not, however, merely complaining that Wells Fargo received the benefit of the proceeds of the Notes; instead, SFC asserts that Royal was unjustly enriched because Royal induced SFC to act by making promises Royal never intended to keep. Accordingly, the Court will deny Royal's Motion to Dismiss Count IV.

D. *Counts V. Rescission, and VI, Declaratory Judgment*

Royal contends that Counts V, rescission, and VI, declaratory judgment, should be dismissed because these claims are based upon previous paragraphs in the Complaint that are defective for reasons it stated with respect to Counts I-IV. The Court disagrees.

Delaware law recognizes fraudulent inducement as one means by which a party may rescind an agreement. *Norton v. Poplos,* 443 A.2d 1, 4 (Del.1982). The elements of fraudulent inducement are 1) a false statement or misrepresentation; 2) that the defendant knew was false or made with reckless indifference to the truth; 3) the statement induced the plaintiff to enter the agreement; 4) the plaintiff's reliance was reasonable; and 5) the plaintiff was injured as a result. *Lord v. Souder,* 748 A.2d 393, 402 (Del.2000) (citing *Stephenson,* 462 A.2d at 1074.

*8 The Court concludes that SFC has alleged facts sufficient to support its claim for rescission due to fraudulent inducement. In its Complaint, SFC alleges that Royal knew that representations and omissions it made to SFC were false, that it acted reasonably in reliance on these representations, and that it was injured. (D.I. 1 at ¶ 30-36.) These allegations support a claim for rescission due to fraudulent inducement. [FN6]

> FN6. As noted above, the Court has concluded that SFC's Complaint, for the purposes of the Rule 12(b)(6) Motion, alleges a material fact, justifiable reliance,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 609329 (D.Del.)

**(Cite as: 2004 WL 609329 (D.Del.))**

and the damages elements of an action for fraud.

The Court also concludes that SFC has alleged facts sufficient to support its declaratory judgment claim. Count VI of SFC's Complaint asserts that SFC is entitled to a declaratory judgment that the Notes are null and void because it was fraudulently induced into their execution. As the Court has concluded, SFC has alleged facts adequate to support a claim for fraudulent inducement, and therefore, the Court will deny Royal's Motion to Dismiss Count VI of SFC's Complaint.

CONCLUSION

For the reasons discussed, the Court concludes that Counts I and II of SFC's Complaint do not satisfy Rule 9(b)'s pleading requirements, and therefore, must be dismissed. Further, the Court concludes that Count III of SFC's Complaint must be dismissed pursuant to Rule 12(b)(6). The Court also concludes that Counts I, II, and IV-VI state a claim for which relief may be granted.

An Order consistent with this Opinion will be entered.

*ORDER*

At Wilmington, this 23rd day of March, 2004, for the reasons discussed in the Opinion issued this date;

NOW THEREFORE, IT IS HEREBY ORDERED that:

1) Royal Indemnity Co.'s ("Royal") Motion to Dismiss (D.I.6) Counts I and II of Student Finance Corporation's ("SFC") Complaint pursuant to Rule 9(b) is *GRANTED;*

2) Royal's Motion to Dismiss (D.I.6), pursuant to Rule 12(b)(6), with respect to:

a) Count III of SFC's Complaint is *GRANTED;*

b) Counts I, II, IV-VI of SFC's Complaint is *DENIED.*

3) SFC shall file an Amended Complaint within twenty (20) days of this Order.

2004 WL 609329 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

- 1:03CV00507 (Docket)

(May. 23, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy

Page 1

2005 WL 121796 (D.Del.), 73 U.S.P.Q.2d 1898

**(Cite as: 2005 WL 121796 (D.Del.))**

**H**

**Motions, Pleadings and Filings**

United States District Court,
D. Delaware.
WEBLOYALTY.COM, INC., Plaintiff,
v.
CONSUMER INNOVATIONS, LLC, Defendant.
**No. Civ.A.04-90-KAJ.**

Jan. 13, 2005.

*MEMORANDUM ORDER*

JORDAN, J.

I. INTRODUCTION

*1 Presently before me is a Motion for Summary Judgment (Docket Item ["D.I."] 91) filed by defendant Consumer Innovations, LLC ("Consumer Innovations") and a Motion for Discovery on the Issue of Personal Jurisdiction (D.I. 27; "Motion for Discovery") filed by Webloyalty.com, Inc. ("Webloyalty"). Webloyalty filed this action on February 9, 2004 (D.I.1) and subsequently filed a First Amended Complaint (the "Complaint") on May 26, 2004 (D.I.52). Webloyalty alleges two counts in its Complaint. First, that Consumer Innovations infringed its copyright, Registration No. TX5842219, "[b]y using strikingly or substantially similar sell pages in commerce ... without Webloyalty's permission, license or consent." (*Id.* at ¶¶ 20, 24, 25.) Second, that Consumer Innovations' "use in commerce of Webloyalty's advertisements is likely to cause confusion, mistake or deception as to both [Consumer Innovations'] affiliation, connection, or association with Webloyalty ... [and] the origin, sponsorship or approval of [Consumer Innovations'] goods, services, or commercial activities," such that

Consumer Innovations' activities constitute "unfair competition and a false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a)." ( *Id.* at ¶¶ 31, 32, 33.) This court has jurisdiction pursuant to 28 U.S.C. § 1331.

For the reasons that follow, Consumer Innovations' Motion for Summary Judgment (D.I.91) will be denied and Webloyalty's Motion for Discovery (D.I.27) will be denied as moot. [FN1]

> FN1. Webloyalty filed its Motion for Discovery in response to Consumer Innovations' Motion to Dismiss (D.I.16). Webloyalty sought discovery "only if the Court determine[d] that [its] opposition to Consumer Innovations' motion to dismiss for lack of in personam jurisdiction is not sufficient by itself to result in denial of [Consumer Innovations'] motion." (*Id.* at 1.) On September 2, 2004, Consumer Innovations filed a Notice of Withdrawal of its Motion to Dismiss. (D.I.84.) Based on Consumer Innovations' withdrawal of its motion, I consider Webloyalty's Motion for Discovery (D.I.16) to be moot.

II. BACKGROUND [FN2]

> FN2. The following rendition of background information does not constitute findings of fact and is cast in the light most favorable to the non-moving party, the plaintiff.

Webloyalty and Consumer Innovations are businesses engaged in the marketing of online membership clubs to consumers. (D.I. 92 at 3; D.I. 94 at 3.) Consumers purchasing memberships are able to purchase goods and/or services offered through the clubs at a discount. (D.I. 94 at 3.) One of the ways in which Webloyalty markets these club memberships is by contracting with other

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 121796 (D.Del.), 73 U.S.P.Q.2d 1898

**(Cite as: 2005 WL 121796 (D.Del.))**

companies ("partner companies"), who sell goods and services on line, to place a banner on the partner company's sale confirmation web page. (D.I. 94 at 3.) Generally, the marketing of each parties' club memberships occurs in the following manner:

1. A consumer completes an online purchase from the partner company and is then directed to the partner company's "confirmation page."

2. The confirmation page has a "banner advertisement" with an offer from Webloyalty or Consumer Innovations.

3. If the consumer clicks on the banner advertisement, the consumer is then transferred to the "sell page" on the website for Webloyalty or Consumer Innovations depending on whose banner ad appeared.

4. The sell page offers the consumer the opportunity to become a member of the particular discount program. It contains the material terms of the program, the offer details, and a description of the program. The sell page also allows the consumer to return to the partner company's website by clicking on a link.

(*See* D.I. 92 at 4.)

**\*2** In October 2002, [FN3] Webloyalty entered into a contract with a company called Walter Drake to promote its services on the Walter Drake confirmation page in the manner described above. (D.I. 94 at 3 .) From that time until August of 2003, Webloyalty was the only company to offer these services through Walter Drake. (*See id.* at 4.) In August of 2003, Walter Drake ran a test to determine whether its consumers preferred the services of Webloyalty or those of one of its competitors, InQ. (*Id.* at 3-4.) At the end of the test period, the Webloyalty banner was again placed on all of the Walter Drake confirmation pages. (*Id.* at 4.)

> FN3. Drawing all reasonable inferences in favor of the non-moving party for the purposes of this motion, I will accept Webloyalty's statement that the date of contract was October, 2002, although Consumer Innovations stated that it was in or about November, 2002. (D.I. 94 at 3.)

In December 2003, [FN4] Consumer Innovations entered into a deal with a broker [FN5] pursuant to which it would offer its "Traveler Innovations" service on the Walter Drake confirmation page. (D.I. 94 at 4.) The purpose of this arrangement was to test Consumer Innovations' program against Webloyalty's "Reservation Rewards" program. (*Id.*) In this arrangement, customers would alternatively be directed by Walter Drake to either the Consumer Innovations or Webloyalty sell page. (*Id.*) As part of the agreement between Walter Drake and Webloyalty, and the agreement between Walter Drake and Consumer Innovations, consumers joining either the "Reservation Rewards" or "Travelers Innovations" program would be given a $10 credit toward their next Walter Drake purchase. (D.I. 92 at 5.)

> FN4. Drawing all reasonable inferences in favor of the non-moving party for the purposes of this motion, I will accept Webloyalty's statement that the agreement was made in December, 2003, although Consumer Innovations stated that it was in or about January, 2004. (D.I. 94 at 4.)

> FN5. Webloyalty alleges that the agreement was between Consumer Innovations and a "broker," whereas Consumer Innovations alleges that the agreement was made between it and Walter Drake. (D.I. 94 at 4; D.I. 92 at 5.) Either way, the result, as described above, was the same.

The present dispute centers on Consumer Innovations' sell page. Webloyalty alleges that Consumer Innovations created its sell page by copying portions of Webloyalty's sell page. (*See* D.I. 92 at 4-5.) Several portions of Webloyalty's and Consumer Innovations' sell pages contained identical verbiage. (D.I. 52, Ex. E at 1-2.) Examples of such identical verbiage include: [FN6] "Try all the benefits for the next 30 days FREE and see how much you save! There's no obligation to continue. If you are completely satisfied, do nothing and you'll enjoy ongoing savings for only $_ [FN7] a month;" "For your convenience __ [FN8] will use the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 121796 (D.Del.), 73 U.S.P.Q.2d 1898

**(Cite as: 2005 WL 121796 (D.Del.))**

Page 3

contact and credit or debit card information you provided to Walter Drake today for billing and benefit processing;" and "To thank you for your purchase at Walter Drake today, click YES below to get your $10 .00 Cash Back Gift ... on your next Walter Drake purchase plus sign up for all the money-saving benefits of __, [FN9] our ... online travel ... discounts ... program!" (*Id.*)

> FN6. Although the full extent of Webloyalty's copyright is not disclosed in the record, the phrases listed above are representative of the information presented on Webloyalty's and Consumer Innovations' sell pages.

> FN7. In Webloyalty's sell page, the cost is $9 a month whereas on Consumer Innovations' sell page, the cost is $7 a month. (D.I. 52, Ex. E at 1-2.)

> FN8. The blank contains the program name, "Reservation Rewards" in Webloyalty's sell page, and "Traveler Innovations" in Consumer Innovations' sell page. (D.I. 52, Ex. E at 1-2.)

> FN9. The blank contains the program names as in footnote 8.

Consumer Innovations has since modified its sell page. (D.I. 92 at 4-5.) Webloyalty admits that Consumer Innovations' modified sell page does not infringe its copyright. (*Id.* at 5.)

III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether there is a triable issue of material fact, a court must review the evidence and construe all inferences in the light most favorable to

the non-moving party. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000). To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (internal citation omitted). The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Inds. Co., Ltd.,* 475 U.S. at 587 (internal citation omitted). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

IV. DISCUSSION

*3 Webloyalty alleges that Consumer Innovations infringed its copyright (D.I. 52 at ¶¶ 20, 24, 25) and that Consumer Innovations' activities constitute unfair competition (*id.* at 31, 32, 33).

A. Copyright Infringement

To prove copyright infringement, a plaintiff must establish that it owns a valid copyright and that the copyrighted material was copied by the defendant. *Dam Things from Denmark, a/k/a Troll Company ApS v. Russ Berrie & Co., Inc.,* 290 F.3d 548 at 561 (3d Cir.2002) (citing *Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc .,* 797 F.2d 1222, 1231 (3d Cir.1986)). Certificates of registration issued by the U.S. Copyright Office constitute *prima facie* evidence of the validity of the copyright and ownership of the material. *Ford Motor Co. v. Summit Motor Products, Inc.,* 930 F.2d 290-91 (3d Cir.1991) (internal citations omitted). Consumer Innovations concedes that Webloyalty's "ownership of the copyrighted property is undisputed" and that, therefore, the question is whether it copied protectible material from the Webloyalty sell page.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 121796 (D.Del.), 73 U.S.P.Q.2d 1898

**(Cite as: 2005 WL 121796 (D.Del.))**

Page 4

(D.I. 92 at 8.)

Copying is a "shorthand reference to the act of infringing any of the copyright owner's five exclusive rights set forth at 17 U.S.C. § 106." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.,* 307 F.3d 197, 206 (3d Cir.2002) (quoting *Ford Motor,* 930 F.2d at 291.) Because it is rarely possible to prove copying through direct evidence, *Roth Greeting Cards v. United Card Co.,* 429 F.2d 1106, 1110 (9th Cir.1970), "copying may be proven inferentially by showing that the defendant had access to the allegedly infringed copyrighted work and that the allegedly infringing work is substantially similar to the copyrighted work." *Whelan Assocs.,* 797 F.2d at 1231-32 (internal citations omitted). The test for "substantial similarity" has two considerations: extrinsic and intrinsic. *Dam Things from Denmark,* 290 F.3d at 562. Extrinsically, experts "may be called upon to determine whether there is sufficient similarity between the works so as to conclude that the alleged infringer 'copied' the work." *Id.* (citing *Whelan Assocs.,* 797 F.2d at 1232.) Intrinsically, the fact-finder is to determine whether a "lay-observer" would "believe that the copying was of protectible aspects of the copyrighted work." *Id.* (citing *Whelan Assocs.,* 797 F.2d at 1232.) These two considerations have been described as whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." [FN10] *See id.* (quoting *Folio Impressions, Inc. v. Byer California,* 937 F.2d 759, 765 (2d Cir.1991)).

> FN10. In *Dam Things From Denmark,* the Third Circuit noted that it had previously adopted the Second Circuit's test for substantial similarity, as described in *Arnstein v. Porter,* 154 F.2d 464, 468-69 (2d Cir.1946). *Dam Things From Denmark,* 290 F.3d at 562. This test consists of two considerations: " 'actual copying' which focuses on access in conjunction with 'probative' similarity, and 'actionable copying' which considers whether there is 'substantial' similarity between the alleged infringing work and

the *protectible elements* of the original work." *Dam Things from Denmark,* 290 F.3d at 562 (internal citations omitted). The test for actual copying can be established by direct evidence or inferred by evidence of access and "similarities that are probative of copying between the works, and expert testimony." *Id.* (internal citations omitted).

The Supreme Court, however, has explained that "[n]ot all copying ... is copyright infringement." *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361 (1991). Therefore, the trial court must consider, "whether the copying is actionable, viewing the item through the lay person's eyes, focusing on whether the substantial similarities relate to protectible material." *Dam Things From Denmark,* 290 F.3d at 562 (internal citation omitted.) This test makes clear that "it is only after actual copying is established that one claiming infringement then proceeds to demonstrate that the copying was improper or unlawful by showing that the second work bears 'substantial similarity' to protected expression in the earlier work." *Id.* (internal quotation omitted).

Consumer Innovations makes two arguments as to why there is no genuine issue of material fact. First, it argues that the language common to both Consumer Innovations' and Webloyalty's sell pages is not protectible under the Copyright Act of 1976 because the language is merely functional or standard in the industry and therefore, was not originally created by Webloyalty. (D.I. 92 at 9-10.) Second, it argues that the common language was made up of common expressions which may be lawfully appropriated under the merger and scenes-a-faire doctrines. (*Id.* at 10-13.)

**\*4** Webloyalty counter-argues that Consumer Innovations has failed to show that no genuine issues of material fact exist and, therefore, summary judgment for Consumer Innovations is not appropriate. First, Webloyalty notes that evidence of its copyright registration is *prima facie* evidence

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 121796 (D.Del.), 73 U.S.P.Q.2d 1898

**(Cite as: 2005 WL 121796 (D.Del.))**

of originality. (D.I. 94 at 6.) Webloyalty argues that Consumer Innovations has failed to overcome this presumption of originality because there is no evidence that Webloyalty's sell page was copied from prior similar works. (*Id.* at 6-7.) Second, Webloyalty argues that the doctrines of merger and scenes-a-faire do not apply because there are "a number of ways" to express the idea of "a $10 incentive for joining a membership club and for instructing individuals how to join." (*Id.* at 11.)

Webloyalty is correct that there are genuine issues of material fact that require denial of Consumer Innovations' Motion for Summary Judgment. Consumer Innovations has failed to rebut the *prima facie* case of originality established by Webloyalty's copyright registration. Certificates of registration constitute *prima facie* evidence of originality. *Blendingwell Music, Inc. v. Moor-Law, Inc.,* 612 F.Supp. 474, 480 (D.Del.1985) (internal citations omitted). Consumer Innovations' argument as to lack of originality is entirely unsupported. [FN11] Consumer Innovations argued that the common language of both sell pages was "standard in the industry" or consisted of "functional instructions" such that it was not protectible. (D.I. 92 at 9-10.) Consumer Innovations, however, does not provide any evidentiary or legal support for this argument. Even if Consumer Innovations had such evidence, a defendant cannot offer evidence of prior similar works without evidence that plaintiff copied those works. 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.11[B][1]. Furthermore, "[u]nless the originality vel non of a copyrighted work is determinable as a matter of law, it becomes a question of fact for the fact finder to resolve." *Scientist, Inc. v. Lindsey,* No. CIV. A. 95-7960, 1996 WL 278778, at *3 n. 7 (D.Del. May 22, 1996) (quoting *Modern Publ'g v. Landoll, Inc.,* 849 F.Supp. 22, 24 (S.D.N.Y.1994)).

> FN11. Consumer Innovations seems to imply that the common language of the sell pages was standard in the industry because the individual who wrote the sell page for Webloyalty, and the individual who allegedly wrote the sell page for Consumer Innovations, were both previously

employed by Trilegiant, a company that also used sell pages to conduct business. (D.I. 92 at 9.) Consumer Innovations noted that it was "more than a little ironic" that both men had the same former employer. ( *Id.*) Consumer Innovations, however, has failed to present evidence that Webloyalty personnel copied the sell page from the Trilegiant sell page or any other sell page, or, for that matter, whether the Trilegiant sell page was even created before Webloyalty's.

It is not until Consumer Innovations' Reply Brief in support of its Motion for Summary Judgment that it moves past its lack of originality argument and argues that any substantial similarity between the two sell pages is not actionable. (D.I. 98 at 6-8.) It admits, however, as it must, that the determination of the cause of the substantial similarity, "is a question of fact." (*Id.* at 7 (quoting *Whelan,* 797 F.2d at 1232 n. 23.)) Therefore, it is clear that Consumer Innovations has not rebutted the *prima facie* case of originality nor has it established that there are no genuine issues of material fact relating to the originality of the work at issue or the determination of substantial similarity.

Consumer Innovations' second argument is that the functional nature of the language and the cash back feature are "external factors" which limit the number of ways to express the ideas conveyed on the sell page such that the doctrines of merger or scenes-a-faire prevent Webloyalty from claiming an exclusive right to the common language of the sell pages. (D.I. 92 at 10-13.) Under the doctrine of scenes-a-faire, copyright protection is denied "to those expressions that are standard, stock, or common to a particular topic or that necessarily follow from a common theme or setting." *Dun & Bradstreet Software Servs., Inc.,* 307 F.3d at 215 (quoting *Gates Rubber Co. v. Bando Chem. Indus.,* 9 F.3d 823, 838 (10th cir.1993)). Scenes-a-faire are "incidents, characters or settings which are as a practical matter indispensable ... in the treatment of a given topic." *Whelan Assocs.,* 797 F.2d at 1236 (quoting *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.,* 672 F.2d 607, 616 (7th Cir.1982),

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 121796 (D.Del.), 73 U.S.P.Q.2d 1898

**(Cite as: 2005 WL 121796 (D.Del.))**

Page 6

*cert. denied,* 459 U.S. 880 (1982)). The scenes-a-faire doctrine denies copyright protection to an idea that is capable of expression only in a stereotyped form. *Atari, Inc.,* 672 F.2d at 616.

**\*5** The doctrine of merger applies where there is a merger of idea and expression, such that a given idea is inseparably tied to a particular expression. *Educ. Testing Servs. v. Katzman,* 793 F.2d 533, 539 (3d Cir.1986). "The idea and the expression will coincide when the expression provides nothing new or additional over the idea ." *Midway Mfg. Co. v. Bandai-America, Inc.,* 546 F.Supp. 125, 148 (D.N.J.1982) (internal citation omitted). Under such circumstances, protecting the expression would entail protecting the idea itself, which is impermissible under copyright law. *Atari, Inc.,* 672 F.2d at 612.

Consumer Innovations' arguments based on these doctrines are also insufficient to establish that summary judgment is appropriate. For either doctrine to apply, Consumer Innovations must establish that there is a limited, if not singular, manner to express the ideas presented on the sell page. It has not made any such showing. The evidence presented by Consumer Innovations, if anything, proves the opposite. Consumer Innovations provides two examples of sell pages that offer a $10 incentive for joining a membership club and inform the reader how to join. (D.I. 92 at Ex. I; D.I. 95 at Ex. 14, Dec. Anne M. Sterba.) These sell pages clearly show that there are other ways in which those ideas can be expressed. Neither of these sell pages uses the same text or arrangement as Webloyalty's copyrighted page. While, the "external factors" described by Consumer Innovations may provide the central ideas, there apparently are a number of ways to express them. [FN12] Therefore, Consumer Innovations has not established that either doctrine supports their argument for summary judgment on this record.

> FN12. For instance, Webloyalty submitted seven examples of sell or enrollment pages embodying a cash back offer which it admits do not utilize the same text or same

look and feel as Webloyalty's sell page. (D.I. 96 at Ex. A, Dec. Tamra Lichtman.)

Because Consumer Innovations has failed to satisfy its burden of proving that no genuine issues of material fact exist as to the issue of copyright infringement, its Motion for Summary Judgment is denied.

B. Unfair Competition

Consumer Innovations' entire argument for summary judgment on Webloyalty's unfair competition claim in its Opening Brief in support of its Motion for Summary Judgment is contained in two sentences. First, Consumer Innovations states that: "Because the elements common to the Reservation Rewards sell page and the Travelers Innovations sell page relate only to the non-copyrightable language, plaintiff's claims for infringement, unfair competition, and trade dress must be dismissed as a matter of law." (D.I. 92 at 8.) Then Consumer Innovations concludes with a request for "Summary Judgment in favor of Consumer Innovations, LLC, dismissing all claims against it with prejudice." (D.I. 92 at 15.) In its Reply Brief in support of its Motion for Summary Judgment (D.I. 98; "Reply Brief"), however, Consumer Innovations dedicated nearly 10 pages to its argument for why it is entitled to summary judgment on Webloyalty's unfair competition claim. Consumer Innovations' explanation for why it did not earlier address Webloyalty's unfair competition claim was that Webloyalty did not provide any evidence to establish any of the elements of its unfair competition claim throughout discovery. (D.I. 98 at 11-12.)

**\*6** Delaware Local Rule 7.1.3(c)(2) pertains to Reply Briefs and states: "The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief...." Therefore, if Consumer Innovations had an argument to make as to why summary judgment on Webloyalty's unfair competition claim was appropriate, it should have been raised in their opening brief, unless it was responding to an argument made by Webloyalty in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 121796 (D.Del.), 73 U.S.P.Q.2d 1898

**(Cite as: 2005 WL 121796 (D.Del.))**

Page 7

its Answering Brief (D.I.94). Consumer Innovations, however, was not responding to an argument raised in Webloyalty's Answering Brief because Webloyalty's entire argument, presented in its "Summary of Argument," consisted of the following: "Although [Consumer Innovations"] motion formulaically requests dismissal "of any and all claims against it" ... [Consumer Innovations'] Opening Brief ... does not even mention Webloyalty's allegations of unfair competition under the Lanham Act 15 U.S.C. § 1125(a) ... and contains no arguments as to why Count II should be dismissed." (D.I. 94 at 2.)

Because Consumer Innovations' arguments presented on pages 11 through 20 of its Reply Brief should have been presented in its Opening Brief for proper consideration pursuant to Local Rule 7.1.3(c)(2), its Motion for Summary Judgment as to Webloyalty's unfair competition claim is also denied.

V. CONCLUSION

Accordingly, it is hereby ORDERED that Consumer Innovations' Motion for Summary Judgment (D.I.91) is DENIED and Webloyalty's Motion for Discovery (D.I.27) is DENIED as moot.

2005 WL 121796 (D.Del.), 73 U.S.P.Q.2d 1898

**Motions, Pleadings and Filings (Back to top)**

- 1:04CV00090 (Docket)
                         (Feb. 09, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.