# EXHIBIT A

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
 2           IN AND FOR THE DISTRICT OF DELAWARE
 3                        - - -
   ALLERGAN, INC.,            :      Civil Action
 4 ALLERGAN SALES, LLC,       :
 5           Plaintiffs,      :
 6      v.                    :
 7 ALCON, INC., ALCON         :
   LABORATORIES, INC., and    :
 8 ALCON RESEARCH, LTD.,      :
 9           Defendants.      :      No. 04-968-GMS
10                        - - -
              Wilmington, Delaware
11          Monday, November 22, 2004
                  2:00 p.m.
12               In Chambers
13                        - - -
   BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.
14
   APPEARANCES:
15
          TIMOTHY DEVLIN, ESQ.
16        Fish & Richardson P.C.
               -and-
17        JONATHAN E. SINGER, ESQ., and
          MICHAEL J. KANE, ESQ.
18        Fish & Richardson, P.C., P.A.
          (Minneapolis, Minnesota)
19
                    Counsel for Plaintiffs
20
          JOHN W. SHAW, ESQ.
21        Young Conaway Stargatt & Taylor, LLP
               -and-
22        DANIEL J. THOMASCH, ESQ., and
          M. VERONICA MULLALLY, ESQ.
23        Orrick, Herrington & Sutcliffe LLP
          (New York, New York)
24
                    Counsel for Defendant
25
```

Page 2

```
 1         THE COURT:  Hello, counsel.
 2         MR. DEVLIN:  Good afternoon, Your Honor.  Tim
 3  Devlin from Fish & Richardson.
 4         (Counsel respond "Good afternoon.")
 5         MR. DEVLIN:  I have with me Michael Kane and John
 6  Singer, also from Fish & Richardson.
 7         THE COURT:  Great.  Which office?
 8         MR. SINGER:  I am actually from Minneapolis.
 9         MR. SHAW:  Good afternoon, Your Honor.  John Shaw
10  for defendants.  And to our left, Daniel Thomasch from Orrick
11  and Veronica Mullally.
12         (Counsel respond "Good afternoon.")
13         THE COURT:  I am going to start off by telling
14  you, what we will leave with here are broad strokes, and I
15  will send you back to work on details.  I will impose on the
16  plaintiff to set things down in a scheduling order and
17  circulate for my signature next Monday.  That will be
18  helpful, if you would do that.
19         There is not a lot that the parties agree on.
20         I guess the first thing we should address is the
21  matter that was raised in your letters to me of October 4 and
22  September 30 regarding I think it's Alcon's view that the
23  Court should permit early filing of summary judgment and a
24  counter-position from plaintiff.
25         MR. THOMASCH:  This is the third lawsuit between
```

Page 3

```
 1  these very parties, the third ANDA lawsuit involving
 2  brimonidine products that Alcon has sought to bring to the
 3  Court in generic formulations and that Allergan has sought to
 4  stop.  Both of the prior actions, one of which was briefly in
 5  your Court, both of those were resolved on summary judgment
 6  and without discovery.
 7         This presents the third of those lawsuits.  These
 8  are different patents that have been asserted and these are
 9  now product patents instead of method patents.  There are
10  three patents that are at issue -- three patents that are
11  relevant to this case.  And I think I can within probably two
12  minutes tell you exactly where our summary judgment would
13  lie.  We have additional defenses that would go beyond this,
14  but right now we would like to be completely focused on two
15  issues that we believe warrant summary judgment.
16         The three relevant patents all come from one
17  common parent application.  So they all share the same
18  specification.  That parent application sought claims to a
19  brimonidine product, a chemical product, that would be used
20  to lower interocular pressure in the eyes of individuals
21  suffering from interocular hypertension or glaucoma.  That
22  use of brimonidine is well known.  It's been out for a long
23  time.  And you can't get a patent to that anymore.
24         What these applications sought was a patent to
25  allow that type of product with something that Allergan
```

Page 4

1  called an SEC, a solubility enhancing component. They said,
2  we can add this solubility enhancer to brimonidine. It will
3  allow the brimonidine to be used at a higher pH, closer to
4  that of the eye, to where it is applied. And we think that
5  would be beneficial. That is what they sought in the parent
6  application.
7         Those broad claims were rejected. They were
8  rejected because the use of these types of SECs with
9  brimonidine had been well-documented in the past and there
10  was a past, the Burke '911 patent, that covered exactly
11  that.
12        What was said by Allergan was, but, while many
13  SECs are disclosed, only one of those was what we call an
14  anionic SEC. The others are nonanionic SECs.
15        Now, what they say we use is a nonanionic SEC.
16  What they use is an anionic SEC, called CMC.
17        So they say, yes, the art had many uses of
18  solubility enhancing components with brimonidine, but no one
19  would have thought to select the anionic SEC. We have
20  figured that out. We have figured out, that has surprising
21  benefits that were unexpected. So we can patent that as a
22  separate invention.
23        So those broad claims were narrowed down in the
24  patent that was directly prosecuted off of the parent
25  application and they received claims to cover the use -- to

Page 5

1 cover brimonidine with an anionic SEC.
2       Now, they haven't sued us on that patent, because
3 it is conceded that we don't have an anionic SEC in our
4 product. So if that is their invention, there is no lawsuit.
5       From that same parent application, however, they
6 received two additional patents, one by way of a divisional
7 and one by way of a continuation. The divisional patent
8 ultimately came down to -- it was made a divisional because
9 originally the Patent Office said, you have too many
10 inventions in this original patent, and some of them involve
11 a preservative, an oxychloro preservative, and we want you to
12 make that a divisional, a separate patent application. They
13 did. So they then prosecuted the use of brimonidine with an
14 oxychloro preservative. And the Patent Office said, the
15 claim is rejected. That's been done in the art before,
16 that's not new and novel.
17       In response to that, what Allergan did was
18 dropped the oxychloro preservative. The only reason they had
19 the divisional was because of that preservative, but they
20 just dropped it. And they simultaneously and very unusually
21 added in the requirement that there be an SEC. They did not
22 do what you are required to do in the Patent Office, which is
23 underline the language that you are adding to the claim.
24 They didn't do that. But they added new text to the claim
25 that added an SEC, and the claims ultimately issued.

Page 6

1       That leaves us with our first issue, the
2 construction of the phrase a solubility enhancing component
3 other than a cyclodextrin. That phrase is in that patent.
4 We say that, properly construed, that phrase must mean an
5 anionic SEC, because otherwise it is effectively the exact
6 same claim as the broad claim from the parent that was
7 rejected and required them to define their SEC as an anionic
8 SEC.
9       We say the divisional has to have the exact same
10 claim construction if those five or six words are construed
11 the way we say they should be construed, which is based
12 strictly on the intrinsic evidence, if that construction is
13 given, and the patent claim requires an anionic SEC, then
14 again, we are just like the unasserted '210 patent. They
15 have no claim against us and the case is over on that front.
16       If the Court were to decide that any SEC met the
17 limitations of that patent, there would be potentially
18 triable issues down the road as to whether we have any sort
19 of SEC in ours. What they claim is an SEC in our product, at
20 least they admit not an anionic SEC.
21       So we have one claim construction issue on the
22 divisional. If the divisional means the same as the parent
23 application, we believe then the case will be over as to that
24 divisional as to the '337 patent.
25       The other patent came off the same

Page 7

1 specification. They immediately canceled all the claims by
2 way of preliminary amendment, put in new claims. The new
3 claims have an upper limit on the amount of the active
4 ingredient in the product. This product was previously sold
5 at .2 percent, and when they canceled the claims they put a
6 limit in and they claimed the use of the product with up to
7 .15 percent. There is not a word in the specification that
8 mentions .15 percent. There is not a word in the
9 specification that mentions an upper limit.
10       So we have a straightforward lack of written
11 description, invalidity based on absence of written
12 description, requires no discovery whatsoever. The only
13 issue is looking at the specification, does that
14 specification support the revised claims which added the new
15 matter of up to .15 percent.
16       So in the case of the continuation patent, it is
17 a written description summary judgment argument. No
18 discovery required. We simply want to look at the claim and
19 spec and say there is no support for these claims because
20 nothing in the claim relates to the amount. Indeed,
21 everything in the specification is .2 percent or higher,
22 every chart, every example. It would only teach one to use
23 that much. There is nothing there that would even suggest
24 that you go to a lower amount.
25       In the first patent, where we have the issue of

Page 8

1 how does the Court define the term solubility enhancing
2 component, is it defined the same way as it was defined with
3 regard to the main patent, there, again, it's simply a matter
4 of a limited amount of prosecution history and the
5 specification and the claims. Again, if it is defined as an
6 anionic SEC, there is no factual dispute. And so, in our
7 mind, there is no discovery whatsoever.
8       Now, if we were to potentially lose either aspect
9 of that, there could be facts in dispute in the case.
10       So we would not -- we are not seeking to in any
11 way delay this case. We believe we have an absolute right
12 to be on the market. But by law, as soon as they file a
13 lawsuit, the FDA is now prohibited from approving our product
14 until such time as we resolve this lawsuit or until we get
15 out in 36 months. So the mere making of an allegation in
16 this context as opposed to the normal situation has a very,
17 very difficult effect on us.
18       And this has happened twice to us in the past,
19 and both times we received summary judgments that allowed us
20 to go late to the market but nevertheless to get to the
21 market earlier than we would have if we hadn't been allowed
22 to make a summary judgment motion.
23       That is what we seek here. What we would like to
24 do, with the Court's permission, is initiate the process by

## Page 9

1  writing Your Honor a letter. We can easily do it within the
2  space parameters that you allocate, and we can lay out our
3  entire motion for summary judgment, why it would be
4  appropriate for you to hear it. That is, frankly, our entire
5  approach to this case, because as of February 28th we should
6  be allowed to be on the market but we will not be allowed to
7  be on the market, the FDA will not approve our product if
8  this case just exists.
9      THE COURT: So you really seek to combine the
10 summary judgment and Markman process because there is --
11     MR. THOMASCH: The Markman process only with
12 regard to one phrase in one patent, the solubility enhancing
13 component. We do cite to a 2004 case where the Federal
14 Circuit affirmed summary judgment that did just that in the
15 University of Rochester case. This is really, it is an
16 extremely straightforward claim construction issue, and
17 really questions whether or not there is a reason to
18 interpret the claim differently from the patent that came
19 down to become the '210 patent, which they didn't assert
20 against us, and the divisional application of that same
21 patent.
22     THE COURT: You have alluded to the possibility
23 of remaining factual issues.
24     MR. THOMASCH: The main factual issue on that
25 patent that we are now discussing. They claim we have an

## Page 10

1  SEC, a solubility enhancing component.
2      THE COURT: Do will we still have a case left to
3  try?
4      MR. THOMASCH: There would be a case left to try
5  on that. We say we don't have such a component. We say what
6  we have is a viscosity enhancer and that is a different
7  animal altogether. But the parties are in agreement,
8  whatever it is, it is not anionic. If the requirement is it
9  has to be anionic, then the game is over. If you were to say
10 any type of SEC would meet the limitation, we would have to
11 have a trial to decide whether we even have any type of SEC.
12     THE COURT: Assuming I rule in your favor.
13     MR. THOMASCH: It's over.
14     THE COURT: Case-dispositive.
15     MR. THOMASCH: Case-dispositive. Completely
16 dispositive, with one-term claim construction on one patent.
17 No claim construction necessary on the other patent. They
18 have added a limitation when they amended the claims. They
19 added a maximum amount of active ingredient claim. And there
20 is not a word in the specification that supports that limit.
21     THE COURT: Okay.
22     MR. SINGER: Quite naturally, I disagree, Your
23 Honor. First off, let me sort of ground this.
24     Counsel, and in their letters and report, keeps
25 raising the prior lawsuits. Indeed, this is the third

## Page 11

1  lawsuit between the parties, one of which was initially
2  before you, before being transferred out to Judge Carter in
3  California.
4      This case really does not have anything to do
5  with those prior lawsuits. What those lawsuits were about,
6  if the Court has not taken the time to read the decision, was
7  a statutory interpretation of the Hatch-Waxman Act. There
8  are actually landmark cases cited by patent practitioners
9  across the country citing which types of patent claims can be
10 asserted under Hatch-Waxman and which cannot.
11     At the time Allergan filed the previous lawsuits,
12 that was an undecided issue. In fact, two district courts
13 decided the way Allergan viewed the statute, that we were
14 permitted to bring these claims. But ultimately, the Federal
15 Circuit decided Allergan was not permitted to bring those
16 claims.
17     So the summary judgment that is being referred to
18 by the other side was an issue of statutory interpretation.
19 The merits of Allergan's infringement claim under those
20 patents were actually never addressed. Indeed, if you go
21 into Judge Carter's earlier decision, what Judge Carter said
22 was, had Allergan been permitted to bring this claim under
23 the Hatch-Waxman issue, there were genuine issues of fact for
24 trial.
25     So our infringement claim was well-grounded.

## Page 12

1  Ultimately, the Hatch-Waxman was interpreted not to permit it
2  under the statutory provisions. So let's talk about this
3  case, because this is what matters. That's the past.
4      What is going on in this case, in our view, is
5  sort of an effort to try it by surprise. A lot of what I
6  heard today is sort of the first time what I have heard about
7  their defense. We have been asking about their defenses, and
8  to their credit, we did receive the required certification
9  before the lawsuit was filed detailing some of what I heard
10 today.
11     At the Rule 26 conference, I asked what the
12 defenses would be, what would be the subject of the summary
13 judgment motion, and I was not told. Again, in the letter to
14 you of September 30, it also did not list that. But
15 responding to the merits of what counsel has said, let's talk
16 about the upper limit concentration.
17     Indeed, what is going on here, we have two
18 patents, each covering a different invention. As you will
19 see in the Rule 26(f) report, we explain the differing
20 inventions. The old formulation of brimonidine was about
21 .2 percent. And there are various side effects with
22 brimonidine, including drowsiness and other things, where one
23 always desires to get that active ingredient down. It's
24 always good to have less of these medications, if you can
25 maintain the same effectiveness of the drug.

Page 13

1    What Allergan's scientists discovered is that you
2    are surprisingly able to formulate at a much higher pH than
3    people would have thought possible given the chemical nature
4    of brimonidine. Brimonidine, the old product, was formulated
5    at about 6.6 pH, which is slightly acidic pH, a slightly
6    acidic formulation.
7        I am trying to get my chemistry straight. Below
8    7 is acidic and above 7 is basic.
9        The new product is actually a basic formulation.
10   So this is a switch and a very surprising switch, that you
11   can formulate at these higher pH's, thereby reducing the
12   concentration of brimonidine, getting less medicine to
13   patients and less side effects.
14       This is the about the benefit of this invention.
15       With respect to the invalidity summary judgment
16   motion, I don't understand it. To say that there is no
17   mention of about .15 in the application elevates form over
18   substance to the extreme. In the patent application, there
19   is a disclosure of a formulation of .1451. The claim
20   limitation at issue is about .15. If .1451 is not about .15,
21   I don't know what is. So if a summary judgment motion is
22   going to be made, all that is going to result from that is us
23   responding that there is support in the written description
24   for about .15.
25       Under the Federal Circuit authorities cited by

Page 14

1    them, and cited by us, the issue of whether or not there is
2    disclosure to support about .15 is strictly a matter of
3    fact. And what you will have is a dispute, and I suspect a
4    dispute between experts. If they are going to tell me they
5    are not going to make this motion without expert testimony,
6    that is fine. We intend to put on experts to show there is
7    support for this limitation. So we will have a dispute
8    between experts as to whether or not it exists.
9        Frankly, we think -- as I said, we don't
10   understand how .15 isn't about .1451. They are awfully
11   close. Under the Federal Circuit authorities, there is
12   clearly support for that limitation.
13       With respect to an early summary judgment, we
14   think it would be a distraction. We are entitled to
15   discovery, both in terms of their contentions, which we have
16   not fully gotten, what they intend to use to support them, as
17   well as any facts they intend to rely on, and indeed whether
18   or not their scientists, for example, in Alcon would agree as
19   persons of skill whether .1451 is about .15. These are the
20   kinds of things that we think discovery is meant to explore
21   and we think we are entitled to.
22       And we are not proposing a very long schedule
23   here. This is not something which we are saying requires
24   years and years to do. We have put forward a close of all
25   discovery I believe August of next year and fact discovery

Page 15

1    closing sooner than that. It is not something we are saying
2    requires years and years to do, but rather can be done in
3    eight months' time.
4        Second, with respect to the other patent, the SEC
5    patent. There is, apparently, a Markman dispute over the
6    meaning of the term solubility enhancing component. I would
7    submit that under Federal Circuit law it would be error for
8    this Court to construe the term solubility enhancing
9    component to mean anionic solubility enhancing component.
10   There are a variety of reasons, not limited to which there is
11   a dependent claim in the patent. The broad claim says
12   solubility enhancing component. A dependent claim says
13   wherein said solubility enhancing component is anionic. They
14   are violating the doctrine of claim differentiation, among
15   other doctrines that would be violated, to construe those
16   terms to mean the exact same thing.
17       With respect to the file history mentioned by
18   counsel, it was not that these claims were somehow passed on
19   forever. The Court is very familiar with the patent practice
20   at the U.S. PTO.
21       The examiner did indeed reject claims at the
22   outset. Those claims were then withdrawn without prejudice
23   by the applicant. And he specifically said that they
24   intended to resubmit them at a later date for examination.
25   And they were, in fact, resubmitted for examination at a

Page 16

1    later date, and the examiner allowed them.
2        So to the extent we are going to have a summary
3    judgment motion here, we think we ought to go through the
4    process of having these contentions laid out, such that this
5    isn't trial by surprise, which we think would be unfair and
6    an inappropriate use of the parties' time.
7        THE COURT: It's the exception in patent cases
8    counsel come in at this stage of the process and ask for
9    early summary judgment and/or Markman. I am on the Bench now
10   more than six years. I think it's happened twice. Each of
11   us carries roughly 50 patent cases on this Court.
12       MR. THOMASCH: I am very much aware of the load,
13   Your Honor, and the desire not to add to it.
14       THE COURT: I wasn't going there yet. I was
15   going to get there.
16       MR. THOMASCH: It is the unusual nature. This is
17   an ANDA lawsuit, which gives rights to the plaintiff merely
18   by the filing of a complaint without any showing.
19       THE COURT: That explains the defendants'
20   interest in an earlier trial date. I understand the market
21   economics that are driving this. This is obviously not this
22   Court's first experience with an ANDA lawsuit.
23       Unfortunately, both organizations, both
24   businesses, are unable to resolve your differences amicably,
25   at least thus far, and you are in a litigation environment.

Page 17

1  That necessarily subjects you to a process that I make every
2  effort on this Court, in this chambers, to accommodate with
3  the economics of matters, with an eye on those things,
4  because we are obliged, as judges, to oversee the just and
5  speedy determination of disputes.
6       But where I have, as we have here, a
7  disagreement, apparently vigorous disagreement, I am not in a
8  position, obviously, to determine the merits of the parties'
9  positions on this particular issue. Essentially, I would
10 need to, in order to do that, interrupt other matters in
11 order to insert this into a position where we could provide
12 for a letter-briefing or whatever briefing regime and have me
13 gear up with the technology and entertain argument, to the
14 exclusion of other matters that are, quite frankly, ahead of
15 you, and some, quite frankly, involving ANDAs, one that is
16 burning on my desk at present.
17      So while I am sensitive to defendants' concerns
18 and expressed needs, I don't think I am convinced, given the
19 opposition from the plaintiff, that it would be the
20 appropriate thing to do for me today to say, yeah, we are
21 going to do an early summary judgment process in this case.
22 If both parties agreed that it would benefit the process, I
23 might be otherwise inclined.
24      MR. THOMASCH: That could never happen in an ANDA
25 context because their only goal is delay.

Page 18

1       THE COURT: Well, let me interrupt. You are an
2  advocate, I am sure a fine one. I am sure we have equally
3  fine advocates on the other side.
4       That is a bit of hyperbole, it's got to be, with
5  respect -- I am sure delay is in their interest.
6       MR. THOMASCH: For the first 30 months, delay and
7  victory are one and the same. After 30 months they do have
8  an interest in victory. For now, those two are
9  contemporaries.
10      We don't ask Your Honor today to give us the
11 right to make a summary judgment motion. Our request is much
12 more limited. We would like permission from Your Honor to
13 initiate the process by writing a letter to Your Honor to set
14 forth in some greater detail than can be absorbed or than I
15 can articulate here as to why it would be appropriate, why it
16 is straightforward, why this will have to be dealt with
17 eventually.
18      And the one thing that seems clear to us is,
19 whether or not they claim that there are defenses -- of
20 course they are going to claim there are defenses -- they
21 don't require discovery. This can be done based on a review
22 of the record, a review of the spec, a review of the claims.
23      THE COURT: Counsel, you are going to make that
24 argument in greater detail in a written submission and in
25 further subsequent oral discussion much more comprehensively

Page 19

1  than you have been able to make it today. But this Court is
2  going to be met with an equally urgent and comprehensive
3  argument in contra.
4       Quite frankly, just looking down the road a
5  little bit, if you were to put yourself in my position, the
6  plaintiff cries foul. Says prejudice. Let the discovery
7  process play itself out. We have a right to have that
8  happen.
9       MR. THOMASCH: We are okay with that. We do not
10 wish to stop them from taking discovery during the process of
11 briefing and argument of the summary judgment motion. We may
12 have discovery on many, many issues that will of course add
13 to the expense of the parties and potentially the time of the
14 Court to the extent there are discovery disputes about other
15 issues. But we are prepared to do that while simultaneously
16 saying, there are two very specific issues, one per patent,
17 that we want to bring on summary judgment. It is of course
18 my burden to show that factual disputes aren't involved. All
19 they have to do is raise a factual dispute and they win.
20 They don't have to try the whole case.
21      But I would not bring this motion if I didn't
22 think it was going to succeed. While the last two cases were
23 both about statutory interpretation, in those situations, Mr.
24 Singer vigorously pushed for discovery. The Court said,
25 let's deal with these threshold issues first, and they were

Page 20

1  ultimately decided our way.
2       Discovery won't be necessary if our legal
3  arguments, two legal arguments, are correct. And they are
4  very straightforward arguments. We could have short limits
5  on the briefing, as far as time and pages.
6       THE COURT: You contend your arguments are based
7  on the file wrapper.
8       MR. THOMASCH: The file wrapper, the spec and the
9  claims, that's it.
10      THE COURT: You say.
11      MR. SINGER: One of his legal arguments isn't a
12 legal argument at all. It is a fact argument, whether or not
13 a claim has support, sufficient written description for the
14 claim. The about .15 issue, that is not a legal argument at
15 all. That is a factual argument. They claim it doesn't. We
16 claim it does. We think we are right. They think they are
17 right. That's a factual dispute.
18      MR. THOMASCH: The Federal Circuit has many times
19 agreed that you can have summary judgment on this issue. It
20 says up to about .15 percent. It is an upper limit. There
21 is law on, if you are going to put a limit in your claims,
22 there is certain support you need, the only place for that
23 support is in the spec. Your Honor can look at the spec and
24 make this decision. This case wouldn't go to a jury anyway.
25 Your Honor will ultimately deal with these issues.

Page 21

1    It is an ANDA issue lawsuit. There is no money
2  at issue. It is a right to get on the marketplace. It will
3  before you as a finder of fact, but you may decide at this
4  stage of the case, as a matter of law, this can only go one
5  way because there is not support in the spec for the up to,
6  the limitation of up to .15 percent.
7    If it's a disputed fact, you deny the summary
8  judgment motion. But the Federal Circuit says you can do
9  this. The Rochester case says absolutely.
10    THE COURT: I understand. But your opponent
11  suggests that the Court is going to need to hear from experts
12  on this particular point. You say no.
13    MR. THOMASCH: Absolutely not. Whether it is
14  there or not the Court can gather by reading the
15  specification.
16    THE COURT: Why can't I read the specification
17  and simply resolve the issue?
18    MR. SINGER: The issue on a written description
19  claim is what in the specification discloses to one of
20  ordinary skill whether the inventor was in possession of the
21  claimed invention. Mr. Thomasch says that there is not a
22  word there. And the limitation is about .15. That's what we
23  are talking about, is a limitation of about .15 in some of
24  the dependent claims. Again, I pointed here today to
25  something that is .1451 that I think notifies someone of

Page 22

1  ordinary skill that there is about .15 in the specification.
2  And we would put forward an expert to say that, under the
3  view of the person of ordinary skill in the art, that
4  specification discloses the limitation about .15. And that
5  is at the end of the day an issue of fact.
6    The Rochester case, which they keep alluding
7  to -- I actually teach a course in my spare time about
8  biotech patent matters. The Rochester case figures heavily
9  in that course. That case is akin to our first case, where
10  there was an issue of statutory interpretation.
11    In the Rochester case, what happened, Your Honor,
12  it wasn't about an upper limit of anything in the case. What
13  happened in that case was -- this is a famous drug, the Cox
14  II inhibitors, Vioxx, which has been in the news. This case
15  was about a university that had discovered a method of
16  screening drugs to identify those that might inhibit Cox II
17  but not inhibit Cox I, and therefore provide these benefits,
18  which you have read about in the news.
19    They didn't discover at all the existence of such
20  a drug. What they discovered was a way to screen for such
21  drugs. Nonetheless, they claimed any drug that inhibited Cox
22  II. And what the Federal Circuit said in that case was that
23  you can't claim the Cox II inhibitor drug from a patent that
24  is about screening. It is not about upper limits at all.
25    What this case is about, this is a classic

Page 23

1  written description dispute about whether or not a limitation
2  is supported by the factual disclosure of the specification
3  and whether or not the various formulations in the patent --
4  and there are a bunch of them, there are a bunch of examples,
5  there is an extensive table with I think 20 or so
6  formulations, there is a graph which shows further
7  formulations -- whether those, as a matter of fact, are
8  enough to support about .15. I think as a matter of fact, we
9  think it is, but they contend that it isn't, which is a
10  matter for trial.
11    One other point, with respect to -- actually, two
12  other points. With respect to this delay point, about 30
13  months, that is absolutely true, that the filing of a lawsuit
14  stays any FDA approval for 30 months. We are proposing a
15  trial date that is well in advance of the 30-month stay,
16  almost a year in advance. The PDA is on record that the
17  average ANDA takes over 20 months to approve. Now, I don't
18  know what Mr. Thomasch is referring to in respect to February
19  28th. Maybe they have some communication from the FDA that
20  they expect to approve on February. That may happen. It may
21  not happen.
22    But at the end of the day, what Allergan seeks
23  here is a vindication of its patent rights, not delay of
24  Alcon's generic competition.
25    Finally, with respect to issue of trial, I think

Page 24

1  Mr. Kane can speak to this, but the issue of whether or not
2  this goes to a jury is a matter of dispute between the
3  parties. This is a disputed issue. We welcome the
4  opportunity to brief the Court on it. It is not settled by
5  the Federal Circuit.
6    There are a variety of approaches that courts
7  have taken. I think some courts have taken ANDA cases and
8  put them to the jury, I think the District of New Jersey.
9  Others have not. I think the Northern District of Illinois
10  is one notable Court where they have not gone to the jury. I
11  think the District of Massachusetts has taken a third way and
12  said the Federal Circuit has not spoken as to whether or not
13  these things go to the jury, we are going to do an advisory
14  jury so we don't have to redo this later on.
15    So this is not as black and white in terms of the
16  jury issue as Mr. Thomasch says. And we would welcome -- I
17  think the parties both believe it is an issue that requires
18  further exploration for the Court. The Court has to decide
19  one way or the other. But it is not a simple issue that it
20  doesn't go to the jury.
21    MR. THOMASCH: Your Honor, we both misspoke. If
22  I could just correct two statements. I misspoke when I
23  mentioned the University of Rochester with respect to the
24  '834 patent with the upper limit. With regard to the upper
25  limit I meant to cite the Purdu Pharma versus Falding case.

Page 25

1  The University of Rochester case was a case where claim
2  construction was used in the context of a summary judgment
3  motion such as we seek in the other case.
4      I believe that Mr. Singer misspoke when he has
5  said repeatedly that the term is about .15 percent. The
6  claim language is up to about, and the up to is the maximum
7  limit, which is essential to our argument that we are dealing
8  with an upper limit. And the simple disclosure of any number
9  in the patent that would be below that we would suggest does
10 not give you an upper limit.
11     They will put in an expert affidavit saying this,
12 if you believe that this is a matter in which it is a battle
13 of the experts, our motion should be denied. Our point will
14 not be that our expert is more persuasive or that we
15 necessarily even have an expert. Our point will be that on
16 the specification, and under guiding Federal Circuit
17 precedent, we cannot find an upper limit in a claim where
18 there is no upper limit in a specification. It's that
19 straightforward. The Court may accept or reject our
20 argument. But it won't get into a battle of the experts. If
21 you find that you need assistance from an expert on this, you
22 will deny our motion I am sure.
23     THE COURT: There is a contention that you
24 misspoke inadvertently.
25     MR. SINGER: I don't believe I did. There are a

Page 26

1  variety of claims in the patent. I believe Mr. Thomasch was
2  saying up to .15. There is a limitation up to about .15. I
3  believe there is also a limitation -- let me pull it out --
4  of up to .15. There is also a limitation of .15. And I
5  believe there is a limitation of about .15. Those are four
6  different claims that we have in the patent.
7      THE COURT: I am going to deny your request. I
8  understand.
9      MR. THOMASCH: Thank you for considering it,
10 Judge.
11     THE COURT: It is an interesting argument. We
12 will, as counsel has suggested, need to at some point address
13 or perhaps build into this process the ability to address the
14 jury versus nonjury issue, since there is not agreement on
15 that.
16     Regardless, the Court will not be available for
17 trial on the schedule that is suggested by the defendants.
18     As it happens, purely coincidentally, the Court
19 does have March 6 available, as has been proposed by the
20 plaintiff as a date for the commencement of either a jury or
21 nonjury trial.
22     We are going to schedule this, in terms of the
23 allotment of time, as if it were a jury trial, and if that
24 should change based on subsequent submissions, we will have
25 the luxury of reducing the number of days allotted to try the

Page 27

1  case.
2      Given that, the Court's availability, it strikes
3  me that the schedule proposed by the plaintiff as to both
4  fact and expert discovery makes some sense. I will hear from
5  the defendants if you disagree with that.
6      MR. THOMASCH: No, Your Honor. If Your Honor has
7  indicated that it is going to accept plaintiffs' date for
8  trial, then we would not thereafter argue that it's
9  nonsensical to put the discovery cutoff dates where they
10 are. We would, however, ask the Court to consider both an
11 early Markman and an early right of summary judgment after
12 some discovery is taken so that all issues involving this
13 case don't need to proceed, even if you limit us to one
14 summary judgment only, I am prepared to accept that
15 limitation, if Your Honor would just allow us to make that
16 summary judgment motion earlier in the case rather than
17 later, because time is what this case is all about.
18     THE COURT: How do you feel about that?
19     MR. SINGER: Your Honor, if we could explore
20 through discovery what their defenses are through the
21 contention process, I think we proposed a Markman hearing
22 that was somewhat earlier in the process.
23     THE COURT: It's in the eye of the beholder.
24 Let's see if counsel agrees. I am available for Markman on
25 June the 7th at 9:30. That's close to what you propose. One

Page 28

1  day.
2      What is your view of early Markman?
3      MR. THOMASCH: Ours was April 1. If we are going
4  to trial, there may be multiple claims that need to be
5  construed in both patents. There is this separate issue of
6  one claim in one patent, one claim term.
7      THE COURT: There is only a two-month difference
8  in the Markman schedules that you propose.
9      MR. THOMASCH: The real issue is not Markman,
10 Your Honor. The real issue is the date on which we may make
11 a summary judgment motion, which the plaintiffs have
12 attempted to hold off until November 1, 2005. We would like,
13 of course, to make that summary judgment motion in 2004.
14 There is about 11 months separating us on that. That is the
15 key issue. If we were permitted to make the summary judgment
16 motion, for instance, in March of 2005, we could make that
17 motion, imbedded in that motion --
18     THE COURT: Let me interrupt for a second.
19 November summary judgment process doesn't work for the
20 Court. In your discussions, what you are going to need to
21 keep in mind is, I try to preserve about four months from the
22 completion of briefing for any summary judgment motion that
23 is permitted. And you will need to build into that process
24 an exchange of letters, consistent with what I suspect you
25 know is my practice that will enable that letter-writing

Page 29

1  exchange to be completed at least seven days in advance of
2  the teleconference.
3      MR. SINGER: Fair enough. We will abide by that,
4  Your Honor.
5      THE COURT: Then you set up, you can get other
6  scheduling orders, they are out there, that will guide you in
7  terms of setting a cutoff for case-dispositive, the filing of
8  case-dispositive motions and the language that I employ.
9      MR. THOMASCH: The question I would ask is when
10  is the earliest date on which we may initiate that process?
11      THE COURT: I am going to leave that to your
12  discussion, your attempted agreement. I do want to get back
13  to your proposal, because I don't know that I got a response
14  exactly, where defendants would seek to have summary judgment
15  on the one issue, or is it two?
16      MR. THOMASCH: Two issues but one motion on those
17  two issues. One per patent.
18      THE COURT: And limit itself in the leadup to
19  trial to just those two issues, whether you are willing to
20  engage -- which would, I assume counsel is arguing, should
21  permit an earlier process, sooner rather than later summary
22  judgment engagement.
23      MR. SINGER: If we were permitted the chance to
24  do discovery and seek contention discovery, proper contention
25  discovery and also deposition discovery where relevant, I

Page 30

1  don't see that that is a problem in the sense of them filing
2  a motion sometime after that process has been sort of
3  undertaken.
4      THE COURT: That is fine. It may be the case,
5  you may not be willing to do this, I don't know, I don't know
6  if it is possible to do this, you may want to stage your
7  discovery, your fact and expert discovery -- not expert, fact
8  discovery we are talking about, in terms of getting those
9  issues, that discovery resolved and done, should the Court be
10  willing to engage an early process on these two issues, a
11  limited process on these two issues, if that is possible,
12  then the Court would entertain the submission, a proposed
13  schedule that would accommodate that. But I will not hear
14  any other summary judgment beyond that, if we are talking
15  early.
16      MR. THOMASCH: If we are able to do early, we
17  would be willing to limit ourselves.
18      THE COURT: I don't know what the plaintiffs'
19  view of summary judgment is and whether it intends to seek
20  summary judgment.
21      MR. SINGER: I don't know what their other
22  defenses are, Your Honor. I can't respond to that. With
23  respect to some of the issues, certainly, we are open to the
24  plaintiff seeking summary judgment on certain issues, to
25  obviously confine the trial in an appropriate way. But until

Page 31

1  we get discovery as to what defenses they intend to rely on,
2  we have heard today of two, but we received a letter from
3  them in July that had about ten defenses. And for us to sort
4  of pick and choose, we need to know which ones they intend to
5  put forward. If all of them, so be it.
6      MR. THOMASCH: We do have multiple defenses if
7  the case were to proceed to trial. We have two that we view
8  as case-dispositive without requiring discovery.
9      THE COURT: Here is what we will do, given the
10  sincere assertions here today that these contentions would be
11  truly case-dispositive, and given your apparent
12  willingness -- you haven't voiced an objection yet -- to
13  perhaps staging discovery in a manner that would enable the
14  parties to tee that matter up for summary judgment
15  consideration sooner rather than later -- is that a fair
16  assessment? Are you willing to do that?
17      MR. SINGER: We are willing to do that so long as
18  we receive sufficient discovery. The view on discovery I
19  think is very different. We are hearing from counsel that no
20  discovery is required. We think substantial discovery is
21  required. So it's sort of a -- Your Honor, absolutely, I
22  don't want to stand in the way of these kind of defenses, but
23  we have a fundamental disagreement about whether discovery is
24  necessary.
25      THE COURT: You are entitled to that. I am not

Page 32

1  attempting to strong-arm you in that regard. I qualify, if
2  it is possible, after a further meet-and-confer, for the
3  parties to agree on that, I am willing to grant permission to
4  file that motion today. You will still have -- you won't --
5  but the plaintiff will still have the opportunity to engage
6  my typical summary judgment practice later on down the road
7  if you desire. That is, seeking permission. You will have
8  to build that into the schedule, seeking permission. But the
9  defendants will have fired across your bow and that will be
10  it.
11      MR. THOMASCH: We have for clarification provided
12  our entire file, the regulatory file seeking approval for
13  this product. They have had that for months.
14      THE COURT: I am not going to micromanage.
15      MR. THOMASCH: Discovery has been ongoing in that
16  sense. We produced voluminous materials already.
17      THE COURT: I hear you. I am not going to --
18  everybody around this table operates in the Court's view
19  under the presumption that you are professionals, you are
20  officers of the Court, and that you are not engaged in
21  dilatory tactics, engaging in dilatory tactics. Therefore, I
22  don't expect that that is going to happen. So to the extent
23  that plaintiff disagrees with you, that he has sufficient
24  discovery to be able to resist your motion, I am going to
25  expect that counsel are going to act like professionals in

Page 33

1  that regard and do what you can do to provide that
2  information and the opportunity to get that information.
3      MR. THOMASCH: We will absolutely do so,
4  recognizing if he has been deprived discovery that is under
5  the Federal Rules a basis for denying our motion which the
6  rules would otherwise allow us to make as soon as this issue
7  is joined.
8      THE COURT: It certainly is.
9      MR. THOMASCH: It is a basis to deny it. We
10  can't gain through that.
11     THE COURT: Again, I don't attribute any poor
12  motives to either counsel, or the parties themselves. Not
13  yet.
14     I am speaking in broad strokes here. Does that
15  make sense to counsel?
16     MR. KANE: It does, Your Honor. If I could chime
17  in. The only issue I guess I have is, if in fact we are --
18  what I thought I heard the Court say, you were available for
19  a June 7 Markman hearing, at least one of their summary
20  judgment motions is going to be dependent upon a Markman
21  issue. And the way they are characterizing the second it
22  almost sounds like it may be also a Markman issue. I am --
23     THE COURT: I thought there was only one term.
24     MR. THOMASCH: There is only one Markman issue.
25  That is in the divisional that relates to whether the SEC is

Page 34

1  any SEC or only an anionic SEC.
2      MR. KANE: The reason I said it sounds like there
3  is two actually, Your Honor, Mr. Thomasch has been saying
4  because of the language in the claim that says up to about,
5  that's the basis of his written description argument, which
6  sounds to me like it could potentially implicate some Markman
7  rulings. Be that as it may, whether one or two Markman
8  issues, if we are going to have a Markman hearing on June
9  7th, I am wondering if it make sense to tie the summary
10  judgment motions to that same hearing so the Court could deal
11  with the Markman issues at one time.
12     THE COURT: You know, I will agree to that. I
13  normally don't engage that process. Chief Judge Robinson
14  does. We have a little bit of a different approach. But I
15  have been wanting to experiment with that anyway. We will do
16  that. Do you agree?
17     MR. THOMASCH: We would like to do it in
18  advance. As I understand what counsel is asking for is our
19  briefing for summary judgment and briefing for the Markman to
20  occur together, leading up to the Markman post-briefing on
21  June 7th.
22     THE COURT: Well, I am not sure.
23     MR. THOMASCH: That is the way Chief Judge
24  Robinson has done it in the past.
25     MR. KANE: That is what I believe I was

Page 35

1  anticipating.
2      MR. THOMASCH: We would like to do it earlier.
3  But if Your Honor will permit us to do so, we will. If Your
4  Honor will not permit us, we will take the first date Your
5  Honor will permit us to do it.
6      THE COURT: What you are going to need to give my
7  chambers guidance on, my staff guidance on, is we are going
8  to need potentially two Markman dates, I guess.
9      MR. THOMASCH: If we did it early on, because you
10  did at one point say they could hold off, we could take our
11  shot now. Our shot now would require just the Markman on the
12  limited amount, and we do have Federal Court cites for cases
13  in which Markman has been imbedded in the rulings without a
14  separate Markman hearing.
15     THE COURT: No. There is plenty of precedent for
16  that. That is not a concern.
17     MR. THOMASCH: We would do it just for that. We
18  would theoretically need another Markman if we were to lose
19  and there were other claims to be construed before trial.
20     THE COURT: That is my point. Do you agree or
21  disagree with that?
22     MR. SINGER: I think that's correct, Your Honor.
23  I think we could do the summary judgment Markman on the two
24  motions on the June 7 hearing and we could do another Markman
25  to the extent there were -- again, I don't know what there

Page 36

1  is, but we could do that later on in advance of trial. We
2  could even do it in the context of motions in limine.
3      MR. THOMASCH: I understood June 7 to be the
4  Markman, and what we were thinking about was in advance of
5  that just dealing with the summary judgment motions that
6  would have the one term. But ultimately, I don't think we
7  should be delaying from what the plaintiff proposed for the
8  Markman date.
9      THE COURT: What is your view as to whether you
10  can get the discovery done for the early summary judgment
11  process?
12     MR. SINGER: By June 7. I think that is very
13  feasible.
14     THE COURT: Before June 7, to enable the Court to
15  have an earlier than June 7 Markman.
16     MR. SINGER: We have not gotten responses to
17  their -- we served our discovery requests quite promptly.
18     MS. MULLALLY: Today.
19     MR. SINGER: We actually served them on Friday,
20  which is right after the Rule 26(f) meeting was held. We
21  held it I think about two weeks ago today, and we served our
22  discovery requests promptly. We have not gotten initial
23  disclosures from the other side.
24     MR. THOMASCH: They are not due.
25     MR. SINGER: No one is criticizing. We are

## Page 37

1    simply saying what has and hasn't been done. From my
2    perspective, we think a fair opportunity for discovery here
3    on these two issues is going to take three or four months.
4         With respect to a June 7 Markman date, we are
5    talking about briefing in advance of that, that that fits
6    perfectly. We do not and we think it was unfair in fact to
7    sort of propose they file a summary judgment -- I think the
8    notion was they wouldn't object to discovery ongoing during
9    the summary judgment process. There are rules, and we have
10   to respond to briefing, and there is very short time limits.
11        THE COURT: Fair enough. We will use that as the
12   June 7th, as the date for this so-called earlier process.
13        MR. THOMASCH: That actually rolls our real
14   Markman back even later than the plaintiff proposed. We
15   proposed April. They proposed June. And now we are going to
16   be later than June.
17        THE COURT: You could agree not to disagree. It
18   could come to pass --
19        MR. THOMASCH: Could we have an opportunity to
20   try within ourselves to see if one or two stages, to let Your
21   Honor decide with letters back, if we can't agree, then you
22   just make the call?
23        THE COURT: I don't want letters back. You can
24   contact chambers by phone if you can't agree, and we will set
25   a teleconference.

## Page 38

1         MR. THOMASCH: That would be fine.
2         THE COURT: I don't want letters back. I have
3    enough to read. See what you can do. If you can agree on an
4    earlier date, then that is fine. I am not going to express a
5    view.
6         MR. SHAW: Could we put the June 7 date in our
7    calendar so we don't lose that?
8         THE COURT: It is on the calendar, at 9:30.
9         We won't be able to set, assuming two summary
10   judgment, potential summary judgment -- we will need one
11   teleconference for summary judgment then, because I have
12   granted permission, assuming agreement on the discovery,
13   underlying discovery matters, process, we won't need a
14   teleconference for that. So you will need to, when you have
15   agreed whether that is going to occur, you are going to have
16   to dial up chambers and get a date so you can insert that
17   into your schedule, that you have agreed upon. Do you
18   follow?
19        MR. DEVLIN: I understand, Your Honor. We need a
20   teleconference in advance of the briefing for the full sweep
21   of summary judgment motions.
22        MR. SINGER: Later on in the case. Fair enough.
23   Thank you, Your Honor.
24        MR. DEVLIN: We will call your chambers sometime
25   in the summer to get that.

## Page 39

1         THE COURT: Ms. Tyer-Daly will give you a date
2    for that once you have put the other details --
3         MR. THOMASCH: The next thing I understand we
4    will do when we leave is we will shortly confer with each
5    other to see if we can reach an agreement under which
6    discovery would begin, leading to an early summary judgment
7    motion by the defendants --
8         THE COURT: On discrete issues.
9         MR. THOMASCH: Which would be our one shot on
10   summary judgment in the case. If we reach agreement on that,
11   we will let Your Honor know. And you have agreed, I think,
12   that if we reach agreement on that, that will be all right by
13   you.
14        THE COURT: Yes.
15        MR. THOMASCH: If we don't reach agreement on
16   that, we will contact Your Honor for a conference to see
17   where that leaves us.
18        THE COURT: Yes because I expect where there is a
19   potential disagreement is just in terms of time that you are
20   going to need.
21        MR. THOMASCH: I think we now understand our
22   range of options.
23        THE COURT: All right. You have agreed on --
24   motions to amend on or before December 1.
25        MR. THOMASCH: Your Honor, I wonder if it would

## Page 40

1    be permissible if I could leave. Chief Judge Robinson has me
2    in front of her in final pretrial in 30 seconds.
3         THE COURT: You better go.
4         MR. THOMASCH: Thank you, Your Honor, counsel.
5         (Mr. Thomasch leaves conference room.)
6         THE COURT: December 1, you are going to do
7    initial disclosures on or before November 24.
8         MR. SINGER: I don't mean to interrupt, Your
9    Honor. I think, other than the one issue on the summary
10   judgment, I think that we are in agreement with the trial
11   date of March 6 as to what the calendar ought to be, as a
12   general matter, with the middle, that one issue remaining.
13   We had talked about it on the phone beforehand, and we
14   recognized our disagreement. There was agreement as to
15   amount of time discovery would take to go forward.
16        THE COURT: Your pretrial order date is January
17   9, that is close of business, '06. February 6, '06, 10:00
18   o'clock for our pretrial conference.
19        There remains the question of jury versus non.
20   There is also an issue of advice of counsel and willfulness
21   as well. We can take them in either order.
22        MR. SINGER: I would make a suggestion that we
23   could deal with the issue on advice of counsel as well as
24   jury through whatever process the Court would want, whether
25   letter briefs or whatnot, and leave that for the Court's

## Page 41

1  ultimate decision. These are somewhat novel issues. There
2  is some new case law on the point I think that is cited by
3  counsel for Alcon, on the willfulness point. We disagree
4  with their narrowly circumscribing it to this case. I could
5  lay out the disagreement if you want to hear it. It is just
6  another disagreement between the parties. I would suggest we
7  could handle it through letter briefing. It would be very
8  straightforward.
9        THE COURT: Will it impact discovery?
10       MR. SINGER: The willfulness issue would impact.
11  We had proposed that near the end of discovery, typically, I
12  think, for willfulness, that the opinion of counsel discovery
13  go forward, so if a discovery cutoff was in August, I think
14  we are proposing willfulness discovery go forward beginning
15  in June of 2005.
16       MS. MULLALLY: We should address it before we get
17  there.
18       THE COURT: You should want to submit letter
19  briefs if you can't agree in advance of that time.
20       MR. SINGER: Perhaps, if we are going to be
21  before the Court on June 7, it is another matter that could
22  be taken up at that time?
23       THE COURT: We could possibly do that. I guess
24  we won't need much time for actual claim construction on June
25  7.

## Page 42

1        MS. MULLALLY: No.
2        THE COURT: So we could certainly address that
3  then. So I would like that briefing ten days in advance, ten
4  business days in advance of the June 7 hearing.
5        MS. MULLALLY: Just on willfulness.
6        THE COURT: Yes. Just on that issue. We are
7  talking about the jury issue. Do you want to address jury
8  versus non as well at that time?
9        MR. SINGER: We could. I don't want to
10  overburden the Court.
11       THE COURT: We could do that. I was thinking we
12  could address it at the pretrial conference. Perhaps you
13  would like to know before that time. Yes, we should. That
14  will materially affect the work that you have to do on the
15  pretrial conference. Yes, that makes sense.
16       MR. SHAW: Letter briefs, Your Honor, the same
17  length?
18       THE COURT: Five, five and three, yes, that's
19  good. Five-page opening, five-page answer, three-page reply.
20       Lest there be any -- there will be a fairly
21  lengthy scheduling order. You should probably put the
22  briefing schedule in the scheduling order that you have
23  agreed on. I suggest you brief on the Local Rule. If you
24  find the press of time is going to not enable the Court to
25  have enough time to address any given issue, you might want

## Page 43

1  to brief on a more expedited schedule, given that they are
2  only letter briefs, and not a full-blown briefing process.
3        Length of trial. There is only two matters I
4  have, length of trial and settlement. We have three patents
5  in this case.
6        MR. SINGER: Two.
7        THE COURT: Okay. I will ask plaintiff first,
8  since you proposed the greatest length of time, why do you
9  think we need two weeks?
10       MR. SINGER: That was in the event it was a jury
11  trial, Your Honor.
12       THE COURT: I am saying, why would we need that?
13       MR. SINGER: Two patents, in terms of both
14  empaneling a jury and also putting forward, I think we will
15  have about three experts, we have two inventors, that was we
16  thought probably three to four trial days for the plaintiff,
17  in terms of also, I don't know what their witness list on the
18  other side is, in terms of who developed the products.
19       THE COURT: I could see seven days, perhaps. We
20  will set it down for seven trial days, assuming, again, a
21  jury trial. You will get, I think, an adequate amount of
22  time each day in front of the jury, no less than five and a
23  half hours to have the jury's attention per day. We don't
24  spend a lot of time picking juries around here. Okay?
25  Anything else?

## Page 44

1        Settlement. Have there been discussions?
2        MS. MULLALLY: We did discuss it.
3        MR. SINGER: There is not a whole lot there.
4        THE COURT: Is it the view of the parties that
5  referral to our Magistrate Judge would make sense?
6        MR. SINGER: I don't think so.
7        THE COURT: Why do you say that?
8        MR. SINGER: The issue here, from the plaintiffs'
9  perspective, is vindication of its patent rights. We believe
10  the right to exclude is sort of the fundamental right of
11  Allergan's. And there is not, at this juncture, any change
12  from our client's standpoint from that position.
13       MS. MULLALLY: Our client believes they have the
14  right to be on the market, because Allergan has enjoyed its
15  3.5 years of exclusivity, and that's all they are entitled to
16  because we don't infringe, and the other patent is invalid.
17       THE COURT: All right. I will expect to see you
18  at trial.
19       MR. DEVLIN: Your Honor, the four-month period
20  you would like to have after summary judgment briefing before
21  trial?
22       THE COURT: Ideally, before the pretrial
23  conference, because if you can get a ruling from me before
24  that time, again, that will affect what you have to do in
25  terms of preparing your pretrial order.

Page 45

1       MR. DEVLIN: Thank you.
2           THE COURT: Actually, the pretrial order -- but
3   that's about three weeks. If you can't work it out so that I
4   get that time period between pretrial order and close of
5   briefing, then just push it. But it usually works to the
6   disadvantage of the parties. That means you do work that you
7   may not otherwise have had to do, depending upon how the
8   Court is going to rule, if there is summary judgment.
9           Anything else, counsel?
10          (Conference concluded at 3:07 p.m.)
11              - - -
12  Reporter: Kevin Maurer
13
14
15
16
17
18
19
20
21
22
23
24
25

'06 [2]  40:17    40:17
'210 [2]  6:14    9:19
'337 [1]  6:24
'834 [1]  24:24
'911 [1]  4:10
-and [2]  1:16    1:21
.1451 [5]          13:19
13:20   14:10   14:19
21:25
.15 [23]  7:7    7:8
7:15    13:17   13:20
13:20   13:24   14:2
14:10   14:19   20:14
20:20   21:6    21:22
21:23   22:4    23:8
25:5    26:2    26:2
26:4    26:4    26:5
.2 [3]    7:5    7:21
12:21
00 [2]    1:11    40:17
04-968-GMS [1]
1:9
07 [1]    45:10
1 [4]     28:3    28:12
39:24   40:6
10 [1]    40:17
11 [1]    28:14
2 [1]     1:11
20 [2]    23:5    23:17
2004 [3] 1:11    9:13
28:13
2005 [3] 28:12   28:16
41:15
22 [1]    1:11
24 [1]    40:7
26 [3]    12:11   12:19
36:20
28th [2]  9:5    23:19
3 [1]     45:10
3.5 [1]   44:15
30 [9]    2:22    12:14
18:6    18:7    23:12
23:14   27:25   38:8
40:2
30-month [1]     23:15
36 [1]    8:16
4 [1]     2:21
50 [1]    16:11
6 [3]     26:19   40:11
40:17
6.6 [1]   13:5
7 [13]    13:8    13:8
33:19   35:24   36:3
36:12   36:14   36:15
37:4    38:6    41:21
41:25   42:4
7th [4]   27:25   34:9
34:21   37:12
9 [3]     27:25   38:8
40:17
abide [1]         29:3
ability [1]       26:13
able [4] 13:2    30:16
32:24   38:9

above [1]         13:8
absence [1]       7:11
absolute [1]      8:12
absolutely [5]    21:9
21:13   23:13   31:21
33:3
absorbed [1]      18:14
accept [3]        25:19
27:7    27:14
accommodate [2]
17:2    30:13
acidic [3]        13:5
13:6    13:8
act [2]   11:7    32:25
Action [1]        1:3
actions [1]       3:4
active [1]        7:3
10:19   12:23
actual [1]        41:24
add [3]   4:2    16:13
19:12
added [6]         5:21
5:24    5:25    7:14
10:18   10:19
adding [1]        5:23
additional [2]    3:13
5:6
address [8]       2:20
26:12   26:13   41:16
42:2    42:7    42:12
42:25
addressed [1]     11:20
adequate [1]      43:21
admit [1]         6:20
advance [9]       23:15
23:16   34:18   36:4
37:5    38:20   41:19
42:3    42:4
advice [2]        40:20
40:23
advisory [1]      24:13
advocate [1]      18:2
advocates [1]     18:3
affect [2]        42:14
44:24
affidavit [1]     25:11
affirmed [1]      9:14
afternoon [4]     2:2
2:4     2:9     2:12
again [9]         6:14
8:3     8:5    12:13
21:24   33:11   35:25
43:20   44:24
against [2]       6:15
9:20
ago [1]   36:21
agree [11]        2:19
14:18   32:3    34:12
34:16   35:20   37:17
37:21   37:24   38:5
41:19
agreed [7]        17:22
20:19   38:15   38:17
39:11   39:23   42:23
agreement [10]    10:7

26:14   29:12   38:12
39:5    39:10   39:12
39:15   40:10   40:14
agrees [1]        27:24
ahead [1]         17:14
akin [1]  22:9
Alcon [6]         1:7
1:7     1:8     3:2
14:18   41:3
Alcon's [2]       2:22
23:24
allegation [1]    8:16
Allergan [12]     1:3
1:4     3:3     3:25
4:12    5:17    11:11
11:13   11:15   11:22
23:22   44:14
Allergan's [2]    11:19
44:11
allocate [1]      9:2
allotment [1]     26:23
allotted [1]      26:25
allow [4]         3:25
4:3     27:15   33:16
allowed [4]       8:20
8:22    9:6     9:16
alluded [1]       9:22
alluding [1]      22:6
almost [2]        23:16
33:22
altogether [1]    10:7
always [2]        12:23
12:24
amend [1]         39:24
amended [1]       10:18
amendment [1]     7:2
amicably [1]      16:24
among [1]         15:14
amount [8]        7:3
7:20    7:24    8:4
10:19   35:12   40:15
43:21
ANDA [5]          16:17
16:22   17:24   23:17
24:7
ANDAs [1]         17:15
animal [1]        10:7
anionic [13]      4:14
4:16    4:19    5:3
6:5     6:7     6:13
6:20    8:6    10:8
10:9    15:9   15:13
answer [1]        42:19
anyway [1]        20:24
34:15
apparent [1]      31:11
APPEARANCES [1]
1:14
applicant [1]     15:23
application [10] 3:17
3:18    4:6     4:25
5:5     5:12    6:23
9:20    13:17   13:18
applications [1]
3:24

applied [1]       4:4
approach [2]      9:5
34:14
approaches [1]    24:6
appropriate [4]  9:4
17:20   18:15   30:25
approval [2]      23:14
32:12
approve [3]       9:7
23:17   23:20
approving [1]     8:14
April [2]         28:3
37:15
argue [1]         27:8
arguing [1]       29:20
argument [13]     7:17
17:13   18:24   19:3
19:11   20:12   20:12
20:14   20:15   25:7
25:20   26:11   34:5
arguments [5]     20:3
20:3    20:4    20:6
20:11
art [3]   4:17    5:15
22:3
articulate [1]    18:15
aspect [1]        8:8
assert [1]        9:19
asserted [2]      3:8
11:10
assertions [1]    31:10
assessment [1]    31:16
assistance [1]    25:21
assume [1]        29:20
assuming [4]      10:12
38:9    38:12   43:20
attempted [2]     28:12
29:12
attention [1]     43:23
attribute [1]     33:11
August [2]        14:25
41:13
authorities [2]   13:25
14:11
availability [1] 27:2
available [4]     26:16
26:19   27:24   33:18
average [1]       23:17
aware [1]         16:12
awfully [1]       14:10
based [5]         6:11
7:11    18:21   20:6
26:24
basic [2] 13:8   13:9
basis [3] 33:5   33:9
34:5
battle [2]        25:12
25:20
become [1]        9:19
beforehand [1]    40:13
begin [1]         39:6
beginning [1]     41:14
beholder [1]      27:23
believes [1]      44:13

below [1]         13:7
25:9
Bench [1]         16:9
beneficial [1]    4:5
benefit [2]       13:14
17:22
benefits [2]      4:21
22:17
better [1]        40:3
between [6]       2:25
14:4    14:8    24:2
41:6    45:4
beyond [2]        3:13
30:14
biotech [1]       22:8
bit [3]   18:4    19:5
34:14
black [1]         24:15
bow [1]   32:9
brief [2] 24:4   42:23
briefing [15]     17:12
19:11   20:5    28:22
34:19   34:19   37:5
37:10   38:20   41:7
42:3    42:22   43:2
44:20   45:5
briefly [1]       3:4
briefs [4]        40:25
41:19   42:16   43:2
brimonidine [13]
3:2     3:19    3:22
4:2     4:3     4:9
4:18    5:13   12:20
12:22   13:4   13:4
13:12
bring [6] 3:2    11:14
11:15   11:22   19:17
19:21
broad [6]         2:14
4:7     4:23    6:6
15:11   33:14
build [3] 26:13   28:23
32:8
bunch [2]         23:4
23:4
burden [1]        19:18
Burke [1]         4:10
burning [1]       17:16
business [2]      40:17
42:4
businesses [1]    16:24
calendar [2]      38:7
38:8    40:11
California [1]    11:3
canceled [1]      7:5
cannot [2]        11:10
25:17
carries [1]       16:11
Carter [2]        11:2
11:21
Carter's [1]      11:21
case [43] 3:11    6:15
6:23    7:16    8:9
8:11    8:12    9:5
9:8     9:13    9:15
10:2    10:4    11:4

CondenseIt™                                                    case-dispositive - discovery

| 12:3 | 12:4 | 17:21 |
|------|------|-------|
| 19:20 | 20:24 | 21:4 |
| 21:9 | 22:6 | 22:8 |
| 22:9 | 22:9 | 22:11 |
| 22:12 | 22:13 | 22:14 |
| 22:22 | 22:25 | 24:25 |
| 25:3 | 27:13 | 27:16 |
| 27:17 | 30:4 | 31:7 |
| 38:22 | 39:10 | 41:2 |
| 41:4 | 43:5 | |

**case-dispositive** [6]
| 10:14 | 10:15 | 29:7 |
| 29:8 | 31:8 | 31:11 |

**cases** [6] 11:8   16:7
| 16:11 | 19:22 | 24:7 |
| 35:12 | | |

**certain** [2]   20:22
30:24

**certainly** [3]   30:23
33:8   42:2

**certification** [1]
12:8

**chambers** [6]   1:12
| 17:2 | 35:7 | 37:24 |
| 38:16 | 38:24 | |

**chance** [1]   29:23

**change** [2]   26:24
44:11

**characterizing** [1]
33:21

**chart** [1] 7:22

**chemical** [2]   3:19
13:3

**chemistry** [1]   13:7

**Chief** [2]   34:13
34:23

**chime** [1]   33:16

**choose** [1]   31:4

**Circuit** [11]   9:14
| 11:15 | 13:25 | 14:11 |
| 15:7 | 20:18 | 21:8 |
| 22:22 | 24:5 | 24:12 |
| 25:16 | | |

**circulate** [1]   2:17

**circumscribing** [1]
41:4

**cite** [2] 9:13   24:25

**cited** [3] 11:8   13:25
41:2

**cites** [1] 35:12

**citing** [1]   11:9

**Civil** [1] 1:3

**claim** [40]   5:15
| 5:23 | 5:24 | 6:6 |
| 6:6 | 6:10 | 6:13 |
| 6:15 | 6:19 | 6:21 |
| 7:18 | 7:20 | 9:16 |
| 9:18 | 9:25 | 10:16 |
| 10:17 | 10:19 | 11:19 |
| 11:22 | 11:25 | 13:19 |
| 15:11 | 15:11 | 15:12 |
| 15:14 | 18:19 | 18:20 |
| 20:13 | 20:14 | 20:15 |
| 20:16 | 21:19 | 22:23 |
| 25:6 | 25:17 | 28:6 |
| 28:6 | 34:4 | 41:24 |

**claimed** [3]   7:6
21:21   22:21

**claims** [24]   3:18
| 4:7 | 4:23 | 4:25 |
| 5:25 | 7:2 | 7:3 |
| 7:5 | 7:14 | 7:19 |
| 8:5 | 10:18 | 11:14 |
| 11:16 | 15:18 | 15:21 |
| 15:22 | 18:22 | 20:9 |
| 20:21 | 21:24 | 26:6 |
| 28:4 | 35:19 | |

**clarification** [1]
32:11

**classic** [1]   22:25

**clear** [1] 18:18

**clearly** [1]   14:12

**client** [1]   44:13

**client's** [1]   44:12

**close** [5] 14:11   14:24
27:25   40:17   45:4

**closer** [1]   4:3

**CMC** [1]   4:16

**coincidentally** [1]
26:18

**combine** [1]   9:9

**commencement** [1]
26:20

**common** [1]   3:17

**communication** [1]
23:19

**competition** [1] 23:24

**complaint** [1]   16:18

**completely** [2] 3:14
10:15

**completion** [1] 28:22

**component** [9] 6:2
| 8:2 | 9:3 | 10:5 |
| 15:6 | 15:9 | 15:9 |
| 15:12 | 15:13 | |

**components** [1] 4:18

**comprehensive** [1]
19:2

**comprehensively** [1]
18:25

**Conaway** [1]   1:21

**conceded** [1]   5:3

**concentration** [2]
12:16   13:12

**concern** [1]   35:16

**concerns** [1]   17:17

**concluded** [1]   45:10

**confer** [1]   39:4

**conference** [7] 12:11
| 39:16 | 40:5 | 40:18 |
| 42:12 | 44:23 | 45:10 |

**confine** [1]   27:10

**consider** [1]   27:10

**consideration** [1]
31:15

**considering** [1] 26:9

**consistent** [1] 28:24

**construction** [9]
| 6:2 | 6:10 | 6:12 |
| 6:21 | 9:16 | 10:16 |
| 10:17 | 25:2 | 41:24 |

**construe** [2]   15:8
15:15

**construed** [5]   6:4
| 6:10 | 6:11 | 28:5 |
35:19

**contact** [2]   37:24
39:16

**contemporaries** [1]
18:9

**contend** [1]   20:6
23:9

**contention** [4] 25:23
27:21   29:24   29:24

**contentions** [3] 14:15
16:4   31:10

**context** [4]   14:7
17:25   25:2   36:2

**continuation** [1]
5:7   7:16

**contra** [1]   19:3

**convinced** [1]   17:18

**correct** [3]   20:3
24:22   35:22

**counsel** [23]   1:19
| 1:24 | 2:4 | 2:12 |
| 10:24 | 12:15 | 15:18 |
| 16:8 | 18:23 | 26:12 |
| 27:24 | 29:20 | 31:19 |
| 32:25 | 33:12 | 33:15 |
| 34:18 | 40:4 | 40:20 |
| 40:23 | 41:3 | 41:12 |
| 45:9 | | |

**counter-position** [1]
2:24

**country** [1]   11:9

**course** [6]   18:20
| 19:12 | 19:17 | 22:7 |
| 22:9 | 28:13 | |

**Court** [103]   2:7
| 2:13 | 2:23 | 3:3 |
| 3:5 | 6:16 | 9:9 |
| 9:22 | 10:12 | 10:12 |
| 10:14 | 10:21 | 11:6 |
| 15:8 | 15:19 | 16:7 |
| 16:11 | 16:14 | 16:19 |
| 17:2 | 18:23 | 19:14 |
| 19:24 | 20:6 | 20:10 |
| 21:10 | 21:11 | 21:14 |
| 21:16 | 24:4 | 24:10 |
| 24:18 | 24:18 | 25:19 |
| 25:23 | 26:7 | 26:11 |
| 26:16 | 26:18 | 27:10 |
| 27:18 | 27:23 | 28:7 |
| 28:18 | 28:20 | 29:5 |
| 29:11 | 29:18 | 30:4 |
| 30:9 | 30:12 | 30:18 |
| 31:9 | 31:25 | 32:14 |
| 32:17 | 32:20 | 33:8 |
| 33:11 | 33:18 | 33:23 |
| 34:10 | 34:12 | 34:22 |
| 35:6 | 35:25 | 35:15 |
| 35:20 | 36:9 | 36:14 |
| 36:14 | 37:11 | 37:17 |
| 37:23 | 38:2 | 38:8 |
| 39:8 | 39:14 | 39:18 |
| 39:23 | 40:3 | 40:16 |
| 40:16 | 40:24 | 41:9 |
| 41:18 | 41:21 | 41:23 |
| 42:2 | 42:6 | 42:10 |
| 42:11 | 42:18 | 42:24 |
| 43:7 | 43:12 | 43:19 |
| 44:4 | 44:7 | 44:17 |

**Court's** [5]   8:25
| 16:22 | 27:2 | 32:18 |
40:25

**courts** [1]   11:12
24:6   24:7

**cover** [1]   4:25

**covered** [1]   4:10

**covering** [1]   12:18

**Cox** [5] 22:13   22:16
22:17   22:21   22:23

**credit** [1]   12:8

**cries** [1] 19:6

**criticizing** [1]   36:25

**cutoff** [2]   27:9
29:7   41:13

**cyclodextrin** [1]
6:3

**Daniel** [2]   1:22
2:10

**date** [16] 15:24   16:20
| 23:15 | 26:20 | 27:7 |
| 28:10 | 29:10 | 35:4 |
| 36:8 | 37:4 | 37:12 |
| 38:4 | 38:6 | 38:16 |
| 40:11 | 40:16 | |

**dates** [2] 27:9   35:8

**days** [6] 26:25   42:3
| 42:4 | 43:16 | 43:19 |
| 43:20 | | |

**deal** [4] 20:3   20:25
34:10   40:23

**dealing** [2]   25:7
36:5

**dealt** [1] 18:16

**December** [2]   39:24
40:6

**decide** [5]   6:16
| 10:11 | 21:3 | 24:18 |
37:21

**decided** [1]   11:13
11:15

**decision** [3]   11:6
11:21   20:24

**Defendant** [1]   1:24

**defendants** [7]   1:9
| 2:10 | 26:17 | 27:5 |
| 29:14 | 32:9 | 39:7 |

**defendants'** [2] 16:19
17:17

**defense** [1]   12:7

**defenses** [10]   3:13
| 12:7 | 12:12 | 18:19 |
| 18:20 | 27:20 | 30:22 |
| 31:3 | 31:6 | 31:22 |

**define** [1]   6:7

**defined** [3]   8:2
8:2   8:5

**Delaware** [2]   1:1
1:10

**delay** [3]   8:11
| 17:25 | 18:5 | 18:6 |
23:12   23:23

**delaying** [1]   36:7

**denied** [1]   25:13

**deny** [4] 21:7   25:22
26:7   33:9

**denying** [1]   33:5

**dependent** [4]   15:11
15:12   21:24   33:20

**depending** [1]   45:7

**deposition** [1]   29:25

**deprived** [1]   33:4

**description** [7]   7:11
| 7:12 | 7:17 | 13:23 |
| 20:13 | 21:18 | 34:5 |

**desire** [2]   16:13
32:7

**desires** [1]   12:23

**desk** [1] 17:16

**detail** [2]   18:14
18:24

**detailing** [1]   12:9

**details** [2]   2:15
39:2

**determination** [1]
17:5

**determine** [1]   17:8

**developed** [1]   43:18

**Devlin** [7]   1:15
| 2:2 | 2:3 | 2:5 |
| 38:19 | 38:24 | 44:19 |

**dial** [2] 38:16

**difference** [1]   28:7

**differences** [1] 16:24

**different** [6]   3:8
| 10:6 | 12:18 | 26:6 |
| 31:19 | 34:14 | |

**differentiation** [1]
15:14

**differently** [1]   9:18

**differing** [1]   12:19

**difficult** [1]   8:18

**dilatory** [2]   32:21
32:21

**directly** [1]   4:24

**disadvantage** [1]
45:6

**disagree** [5]   10:22
27:5   35:21   37:17
41:3

**disagreement** [7]
| 17:7 | 17:7 | 31:23 |
| 39:19 | 40:14 | 41:5 |
| 41:6 | | |

**disagrees** [1]   32:23

**disclosed** [1]   4:13

**discloses** [2]   21:19
22:4

**disclosure** [4]   13:19
14:2   23:2   25:8

**disclosures** [2] 36:23
40:7

**discover** [1]   22:19

**discovered** [2]   22:15
22:20

**discovery** [51]   3:6
| 7:12 | 7:18 | 8:7 |
| 14:15 | 14:20 | 14:25 |
| 14:25 | 18:21 | 19:6 |

CondenseIt™

discrete - hours

| 19:10 | 19:12 | 19:14 |
| 19:24 | 20:2 | 27:4 |
| 27:9 | 27:12 | 27:20 |
| 29:24 | 29:24 | 29:25 |
| 29:25 | 30:7 | 30:7 |
| 30:8 | 30:9 | 31:8 |
| 31:13 | 31:18 | 31:18 |
| 31:20 | 31:23 | 31:23 |
| 32:15 | 32:24 | 33:4 |
| 36:10 | 36:17 | 36:22 |
| 37:2 | 37:8 | 38:12 |
| 38:13 | 39:6 | 40:15 |
| 41:9 | 41:12 | 41:12 |
| 41:13 | 41:14 | |

**discrete** [1]   39:8

**discuss** [1]   44:2

**discussing** [1]   9:25

**discussion** [2]   18:25
29:12

**discussions** [1]  28:20

**dispositive** [1]  10:16

**dispute** [9]   8:6
| 8:9 | 14:3 | 14:4 |
| 14:7 | 15:5 | 19:19 |
| 20:17 | 24:2 | |

**disputed** [2]   21:7
24:3

**disputes** [3]   17:5
19:14   19:16

**distraction** [1]  14:14

**district** [5]   1:1
| 11:12 | 24:8 | 24:9 |
24:11

**divisional** [11]   5:6
| 5:7 | 5:8 | 5:12 |
| 5:19 | 6:9 | 6:22 |
| 6:22 | 6:24 | 9:20 |
33:25

**doctrine** [1]   15:14

**doctrines** [1]  15:15

**doesn't** [3]   20:15
24:20   28:19

**done** [6] 5:15   15:2
| 18:21 | 30:9 | 34:24 |
36:10

**down** [9]   2:16
| 4:23 | 5:8 | 6:18 |
| 9:19 | 12:23 | 19:4 |
32:6   43:20

**driving** [1]   16:21

**dropped** [2]   5:18
5:20

**drowsiness** [1]  12:22

**drug** [5] 12:25   22:13
22:20   22:21   22:23

**drugs** [2]   22:16
22:21

**due** [1]  36:24

**during** [2]   19:10
37:8

**E** [1]   1:17

**earliest** [1]   29:10

**early** [13]   2:23
| 14:13 | 16:9 | 17:21 |
| 27:11 | 27:11 | 28:2 |
| 30:10 | 30:15 | 30:16 |
| 35:9 | 36:10 | 39:6 |

**economics** [2]   16:21
**17:3**

**effect** [1]   8:18

**effectively** [1]  6:5

**effectiveness** [1]
12:25

**effects** [2]   12:21
13:13

**effort** [1]   12:5
17:2

**eight** [1] 15:3

**either** [4]   8:8
26:20   33:12   40:21

**elevates** [1]   13:17

**empanelling** [1] 43:14

**employ** [1]   29:8

**enable** [4]   28:25
31:13   36:14   42:24

**end** [3]   22:5   23:22
41:11

**engage** [4]   29:20
30:10   32:5   34:13

**engaged** [1]   32:20

**engagement** [1] 29:22

**engaging** [1]   32:21

**enhancer** [2]   4:2
10:6

**enhancing** [8]   4:18
| 6:2 | 9:12 | 15:6 |
| 15:8 | 15:9 | 15:12 |
15:13

**enjoyed** [1]   44:14

**entertain** [2]   17:13
30:12

**entire** [3]   9:3
9:4   32:12

**entitled** [4]   14:14
14:21   31:25   44:15

**environment** [1]
16:25

**equally** [2]   18:2
19:2

**error** [1] 15:7

**ESQ** [6] 1:15   1:17
| 1:17 | 1:20 | 1:22 |
1:22

**essential** [1]   25:7

**Essentially** [1]  17:9

**event** [1]   43:10

**eventually** [1]  18:17

**everybody** [1]  32:18

**evidence** [1]   6:12

**exact** [3] 6:5   6:9
15:16

**exactly** [3]   3:12
4:10   29:14

**examination** [2]
15:24   15:25

**examiner** [1]   15:21

**example** [2]   7:22
14:18

**examples** [1]   23:4

**exception** [1]   16:7

**exchange** [1]   28:24

**exclude** [1]   44:10

**exclusion** [1]   17:14

**exclusivity** [1]  44:15

**existence** [1]   22:19

**exists** [2]   9:8
14:8

**expect** [5]   23:20
32:22   32:25   39:18
44:17

**expense** [1]   19:13

**experience** [1]  16:22

**experiment** [1]  34:15

**expert** [9]   14:5
| 22:2 | 25:11 | 25:14 |
| 25:15 | 25:21 | 27:4 |
30:7   30:7

**experts** [7]   14:4
| 14:6 | 14:8 | 21:11 |
25:13   25:20   43:15

**explain** [1]   12:19

**explains** [1]   16:19

**exploration** [1] 24:18

**explore** [2]   14:20
27:19

**express** [1]   38:4

**expressed** [1]   17:18

**extensive** [1]   23:5

**extent** [4]   16:2
19:14   32:22   35:25

**extreme** [1]   13:18

**extremely** [1]   9:16

**eye** [3]   4:4   17:3
27:23

**eyes** [1]  3:20

**f** [2]   1:12   36:20

**fact** [16] 11:12   11:23
| 14:3 | 14:25 | 15:25 |
| 20:12 | 21:3 | 21:7 |
| 22:5 | 23:7 | 23:8 |
| 27:4 | 30:7 | 30:7 |
33:17   37:6

**facts** [2] 8:9   14:17

**factual** [8]   8:6
| 9:23 | 9:24 | 19:18 |
| 19:19 | 20:15 | 20:17 |
23:2

**fair** [5]   29:3   31:15
37:2   37:11   38:22

**fairly** [1]   42:20

**Falding** [1]   24:25

**familiar** [1]   15:19

**famous** [1]   6:12

**far** [2]   16:25   20:5

**favor** [1]   10:12

**FDA** [5] 8:14   9:7
23:14   23:16   23:19

**feasible** [1]   36:13

**February** [1]   9:5
23:18   23:20   40:17

**Federal** [13]   9:13
| 11:14 | 13:25 | 14:11 |
| 15:7 | 20:18 | 21:8 |
| 22:22 | 24:5 | 24:12 |
25:16   33:5   35:12

**figured** [2]   4:20
**4:20**

**figures** [1]   22:8

**file** [8]   8:13   15:17
| 20:7 | 20:8 | 32:4 |
32:12   32:12   37:7

**filed** [1]   11:12   12:9

**filing** [4]   2:23
16:18   23:13   29:7

**final** [1]  40:2

**Finally** [1]   23:25

**finder** [1]   21:3

**fine** [5]   14:6   18:2
18:3   30:4   38:4

**fired** [1]  32:9

**first** [10] 2:20   7:25
| 10:23 | 12:6 | 16:22 |
| 18:6 | 19:25 | 22:9 |
35:4   43:7

**Fish** [4]   1:16   1:18
2:3   2:6

**fits** [1]   37:5

**five** [4]   6:10   42:18
42:18   43:22

**five-page** [2]   42:19
42:19

**focused** [1]   3:14

**follow** [1]   38:18

**forever** [1]   15:19

**form** [1] 13:17

**formulate** [2]   13:2
13:11

**formulated** [1]  13:4

**formulation** [4] 12:20
13:6   13:9   13:19

**formulations** [4]
| 3:3 | 23:3 | 23:6 |
23:7

**forth** [1] 18:14

**forward** [7]   14:24
| 22:2 | 31:5 | 40:15 |
41:13   41:14   43:14

**foul** [1]  19:6

**four** [4] 26:5   28:21
37:3   43:16

**four-month** [1] 44:19

**frankly** [5]   9:4
14:9   17:14   17:15
19:4

**Friday** [1]   36:19

**front** [3] 6:15   40:2
43:22

**full** [1]  38:20

**full-blown** [1]   43:2

**fully** [1] 14:16

**fundamental** [2]
31:23   44:10

**gain** [1]  33:10

**game** [1] 10:9

**gather** [1]   21:14

**gear** [1]  17:13

**general** [1]   40:12

**generic** [2]   3:3
23:24

**genuine** [1]   11:23

**given** [7]   6:13
| 13:3 | 17:18 | 27:2 |
31:9   31:11   42:25

**glaucoma** [1]   3:21

**goal** [1] 17:25

**goes** [1] 24:2

**gone** [1] 24:10

**good** [6] 2:2   2:4
2:9   2:12   12:24
42:19

**grant** [1] 32:3

**granted** [1]   38:12

**graph** [1]   23:6

**Great** [1]   2:7

**greater** [2]   18:14
18:24

**greatest** [1]   43:8

**GREGORY** [1] 1:13

**ground** [1]   10:23

**guess** [6]   2:20
33:17   35:8   41:23

**guidance** [2]   35:7
35:7

**guide** [1]   29:6

**guiding** [1]   25:16

**half** [1]  43:23

**handle** [1]   41:7

**Hatch-Waxman** [3]
11:7   11:10   11:23

**hear** [6] 9:4   21:11
27:4   30:13   32:17
41:5

**heard** [5]   12:6
12:6   12:9   31:2
33:18

**hearing** [8]   27:21
| 31:19 | 33:19 | 34:8 |
34:10   35:14   35:24
42:4

**heavily** [1]   22:8

**held** [2]  36:20   36:21

**helpful** [1]   2:18

**Herrington** [1]  1:23

**higher** [4]   4:3
7:21   13:2   13:11

**history** [2]   8:4
15:17

**hold** [2] 28:12   35:10

**Honor** [36]   2:2
| 2:9 | 10:23 | 16:13 |
| 18:10 | 18:12 | 18:13 |
| 20:23 | 20:25 | 22:11 |
| 24:21 | 27:6 | 27:6 |
| 27:15 | 27:19 | 28:10 |
| 29:4 | 30:22 | 31:21 |
| 33:16 | 34:3 | 35:3 |
| 35:4 | 35:5 | 35:22 |
| 37:21 | 38:19 | 38:23 |
| 39:11 | 39:16 | 39:25 |
40:4   40:9   42:16
43:11   44:19

**HONORABLE** [1]
1:13

**hours** [1]   43:23

hyperbole [1]   18:4

hypertension [1]
3:21
Ideally [1]   44:22
identify [1]   22:16
II [4]   22:14   22:16
22:22   22:23
Illinois [1]   24:9
imbedded [2]   28:17
35:13
impact [2]   41:9
41:10
implicate [1]   34:6
impose [1]   2:15
inadvertently [1]
25:24
inappropriate [1]
16:6
INC [3]   1:3   1:7
1:7
inclined [1]   17:23
including [1]   12:22
indeed [6]   7:20
10:25   11:20   12:17
14:17   15:21
indicated [1]   27:7
individuals [1]   33:2
information [2] 33:2
33:2
infringe [1]   44:16
infringement [2]
11:19   11:25
ingredient [3]   7:4
10:19   12:23
inhibit [2]   22:16
22:17
inhibited [1]   22:21
inhibitor [1]   22:23
inhibitors [1]   22:14
initial [2]   36:22
40:7
initiate [3]   8:25
18:13   29:10
insert [2]   17:11
38:16
instance [1]   28:16
instead [1]   3:9
intend [4]   14:6
14:16   14:17   31:4
intended [1]   15:24
intends [1]   30:19
interest [3]   16:20
18:5   18:8
interesting [1]   26:11
interocular [1]   3:20
3:21
interpret [1]   9:18
interpretation [4]
11:7   11:18   19:23
22:10
interrupt [3]   17:10
28:18   40:8
intrinsic [1]   6:12
invalid [1]   44:16

invalidity [2]   7:11
13:15
invention [5]   4:22
5:4   12:18   13:14
21:21
inventions [2]   5:10
12:20
inventor [1]   21:20
inventors [1]   43:15
involve [1]   5:10
involved [1]   19:18
involving [2]   17:15
27:12
issue [43]   3:10
6:21   7:13   7:25
9:16   9:24   11:12
11:18   11:23   13:20
17:9   20:14   20:19
21:2   21:17   21:18
22:5   22:10   23:25
24:3   24:16   24:17
24:19   26:14   28:5
28:9   28:10   28:15
29:15   33:6   33:17
33:21   33:22   33:24
40:9   40:12   40:20
40:23   41:10   42:6
42:7   42:25   44:8
issued [1]   5:25
issues [22]   3:15
6:18   9:23   11:23
19:12   19:15   19:16
19:25   20:25   27:12
29:16   29:17   29:19
30:9   30:10   30:11
30:23   30:24   34:8
34:11   37:3   39:8
itself [2] 19:7   29:18
J [2]   1:17   1:22
January [1]   40:16
Jersey [1]   1:22
John [3]   1:20   2:5
2:9
joined [1]   33:7
JONATHAN [1]
1:17
Judge [7]   11:2
11:21   11:21   26:10
34:13   34:23   44:5
judges [1]   17:4
judgment [56]   2:23
3:5   3:12   3:15
7:17   8:23   9:3
9:10   9:14   11:17
12:13   13:15   13:21
14:13   16:3   16:9
17:21   18:11   19:11
19:17   20:19   21:8
25:2   27:11   27:14
27:16   28:11   28:13
28:15   28:19   28:22
29:14   29:22   30:14
30:19   30:20   30:24
31:14   32:6   33:20
34:10   34:19   35:23
36:5   36:10   37:7
37:9   38:10   38:10
38:11   38:21   39:6
39:10   40:10   44:20

45:8
judgments [1]   8:20
July [1]   31:3
juncture [1]   44:11
June [18]   27:25
33:19   34:8   34:21
35:24   36:3   36:12
36:14   36:15   37:4
37:12   37:15   37:16
38:6   41:15   41:21
41:24   42:4
juries [1]   43:24
jury [19] 20:24   24:2
24:8   24:10   24:13
24:14   24:16   24:20
26:14   26:20   26:23
40:19   40:24   42:7
42:7   43:10   43:14
43:21   43:22
jury's [1]   43:23
Kane [5] 1:17   2:5
33:16   34:2   34:25
keep [2] 22:6   28:21
keeps [1]   10:24
Kevin [1]   45:12
key [1]   28:15
kind [1] 31:22
kinds [1]   14:20
known [1]   3:22
LABORATORIES [1]
1:7
lack [1] 7:10
laid [1]   16:4
landmark [1]   11:8
language [4]   5:23
25:6   29:8   34:4
last [1]   19:22
late [1]   8:21
law [5]   8:13   15:7
20:21   21:4   41:2
lawsuit [8]   2:25
5:4   8:14   8:15
12:9   16:17   16:22
23:13
lawsuits [5]   3:7
10:25   11:5   11:5
11:11
lay [2]   9:2   41:5
leading [1]   34:20
39:6
leadup [1]   29:18
least [3] 6:20   16:25
33:19
leave [4]2:14   29:11
39:4   40:25
leaves [2]   39:17
40:5
left [3]   2:10   10:2
10:4
legal [5] 20:2   20:3
20:11   20:12   20:14
length [4]   42:17
43:3   43:4   43:8
lengthy [1]   42:21
less [4]   12:24   13:12

13:13   43:22
Lest [1]   42:20
letter [8] 12:13   18:13
31:2   40:25   41:7
41:18   42:16   43:2
letter-briefing [1]
17:12
letter-writing [1]
28:25
letters [6]   2:21
10:24   28:24   37:21
37:23   38:2
lie [1]   3:13
limine [1]   36:2
limit [18]   7:3
7:6   7:9   10:20
12:16   20:20   20:21
22:12   24:24   24:25
25:7   25:8   25:10
25:17   25:18   27:13
29:18   30:17
limitation [14]   10:10
10:18   13:20   14:7
14:12   21:6   21:22
21:23   22:4   26:2
26:3   26:4   26:5
27:15
limitations [1]   6:17
limited [5]   8:4
15:10   18:12   30:11
35:12
limits [3]   20:4
22:24   37:10
list [2]   12:14   43:17
litigation [1]   16:25
LLC [1] 1:4
LLP [2]   1:21   1:23
load [1]   16:12
Local [1]   42:23
look [2] 7:18   20:23
looking [2]   7:13
19:4
lose [3] 8:8   35:18
38:7
lower [2]   3:20
7:24
LTD [1] 1:8
luxury [1]   26:25
M [2]   1:13   1:22
Magistrate [1]   44:5
main [2] 8:3   9:24
maintain [1]   12:25
makes [2]   27:4
42:15
manner [1]   31:13
March [3]   26:19
28:16   40:11
market [7]   8:13
8:21   8:22   9:6
9:7   16:20   44:14
marketplace [1]
21:2
Markman [32]   9:10
9:11   15:5   16:9
27:11   27:21   27:24

28:2   28:8   28:9
33:19   33:20   33:22
33:24   34:6   34:7
34:8   34:11   34:19
34:20   35:8   35:11
35:24   35:14   35:18
35:23   35:24   36:4
36:8   36:15   37:4
37:14
Massachusetts [1]
24:11
materially [1]   42:14
materials [1]   32:16
matter [13]   2:21
7:15   8:3   14:2
21:4   23:7   23:8
23:10   24:2   25:12
31:14   40:12   41:21
matters [7]   12:3
17:3   17:10   17:14
22:8   38:13   43:3
Maurer [1]   45:12
maximum [2]   10:19
25:6
may [14] 19:11   21:3
23:20   23:20   25:19
28:4   28:10   29:10
30:4   30:5   30:6
33:22   34:7   45:7
mean [4]6:4   15:9
15:16   40:8
meaning [1]   15:6
means [1]   6:22
45:6
meant [2]   14:20
24:25
medications [1]12:24
medicine [1]   13:12
meet [1] 10:10
meet-and-confer [1]
32:2
meeting [1]   36:20
mention [1]   13:17
mentioned [2]   15:17
24:23
mentions [2]   7:8
7:9
mere [1] 8:16
merely [1]   16:17
merits [3]   11:19
12:15   17:8
met [2]   6:16   19:2
method [3]   3:9
22:15
Michael [2]   1:17
2:5
micromanage [1]
32:14
middle [1]   40:12
might [3]   17:23
22:16   42:25
mind [2] 28:21   28:21
Minneapolis [2]
1:18   2:16
Minnesota [1]   1:18
minutes [1]   3:12

CondenseIt™

**misspoke** [4]          24:21
24:22    25:4    25:24
**Monday** [2]            1:11
2:17
**months** [10]           8:16
18:6    18:7    23:13
23:14    23:17    28:14
28:21    32:13    37:3
**months'** [1]           15:3
**motion** [27]           8:23
9:3    12:13    13:16
13:21    14:5    16:3
18:11    19:11    19:21
21:8    25:3    25:13
25:22    27:16    28:11
28:13    28:16    28:17
28:17    28:22    29:16
30:2    32:4    32:24
33:5    39:7
**motions** [8]           29:8
33:20    34:10    35:24
36:2    36:5    38:21
39:24
**motives** [1]           33:12
**MS** [5]    36:18    41:16
42:5    44:2    44:13
**Mullally** [7]           1:22
2:11    36:18    41:16
42:5    44:2    44:13
**multiple** [2]           28:4
31:6
**must** [1] 6:4
**narrowed** [1]          4:23
**narrowly** [1]          41:4
**naturally** [1]         10:22
**nature** [2]            13:3
16:16
**near** [1] 41:11
**necessarily** [1] 25:15
**necessary** [3]        10:17
20:2    31:24
**need** [21]             17:10
20:22    21:11    25:21
26:12    27:13    28:4
28:20    28:23    31:4
35:6    35:8    35:18
38:10    38:13    38:14
38:19    39:20    41:24
43:9    43:12
**needs** [1]             17:18
**never** [2]             11:20
17:24
**nevertheless** [1]
8:21
**new** [10] 1:23    1:23
5:16    5:24    7:2
7:2    7:14    13:9
24:8    41:2
**news** [2] 22:14    22:18
**next** [3]    2:17    14:25
39:3
**non** [2]    40:19    42:8
**nonanionic** [2]    4:14
4:15
**Nonetheless** [1] 22:21
**nonjury** [2]          26:14
26:21

**nonsensical** [1] 27:9
**normal** [1]            8:17
**normally** [1]         34:13
**Northern** [1]         24:9
**notable** [1]          24:10
**nothing** [2]           7:20
7:23
**notifies** [1]         21:25
**notion** [1]            37:8
**novel** [1]             5:16
**November** [4]          1:11
28:12    28:19    40:7
**now** [14] 3:9          3:14
4:15    5:2    8:8
8:14    9:25    16:9
18:8    23:17    35:11
35:11    37:15    39:21
**number** [1]            25:8
26:25
**o'clock** [1]          40:18
**object** [1]            37:8
**objection** [1]        31:12
**obliged** [1]           17:4
**obviously** [3]        16:21
17:8    30:25
**occur** [1]            34:20
38:15
**October** [1]           2:21
**off** [6]    2:13    4:24
6:25    10:23    28:12
35:10
**office** [4]            2:7
5:9    5:14    5:22
**officers** [1]         32:20
**old** [2]    12:20    13:4
**once** [1] 39:2
**one** [44] 3:4    3:16
4:13    4:18    5:6
5:7    6:21    7:22
9:12    9:12    10:16
12:22    17:15    18:2
18:7    18:18    19:16
20:11    21:4    21:19
23:11    24:10    24:19
27:13    27:25    28:6
28:6    28:6    29:15
29:16    29:17    33:19
33:23    33:24    34:7
34:11    35:10    36:6
36:25    37:20    38:10
39:9    40:9    40:12
**one-term** [1]         10:16
**ones** [1] 31:4
**ongoing** [2]          32:15
37:8
**open** [1] 30:23
**opening** [1]          42:19
**operates** [1]         32:18
**opinion** [1]          41:12
**opponent** [1]         21:10
**opportunity** [5] 24:4
32:5    33:2    37:2
37:19
**opposed** [1]           8:17
**opposition** [1]       17:19

**options** [1]          39:22
**oral** [1]    18:25
**order** [1]             2:16
17:10    17:11    40:16
40:21    42:15    42:31
42:22    44:25    45:2
45:4
**orders** [1]            29:6
**ordinary** [1]         21:20
22:3
**organizations** [1]
16:23
**original** [1]          5:10
**originally** [1]        5:9
**Orrick** [2]            1:23
2:10
**otherwise** [1]         5:17
17:23    33:6    45:7
**ought** [2]             16:3
40:11
**ours** [2]    6:19    28:3
**ourselves** [2]        30:17
37:20
**outset** [1]           15:22
**overburden** [1] 41:30
**oversee** [1]           17:4
**oxychloro** [3]         5:11
5:14    5:18
**P.A** [1]    1:18
**P.C** [2]    1:16    1:18
**p.m** [2]    1:11    45:10
**pages** [1]             20:5
**parameters** [1]        9:2
**parent** [7]            3:17
3:18    4:5    4:24
5:5    6:6    6:22
**particular** [2]        17:9
21:12
**parties** [12]          2:19
10:7    17:22    19:13
24:3    24:17    31:14
32:3    33:12    41:6
44:4    45:6
**parties'** [2]          16:6
17:8
**pass** [1] 37:18
**passed** [1]           15:18
**past** [5] 4:9    4:10
8:19    12:3    34:24
**patent** [48]           3:23
3:24    4:10    4:21
4:24    5:2    5:7
5:9    5:10    5:12
5:14    5:22    6:3
6:13    6:14    6:17
6:24    6:25    7:16
7:25    8:3    9:12
9:18    9:19    9:21
9:25    10:16    10:17
11:8    13:18    15:4
15:5    15:11    15:19
16:7    16:11    19:16
22:8    22:23    23:3
23:23    24:24    25:9
26:6    28:6    29:17
44:9    44:16

**patents** [13]          3:8
3:9    3:9    3:10
3:10    3:16    5:6
11:9    11:20    12:18
28:5    43:4    43:13
**patients** [1]         13:13
**people** [1]           13:3
**per** [3]    19:16    29:17
43:23
**percent** [9]           7:5
7:7    7:8    7:15
7:21    12:21    20:20
21:6    25:5
**perfectly** [1]         37:6
**perhaps** [5]          26:13
31:13    41:20    42:12
43:19
**period** [2]           44:19
45:4
**permission** [6]       8:25
18:12    32:3    32:7
32:8    38:12
**permit** [5]            2:23
29:21    35:3    35:4
35:5
**permitted** [6]        11:14
11:15    11:22    28:15
28:23    29:23
**person** [1]            22:3
**persons** [1]          14:19
**perspective** [2] 37:2
44:9
**persuasive** [1]       25:14
**pH** [4]    4:3    13:2
13:5    13:5
**pH's** [1] 13:11
**Pharma** [1]           24:25
**phone** [2]            37:24
40:13
**phrase** [4]            6:2
6:3    6:4    9:12
**pick** [1] 31:4
**picking** [1]          43:24
**place** [1] 20:22
**plaintiff** [14]        2:16
2:24    16:17    17:19
19:6    26:20    27:3
30:24    32:5    33:7
36:7    37:14    43:7
43:16
**plaintiffs** [3]        1:5
1:19    28:11
**plaintiffs'** [3]       27:7
30:18    44:8
**play** [1] 19:7
**plenty** [1]           35:15
**point** [10]           21:12
23:11    23:12    25:13
25:15    26:12    35:10
35:20    41:2    41:3
**pointed** [1]          21:24
**points** [1]           23:12
**poor** [1] 33:11
**position** [4]          17:8
17:11    19:5    44:12
**positions** [1]         17:9

**possession** [1]       21:20
**possibility** [1]       9:22
**possible** [4]         13:3
30:6    30:11    32:2
**possibly** [1]         41:23
**post-briefing** [1]
34:20
**potential** [2]        38:10
39:19
**potentially** [5]      6:17
8:8    19:13    34:6
35:8
**practice** [3]         15:19
28:25    32:6
**practitioners** [1]
11:8
**precedent** [2]        25:17
35:15
**prejudice** [1]        15:22
19:6
**preliminary** [1] 7:2
**prepared** [2]         19:15
27:14
**preparing** [1]        44:25
**present** [1]          17:16
**presents** [1]          3:7
**preservative** [5]
5:11    5:11    5:14
5:18    5:19
**preserve** [1]         28:21
**press** [1] 42:24
**pressure** [1]         3:20
**presumption** [1]
32:19
**pretrial** [9]         40:2
40:16    40:18    42:12
42:15    44:22    44:25
45:2    45:4
**previous** [1]         11:11
**previously** [1]        7:4
**proceed** [2]          27:13
31:7
**process** [27]         8:25
9:10    9:11    16:4
16:8    17:21    17:22
18:13    19:7    19:10
26:13    27:21    27:22
28:19    28:23    29:10
29:21    30:2    30:10
30:11    34:13    36:11
37:9    37:12    38:13
40:24    43:2
**produced** [1]         32:16
**product** [14]          3:9
3:19    3:19    3:25
5:4    6:19    7:4
7:4    7:6    8:14
9:7    13:4    13:9
32:13
**products** [2]          3:2
43:18
**professionals** [1]
32:19    32:25
**prohibited** [1]        8:14
**promptly** [1]         36:17
36:22

CondenseIt™

proper - strokes

proper [1]          29:24
properly [1]        6:4
proposal [1]        29:13
propose [3]         27:25
   28:8    37:7
proposed [10]       26:19
   27:3   27:21   30:12
   36:7   37:14   37:15
   37:15  41:11   43:8
proposing [3]       14:22
   23:14   41:14
prosecuted [2]      4:24
   5:13
prosecution [1] 8:4
provide [2]         17:11
   22:17
provided [1]        32:11
provisions [1]      12:2
PTO [1] 15:20
pull [2]  26:3
Purdu [1]
purely [1]          26:18
push [1] 45:5
pushed [1]          19:24
put [14]  7:2    7:5
   14:6   14:24   19:5
   20:21  22:2   24:8
   25:11  27:9   31:5
   38:6   39:2   42:21
putting [1]         43:14
questions [1]       9:17
quickly [1]         8:12
quite [5] 10:22     17:14
   17:15  19:4   36:17
raise [1] 19:19
raised [1]          2:21
raising [1]         10:25
range [1]           39:22
rather [4]          15:2
   27:16  29:21   31:15
reach [4]           39:5
   39:10  39:12   39:15
read [4]  11:6      21:16
   22:18  38:3
reading [1]         21:14
real [3] 28:9       28:10
   37:13
really [4]          9:9
   9:15   9:17   11:4
reason [4]          5:18
   8:11   9:17   34:2
reasons [1]         15:10
receive [2]         12:8
   31:18
received [4]        4:25
   5:6    8:20   31:2
recognized [1]      40:14
recognizing [1] 33:4
record [2]          18:22
   23:16
redo [1] 24:14
reducing [2]        13:11
   26:25
referral [1]        44:5

referred [1]        11:17
referring [1]       23:18
regard [3]          8:3
   9:12   24:24
regarding [1]       2:22
Regardless [1]      26:16
regime [1]          17:12
regulatory [1]      32:12
reject [1]          15:21
   25:19
rejected [4]        4:7
   4:8    5:15   6:7
relates [2]         7:20
   33:25
relevant [3]        3:11
   3:16   29:25
rely [1] 14:17
remaining [2]       9:23
   40:12
remains [1]         40:19
repeatedly [1]      25:5
reply [1] 42:19
report [2]          10:24
   12:19
Reporter [1]        45:12
request [2]         18:11
   26:7
requests [2]        36:17
   36:22
require [6]         18:21
   35:11
required [6]        5:22
   6:7    7:18   12:8
   31:20  31:21
requirement [2] 5:21
   10:8
requires [5]        6:13
   7:12   14:23   15:2
   24:17
requiring [1]       31:8
RESEARCH [1]
   1:8
resist [1]          32:24
resolve [3]         8:15
   16:24  21:17
resolved [2]        3:5
   30:9
respect [12]        13:15
   14:13  15:4   15:17
   18:5   23:11   23:12
   23:18  23:25   24:23
   30:23  37:4
respond [4]         2:4
   2:12   30:22   37:17
responding [2]      12:15
   13:23
response [2]        5:17
   29:13
responses [1]       36:16
resubmit [1]        15:24
resubmitted [1] 15:25
result [1]          13:22
review [3]          18:21
   18:22   18:22

revised [1]         7:14
Richardson [4] 1:16
   1:18   2:3    2:6
right [15]          3:14
   8:12   18:11   19:7
   20:16  20:17   21:2
   27:11  36:20   39:12
   39:23  44:10   44:10
   44:14  44:17
rights [3]          16:17
   23:23   44:9
road [3]  6:18      19:4
   32:6
Robinson [2]        34:13
   34:24
Rochester [3]       9:15
   21:9   22:6   22:8
   22:11   24:23
rolls [1] 37:13
room [1] 40:5
roughly [1]         16:11
rule [6]  10:12     12:11
   12:19   36:20   42:23
   45:8
rules [2] 33:5      33:6
   37:9
ruling [1]          44:23
rulings [2]         34:7
   35:13
SALES [1]           1:4
says [9]  15:11     15:12
   19:6   20:20   21:8
   21:9   21:21   24:16
   34:4
schedule [8]        14:22
   26:17  26:22   27:3
   30:13  32:8   38:17
   42:22
schedules [1]       28:8
scheduling [4]      2:16
   29:6   42:21   42:22
scientists [1]      14:18
screen [1]          22:20
screening [2]       22:16
   22:24
SEC [20] 4:14       4:15
   4:16   4:19   5:3
   5:21   5:25   6:5
   6:7    6:8   6:13
   6:16   6:19   6:19
   6:20   8:6   10:10
   10:11   15:4   33:25
second [3]          15:4
   28:18   33:21
seconds [1]         40:2
SECs [3]            4:8
   4:13   4:14
see [8]  12:19      27:24
   37:20  38:3   39:5
   39:16  43:19   44:17
seek [6]  8:24      9:9
   25:3   29:14   29:24
   30:19
seeking [5]         8:10
   30:24  32:7   32:8
   32:12
seeks [1]           23:22

select [1]          4:19
send [1] 2:15
sense [6]           27:4
   32:16  33:15   34:9
   42:15   44:5
sensitive [1]       17:17
separate [4]        4:22
   5:12   28:5   35:14
separating [1]      28:14
September [2]       2:22
   12:14
served [3]          36:17
   36:19   36:21
set [6]   2:16      18:13
   29:5   37:24   38:9
   43:20
setting [1]         29:7
settled [1]         24:4
settlement [1]      43:4
seven [2]           43:19
   43:20
share [1] 3:17
Shaw [5]            1:20
   2:9    2:9   38:6
   42:16
short [2] 20:4      37:10
shortly [1]         39:4
shot [3]  35:11     35:11
   39:9
show [2] 14:6       19:18
showing [1]         16:18
shows [1]           23:6
side [6]  11:18     12:21
   13:13   18:3   36:23
   43:18
signature [1]       2:17
simple [2]          24:19
   25:8
simply [3]          7:18
   8:3    21:17
simultaneously [2]
   5:20   19:15
sincere [1]         31:10
Singer [31]         1:17
   2:6    2:8   10:22
   19:24   20:11   21:18
   25:4   25:25   27:19
   29:3   29:23   30:21
   31:17   35:22   36:12
   36:16   36:19   36:25
   38:22   40:8   40:22
   41:10   41:20   42:9
   43:6   43:10   43:13
   44:3   44:6   44:8
situation [1]       8:17
situations [1]      19:23
six [2]   6:10      16:10
skill [3] 14:19     21:20
   22:3
SLEET [1]           1:13
slightly [2]        13:5
   13:5
so-called [1]       37:12
sold [1] 7:4
solubility [9]      4:2

4:18     6:2     9:12
15:6     15:8    15:9
15:12    15:13
someone [1]         21:25
sometime [2]        30:2
38:24
somewhat [1]        27:22
soon [2] 8:13       33:6
sooner [1]          29:21
31:15
sort [9]  6:18      10:23
   12:5   12:6   30:2
   31:3   31:21   37:7
   44:10
sought [5]          3:2
   3:3    3:18   3:24
   4:5
sounds [3]          33:22
   34:2   34:6
space [1]           9:2
spare [1] 22:7
speaking [1]        33:14
spec [6]  7:19      18:22
   20:8   20:23   20:23
   21:5
specific [1]        19:16
specifically [1] 15:23
specification [15]
   3:18   7:7   7:9
   7:13   7:14   7:21
   8:5   10:20   12:15
   21:16   21:19   22:4
   23:2   25:16   25:18
speedy [1]          17:5
spend [1]           43:24
spoken [1]          24:12
staff [1] 35:7
stage [3] 16:8      21:4
   30:6
stages [1]          37:20
staging [1]         31:13
stand [1]           31:22
standpoint [1]      44:12
Stargatt [1]        1:21
start [2] 2:13
statements [1]      24:22
statute [1]         11:13
statutory [5]       11:7
   11:18   12:2   19:23
   22:10
stay [1] 23:15
stays [1] 23:14
still [3] 10:2      32:4
   32:5
stop [2]  3:4       19:10
straight [1]        13:7
straightforward [6]
   7:10   9:16   18:16
   20:4   25:19   41:8
strictly [2]        6:12
   14:2
strikes [1]         27:2
strokes [2]         2:14
   33:14

**subject** [1]          12:12
**submission** [2] 18:24
  30:12
**submissions** [1]
  26:24
**submit** [2]          15:7
  41:18
**subsequent** [2] 18:25
  26:24
**substance** [1]   13:18
**substantial** [1] 31:20
**succeed** [1]      19:22
**such** [6] 8:15    10:5
  16:4    22:19   22:20
  25:3
**sued** [1] 5:2
**suffering** [1]        3:21
**sufficient** [3]   20:13
  31:18   32:23
**suggest** [4]       7:23
  25:9    41:6    42:23
**suggested** [2]   26:12
  26:17
**suggestion** [1] 40:22
**suggests** [1]     21:11
**summary** [57]     2:23
  3:5    3:12     3:15
  7:17   8:20     8:23
  9:3    9:10     9:14
  11:17  12:12   13:15
  13:21  14:13   16:2
  16:9   17:21   18:11
  19:11  19:17   20:19
  21:7   25:2    27:11
  27:14  27:16   28:11
  28:13  28:15   28:19
  28:22  29:14   29:21
  30:14  30:19   30:20
  30:24  31:14   32:6
  33:19  34:9    34:19
  35:23  36:5    36:10
  37:7   37:9    38:9
  38:10  38:11   38:21
  39:6   39:10   40:9
  44:20  45:8
**summer** [1]        38:25
**support** [12]      7:14
  7:19   13:23   14:2
  14:7   14:12   14:16
  20:13  20:22   20:23
  21:5   23:8
**supported** [1]    23:2
**supports** [1]    10:20
**surprise** [2]     12:5
  16:5
**surprising** [2]    4:20
  13:10
**surprisingly** [1]
  13:2
**suspect** [2]       14:3
  28:24
**Sutcliffe** [1]     1:23
**sweep** [1]        38:20
**switch** [1]       13:10
  13:10
**table** [2] 23:5   32:18
**tactics** [2]       32:21

32:21
**takes** [1] 23:17
**taking** [1]        19:10
**Taylor** [1]        1:21
**teach** [2] 7:22   22:7
**technology** [1]  17:13
**tee** [1]   31:14
**teleconference** [5]
  29:2    37:25   38:11
  38:14   38:20
**telling** [1]        2:13
**ten** [3]   31:3   42:3
  42:3
**term** [6] 15:6    15:8
  25:5   28:6    33:23
  36:6
**terms** [11]        14:15
  15:16  24:15   26:22
  29:7   30:8    39:19
  43:13  43:17   43:18
  44:25
**testimony** [1]    14:5
**text** [1] 5:24
**Thank** [3]         26:9
  38:23  40:4
**themselves** [1] 33:12
**theoretically** [1]
  35:18
**thereafter** [1]    27:8
**thereby** [1]       13:11
**therefore** [2]   22:17
  32:21
**thinking** [2]      36:4
  42:11
**third** [4] 2:25    3:7
  10:25  24:11
**Thomasch** [50]  1:22
  2:10    2:25    9:11
  9:24   10:4    10:13
  10:15  16:12   16:16
  17:24  18:6    19:9
  20:8   20:18   21:13
  21:21  23:18   24:16
  24:21  26:9    27:6
  28:3   28:9    29:9
  29:16  30:16   31:6
  32:11  32:15   33:3
  33:9   33:24   34:3
  34:17  34:23   35:2
  35:9   35:17   36:3
  36:24  37:13   37:19
  39:3   39:9    39:15
  39:21  39:25   40:4
  40:5
**thought** [5]        4:19
  13:3   33:18   33:23
  43:16
**three** [9] 3:10   3:10
  3:16   37:3    42:18
  43:4   43:15   43:16
  45:3
**three-page** [1]  42:19
**threshold** [1]   19:25
**through** [6]       16:3
  27:20  27:20   33:10
  40:24  41:7
**tie** [1] 34:9

**Tim** [1]  2:2
**times** [2]         8:20
  20:18
**TIMOTHY** [1]   1:15
**today** [10]        12:6
  12:10  17:20   18:10
  21:24  31:2    31:10
  32:4   36:18   36:21
**together** [1]     34:20
**too** [1]   5:9
**transferred** [1]  11:2
**triable** [1]        6:18
**trial** [25] 10:11  11:24
  16:5   16:20   23:10
  23:15  23:25   26:17
  26:21  26:23   27:8
  28:4   29:19   30:25
  31:7   35:19   40:10
  43:3   43:4    43:11
  43:16  43:20   43:21
  44:18  44:21
**true** [1] 23:13
**truly** [1] 31:11
**try** [7]   10:3    10:4
  12:5   19:20   26:25
  28:21  37:20
**trying** [1]         13:7
**twice** [2]          8:19
  16:10
**two** [32] 3:11    3:14
  5:6    11:12   12:17
  18:8   19:16   19:22
  20:3   23:11   24:22
  29:15  29:16   29:17
  29:19  30:10   30:11
  31:2   31:7    34:3
  34:7   35:8    35:23
  36:21  37:3    37:20
  38:9   43:3    43:6
  43:9   43:13   43:15
**two-month** [1]    28:7
**type** [3] 3:25    10:10
  10:11
**types** [2]          4:8
  11:9
**typical** [1]       32:6
**typically** [1]    41:11
**U.S** [1]  15:20
**U.S.D.C.J** [1]    1:13
**ultimately** [5]    5:8
  5:25   11:14   20:25
  36:6
**unable** [1]       16:24
**unasserted** [1]   6:14
**undecided** [1]   11:12
**under** [12]       11:10
  11:19  11:22   12:2
  13:25  14:11   15:7
  22:2   25:16   32:19
  33:4   39:5
**underline** [1]     5:23
**underlying** [1]  38:13
**understand** [9] 13:16
  14:10  17:20   33:16
  26:8   34:18   38:19
  39:3   39:21

**understood** [1] 36:3
**undertaken** [1] 30:3
**unexpected** [1]  4:21
**unfair** [1]        16:5
  37:6
**Unfortunately** [1]
  16:23
**university** [3]   9:15
  22:15  24:23
**unusual** [1]     16:16
**unusually** [1]    5:20
**up** [17]   7:6    7:15
  17:13  20:20   21:5
  21:6   25:6    25:6
  26:2   26:2    26:4
  29:5   31:14   34:4
  34:20  38:16   41:22
**upper** [12]        7:3
  7:9    12:16   20:20
  22:12  22:24   24:24
  24:24  25:8    25:10
  25:17  25:18
**urgent** [1]       19:2
**used** [3] 3:19    4:3
  25:2
**uses** [1] 4:17
**usually** [1]      45:5
**v** [1]   1:6
**variety** [2]      15:10
  24:6
**various** [2]      12:21
  23:3
**Veronica** [2]     1:22
  2:11
**versus** [4]       24:25
  26:14  40:19   42:8
**victory** [1]      18:7
  18:8
**view** [11]          2:22
  12:4   22:3    28:2
  30:19  31:7    31:18
  32:18  36:9    38:5
  44:4
**viewed** [1]      11:13
**vigorous** [1]     17:7
**vigorously** [1] 19:24
**vindication** [2] 23:23
  44:9
**violated** [1]    15:15
**violating** [1]   15:14
**Vioxx** [1]       22:14
**viscosity** [1]    10:6
**voiced** [1]      31:12
**voluminous** [1] 32:16
**W** [1]   1:20
**wanting** [1]     34:15
**warrant** [1]      3:15
**weeks** [3]       36:21
  43:9   45:5
**welcome** [2]     24:3
  24:16
**well-documented** [1]
  4:9
**well-grounded** [1]
  11:25

**whatnot** [1]      40:25
**whatsoever** [2]  7:12
  8:7
**wherein** [1]     15:13
**white** [1]        24:15
**whole** [1]       19:20
  44:3
**willfulness** [6] 40:20
  41:3   41:10   41:12
  41:14  42:5
**willing** [7]      29:19
  30:5   30:10   30:17
  31:16  31:17   32:3
**willingness** [1] 31:12
**Wilmington** [1] 1:10
**win** [1]  19:19
**wish** [1] 19:10
**withdrawn** [1] 15:22
**within** [2]       3:11
  37:20
**without** [6]      3:6
  14:5   15:22   16:18
  31:8   35:13
**witness** [1]     43:17
**wonder** [1]     39:25
**wondering** [1]  34:9
**word** [4] 7:7    7:8
  10:20  21:22
**words** [1]        6:10
**works** [1]       45:5
**wrapper** [1]     20:7
  20:8
**writing** [1]     18:13
**written** [8]      7:10
  7:11   7:21    13:23
  18:24  20:13   21:18
  34:5
**year** [2] 14:25  23:16
**years** [6] 14:24  14:24
  15:2   15:2    16:10
  44:15
**yet** [3]  16:14   31:12
  33:13
**York** [2] 1:23   1:23
**Young** [1]        1:21
**yourself** [1]     19:5

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ALLERGAN, INC., and ALLERGAN          )
SALES, LLC.,                          )
                                      )
              Plaintiffs,             )
                                      )
    v.                                )
                                      )
ALCON INC., ALCON                     )    **Civil Action No: 04-968-GMS**
LABORATORIES, INC., and ALCON         )
RESEARCH, LTD.,                       )
                                      )
              Defendants.             )
                                      )
                                      )

### NOTICE OF DEPOSITION OF OREST OLEJNIK

Pursuant to Rule 30(a) of the Federal Rules of Civil Procedure, defendants, Alcon Inc.,

Alcon Laboratories, Inc. and Alcon Research Ltd. (collectively "Alcon"), by their counsel will

take the deposition upon oral examination of Orest Olejnik, Ph. D. at the offices of Orrick,

Herrington & Sutcliffe LLP, 4 Park Plaza, Irvine, California 92614-2558, commencing at 9.00

a.m. on April 18, 2005, and continuing thereafter until completed.

The deposition will be transcribed by an officer authorized to administer oaths, and may

be recorded by videographic, audiographic, or other means.

Dated: April 11, 2005

Josy W. Ingersoll (No. 1088)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street
Wilmington, Delaware 19801
Tel: (302) 571-6600
Fax: (203) 571-1253

Attorneys for Defendants
Alcon, Inc., Alcon Laboratories, Inc.,
and Alcon Research, Ltd.

Of Counsel:

Daniel J. Thomasch
Brian D. Coggio
M. Veronica Mullally
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, NY 10103
Tel: (212) 506-5000
Fax (212) 506-5151

-2-

## CERTIFICATE OF SERVICE

I, Josy W. Ingersoll, Esquire hereby certify that on April 11, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> William J. Marsden, Jr., Esquire
> Fish & Richardson, P.A.
> 919 N. Market Street, Suite 1100
> Wilmington, DE 19801

I further certify that on April 11, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY FEDERAL EXPRESS

> Jonathan E. Singer, Esquire
> Fish & Richardson, P.A.
> 3300 Dain Rauscher Plaza
> 60 South Sixth Street
> Minneapolis, MN 55402

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (No. 1088)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jingersoll@ycst.com

Attorneys for Defendants

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ALLERGAN, INC., and ALLERGAN )
SALES, LLC., )
                                )
        Plaintiffs, )
                                )
     v. )
                                )       **Civil Action No: 04-968-GMS**
ALCON INC., ALCON )
LABORATORIES, INC., and ALCON )
RESEARCH, LTD., )
                                )
        Defendants. )
                                )

## NOTICE OF DEPOSITION OF CARLOS FISHER

Pursuant to Rule 30(a) of the Federal Rules of Civil Procedure, defendants, Alcon Inc.,

Alcon Laboratories, Inc. and Alcon Research Ltd. (collectively "Alcon"), by their counsel will

take the deposition upon oral examination of Carlos Fisher, Esq. at the offices of Orrick,

Herrington & Sutcliffe LLP, 4 Park Plaza, Irvine, California 92614-2558, commencing at 9.00

a.m. on July 26, 2005, and continuing thereafter until completed.

     The deposition will be transcribed by an officer authorized to administer oaths, and may

be recorded by videographic, audiographic, or other means.

Dated: July 5, 2005

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

_Karen E. Keller_

Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street
Wilmington, Delaware 19801
Tel: (302) 571-6600
Fax: (203) 571-1253
kkeller@ycst.com
*Attorneys for Defendants*
*Alcon, Inc., Alcon Laboratories, Inc.,*
*and Alcon Research, Ltd.*

Of Counsel:

Daniel J. Thomasch
Brian D. Coggio
M. Veronica Mullally
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, NY 10103
Tel: (212) 506-5000
Fax (212) 506-5151

-2-

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire hereby certify that on July 5, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

William J. Marsden, Jr., Esquire
Fish & Richardson, P.A.
919 N. Market Street, Suite 1100
Wilmington, DE 19801

I further certify that on July 5, 2005, I caused a copy of the foregoing document to be served on the following non-registered participants in the manner indicated:

### BY E-MAIL

Jonathan E. Singer, Esquire
Fish & Richardson, P.A.
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (No. 1088)
Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
kkeller@ycst.com

Attorneys for Defendants