# EXHIBIT D

                    2005-08-04 Ryan Rough.txt
       PATRICK RYAN        ROUGH DRAFT        8/4/2005
                                                              1

 1            THE VIDEOGRAPHER:  This is the videotaped
 2 deposition of Pat Ryan, taken by the plaintiff in the
 3 matter of Allergan, Inc., Allergan Sales, LLC, versus
 4 Alcon, Inc., Alcon Laboratories, Inc. and Alcon Research
 5 LDD, Case Number 04-968-GMS in the United States
 6 District Court for the District of Delaware.
 7            This deposition is being held at the office of
 8 Kelly Hart and Hole in Fort Worth, Texas, on August 4th,
 9 2005.
10            The court reporter is Lisa Blanks, and I am
11 Stephen Taylor, the videographer.  We are both here from
12 the firm Benchmark Reporting Agency in Minneapolis,
13 Minnesota.  We're going on the record at 9:02.
14            Will counsel please state their appearances
15 for the record at this time?
16            MR. SINGER:  Jonathan Singer Fish & Richardson
17 for the plaintiffs.
18            MR. SHEAR:  Chad Shear, Fish & Richardson for
19 the plaintiff.
20            MS. MULLALLY:  Veronica Mullally, Orrick,
21 Herrington & Sutcliffe for Alcon.
22            THE VIDEOGRAPHER:  Will the court reporter
23 please swear in the witness?
24
25
       PATRICK RYAN        ROUGH DRAFT        8/4/2005
                                                              2

 1                    PATRICK RYAN,
 2 having been first duly sworn to tell the truth, the
 3 whole truth, and nothing but the truth, was examined

2005-08-04 Ryan Rough.txt

24 work product.

25    Q.    BY MR. SINGER:  Are you going tow follow your

PATRICK RYAN        ROUGH DRAFT        8/4/2005

51

1 counsel's instruction

2    A.    Yes.

3    Q.    By the time you had -- by this date, July 6,
4 2004, had you obtained an opinion of the counsel with
5 respect to the 337 patent?

6          MS. MULLALLY:  I'm going to instruct you not
7 to answer on the basis of attorney-client privilege and
8 work product.

9    Q.    BY MR. SINGER:  Are you going to follow your
10 counsel's instruction

11    A.    Yes.

12    Q.    BY MR. SINGER:Can we stipulate that every time
13 you give that instruction he's going to follow it.  Can
14 you stipulate to that that I won't have to ask it,
15 Mr. Ryan.  And you won't object that I don't ask that
16 question

17          MS. MULLALLY:  Yes.

18    Q.    BY MR. SINGER:  Mr. Ryan, the prior pages of
19 the document we've marked as Ryan 10, with respect to
20 the 337 patent, the file history of the 337 patent, do
21 though not

22    A.    Yes.

23    Q.    Did you review the file history?

24    A.    Yes.

25    Q.    Did you come up with these arguments?

PATRICK RYAN        ROUGH DRAFT        8/4/2005

52

1          MS. MULLALLY:  Objection, we've already told

2005-08-04 Ryan Rough.txt

```
 2 you we're not going to have this witness testify what
 3 the basis for the opinions and statements in this
 4 letter.  I'm going to instruct you no the to answer on
 5 the base of attorney-client privilege and work product.
 6      Q.   BY MR. SINGER:  when did you obtain the file
 7 history of the 337 patent
 8      A.   I don't remember.
 9      Q.   BY MR. SINGER:  Did you review the file
10 history of the 210 patent that we've marked as Ryan 4
11      A.   Yes.
12      Q.   when did you obtain that?
13      A.   I don't remember.
14      Q.   Is there an estimate of when you obtained it
15 that you can recall?
16           MS. MULLALLY:  Objection, asked and answered.
17           THE WITNESS:  Not in time, but shortly after
18 the issuance of the 210 and then again shortly after the
19 issuance of the 337.
20      Q.   BY MR. SINGER:  Did you conduct a prior art
21 search in connection with the document marked Ryan 10
22      A.   Yes.
23      Q.   when did you conduct the prior art search?
24      A.   I don't remember.
25      Q.   who did the prior art search?
         PATRICK RYAN      ROUGH DRAFT     8/4/2005
                                                         53
 1      A.   I did.
 2      Q.   Did you have any assistance in the prior art
 3 search?
 4      A.   Yes.
 5      Q.   who assisted in you the prior art search?
 6           MS. MULLALLY:  You can answer that question if
```

2005-08-04 Ryan Rough.txt
7 it doesn't require you to reveal attorney work product
8 information.
9        THE WITNESS:  A literature searching person in
10 our -- that works at Alcon.
11    Q.   BY MR. SINGER:  Did you hire outside counsel
12 to help you with a prior art search
13        MS. MULLALLY:  You can answer that question if
14 it doesn't require you to give attorney work product
15 information.
16        THE WITNESS:  I didn't hire any outside could
17 you please to conduct a prior art search of this letter.
18    Q.   BY MR. SINGER:  Did you hire outside counsel
19 to help with this they are
20        MS. MULLALLY:  Emgoing to instruct you not to
21 answer that question on the basis of attorney-client
22 privilege and work product.
23    Q.   BY MR. SINGER:  Was this letter provided to
24 management at Alcon
25    A.   I don't remember if this letter was.
   PATRICK RYAN      ROUGH DRAFT     8/4/2005
                                                    54
1    Q.   BY MR. SINGER:  Is there a different letter
2 that was provided to management that had these arguments
3 in it
4    A.   I don't think there was a letter.  If there
5 was any remember, it was this one.
6    Q.   Is there a standard procedure at Alcon for
7 preparing paragraph 4 certifications and notice letters
8 such as this?
9        MS. MULLALLY:  You can answer that question if
10 it doesn't require you to reveal attorney-client
11 information.  I don't think there's a standard

Page 45

```
                      2005-08-04 Ryan Rough.txt
12 procedure.
13     Q.    BY MR. SINGER:  Have you done them before
14     A.    Yes.
15     Q.    About how many?
16     A.    Four or five.
17     Q.    With respect to the prior art search do you
18 know when you cone deducted that prior article search?
19           MS. MULLALLY:  Objection, asked and answered.
20           THE WITNESS:  I don't.
21     Q.    BY MR. SINGER:  It was before this letter
22     A.    Yes.
23     Q.    Was it way before, like early in the year or
24 right before?
25           MS. MULLALLY:  Same objection, asked and
          PATRICK RYAN      ROUGH DRAFT       8/4/2005
                                                              55
 1 answered.
 2           THE WITNESS:  I don't remember.  It may have
 3 even started the year before that, and it -- yeah, I
 4 don't remember.  It probably spanned some weeks.
 5     Q.    BY MR. SINGER:  This
 6           MR. SINGER:  In connection with your role on
 7 the Brimonidine PQ team, did you also monitor published
 8 patent applications of Allergan related to ALPHAGAN P?
 9     A.    I think so.
10     Q.    With respect to the prior art search, was this
11 a thorough search that took several weeks as you said?
12           MS. MULLALLY:  You can answer that question if
13 it doesn't require you to reveal attorney clients
14 privilege or work product information.
15           THE WITNESS:  I think it was fairly thorough.
16 The reason why it took several weeks and maybe longer
```

2005-08-04 Ryan Rough.txt
17 than that is not just because of how thorough this
18 search was, but because of other assignments.
19    Q.   But you were satisfied the search was
20 thorough?
21    A.   I was.
22    Q.   Have you received an opinion of counsel on the
23 solubility testing identified in Ryan 5 and Ryan 6?
24         MS. MULLALLY:  I'm going to instruct you not
25 to answer on the basis of attorney-client privilege and

PATRICK RYAN     ROUGH DRAFT     8/4/2005
                                                        56
1 work product.
2    Q.   BY MR. SINGER:  Have you received opinion of
3 counsel on infringement of the 337 patent and suit which
4 you've identified as Ryan 7?
5         MS. MULLALLY:  Same instruction.  I instruct
6 you not to answer.
7         MR. SINGER:  Did you prepare either of those?
8 Either a opinion of counsel or solubility or opinion of
9 counsel on infringement of the 337 patent.
10        MS. MULLALLY:  I'm going to instruct you not
11 to answer on the basis of attorney-client privilege and
12 work product.
13   Q.   BY MR. SINGER:  Rather than repeatedly noting
14 my objections on the record, I believe that all of this
15 have been waived by the production of the solubility
16 testing
17        MS. MULLALLY:  Well, I can let you answer
18 whether you prepared an opinion of counsel with respect
19 to solubility.
20        MR. SINGER:  You can?
21        MS. MULLALLY:  Yeah, he can answer.

2005-08-04 Ryan Rough.txt
21  A.  No.
22  Q.  Who is your supervisor?
23  A.  My supervisor is James Arno.
24  Q.  He's general counsel?
25  A.  He was chief patent counsel.

PATRICK RYAN        ROUGH DRAFT        8/4/2005
                                                82

1   Q.  Did you inform Mr. Arno of what you were doing
2 with respect to the solubility studies that we
3 identified today?
4   A.  At least superficially, yes.
5   Q.  What does that mean?
6   A.  The fact that I was doing those things, I
7 mentioned to him.
8   Q.  Did you accepted him an e-mail or telephone
9 him?
10  A.  No, I would have just told him.
11  Q.  Was he involved in the decision to do those
12 tests that we've talked about today?
13  A.  No.
14  Q.  So these were -- at the legal level you were
15 the decision maker to do the tests?
16  A.  Yes, I think so.
17  Q.  Mr. Ryan, I asked you some questions about the
18 paragraph 4 letter about the file history of the 337
19 patent.  Do you recall those questions?
20  A.  Yes.
21  Q.  I neglected to ask about the file issue of the
22 834 patent did you also review the file history of the
23 834 patent before signing the 4 certification?
24  A.  I think so.
25  Q.  You think so or do you know so?

```
                  2005-08-04 Ryan Rough.txt
   PATRICK RYAN      ROUGH DRAFT      8/4/2005
                                                      83
```

1   A.   I know I would have done it.  I can't remember
2 doing it.
3   Q.   Did you obtain the file history before signing
4 the paragraph 4 certification?
5   A.   Yes, I must have and if I retained it I know I
6 reviewed it so the appears is yes.
7   Q.   I have no further questions at this time.  I'm
8 not going to conclude the deposition subject to my
9 objection about the scope of the privilege waiver.  I
10 think that you waived privilege on these testings and I
11 really don't think that any of the questions I asked
12 today were outside the scope of what a waiver would
13 encompass so subject to that I adjourn the deposition
14 until we get some closure on that issue.
15       MS. MULLALLY:  Okay, I'll take that under
16 advisement.  I have no questions.
17       THE VIDEOGRAPHER:  Off the record at 1204.
18
19
20
21
22
23
24
25

# EXHIBIT E



# ORRICK

ORRICK, HERRINGTON & SUTCLIFFE LLP
666 FIFTH AVENUE
NEW YORK, NY 10103-0001

tel 212-506-5000
fax 212-506-5151

WWW.ORRICK.COM

M. Veronica Mullally, Esq.
212-506-5106
vmullally@orrick.com

July 12, 2005

**VIA FACSIMILE**

Michael Kane, Esq.
Fish & Richardson P.C.
3300 Dane Rauscher Plaza
60 South Sixth Street
Minneapolis, Minnesota 55402

Re: *Allergan Inc. v. Alcon Inc.*, 04-968-GMS

Dear Michael:

I write in response to your letter of July 6, 2005. Alcon has produced all non-privileged documents responsive to Requests Nos. 18, 28, 29, 31, 33, 34, 44. With regard to Request No. 48, Alcon will produce documents related to market studies for alpha-2-adrenergic glaucoma drugs including Alphgan®P and Alcon's proposed product. A small production in this respect will be made in the next few days along with a few additional documents that have been uncovered during the preparation of the privilege log.

Alcon will supplement its response to Interrogatory No. 1 in due course. Alcon is still in process of reviewing the prior art and will provide its contentions with regard to invalidity at the appropriate time during expert discovery.

Sincerely,

*Veronica Mullally*

M. Veronica Mullally

cc: John W. Shaw, Esq.



ORRICK, HERRINGTON & SUTCLIFFE LLP
666 FIFTH AVENUE
NEW YORK, NY 10103-0001

tel 212-506-5000
fax 212-506-5151
WWW.ORRICK.COM

**FAX TRANSMISSION**

DATE  7/12/05

NO. OF PAGES
(INCLUDING COVER SHEET)

**FROM**

| name | tel |
|---|---|
| M. Veronica Mullally, Esq. | (212) 506-5106 |

**TO**

| name | company/firm | tel | fax |
|---|---|---|---|
| Michael Kane, Esq. | Fish & Richardson, P.C. | (612) 337-2502 | (612) 288-9696 |
| John W. Shaw, Esq. | Young, Conaway, Stargatt & Taylor | (302) 571-6689 | (302) 576-3334 |

RE   Allergan v. Alcon

MESSAGE

C-M-A   11716.2004   6459

Originals Will Not Follow

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL ANOUCHE MARDIROSSIAN AT 212-506-5067 AS SOON AS POSSIBLE.

notice to recipient
THE INFORMATION CONTAINED IN THIS FACSIMILE TRANSMISSION IS INTENDED TO BE SENT ONLY TO THE STATED ADDRESSEE OF THE TRANSMISSION. IT MAY BE PROTECTED FROM UNAUTHORIZED USE OR DISSEMINATION BY THE ATTORNEY-CLIENT PRIVILEGE, THE ATTORNEY WORK-PRODUCT DOCTRINE, OR ANY OTHER APPLICABLE PRIVILEGE. IF YOU ARE NOT THE STATED ADDRESSEE, YOUR RECEIPT OF THIS TRANSMISSION WAS UNINTENDED AND INADVERTENT, AND YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. YOU ARE ALSO ASKED TO NOTIFY US IMMEDIATELY BY TELEPHONE AND TO RETURN THE ORIGINAL DOCUMENT TO US IMMEDIATELY BY MAIL AT THE ADDRESS ABOVE. THANK YOU IN ADVANCE FOR YOUR COOPERATION.