IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALLERGAN, INC., and ALLERGAN SALES, LLC., <br><br> Plaintiffs, <br><br> v. <br><br> ALCON INC., ALCON LABORATORIES, INC., and ALCON RESEARCH, LTD., <br><br> Defendants. | Civil Action No: 04-968-GMS |

## ALCON'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ITS ANSWER

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600

Attorneys for Defendants
Alcon, Inc., Alcon Laboratories Inc.,
and Alcon Research, Ltd.

OF COUNSEL:

ORRICK, HERRINGTON & SUTCLIFFE LLP
Daniel J. Thomasch
M. Veronica Mullally
666 Fifth Avenue
New York, NY 10103
(212) 506-5000

Dated: August 17, 2005

## TABLE OF CONTENTS

                                                                                                    **Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .............................................................................................................................. 4

I.   ALCON'S MOTION TO AMEND IS TIMELY ............................................................. 4

    A.   The Pretrial Order Cannot Reasonably Be Understood to Preclude
        Amendments Based On Facts Developed During Discovery .............................. 4

    B.   Allergan's Delays, Not Alcon's Alleged Lack Of Diligence, Are
        Responsible For The Timing Of Alcon's Motion ............................................... 5

II.  ALLERGAN HAS NOT DEMONSTRATED, NOR EVEN DIRECTLY
    ARGUED, THAT ALCON'S ALLEGATIONS ARE FUTILE ..................................... 8

III. ALLERGAN'S ASSERTIONS OF PREJUDICE ARE INSUPPORTABLE ................. 11

CONCLUSION ......................................................................................................................... 14

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

Bechtel v. Robinson, 886 F.2d 644 (3rd Cir. 1989).................................................................4

Burlington Indus. Inc. v. Dayco Corp., 849 F.2d 1418 (Fed. Cir. 1988)..........................14

Conley v. Gibson, 355 U.S. 41 (1957)........................................................................................4

Dole v. Arco Chem. Co., 921 F.2d 484 (3rd Cir. 1990) ........................................................3

E. Minerals & Chem. Co., 225 F.3d 330 (3rd Cir. 2000) .....................................................5

Enzo Life Sci. Inc. v. Digene Corp., 270 F. Supp. 2d 484 (D. Del. 2003) ....................8, 10

Go Med. Indus. Pty, Ltd. v. C.R. Bard, Inc., Civ. A. No. 1:93cv-1538-HTW, 1995
    WL 605802 (N.D. Ga. July 6, 1995)...............................................................................11

Gonzales v. Comcast Corp., No. Civ.A. 03-445-KAJ, 2004 WL 2009366 (D. Del.
    Aug. 25, 2004) ....................................................................................................................5

Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing
    Virgin Islands, 663 F.2d 419 (3rd Cir. 1981) ................................................................4

Manildra Milling Corp. v. Ogilvie Mills, Inc., Civ. A. No. 86-2457-S, 1991 WL
    17610 (D. Kan. Jan 31, 1991) ..........................................................................................6

Mylan Pharm., Inc. v. Kremers Urban Dev., No. Civ.A. 02-1628 GMS, 2003 WL
    2211586 (D. Del. Nov. 14, 2003) ....................................................................................4

Paragon Podiatry Lab., Inc. v. KLM Labs., Inc., 984 F.2d 1182 (Fed. Cir. 1993).............12

Precision Instrument Mfg Co. v. Auto. Maint. Mach. Co., 324 U.S. 806 (1945)..............13

Purdue Pharma L.P. v. Endo Pharm. Inc., 410 F.3d 690 (Fed. Cir. 2005) .........................3

Rhone-Poulenc Agro S.A. v. Monsanto Co., 73 F. Supp. 2d 537 (M.D. N.C.
    1999) .................................................................................................................................11

Rohm & Haas Co. v. Crystal Chem. Co., 722 F.2d 1556 (Fed Cir. 1983) ........................12

Samick Music Corp. v. Delaware Music Indus., Inc., Civ. A. No. 91-23-CMW,
    1992 WL 39052 (D. Del. Feb 12, 1992) .......................................................................13

Smithkline Beecham Corp. v. Apotex Corp., No. 98 C 3952, 2000 WL 116083,
    (N.D. Ill. Jan. 24, 2000) ..................................................................................6

Symbol Tech., Inc. v. Proxim Inc., No. 01-801-SLR, 2003 WL 1905637 (D. Del.
    April 17, 2003) ..............................................................................................12

## RULES

Del. L.R. 7.1.3(c)(2)..................................................................................................6

Fed. R. Civ. P. 6(e) ...................................................................................................1

Fed. R. Civ. P. 9(b) ................................................................................................10

## PRELIMINARY STATEMENT

Apparently focused on the fact that this is not a jury case, Allergan has employed a two-fold strategy in opposing Alcon's motion for leave to amend.[1] On the one hand, Allergan's Brief seeks to poison-the-well through meritless attacks on the motives of Alcon and the conduct of its counsel. At the same time, Allergan looks ahead to a bench trial and seeks a procedural victory to prevent this Court from hearing the clear evidence of Allergan's fraud on the Patent Office that has been developed during discovery. The issue before the Court, however, is not the merits of Alcon's inequitable conduct claim, but instead whether Alcon may conform its pleadings to the evidence that has been developed during discovery so that the case may be decided on the merits. For all its relentless rhetoric, Allergan fails to address three overriding reasons why leave should be granted here.

First, **Alcon did not delay in filing this motion.** Indeed, the facts giving rise to the inequitable conduct claim, and in particular Allergan's fraudulent intent to deceive the Patent Office, as well as the facts upon which Alcon's proposed misjoinder of inventors defense is pleaded, were developed during the discovery process. Alcon's motion followed promptly after the necessary discovery was gathered. As detailed more fully below, Allergan's brief is flatly wrong in alleging delay, lack of diligence, or untimeliness in connection with the filing of Alcon's motion.

- Allergan's argument that such an amendment needed to be made on or before December 1, 2004, less than ten days into the discovery period

---

[1] Allergan's Brief in Opposition to Alcon's Motion to Amend Its Answer (hereinafter "Allergan's Brief" or "Opp." (D.I. 115)) was filed electronically on August 9, 2005, and was not served by hand. Accordingly, this reply brief has been filed within the time prescribed by Fed. R. Civ. P. 6(e) and section E(5) of the Court's February 8, 2005 order, regarding electronic case filing policies and procedures, the effect of which extended Alcon's time to file its reply brief until and including, August 19, 2005.

(which began following the Rule 16 conference held on November 22, 2004), is facially absurd. Alcon has shown good cause for its motion, by moving for leave to amend promptly after developing the facts pleaded in its proposed Answer.

- Inequitable conduct must be pleaded with particularity. In practice, particularized evidence of intent to deceive is often not fully apparent until the named inventors and others who prosecuted the patents-in-suit are deposed. Such is the case here.

- Allergan's assertion that Alcon waited too long into the discovery period to take the depositions that revealed the extent of Allergan's fraud is also wrong, and does not negate Alcon's "good cause" in any way. The inventors' depositions were required to be taken by the close of fact discovery, and, in fact, were taken long in advance of that date. Moreover, the reason that the inventors' depositions were not taken even earlier is that Allergan withheld material documents necessary for the inventors' depositions, as detailed in the accompanying declaration of M. Veronica Mullally, Esq. ("Mullally Decl.") and the exhibits thereto.

Second, Allergan cannot plausibly argue against the proposition that the allegations within the proposed amendment are properly pleaded, and are case dispositive if proven. To the contrary, Alcon's proposed inequitable conduct counterclaim is specifically pleaded and factually supported. Moreover, it is appropriately made part of this litigation, as it is a defense to the claims against Alcon. The conduct pleaded in the proposed Answer mirrors in part (and goes beyond) that recently held to be inequitable conduct in Purdue Pharma L.P. v.

Endo Pharm. Inc., 410 F.3d 690 (Fed. Cir. 2005), i.e., falsely implying the existence of comparative tests and omitting to inform the Examiner of material facts known to the inventor. The newly-proposed affirmative defense to the asserted claims of the '834 patent, i.e., misjoinder of inventors is sufficient to invalidate that patent, and is supported by evidence developed during discovery, as neither named inventor now claims to have conceived of, or even understands the genesis of, the belatedly-claimed 0.15% limitation.

Third, no prejudice will result to Allergan by the Court's allowing this amended pleading. Apart from the issue of fraudulent intent, the facts surrounding Alcon's proposed inequitable conduct claim and its previously-asserted invalidity defenses involve the same patentability issues and prior art. As to fraudulent intent, it is obvious that Allergan needs no discovery from Alcon to formulate its explanation for its material omissions and misleading representations to the Patent Office. Nor does Allergan need discovery of Alcon to understand who should have been named as inventors of the invention claimed in the '834 patent. Both inequitable conduct and inventorship are fact-intensive determinations, but the facts surrounding Allergan's claimed inventions, and its representations to the PTO, were all known to Allergan before this case commenced. Indeed, in the absence of any pretrial motion to amend the pleadings, it would not be uncommon for a party to move at trial (particularly a bench trial), and for the Court to permit, conforming the pleadings to the evidence. That is all that Alcon seeks to do here, and its request for the same is both timely and appropriate.

Finally, Allergan's Provisional Request for Modification of the Scheduling Order, which would result in delay of the trial in this case, is entirely unwarranted. The exclusivity period to which Allergan was entitled by virtue of its clinical trials on Alphagan®P has long expired. Allergan, however, has wrongfully continued to exclude competition by the assertion of invalid and unenforceable patents, which nevertheless have the effect of precluding FDA

approval of Alcon's proposed product until this case is resolved. Delay of trial is not needed, and would be unfair to Alcon. Allergan's attempt to use Alcon's legitimate right to plead facts developed during discovery as a basis for further extending its wrongful monopoly should summarily be denied.

## ARGUMENT

### I.    ALCON'S MOTION TO AMEND IS TIMELY

As this Court previously recognized: "[t]o ensure that cases are decided on the merits rather than on technicalities, the Court should use strong liberality in considering whether to grant leave to amend." Mylan Pharm., Inc. v. Kremers Urban Dev., No. Civ. A. 02-1628 GMS, 2003 WL 22711586, at *5 (D. Del. Nov. 14, 2003) (citing Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3rd Cir. 1990); Bechtel v. Robinson, 886 F.2d 644, 652 (3rd Cir. 1989); Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing Virgin Islands, 663 F.2d 419, 425 (3rd Cir. 1981)). In this case, "strong liberality" is not needed to justify the granting of Alcon's motion for leave to amend, as the facts clearly demonstrate that Alcon has been diligent in bringing its motion and good cause exists to allow the pleadings to be amended to conform to the evidence.

### A.    The Pretrial Order Cannot Reasonably Be Understood to Preclude Amendments Based On Facts Developed During Discovery

Alcon did not reflexively plead inequitable conduct in its Answer. It seeks to plead that defense now based on: the sworn testimony of Allergan's first-named inventor (Orest Olejnik, Ph.D.), who was deposed on June 23-24, 2005; the absence of any good faith justification for misleading arguments made by the in-house counsel who prosecuted Allergan's patent applications relevant to this case (Carlos Fisher, Esq.), who was deposed on July 20, 2005; and other facts developed to date through discovery, which is continuing. The defenses could

not have been pleaded, and the motion could not reasonably have been brought prior to this discovery, and certainly not by December 1, 2004, <u>nine days after discovery began</u>. Alcon understood the December 1, 2004 deadline to pertain to amendments of a general nature (such as adding parties or patents), without leave of Court. Allergan overreaches by arguing, in effect, that Alcon should be barred from requesting leave to assert allegations (such as inequitable conduct or misjoinder of inventors) that could only be developed through intensive discovery.

Neither of the cases that Allergan cites for the proposition that Alcon's motion should be denied as untimely has any similarity to the facts at issue here. Unlike here, the movant in <u>Gonzales v. Comcast Corp.</u>, No. Civ. A 03-445-KAJ 2004, WL 2009366, at *1 (D. Del. Aug. 25, 2004) sought to add a party and three new claims three months before the joint proposed final pretrial order was due and did not "even attempt[] to establish" the requisite good cause. Similarly, the movant in <u>E. Minerals & Chem. Co.</u>, 225 F.3d 330, 339-40 (3rd Cir. 2000), was found not to have been diligent in seeking to amend its complaint a second time to join two additional defendants. Here, Alcon does not seek to add any new parties, or otherwise fundamentally expand the scope of the case. Alcon seeks only to plead defenses based on facts developed during discovery, including Allergan's misleading declarations and improper arguments to the PTO during the prosecution of the patents-in-suit, which should render those patents unenforceable.

### B. Allergan's Delays, Not Alcon's Alleged Lack Of Diligence, Are Responsible For The Timing Of Alcon's Motion

This Court should not permit Allergan to obstruct Alcon's ability to obtain discovery, and then accuse Alcon of being dilatory in bringing a motion based upon that discovery. Given its conduct during discovery, it is incredible that Allergan would raise the

topic of diligence at all.[2] Understandably, courts have rejected the very tactic in which Allergan now tries to engage. See Smithkline Beecham Corp. v. Apotex Corp., No. 98 C 3952, 2000 WL 116082, at * 7 (N.D. Ill. Jan. 24, 2000) (noting that allowing Plaintiff to "assert delay as a basis for prohibiting Defendants from amending their answer and affirmative defenses would be inequitable inasmuch as [Plaintiff] has been less than diligent in fulfilling its [document] production obligations," and granting Defendants' motion to amend); Manildra Milling Corp. v. Ogilvie Mills, Inc., Civ. A. No. 86-2457-S, 1991 WL 17610, at *2 (D. Kan. Jan 31, 1991) (rejecting delay argument because "any delay on the part of [the movant] was the direct result of a lack of cooperation from [the plaintiff] on discovery matters.").

Allergan's argument that the "lengthy delays in taking [Dr. Olejnik's and Mr. Fisher's] depositions are not due to any actions of Allergan" (Opp. 8) is belied by the record. The depositions were timely taken during the fact discovery period, and could not have been taken sooner because of Allergan's obstructionist tactics. It would have been irresponsible for Alcon to depose either individual before Allergan produced requested documents and answered Alcon's interrogatories, all of which were germane to the issues on which the inventors would testify. As set forth more fully in the accompanying declaration of Veronica Mullally, Esq., Alcon served its first sets of document requests and interrogatories on November 24, 2004 (Opp. 4), but <u>Allergan did not start to produce directly relevant documents until four months later</u>. Indeed, Alcon notified Allergan in writing that its document production was insufficient to permit Alcon to take depositions, and then was required to write to Allergan multiple times

---

[2] Allergan's accusation that Alcon's opening papers did not provide sufficient detail with respect to diligence lacks merit. Alcon's opening brief emphasized the salient facts with respect to its diligence and its accompanying proposed amended answer contains 45 paragraphs of detail with respect to its inequitable conduct allegations. Delaware Local Rule 7.1.3(c)(2) does not require Alcon to foresee and address every conceivable or makeweight argument in its opening brief that may be raised in an opposition brief.

demanding production of the documents responsive to Alcon's requests. [Mullally Decl. at Exs. C-G]. Some of the documents and interrogatory responses have still not been provided in full.

Alcon first sought to depose Drs. Olejnik and Kerslake in April, months before the period for fact discovery ended. Alcon could not meaningfully depose either inventor until Allergan had produced its documents. For this reason, Allergan's refusal to produce the inventors' documents made depositions before April a practical impossibility. Alcon took the deposition of Dr. Olejnik's co-inventor, Dr. Kerslake, in late April, but it proved almost meaningless, as Dr. Kerslake professed not to remember any important facts regarding inventorship, the testing of pertinent compositions, and a number of other topics. In fact, Dr. Kerslake used the same phrase, "can't remember," over eighty times in his five-hour deposition to avoid substantive answers. Allergan did not agree to produce Dr. Olejnik in April, as Alcon sought by notice, and scheduling difficulties prevented that deposition from occurring until June, still months before the close of discovery.

Before moving to amend, Alcon also noticed and took the deposition of Carlos Fisher (the former in-house Allergan attorney responsible for the prosecution of the patents-in-suit), whom Dr. Olejnik testified had shared in drafting the declaration, to provide Allergan with the means to provide some explanation to counter the overwhelming inference of fraud surrounding Allergan's omissions and misstatements to the PTO, if any such explanation existed. Far from providing an exculpatory explanation, or explanations for related statements and omissions that he alone had made in the prosecution histories of the patents-in-suit (See D.I. 107 (Amended Ans.), Ex. A at ¶¶ 70-72), Mr. Fisher repeatedly relied on the attorney-client privilege to shield underlying non-privileged factual information. For example, Mr. Fisher refused to answer: (1) whether he had an understanding as to the solubilizing properties of the compounds disclosed in the Burke '991 patent that played a prominent role in the prosecution history; (2)

whether he asked Dr. Olejnik about the factual underpinnings for the statements in Dr. Olejnik's declaration of purportedly "surprising" results that was used by Allergan to overcome the Burke reference; and (3) whether he was aware that Allergan had previously tested a 0.08% brimonidine tartrate solution as of the date Allergan represented to the PTO that 0.15% brimonidine tartrate solution had "surprising" results.

As Allergan recognizes, Alcon filed its motion "just five days" after Mr. Fisher's deposition. (Opp. 5). Thus, Alcon did not delay in filing its motion for leave to amend its answer. The need to amend <u>based on information developed during discovery</u> satisfies "good cause" under any application of that standard. Allergan's position that Alcon did not demonstrate good cause merely because it did not recite those words in its opening brief (Opp. 6), <u>in haec verba</u>, elevates form over substance. As detailed in Alcon's opening brief and in rebuttal to Allergan's arguments, above, Alcon has been diligent in pursuing discovery and bringing this motion, and good cause exists to allow the pleadings to be conformed to the developing evidence.

## II. ALLERGAN HAS NOT DEMONSTRATED, NOR EVEN DIRECTLY ARGUED, THAT ALCON'S ALLEGATIONS ARE FUTILE

Tellingly, Allergan does not even attempt to directly argue that Alcon's amendment would be futile. Allergan's omission is understandable given the strength of Alcon's allegations and the level of detail provided in Alcon's proposed amendment. <u>See, e.g.</u>, <u>Enzo Life Sci, Inc. v. Digene Corp.</u>, 270 F. Supp. 2d 484, 490 (D. Del. 2003) (citing <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957) (rejecting futility argument because plaintiff had not demonstrated that defendant seeking to add inequitable conduct allegation could "prove no set of facts in support of [its] claim which would entitle [it] to relief.")).

The proposed Amended Answer is very detailed in identifying the false statements, omitted facts and misleading arguments that form the core of Alcon's claims of inequitable conduct. (See D.I. 107, Ex A at ¶¶ 70(a)-(i); 71(a)-(e); and 72(a)-(d)). As pleaded in the proposed Amended Answer, Dr. Olejnik's declaration to the PTO to distinguish the prior art Burke reference – the principal reference cited against both patents-in-suit as well as their parent application – was both materially incomplete and affirmatively misleading. Dr. Olejnik had told the PTO that whereas he had "discovered <u>as a result of work done and/or directed by me</u> at Allergan that CMC possesses the surprising advantage of both increasing the solubility of brimonidine in solution . . . and causing such solutions to have <u>superior</u> adherence to cell surfaces . . . [p]olyvinyl alcohol [which was disclosed in the Burke reference] was <u>found</u> not to possess both of these properties." (D.I. 107, Ex A at ¶ 63 (emphasis added)). Yet Dr. Olejnik could not testify to having performed, or directed, any such comparative experiments to support the alleged advantages of CMC over the other Burke reference. (See D.I. 107 ¶¶ 70, 72). Dr. Olejnik further admitted that PVA was the <u>only</u> polymer listed in Burke that Dr. Olejnik believed would not enhance the solubility of brimonidine (See D.I. 107 ¶¶ 70, 72). In other words, he thought that five of the six Burke vehicles <u>were</u> solubility enhancing components, yet he <u>withheld</u> that highly material fact from the Examiner which strongly evidences his fraudulent intent, as well as that of Mr. Fisher, who fashioned Allergan's "invention of selection" argument to overcome Burke.

Allergan further argues that Alcon's pleading of certain inequitable conduct allegations "on information and belief" at this time "admits that even now, at the close of discovery, it does not have the evidence it needs to support the allegations." (Opp. 11). That is simply incorrect. The key allegations are not pleaded on information and belief. As to those that are, the information comes from Allergan. Moreover, while Alcon believes that the evidence

-9-

that it has already amassed is more than sufficient to render both patents-in-suit unenforceable for inequitable conduct, it continues to seek additional discovery in support of its defense. It appears, however, that judicial intervention will be required to overcome Allergan's stonewalling practices and obtain certain factual information that Alcon has diligently pursued to date.

For example, in respond to inventorship, Alcon continues to try to ascertain who "discovered" the 0.15% limitation that was inserted into the amended claims of the '834 patent without support in the specification, and the extent of Dr. Olejnik's and Mr. Fisher's knowledge of prior art relevant to that limitation. Like Dr. Kerslake, Dr. Olejnik professed to have no recollections whatsoever with respect to the mysterious conception of the critical "0.15% (w/v)" limitation at the heart of the '834 patent. Subsequent interrogatories proved equally futile, as Allergan now asserts that there is no one at Allergan who recalls making the decision to test a 0.15% brimonidine tartrate or informing Dr. Olejnik of that decision, which goes directly to the conception of the invention claimed in the '834 patent. The fact that Allergan itself is unable or unwilling to produce any documents to support the conception of the critical "0.15% (w/v)" limitation of the '834 patent suggests that Allergan has no viable evidence to dispute Alcon's proposed misjoinder of inventors defense.[3]

Even if, as Allergan alleges, Alcon had known of Allergan's material misrepresentations and omissions, and waited to bring its motion until after deposing Dr. Olejnik and Mr. Fisher, it should not be penalized for seeking additional, confirming information – particularly given the pleading requirements of Fed. R. Civ. P. 9(b). See, e.g., Enzo Life Sci., 270 F. Supp. 2d at 489 (rejecting argument that the facts underlying the inequitable conduct

---

[3] Allergan argues that Alcon's allegedly "failing to identify who it was that should or should not have been joined [as an inventor on the '834 patent]" demonstrates that Alcon is "nowhere near meeting" its burden of proof on that issue. (Opp. 12). That is incorrect, as it is enough to show that the named

allegations were available in the patent's prosecution history and noting, because of the Rule 9(b) pleading requirement, that defendant was "prudent and possibly required to confirm the factual allegations through discovery."); Rhone-Poulenc Agro S.A. v. Monsanto Co., 73 F. Supp. 2d 537, 538-9 (M.D. N.C. 1999) (defendant "appropriately fulfilled its obligation to investigate its claim thoroughly prior to making it" by waiting until after key depositions before moving to amend its answer to include inequitable conduct allegations); Go Med. Indus. Pty. Ltd. v. C.R. Bard, Inc., Civ. A. No. 1:93cv-1538-HTW, 1995 WL 605802, at *4 (N.D. Ga. July 6, 1995) (excusing four month delay to confirm information regarding new allegations of inequitable conduct). Finally, the defenses of inequitable conduct and misjoinder of inventors belong in this lawsuit. They are defenses to the alleged patent infringement and should be considered by this Court at any trial of this action.

### III.    ALLERGAN'S ASSERTIONS OF PREJUDICE ARE INSUPPORTABLE

Allergan also argues that it would be prejudiced by Alcon's amendment because written fact discovery is formally closed, it would not be provided "a meaningful opportunity to take deposition discovery or consult with its experts" on the defenses, and Allergan would be denied an opportunity "to seek permission to file summary judgment motions" to dispose of Alcon's defense. (Opp. 9-10).

Although Allergan argues broadly that it would be deprived of discovery, it provides no indication as to what information it would hope to gather from Alcon. See, e.g., Go Med., 1995 WL 605802, at *4 (rejecting argument of prejudice because "[p]laintiff has not indicated the type of discovery it would desire [to] undertake if defendant's motion is granted; in addition, plaintiff does not claim that defendant possesses any documents or other information

---

inventors did not invent the subject matter of the '834 patent. This is particularly true where, as here, Allergan refuses to identify who came up with this key limitation.

that would be relevant to its claims that plaintiff acted inequitably."). Allergan needs no written discovery to determine the bases for Alcon's allegations: Alcon provided a detailed proposed amended answer, which makes clear the bases for its allegations. While depositions of Alcon are not needed to enlighten Allergan of the facts surrounding Allegan's own prosecution of the patents at issue, it bears noting that Allergan has noticed four new depositions since Alcon filed this motion. Moreover, Alcon will not rely on patent law experts at a trial of either the inequitable conduct claims or the misjoinder claim, and thus no additional expert witnesses will be required of Allergan by virtue of this amendment. To the extent scientific experts have any role in Allergan's defense to the inequitable conduct claims, they will be opining on issues common to Alcon's prior invention and obviousness defenses.[4]

      Allergan's claims of prejudice stemming from its purported inability to seek permission to file for summary judgment also ring hollow. Such arguments have been understandably rejected with respect to inequitable conduct. See Symbol Tech., Inc. v. Proxim Inc., No. 01-801-SLR, 2003 WL 1905637, at *3 (D. Del. April 17, 2003) ("[I]nequitable conduct is rarely appropriately decided on summary judgment so defendant's concerns about its ability to brief the issue are not persuasive."). Moreover, it is unfathomable that Allergan could demonstrate that it is entitled to summary judgment in this case, where many of Alcon's allegations concern Dr. Olejnik's declaration. See, e.g., Rohm & Haas Co. v. Crystal Chem. Co., 722 F.2d 1556, 1571 (Fed. Cir. 1983) ("[T]here is no room to argue that submission of false affidavits is not material."); see also Paragon Podiatry Lab., Inc. v. KLM Labs, Inc., 984 F.2d 1182, 1191 (Fed. Cir. 1993) (finding that the inference of intent to deceive the PTO was

---

[4] For this reason, and because all the relevant facts are within Allergan's possession, there is no need to amend the scheduling order, and Allergan's transparent effort to gain an advantage by postponing trial should be rejected.

"strongly supported" by deceptive affidavits, their materiality, "the affirmative acts of submitting them, their misleading character, and the inability of the examiner to investigate the facts.").[5]

Allergan's reliance on Samick Music Corp. v. Delaware Music Indus., Civ. A. No. 91-23-CMW, 1992 WL 39052, at *7 (D. Del. Feb. 12, 1992), for the proposition that it would suffer prejudice from the amendment does nothing to advance Allergan's position. In Samick Music, which is not a patent case, the court found that "[t]he basic issues [that the movant sought to add] are completely separate, the facts to support each of the claims are separate, evidence that would need to be shown are dissimilar, . . . and the only relationship between the two sets of claims is that they involve the same parties." Id. at *9. Here, in contrast, the basic issues, facts, and evidence all overlap. Alcon's anticipation and obviousness allegations in the existing answer implicate the same issues and evidence as the materiality prong of inequitable conduct. Likewise, Alcon's pre-existing written description defense, which is premised on the fact that the "0.15% (w/v)" limitation is absent from the specification, implicates many of the same issues and much of the same evidence as its inventorship allegation (i.e., evidence that the limitation that was added late in prosecution was not part of the named inventors' invention).

In a last-ditch effort, Allergan argues that "the inequitable conduct defense is highly disfavored." (Opp. 12-13). The defense is understandably disfavored when pleaded without evidence. For good reason, courts have been unsympathetic to patent applicants who fail to satisfy their duty of candor, good faith, and honesty. Indeed, it has long been understood that this duty is "uncompromising." Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324

---

[5] If Allergan thinks it can dispose of such factually intense allegations by summary judgment motion, it may seek permission to do so without objection from Alcon, provided only that Allergan not use such an obviously futile motion as a predicate to delay the trial of this case. That, however, appears to be Allergan's real goal.

U.S. 806, 818 (1945). Burlington Indus. Inc. v. Dayco Corp., 849 F.2d 1418, 1422 (Fed. Cir. 1988), upon which Allergan relies, does not suggest otherwise – particularly given the facts of this case. Burlington Indus. involved a motion for summary judgment of inequitable conduct where the attorney who prosecuted the patent application candidly admitted that an ambiguity in the way he had described the invention during prosecution "never occurred to him." Id. at 1419. Recognizing that the application also contained this ambiguity, the court concluded that "[a] summary judgment that a reputable attorney has been guilty of inequitable conduct, over his denials, ought to be, and can properly be, rare indeed." Id. at 1422 (emphasis in original). Here, in contrast, Alcon has alleged detailed facts, and is not moving for summary judgment in any event. And more importantly, the prosecuting attorney of the patents-in-suit, Carlos Fisher, did not explain his error in a manner negating fraudulent intent. He did just the opposite. Mr. Fisher refused to answer any significant questions about his conduct, his knowledge of the underlying facts, or the serious misrepresentations and omissions that he and Dr. Olejnik made.

## CONCLUSION

For the foregoing reasons, and those identified in Alcon's opening brief and in Alcon's proposed Amended Answer, Alcon respectfully requests that the Court grant Alcon's Motion For Leave to Amend Its Answer (D.I. 107) and deny Allergan's Provisional Motion To Amend the Scheduling Order (D.I. 117).

                                        Respectfully submitted,

                                        /s/ Karen E. Keller
                                        Josy W. Ingersoll (No. 1088)
                                        John W. Shaw (No. 3362)
                                        Karen E. Keller (No. 4489)
                                        YOUNG CONAWAY STARGATT & TAYLOR, LLP
                                        The Brandywine Building
                                        1000 West Street
                                        Wilmington, Delaware 19801
                                        (302) 571-6600

                                        Attorneys for Defendants
OF COUNSEL:                           Alcon, Inc., Alcon Laboratories Inc.,
                                        and Alcon Research, Ltd.

Daniel J. Thomasch
M. Veronica Mullally
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, NY 10103
(212) 506-5000

Dated: August 17, 2005

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire hereby certify that on August 18, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>William J. Marsden, Jr., Esquire
>Fish & Richardson, P.A.
>919 N. Market Street, Suite 1100
>Wilmington, DE 19801

I further certify that on August 18, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above captioned individual and upon the following non-registered participants in the manner indicated:

### BY FEDEX

>Jonathan E. Singer, Esquire
>Fish & Richardson, P.A.
>3300 Dain Rauscher Plaza
>60 South Sixth Street
>Minneapolis, MN 55402

>YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
>/s/ Karen E. Keller
>Josy W. Ingersoll (No. 1088)
>Karen E. Keller (No. 4489)
>The Brandywine Building
>1000 West Street, 17th Floor
>Wilmington, Delaware 19801
>(302) 571-6600
>kkeller@ycst.com
>
>Attorneys for Defendants