## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALLERGAN, INC., and ALLERGAN SALES, LLC.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>ALCON INC., ALCON LABORATORIES, INC., and ALCON RESEARCH, LTD.,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No: 04-968-GMS

**CONFIDENTIAL -**
**FILED UNDER SEAL**

## DECLARATION OF M. VERONICA MULLALLY IN SUPPORT OF ALCON'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ITS ANSWER

I, M. Veronica Mullally, declare and state as follows:

1.     I am a member of Orrick, Herrington & Sutcliffe LLP, and am admitted to practice in the State of New York and *pro hac vice* before this Court. I am counsel to Alcon Laboratories, Inc., Alcon Research, Ltd., and Alcon Inc. (collectively "Alcon") in this action. I make this declaration on personal knowledge in support of Alcon's Reply Brief in Further Support of its Motion to Amend Its Answer.

2.     This is a patent infringement action under the Hatch-Waxman Act. The period of regulatory exclusivity for Allergan's drug, Alphagan®P, has expired. Alcon's Section 505(b)(2) application for its proposed drug product, which would compete in the marketplace with Alphagan®P, has been tentatively approved by the FDA. As a result, this lawsuit remains the

only obstacle to the final approval of Alcon's product. Alcon thus has every incentive to seek a prompt conclusion to this case, and has worked diligently toward that end.

3.    The purpose of this declaration is to provide the Court with the facts as to the conduct of discovery and the scheduling of these depositions, since I am the person who was most involved on behalf of Alcon.

4.    Allergan does not contest that Alcon's motion to amend its answer could not have been made before Alcon deposed inventor Olejnik and Allergan's patent attorney Carlos Fisher. In its brief, however, Allergan suggests that Alcon was unduly slow to depose these witnesses, through no fault of Allergan. Not so. The depositions took place well within the discovery period set out in the Scheduling Order. In addition, the depositions could not have taken place sooner, for two reasons. First, Allergan did not provide the documents or interrogatory responses that were necessary for effective depositions. Second, Allergan did not make these witnesses available any earlier in a reasonable manner. Alcon's efforts to obtain discovery, and Allergan's dilatory responses, are set forth in detail below. This declaration does not address the multiple additional discovery issues and deficiencies in Allergan's production of documents, interrogatory answers and witnesses; if necessary, these will be the subject of a separate motion should Allergan continue to ignore its obligations.

**Alcon Expedited Its Document Production**

5.    This action was commenced on August 24, 2004. On August 9, 2004, before this lawsuit began, Alcon produced its entire New Drug Application ("NDA") (18,522 pages) for its proposed drug product to Michael Kane of Fish & Richardson, counsel for Allergan in this action. The production is reflected in a letter dated August 9, 2005, from my partner Brian Coggio to Michael Kane, a true and correct copy of which is attached hereto as Ex. A.

-2-

6.     On November 22, 2004, this Court held an initial pretrial conference, after which discovery began.

7.     In January 2005, Alcon produced 23,944 documents in response to Allergan's November 2004 document requests, and had substantially completed its production of responsive documents by February 28, 2005.

## Allergan Delayed Its Document Production

8.     Alcon served its initial document requests on November 24, 2004, two days after the Rule 16 conference. Although its documents were due in December, Allergan produced no documents at all until February 8, 2005. At that time, Allergan produced the NDA for its commercial product Alphagan®P, but did not produce documents that related directly to the patents-in-suit or the claimed inventions. Allergan did not start to produce such documents until March 2005, and did not complete its production until April 12, 2005 – almost five months after the documents were requested. See Ex. B hereto. Getting those documents required tremendous efforts by Alcon, and even today it is not clear whether all responsive documents have been produced.

9.     Obviously Alcon needed documents concerning the patents-in-suit and the claimed invention, including such basic items as laboratory notebooks and test results, before it could depose the named inventors. Allergan refused to comply with its obligations respecting such documents for over four months. During the period from February 8th through March 15th, I spoke with Mr. Kane by telephone at least 7 times, and during February, March and April, I wrote to him at least four times (see Exs. C, D, E and F hereto), each time imploring him to produce Allergan's documents. Yet Allergan continued to hold back these documents and others, including laboratory reports, data compilations concerning Allergan's product, documents

concerning the patents and the patent applications relating to the patents-in-suit, the named

inventors' files, files from the members of the team that developed Allergan's AlphaganP

product, documents submitted to the FDA in connection with the AlphaganP NDA, and testing,

studies, or evaluations of the solubility enahancing characteristics of any polymer.  In addition,

for certain key categories of documents that it did produce, Allergan insisted on using a June

2000 cut-off date – even though the filing dates of the patents-in-suit were more than two years

later.

        10.     Allergan did not complete its document production until mid-April.  (Ex. B) We

reviewed the 80,000 pages of documents that Allergan ultimately produced as quickly as

possible and immediately realized that they were not provided in the manner required by the

Federal Rules – namely, they were not produced in the order in which they were kept in the usual

course of business, nor were they ordered by category to respond to the document requests.  As a

result, we could not determine whether Allergan had even produced two central groups of

documents:  the documents relating to testing of Alcon's proposed product, Allergan's

commercial product and the solubility enhancing characteristics of any polymers other than

CMC, and the files of the named inventors.  Accordingly, <u>before</u> we deposed the named

inventors, we tried to get some information from Allergan concerning the inventors' files.

        11.     Allergan did not cooperate.  Eleven days after I requested that Mr. Kane identify

any of the inventors' documents within Allergan's 83,000-page production (Ex. F), Mr. Kane

declined to do so.  (Ex. B).  Despite our further requests (Ex. G), Allergan declined to identify

whether it had produced <u>anything</u> from the files of inventors Olejnik and Kerslake.  The

subsequent depositions revealed that Dr. Olejnik testified that he had provided his files "to legal"

(Ex. H at 261) and Allergan's counsel followed up that he had no hard copy files because his

documents would have been shipped to records. (Ex. I). However, Allergan's Rule 30(b)(6) witness on Allergan's production of documents, Christine Garber, testified that she specifically remembered collecting hard copy documents from Dr. Olejnik (Ex. J at 34), which have not yet been produced. Ms. Garber also testified that she did not collect Dr. Kerlake's documents and did not look for any of his documents. (Ex. J at 50). Although Allergan witness, Angel Padilla, testified that Dr. Kerslake did do experimental laboratory work (Ex. K at 72), Allergan has not produced any laboratory notebooks or other documents for Dr. Kerslake.

**Allergan's Refusal To Produce Documents Concerning Related Patents and Testing Data.**

12.    On April 25, 2005, three days before Alcon was to depose inventor Kerslake, I wrote to Mr. Kane again seeking documents regarding testing of the solubility enhancing characteristics of any polymers, or confirmation that no such documents existed. Such documents were, if they existed, necessary for an effective examination of the inventors. In that letter (Ex. L), I also requested production of the file histories of certain published continuation-in-part applications ("CIPs") that Alcon had discovered on the PTO website. These CIPs were taken directly from the application from which the '834 patent-in-suit had issued and were responsive to Alcon's request No. 1, but Allergan had not acknowledged their existence by objection or otherwise in responding to Alcon's document requests. Obviously, such a record before the PTO was germane to Allergan's and its employees' characterization of their inventions.

13.    Allergan has continued to refuse to produce all patent documents responsive to Alcon's requests. On August 15, 2005 Allergan responded to Alcon's request No. 41, which seeks production of documents related to a published patent application United States Serial No. 10/373,275 ("the '275 application") – including an appeal brief filed by Fish & Richardson on

-5-

April 19, 2005. The claims that were added by Preliminary Amendment in the '275 application were word for word identical to those added by Preliminary Amendment in the application from which the '834 patent-in-suit issued. All of the claims in the '275 application were rejected as obvious by Examiner Blessing Fubara (not the same Examiner who allowed the claims in the '834 patent). The brief that Alcon is seeking in production is Allergan's appeal of the final rejection of those claims and Alcon has not been able to obtain it from the PTO as it is not publicly available.

### Depositions of Allergan's Named Inventors and Patent Attorney

14.    In addition to avoiding production of documents relevant to depositions of the named inventors, Allergan also did its best to avoid producing the witnesses for deposition. On April 11, 2005, immediately after Alcon had reviewed Allergan's documents, Alcon noticed the depositions of the inventors Olejnik and Kerlsake and the deposition of Amy Batoosingh (the Allergan employee who had submitted a declaration to the PTO during prosecution of the application that led to the '834 patent-in-suit) for April 18, 19, and 20. (Ex. M).

15.    Allergan refused to produce Olejnik, Kerslake and Batoosingh on the April dates noticed by Alcon, and instead offered Dr. Kerslake for deposition on April 28, 2005. The deposition proceeded on that date. I attended Dr. Kerlsake's deposition and reviewed the transcript thereafter. Dr. Kerslake appeared to have no memory of what the inventions claimed in the patents-in-suit were, or what his contribution to those inventions was. Dr. Kerslake recited the phrase "can't remember" at least 88 times during his five hour deposition. (Ex. N at 137, 139, 188).

16.    Allergan offered (Ex. O) Ms. Batoosingh for May 11, 2005 and Dr. Olejnik for May 18, 2005, right in the middle of Alcon's briefing on summary judgment, claim construction,

willfulness and the jury trial issues in this case. Because of Alcon's briefing obligations, and because Allergan insisted on producing its witnesses in Irvine, California – across the country from the venue it chose for this litigation, and far from Alcon's East coast counsel – Alcon declined to depose the witnesses on those dates, and requested that the depositions be scheduled during a single week, to minimize travel expense. Allergan's next proposal – to produce Dr. Olejnik for deposition in California on May 24 and 25 – conflicted with Alcon's briefing obligations on summary judgment and claim construction, and so, on May 9, I promptly informed Mr. Kane that we could not accept those dates, and requested a date in early June. (Ex. P). Allergan declined to produce Dr. Olejnik for deposition before June 23-24, 2005, so his deposition took place at that time.

17.    On July 5, 2005, shortly after Dr. Olejnik's deposition, Alcon noticed the deposition of Allergan's patent attorney Carlos Fisher. Five days after taking Mr. Fisher's deposition, Alcon filed its motion for leave to amend its answer.

Executed under penalty of perjury of the laws of the United States in New York, New York on this 17th day of August , 2005.

_M. Veronica Mullally_
M. Veronica Mullally

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire hereby certify that on August 18, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> William J. Marsden, Jr., Esquire
> Fish & Richardson, P.A.
> 919 N. Market Street, Suite 1100
> Wilmington, DE 19801

I further certify that on August 18, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above captioned individual and upon the following non-registered participants in the manner indicated:

### BY FEDEX

> Jonathan E. Singer, Esquire
> Fish & Richardson, P.A.
> 3300 Dain Rauscher Plaza
> 60 South Sixth Street
> Minneapolis, MN 55402

YOUNG CONAWAY STARGATT & TAYLOR, LLP


Josy W. Ingersoll (No. 1088)
Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
kkeller@ycst.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire hereby certify that on August 24, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> William J. Marsden, Jr., Esquire
> Fish & Richardson, P.A.
> 919 N. Market Street, Suite 1100
> Wilmington, DE  19801

I further certify that on August 24, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above captioned individual and upon the following non-registered participants in the manner indicated:

### BY FEDEX

> Jonathan E. Singer, Esquire
> Fish & Richardson, P.A.
> 3300 Dain Rauscher Plaza
> 60 South Sixth Street
> Minneapolis, MN  55402

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll  (No. 1088)
Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
kkeller@ycst.com

Attorneys for Defendants

063534.1001