# EXHIBIT 10

LEXSEE

**AMERICAN HIGH-INCOME TRUST, et al., Plaintiffs, v. ALLIEDSIGNAL INC., et al., Defendants.**

**C.A. No. 00-690 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2002 U.S. Dist. LEXIS 3761**

**March 7, 2002, Decided**

**DISPOSITION:** [*1] Motion to transfer venue GRANTED. Matter TRANSFERRED to the United States District Court for the Southern District of New York.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In plaintiff purchasers' cause of action alleging liability under federal securities laws, California statutes concerning misrepresentations in the sale of securities, and common law fraud in connection with the sale of certain bonds, defendant directors filed a motion to dismiss, or in the alternative, to transfer venue.

**OVERVIEW:** The purchasers bought 9 1/4 percent bonds in a company that subsequently filed for chapter 11 bankruptcy protection. The purchasers filed a complaint, alleging federal and state securities laws violations, and fraud. The directors in various companies associated with the sale of the bonds filed a motion to dismiss, or to change venue. The court granted the motion to change venue. The court found that four venue statutes controlled the case. The first two were the specific venue statutes for securities actions, 15 U.S.C.S. §§ 77v and 78aa. The third venue statute was the general venue statute, 28 U.S.C.S. § 1391. The fourth was the bankruptcy venue provision, 28 U.S.C.S. § 1409. The court addressed each statute in turn, and held that none of the venue statutes provided for venue in the court. The directors were neither found in the district, nor were they inhabitants of the district. Regarding transfer, the court found that 28 U.S.C.S. § 1406(a) governed the action, but conducted the 28 U.S.C.S. § 1404(a) "balance of convenience" analysis. It concluded that a New York federal district court was the proper venue to transfer the case.

**OUTCOME:** The court granted the directors' alternative motion to transfer venue in the purchasers' securities law cause of action.

**CORE TERMS:** venue, balance of convenience, convenience, reside, motion to dismiss, Exchange Act, personal jurisdiction, court discussed, collectively, non-party, purchasers, venue statute, giving rise, indemnification, co-conspirator, furtherance, inhabitant, convenient, conspiracy, attendance, transact, remain neutral, present action, proper venue, expensive, above-captioned, unavailable, lawsuit

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
*Civil Procedure > Venue > General Venue*
[HN1] Before a district court may hear a case, it must have both personal jurisdiction and venue.

*Securities Law > Initial Public Offerings & the Securities Act of 1933 > Jurisdiction*
*Securities Law > Additional Offerings, Disclosure & the Securities Exchange Act of 1934 > Scope & Jurisdiction > Federal Jurisdiction*
[HN2] Where both Securities Act and Securities and Exchange Act violations are at issue, the broader Exchange Act venue provision controls. Venue under the Exchange Act is proper in any district where: 1) any act or transaction constituting the violation occurred; 2) the defendant is found; 3) the defendant is an inhabitant; or 4) the defendant transacts any business. 15 U.S.C.S. § 78aa.

*Securities Law > Additional Offerings, Disclosure & the Securities Exchange Act of 1934 > Scope & Jurisdiction > Federal Jurisdiction*
[HN3] Once venue is established under 15 U.S.C.S. § 78aa vis-a-vis one defendant, venue is proper with respect to the defendant co-conspirators. However, this theory only applies where venue has been established

over one conspirator by reason of an act or transaction performed in the district by that person in furtherance of the conspiracy.

*Civil Procedure > Venue > General Venue*
[HN4] The "property that is the subject of the action" language in 29 U.S.C.S. § 1391(a) and (b) applies only to suits involving property disputes or in rem actions, not to suits alleging financial damages to a corporation.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN5] Whether 28 U.S.C.S. § 1404(a) or 28 U.S.C.S. § 1406(a) governs is dependant upon whether there was proper venue in the district in which the plaintiff properly brought the action. When venue exists in the district where the suit was filed, 28 U.S.C.S. § 1404(a) governs; when venue is improper in the original district, 28 U.S.C.S. § 1406(a) governs.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN6] 28 U.S.C.S. § 1404(a) provides that for the convenience of the parties and the witnesses, in the interest of justice, the court may transfer the action to any other district where it might have been brought.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN7] There is a list of factors to assist the district courts in determining whether, on balance, the litigation would more conveniently proceed and the interests of justice would be better served by a transfer to a different forum. These factors include six private and five public interests which the court may consider.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN8] Party witnesses or witnesses who are employed by a party carry no weight in the balance of convenience analysis for transfer of venue since each party is able and obligated to procure the attendance of its own employees for trial. Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the balance of convenience lies because they are usually selected on the basis of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any. Fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the balance of convenience analysis.

**COUNSEL:** For AMERICAN HIGH-INCOME TRUST, THE BOND FUND OF AMERICA, INC., THE INCOME FUND OF AMERICA, INC., AMERICAN FUNDS INSURANCE SERIES - BOND FUND, AMERICAN FUNDS INSURANCE SERIES - HIGH-YIELD BOND FUND, ANCHOR PATHWAY FUND - HIGH-YIELD BOND SERIES, CAPITAL GUARDIAN U.S. FIXED-INCOME MASTER FUND, CAPITAL GUARDIAN GLOBAL HIGH-YIELD FIXED-INCOME FUND, plaintiffs: Stuart M. Grant, Grant & Eisenhofer, P.A., Wilmington, DE.

For ALLIEDSIGNAL INC., defendant: Kevin Gross, Rosenthal, Monhait, Gross & Goddess, Wilmington, DE.

For NATIONSBANC MONTGOMERY SECURITIES [*2] LLC, PRUDENTIAL SECURITIES, INC., defendants: R. Franklin Balotti, James T. Laster, Richards, Layton & Finger, Wilmington, DE.

**JUDGES:** Gregroy M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregroy M. Sleet

**OPINION:**

### MEMORANDUM AND ORDER

#### I. INTRODUCTION

On July 31, 2000, American High-Income Trust ("American High-Income"), The Bond Fund of America, Inc. ("Bond Fund"), The Income Fund of America ("Income Fund"), American Funds Insurance ("American Funds"), Anchor Pathway Fund ("Anchor"), Capital Guardian U.S. Fixed Income Master Fund ("Capital Guardian"), and Capital Guardian Global High-Yield Fixed-Income Fund (Capital Guardian Global") (collectively "the plaintiffs") filed suit against AlliedSignal, Inc. ("AlliedSignal"), Nationsbanc Montgomery Securities, LLC ("Nationsbanc"), Prudential Securities, Inc.("Prudential"), Allen K. Breed ("Allen Breed"), Charles J. Speranzella, Jr. ("Speranzella") and Johnnie Cordell Breed ("Breed") (collectively the "director defendants"). The plaintiffs are purchasers of Breed Technologies, Inc. ("Breed Technologies") 9 1/4 percent bonds. In their complaint, the plaintiffs allege that the defendants are liable to them under the federal securities [*3] laws, California statutes concerning misrepresentations in the sale of securities, and common law fraud in connection with the sale of these bonds.

Presently before the court is the direct defendants' motion to dismiss, or in the alternative, to transfer venue. n1 For the reasons that follow, the court will grant the defendant's motion to transfer venue.

n1 Each of the remaining defendants concedes that venue in this district is appropriate with regard to them.

## II. BACKGROUND

American High-Income, American Funds, and Anchor are Massachusetts business trusts. n2 The Bond Fund and the Income Fund are Maryland corporations. Capital Guardian and Capital Guardian Global are California business trusts. AlliedSignal, NationsBanc and Prudential are Delaware corporations. The director defendants are citizens of Florida. n3

n2 For purposes of addressing this motion, the court will set forth only those facts pertinent to venue.

[*4]

n3 The director defendants were directors of non-party Breed Technologies, which is a Delaware Corporation.

On October 30, 1997, Breed Technologies purchased the assets of AlliedSignal's SRS division for $ 710 million. The SRS transaction subsequently closed on October 30, 1997. On August 20, 1998, Breed Technologies issued the 9 1/4 percent bonds (the "Notes"). The Notes were issued through a private placement pursuant to Securities and Exchange Commission Rule 144A. They were marketed exclusively to large, sophisticated, institutional investors through an Offering Memorandum. n4

n4 The Offering Memorandum was prepared in Florida.

Pursuant to the terms of the Offering Memorandum, the Notes were located at NationsBanc's New York offices. They were subsequently delivered at either NationsBanc's New York office or through the Depository Trust Company, also located in New York. Further, IBJ Schroder Bank and Trust Company, [*5] the trustee for the Indenture/Notes, is located in New York. In its capacity as trustee, IBJ Schroder was responsible for sending all payments of interest and principle from New York.

In Spring 1998, NationsBanc led a nationwide road

show in an effort to increase interest in the Notes. The road show made stops across the country, including one in Los Angeles, California on April 7, 1998. At that stop, the plaintiffs allege that Speranzella made false statements to prospective purchasers.

On March 9, 1999, Breed filed an amended registration statement with the SEC in order to convert the 9 1/4 percent bonds into instruments that could be freely traded in the public markets. This took place in New York. Both the Notes and Exchange Notes are expressly governed by New York law.

On August 2, 1999, Breed Technologies sued AlliedSignal for fraud in connection with the SRS transactions. That action is currently pending in Delaware state court. On September 20, 1999, Breed Technologies filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code in the District of Delaware. On July 31, 2000, the purchasers of the 9 1/4 percent bonds filed the complaint in the above-captioned lawsuit. [*6]

## IV. DISCUSSION

### A. Venue

[HN1] Before a district court may hear a case, it must have both personal jurisdiction and venue. *See FS Photo, Inc. v. Picturevision, Inc.*, 48 F. Supp. 2d 442, 444 (D. Del. 1999). None of the defendants argue that the court lacks personal jurisdiction over them. However, although the court has personal jurisdiction over the defendants, it still must decide whether the District of Delaware is the appropriate venue for this action. The plaintiff bears the burden of proving that venue is proper. *See Brautigam v. Priest*, 2000 U.S. Dist. LEXIS 3123, at *8 (D. Del. March 2, 2000).

Four venue statutes control this inquiry. The first two are the specific venue statutes for securities actions, 15 U.S.C. §§ 77v and 78aa. The third venue statute is the general venue statute, 28 U.S.C. § 1391. The fourth is the bankruptcy venue provision, 28 U.S.C. § 1409. The court will address each statute in turn.

### 1. The Securities Venue Act Provisions

[HN2] Where both Securities Act and Securities and Exchange Act violations are at issue, the broader Exchange Act venue [*7] provision controls. *See Puma v. Marriott*, 294 F. Supp. 1116, 1121 (D. Del. 1969). Venue under the Exchange Act is proper in any district where: (1) "any act or transaction constituting the violation occurred;" (2) the defendant is "found;" (3) the defendant is an inhabitant; or (4) the defendant "transacts any business." 15 U.S.C. § 78aa; *see also Jacobs v. Hanson*, 464 F. Supp. 777, 782 (D. Del. 1979).

On the present facts, it is clear that the director defendants are neither "found" in this district, nor are they "inhabitants" of this district. Indeed, the director defendants themselves have minimal, if any, contacts with Delaware. They were directors of a Delaware corporation, which chose to file its bankruptcy in Delaware. These facts alone are not enough to establish that they themselves "transact any business" in Delaware. *See United Industrial Corp. v. Nuclear Corp. of America, 237 F. Supp. 971, 980 (D. Del. 1964)* (rejecting the argument that directors of a Delaware corporation were transacting business in Delaware).

The plaintiffs' second argument in support of venue is Breed Technologies' alleged dissemination [*8] of materials in Delaware relating to the alleged violation. However, the fact that SEC filings and related press releases could have been received and read in Delaware is insufficient to find that Delaware is a proper venue for the director defendants. Notably, the plaintiffs do not allege that any of the defendants in the present action received or read anything related to the alleged fraud in Delaware. Nor do they allege that the director defendants took any other action in relation to the alleged fraud in Delaware.

Finally, in the their complaint, the plaintiffs alternatively argue for a co-conspirator venue theory. It is true that [HN3] "once venue has been established under § 78aa vis-a-vis one defendant, venue is proper with respect to the defendant co-conspirators." *FS Photo, 48 F. Supp. 2d at 445.* However, this theory only applies where venue has been established over one conspirator by reason of an act or transaction performed in the district by that person in furtherance of the conspiracy. *See id.* The plaintiffs in this action have not established that any of the defendants performed an act or transaction in furtherance of the alleged conspiracy in Delaware. [*9] Accordingly, this theory must fail.

Thus, the court concludes that the plaintiffs have failed to meet their burden of demonstrating that venue under the security statutes is proper in Delaware.

### 2. 28 U.S.C. § 1391(a) and (b)

Venue is improper under both Section 1391(a) and (b). n5 First, the defendants clearly do not all reside in the same state. Thus, it is irrelevant if some of the defendants reside in Delaware. *See 28 U.S.C. § 1391(a)*(1) and (b)(1). Second, as the court discussed above, Delaware is not a state where a substantial portion of the events giving rise to the claims occurred. *See 28 U.S.C. § 1391(a)*(2) and (b)(2). Indeed, it is doubtful that any part, let alone a substantial part, of the relevant events occurred in Delaware.

n5 Section 1391(a) is based on diversity jurisdiction actions and Section 1391(b) is based on non-diversity jurisdiction actions. However, their relevant venue requirements are the same. Thus, the court will treat them together.

[*10]

Alternatively, the plaintiffs argue that, as a result of Breed's bankruptcy filing, the books, records and assets are "under the control of [the] court." From this assertion, they then argue that because such items are subject to the jurisdiction of the Bankruptcy Court, they are property "located in" Delaware. This argument is unpersuasive, however, because [HN4] the "property that is the subject of the action" language in the statute applies only "to suits involving property disputes or in rem actions . . . not to suits alleging financial damages to a corporation." *Falcoal, Inc. v. Turkive Komur Isletmeleri Kurumu, 660 F. Supp. 1536, 1543 (S.D. Tex. 1987).*

Accordingly, the court concludes that venue is improper under *28 U.S.C. § 1391.*

### 3. 28 U.S.C. § 1409(a)

Although not alleged as a basis for venue in their complaint, the plaintiffs now argue that venue is proper under *28 U.S.C. § 1409*(a). n6

n6 The defendant AlliedSignal joins in this argument.

[*11]

As an initial matter, the court notes that actions for securities violations should be venued in a district with a real connection to the alleged violations or parties, not simply a district where a non-party filed for bankruptcy. Moreover, this action is not sufficiently "related to" Breed Technologies' bankruptcy proceedings. n7 In support of their argument, the plaintiffs and AlliedSignal argue that if the plaintiffs succeed in their claims against the director defendants, and if the director defendants successfully prosecute indemnification claims against Breed Technologies, Breed Technologies would be affected. In similar situations, however, other courts have concluded, that "the present action [] is at most a precursor to [the director defendants'] potential indemnification action against [Breed]." *National City Bank v. Coopers & Lybrand, 1985 U.S. Dist. LEXIS 14244, 1985 WL 6424, at *5 (D. Minn. Nov. 1 1985), aff'd 802 F.2d 990 (8th Cir. 1986); see also Kalamazoo Realty Venture L.P. v. Blockbuster Entm't Corp., 249 B.R. 879, 885 (N.D. Ill. 2000).* In such a situation, the cases are not sufficiently related. *See Kalamazoo, 249*

B.R. at 885. [*12]

n7 The Bankruptcy Court confirmed the reorganization plan on November 22, 2000.

The court thus holds that venue in Delaware is improper as to the director defendants. When venue is improper, the court has two options -- dismissal or transfer. For the reasons that follow, the court will transfer this case to the Southern District of New York. n8

n8 Transfer, rather than dismissal, is in the interests of justice as it prevents the duplication of filing costs and possible statute of limitations problems arising from a dismissal at this point.

**B. Transfer**

As alternative relief, the plaintiffs and AlliedSignal seek to transfer this action to either the Middle District of Florida or the Southern District of New York, respectively. In their briefs, the parties base their transfer arguments on 28 U.S.C. § 1404(a). [*13] [HN5] Whether Section 1404(a) or 28 U.S.C. § 1406(a) governs is dependant upon whether there was proper venue in the district in which the plaintiff properly brought this action. When venue exists in the district where the suit was filed, Section 1404(a) governs; when venue is improper in the original district, Section 1406(a) governs. See FS Photo, 48 F. Supp. 2d at 449. Because the court has previously determined that venue is improper in the District of Delaware, Section 1406(a) governs this action. The court will nonetheless engage in the balance of convenience analysis applicable to Section 1404(a) due to the dispute as to where the court should transfer this case. n9

n9 Furthermore, the balance of convenience analysis will serve to underscore the court's view that, even were venue proper in this district, this case is better brought in a district with a connection to the alleged securities fraud. As discussed in Section IV.A, supra, Delaware clearly has no connection to the facts underlying the alleged fraudulent conduct.

[*14]

[HN6] Section 1404(a) provides that "for the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." 28 U.S.C. § 1404(a). The parties do not dispute that this

action could have been filed in the Southern District of New York or the Middle District of Florida. n10 The court will, therefore, move on with the inquiry as directed by the Third Circuit. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).

n10 Although the plaintiffs suggest in a footnote that "it is not clear" that they could have sued the other defendants in the Middle District of Florida, none of the defendants have made such a claim.

In Jumara, the Third Circuit provided [HN7] a list of factors to assist the district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a [*15] different forum." Id. These factors include six private and five public interests which the court may consider. See id.

1. The Private Interests

The private interests most relevant to this case include: (1) the convenience of the parties as indicated by their relative physical and financial position; (2) the convenience of the witnesses, but only to the extent that they may be unavailable for trial in one of the fora; and (3) the location of records and other documents, again, only to the extent that these files cannot be produced in the alternate forum. n11

n11 For the reasons the court discussed in a previous opinion, it will not afford any weight to the first three Jumara factors, specifically, the plaintiff's initial choice of forum, the defendant's preferred venue, and whether the claim arose elsewhere. See Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 197-201 (D. Del. 1998). In not affording weight to these factors, the court avoids the risk of double-counting these interests and thereby throwing off the transfer analysis. See id. Instead, the court will consider whether the Southern District of New York is a more convenient forum for the parties and the witnesses, while also serving the interests of justice. See 28 U.S.C. § 1404(a).

[*16]

a. The Convenience of the Parties

The director defendants reside in Florida. Prudential and Nationsbanc are located in New York City. AlliedSignal is headquartered in Morristown, New Jersey. The plaintiffs are located in California, Maryland

and Massachusetts. Thus, five of the parties are located in the Northern-Northeastern United States. Three are located in Florida and one is located on the West Coast. Given these numbers, on balance, New York is the most convenient location for the greatest number of parties.

### b. The Convenience of Witnesses

[HN8] Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed obligated, to procure the attendance of its own employees for trial. *See Affymetrix, 28 F. Supp. 2d at 203.* Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies because they are "usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any." *See* [*17] *id.* (internal citations omitted). Fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis. *See id.*

There is no evidence on the record that indicates that one of these districts is more convenient for non-party witnesses than another. AlliedSignal has alleged that the law firms that passed on the validity of the notes are located in New York. The director defendants have also identified several parties as "potential, material third-party witnesses" who reside in Florida. Given this information, the court concludes that this factor must remain neutral.

### c. The Location of Records and Other Documents

The technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis. *See id. at 205.* There is no indication that either party would be unable to produce the relevant records and documents in either Florida or New York. Thus, because this factor is only relevant insofar as the documents would be unavailable in one forum, the court finds that this factor must also remain neutral. [*18]

### 2. The Public Factors

As other courts have noted, depending on the circumstances of the case, some of the "public interest" factors listed in *Jumara* may play no role in the "balance of convenience." *See id. at 205.* The court thus elects to discuss only the factors most relevant to the pending case.

### a. Interest in this Controversy

The parties allege that the Offering Memorandum

was negotiated in Florida. In contrast, however, the bonds were issued in New York, New York is where the plaintiffs' claims arose, and New York law governs the Offering Memorandum and the Registration Agreement. Thus, the court concludes that New York has a stronger interest in this controversy than Florida.

### b. Practical Considerations Making the Trial Easier, More Expeditious, and Less Expensive

As the court discussed above in relation to the convenience of the parties, the majority of the parties are located a comparably short drive from New York. The only parties located in Florida are the director defendants. Thus, it is clear that litigating this action in New York would be collectively less expensive in terms of travel costs.

### c. Administrative Difficulty

Statistics from the [*19] Administrative Office of the United States Courts for the twelve-month period ending September 30, 1999 demonstrate that both the New York and Florida courts have approximately nine month median time intervals from filing to disposition. Further, ten percent of the New York court's cases have been pending two to three years, and thirteen percent of the Florida court's cases have been pending two to three years. Given these numbers, the court concludes that this factor neither weighs in favor of, nor against, one district or the other.

## V. CONCLUSION

The court concludes that venue is improper in the District of Delaware. Moreover, after engaging in a balance of convenience analysis, it is clear that the balance tips strongly in favor of transferring this action to the Southern District of New York.

For these reasons, IT IS HEREBY ORDERED that:

1. Johnnie Cordell Breed, The Estate of Allen K. Breed, and Charles J. Speranzella, Jr's alternative motion (D.I. 26) to transfer venue is GRANTED.

2. The above-captioned matter is hereby TRANSFERRED to the United States District Court for the Southern District of New York.

3. AlliedSignal's motion to dismiss (D. [*20] I. 16) is declared MOOT.

4. Nationsbanc and Prudential's motion to dismiss (D. I. 19) is declared MOOT.

5. Johnnie Cordell Breed, The Estate of Allen K.

2002 U.S. Dist. LEXIS 3761, *

Breed, and Charles J. Speranzella Jr.,'s motion to dismiss (D.I. 22) is declared MOOT.

6. The Plaintiffs' motion to lift the discovery stay (D.I. 49) is declared MOOT.

7. The Plaintiffs' motion to substitute defendants (D.I. 65) is declared MOOT.

Date: March 7, 2002

    Gregroy M. Sleet

    UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ARLIN M. ADAMS, Chapter 11          )
Trustee of the Post-Confirmation    )
Bankruptcy Estates of CORAM         )
HEALTHCARE CORPORATION,   a         )
Delaware Corporation, and of        )
CORAM, INC., a Delaware             )
corporation,                        )
                                    )
          Plaintiff,                )
                                    )
     v.                             ) Civ. No. 04-1565-SLR
                                    )
DANIEL D. CROWLEY; DONALD J.        )
AMARAL; WILLIAM J. CASEY; L. PETER  )
SMITH; and SANDRA L. SMOLEY,        )
                                    )
          Defendants.               )


MEMORANDUM ORDER


     At Wilmington this 25th day of May, 2005, having reviewed

defendants' motions to transfer, and the papers submitted in

connection therewith;

     IT IS ORDERED that said motions (D.I. 3, 15) are denied, for

the reasons that follow:

     1.   **Background facts.**  On August 8, 2000, Coram Healthcare

Corporation and Coram, Inc. (hereafter "Coram") filed a Chapter

11 petition in the United States Bankruptcy Court for the

District of Delaware, together with a proposed plan of

reorganization.  In December 2000, the bankruptcy court denied

confirmation of the plan, based in part on the fact that
defendant Crowley had a conflict of interest by reason of his
position as CEO of Coram and his contractual relationship with
one of Coram's three major lenders.[1]  After denying confirmation
of Coram's second proposed plan of reorganization,[2] the
bankruptcy court entered an order appointing plaintiff Chapter 11
Trustee of Coram.  On October 27, 2004, the bankruptcy court
confirmed the Trustee's plan of reorganization, which plan was
implemented on December 1, 2004.  Coram is now a private company
owned by its former lenders.  Under the Trustee's plan as
approved by the bankruptcy court, the right to pursue causes of
action against Coram's former directors was reserved to the
Trustee for the benefit of Coram's former unsecured trade
creditors and its former common shareholders.

     2.   **Standard of review.**  Under 28 U.S.C. § 1404(a), a
district court may transfer any civil action to any other
district where the action might have been brought for the
convenience of parties and witnesses and in the interests of
justice.  Congress intended through § 1404 to place discretion in

---

[1]It is alleged that between November 30, 1999, when Crowley
became CEO, and July 31, 2000, Crowley caused Coram to pay
certain lenders approximately $60 million.

[2]The bankruptcy court found in this regard that the Outside
Directors, the remaining defendants herein, had done nothing in
response to the court's order denying confirmation of the first
plan of reorganization.

the district court to adjudicate motions to transfer according to
an individualized, case-by-case consideration of convenience and
the interests of justice. <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487
U.S. 22, 29 (1988); <u>Affymetrix, Inc. v. Synteni, Inc.</u>, 28 F.
Supp.2d 192, 208 (D. Del. 1998).

3.    The burden of establishing the need to transfer rests
with the movant "to establish that the balance of convenience of
the parties and witnesses strongly favors the defendants."
<u>Bergman v. Brainin</u>, 512 F. Supp. 972, 973 (D. Del. 1981) (citing
<u>Shutte v. Armco Steel Corp.</u>, 431 F.2d 22, 25 (3d Cir. 1970).
"Unless the balance is strongly in favor of a transfer, the
plaintiff's choice of forum should prevail". <u>ADE Corp. v. KLA-
Tencor Corp.</u>, 138 F. Supp.2d 565, 567 (D. Del. 2001); <u>Shutte</u>, 431
F.2d at 25.

4.    The deference afforded plaintiff's choice of forum will
apply as long as a plaintiff has selected the forum for some
legitimate reason. <u>C.R. Bard, Inc. v. Guidant Corp.</u>, 997 F.
Supp. 556, 562 (D. Del 1998); <u>Cypress Semiconductor Corp. v.
Integrated Circuit Systems, Inc.</u>, 2001 WL 1617186 (D. Del. Nov.
28, 2001); <u>Continental Cas. Co. v. American Home Assurance Co.</u>,
61 F. Supp.2d 128, 131 (D. Del. 1999). Although transfer of an
action is usually considered as less inconvenient to a plaintiff
if the plaintiff has not chosen its "'home turf' or a forum where
the alleged wrongful activity occurred, the plaintiff's choice of

3

forum is still of paramount consideration, and the burden remains
at all times on the defendants to show that the balance of
convenience and the interests of justice weigh strongly in favor
of transfer." In re M.L.-Lee Acquisition Fund II, L.P., 816 F.
Supp. 973, 976 (D. Del. 1993).

5.    The Third Circuit Court of Appeals has indicated that
the analysis for transfer is very broad. Jumara v. State Farm
Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). Although emphasizing
that "there is no definitive formula or list of factors to
consider," id., the Court has identified potential factors it
characterized as either private or public interests. The private
interests include: "(1) plaintiff's forum preference as
manifested in the original choice; (2) defendant's preference;
(3) whether the claim arose elsewhere; (4) the convenience of the
parties as indicated by their relative physical and financial
condition; (5) the convenience of the witnesses but only to the
extent that the witnesses may actually be unavailable for trial
in one of the fora; and (6) location of books and records
(similarly limited to the extent that the files could not be
produced in the alternative forum)." Id. (citations omitted).

6.    The public interests include: "(1) the enforceability
of the judgment; (2) practical considerations that could make the
trial easy, expeditious or inexpensive; (3) the relative
administrative difficulty in the two fora resulting from court

4

congestion; (4) the local interest in deciding local
controversies at home; (5) the public policies of the fora; and
(6) the familiarity of the trial judge with the applicable state
law in diversity cases." Id. (citations omitted).

7. **Analysis.** Defendants move to transfer this case to the
District of Colorado. In support of their motions, defendants
recite several facts. First, none of the defendants live in or
near Delaware.[3] Coram, now a private company, is incorporated
in Delaware with its principal place of business in Denver,
Colorado. Coram's employees and business records are located as
well in Denver, Colorado. Plaintiff, Coram's Chapter 11 Trustee,
resides in Philadelphia. According to defendants, these facts
compel the transfer of this case to Colorado because  no one
involved in the litigation has a direct connection to the
District of Delaware.

8. I respectfully disagree. Coram (through its directors)
chose Delaware as its place of incorporation and chose to file
for bankruptcy protection in Delaware's bankruptcy court. The
bankruptcy court appointed plaintiff the Chapter 11 Trustee and
gave him the authority to commence the instant proceedings
against the company's former fiduciaries. These facts
demonstrate a substantial connection to Delaware. Moreover,

---

[3]Three of the defendants, Mr. Casey, Mr. Crowley and Ms.
Smoley, live in California, while Mr. Amaral lives in Nevada and
Mr. Smith lives in Illinois.

given the fact that most discovery will be taken in the same fashion regardless of where trial may proceed,[4] the convenience of the defendants is not a compelling factor.  For these reasons, and consistent with my practice, I decline to transfer this case on the record presented.[5]

_United States District Judge_

---

[4]Depositions generally do not last more than 7 hours; the parties should be able to work out convenient places for their location.  Document production may well be in electronic format.

[5]Employees of parties must make themselves available for purposes of depositions and trial.  It is not apparent to me whether the employees of Coram (in its present corporate form) are subject to this court's jurisdiction.  However, neither is it apparent at this stage of the proceedings whether they will voluntarily appear as witnesses, under the circumstances at bar. Therefore, I will reconsider my decision not to transfer **only** if specifically identified, critical witnesses decline to testify in Delaware and cannot be compelled to do so.

*Foreign Pltf. – Dep: explains*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

BAYER AG,
a corporation,

           Plaintiff,

      v.                        C.A. 95-8-JJF

SONY ELECTRONICS INC.,
a corporation,

           Defendant.

———————————————————x

BAYER AG,
a corporation,

           Plaintiff,

      v.                        C.A. 97-401-JJF

SONY CORPORATION, INC.,
a corporation,

 and

DOWA MINING CO.,
a corporation,

           Defendants.

———————————————————x

Rudolf E. Hutz, Esquire and R. Eric Hutz, Esquire of CONNOLLY, BOVE, LODGE & HUTZ, Wilmington, DE.
Attorneys for Plaintiff.

Douglas E. Whitney, Esquire, Mary B. Graham, Esquire and Lisa B. Baeurle, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL, Wilmington, DE.
Attorneys for Defendants, Dowa Mining Co., Ltd., Sony Electronics, Inc., and Sony Corporation, Inc.

———————————

### MEMORANDUM OPINION

September 30, 1998
Wilmington, Delaware

*Joseph J Farnan Jr.*

FARNAN, **Chief Judge**

Presently before the Court are Plaintiff, Bayer AG's Motion for Consolidation (D.I. 166)

and Defendant, Sony Electronics' Request for Costs Incurred in Traveling to Germany (D.I.

177). After review, the Court concludes that both Plaintiff's Motion for Consolidation and

Defendant's Request for Costs should be granted.

> I.    Plaintiff's Motion for Consolidation under Fed. R. Civ. P. 42(a)

## A.    BACKGROUND

On January 9, 1995, Plaintiff Bayer AG ("Bayer") filed suit against Sony Electronics

("SEL") for infringement of United States Patent No. 4,290,799 ("'799") by reason of SEL's sale

in the United States of recording media containing certain metal powders. Bayer AG v. Sony

Electronics, C.A. No. 95-8-JJF. Discovery has not yet been completed in the SEL action, nor

have close of discovery or trial dates been set. On July 8, 1997, Bayer filed suit against Sony

Corporation, Inc. ("Sony") and Dowa Mining Co. ("Dowa"), also for infringement of the '799

patent, alleging: (i) that Sony actively induces SEL's direct infringement by supplying SEL with

aforesaid recording media containing metal powders with full knowledge and the express

purpose that SEL will sell such recording media in the United States, and (ii) Dowa actively

induces SEL's direct infringement by selling metal powders to Sony with knowledge that Sony

will incorporate the powders into recording media that will be sold in the United States by SEL.

Bayer AG v. Sony Corporation, Inc. and Dowa Mining Co., C.A. No. 97-401-JJF. Because of

the substantial overlap of factual and legal issues presented by the two cases, Bayer moves to

consolidate the two actions under Fed. R. Civ. P. 42(a).

## B.  DISCUSSION

Federal Rule of Civil Procedure 42(a) gives a court broad power to consolidate actions involving common questions of law or fact if, in the discretion of the court, such consolidation would facilitate the administration of justice. <u>Waste Distillation Technology, Inc. v. Pan American Resources, Inc.</u>, 775 F. Supp. 759, 761 (D. Del. 1991).  The court must weigh the savings of time and effort gained through consolidation against the inconvenience, delay or expense that might result from simultaneous disposition of the separate actions. <u>Id.</u>  The proper administration of justice requires that issues be resolved without unnecessary cost or delay. <u>Id.</u>

The Court concludes that for the following reasons Plaintiff's Motion for Consolidation should be granted: (i) there is a commonality of issues and facts between the two actions; (ii) consolidation will result in a considerable savings of time and effort and thus will facilitate the administration of justice; and (iii) Defendants have not demonstrated that inconvenience, added expense, or prejudicial delay will result from consolidation of the actions.

The Court finds that it is likely that the two trials will involve the same factual setting, the same witnesses, documents and exhibits and the same legal issues.  Plaintiff alleges that Dowa, a Japanese corporation, manufactures the accused metal powders in Japan and sells them to Sony, another Japanese corporation, for inclusion in recording media.  Sony produces the media containing Dowa's powders and in turn supplies the recording media to SEL, a Delaware corporation.  Plaintiff further alleges that Dowa and Sony produce and supply the accused products and/or elements of the products with knowledge that the recording media will be sold by SEL in the United States.  The proofs of infringement will almost completely overlap for all three defendants.  As Plaintiff asserts in its Memorandum in Support of its Motion for Consolidation (D.I. 167), if the products sold by SEL directly infringe the '799 patent, then Sony

and Dowa are guilty of actively inducing such infringement.

Additionally, the Court concludes that the administration of justice will be served by consolidation. The questions in both suits are highly technical and closely intertwined. "There is little logic in forcing the Court to educate itself on the intricate factual details and complex legal issues common to both suits on two occasions, in preparing for two separate trials." <u>Rohm & Haas Co. v. Mobil Oil Corp.</u>, 525 F. Supp. 1298, 1310 (D. Del. 1989). Furthermore, there is a close interrelationship between the three Defendants. In addition to having a supplier-distributor relationship with Sony, SEL is a wholly-owned subsidiary of Sony. Also, Dowa has agreed to pay Sony's and SEL's attorney fees and to indemnify Sony and SEL for any liability of Sony or SEL for infringement of the '799 patent. These factors suggest that consolidation would not only result in less inconvenience and expense for Plaintiff, but also for Defendants.

The Court is unpersuaded by Defendants' argument that consolidation will prejudicially delay the trial in the SEL action. Discovery in the SEL case is ongoing, no close of discovery or trial date has been set, and the SEL case has only recently been assigned to this Court. Any delay in the SEL action is outweighed by the benefits of consolidation.

## C.    CONCLUSION

Accordingly, the Court will grant Plaintiff's Motion for Consolidation (D.I. 166).

An appropriate Order will be entered.

II.  <u>Defendant SEL's Request for Costs Incurred in Traveling to Germany</u>

### A.  BACKGROUND

Defendant SEL requests costs incurred in traveling to Germany to take depositions of Bayer's witnesses (four Bayer employees and a deposition of Bayer under Rule 30(b)(6)). The costs consist of SEL attorney and court reporter airfare, room and board and travel time, shipment of exhibits and court reporting equipment, and rent of a deposition room. Defendant alleges that Bayer has refused to reimburse Defendant for such costs.

### B.  DISCUSSION

The general rule is that a plaintiff must produce its witnesses for depositions in the district where the plaintiff instituted the action unless the plaintiff has shown financial hardship or inability to attend the deposition in that district. <u>Mobil Oil Corp. v. Advanced Environ. Recycling Tech., Inc.</u>, C.A. No. 92-351-JJF (March 30, 1995 Order). From this general rule, it follows that if the plaintiff chooses to hold depositions of its witnesses in a foreign jurisdiction rather than produce them in the forum it selected, the plaintiff must pay the costs defendant incurred in traveling to that foreign jurisdiction to conduct the depositions.

As this Court previously stated in the instant case, "if you choose a forum, you . . . choose certain expenses." 2/13/97 transcript, p. 74. Because Plaintiff chose to have Plaintiff's witnesses deposed in Germany, Plaintiff must "pay for counsel from the United States to go over to Germany and make available large segments of time for them to be able to complete the deposition process." <u>Id.</u> Thus, Plaintiff must pay the expenses Defendant SEL incurred in traveling to Germany to take the depositions of Plaintiff's witnesses.

## C.   CONCLUSION

Accordingly, the Court will grant Defendant SEL's Request for Costs Incurred in

Traveling to Germany (D.I. 177).

An appropriate Order will be entered.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

FILED

SEP 30  6 59 PM '98

CLERK
DISTRICT COURT
DIST OF DELAWARE

BAYER AG,
a corporation,

        Plaintiff,

      v.

SONY ELECTRONICS, INC.,
a corporation,

        Defendant.

Civil Action No. 95-8/ 97-401-JJF

BAYER AG,
a corporation,

        Plaintiff,

      v.

SONY CORPORATION, INC.,
a corporation,

and

DOWA MINING CO.,
a corporation,

        Defendants.

## ORDER

At Wilmington this $30$ day of September, 1998, for the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY ORDERED that:

    1.    The above-captioned actions be and hereby are consolidated for all purposes pursuant to Federal Rule of Civil Procedure 42(a).

    2.    The caption of this consolidated matter shall hereafter appear as indicated

above.

      3.    The pleadings in each case shall be consolidated by placing them in the file jacket of Civil Action No. 95-8/ 97-401-JJF and all pleadings hereinafter filed shall be placed in the file jacket of Civil Action No. 95-8/ 97-401-JJF.

      4.    Defendant SEL's Request for Costs Incurred in Traveling to Germany (D.I. 177) is GRANTED.

UNITED STATED DISTRICT JUDGE