LEXSEE

CORIXA CORPORATION, a Delaware corporation, et al., Plaintiffs, v. IDEC
PHARMACEUTICALS CORPORATION, a Delaware corporation, Defendant.

C.A. No. 01-615 GMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2002 U.S. Dist. LEXIS 2980

February 25, 2002, Decided

**DISPOSITION:** [*1] Defendant's motion to transfer action to Southern District of California GRANTED, Matter TRANSFERRED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** A pharmaceutical corporation filed a complaint in California against defendants, three entities in different states, and sought a declaratory judgment of non-infringement regarding five patents. Two days later, defendants filed the instant action against the corporation and alleged patent infringement. The pharmaceutical corporation moved to stay the proceedings, or alternatively, to dismiss or transfer the action to California.

**OVERVIEW:** The patents at issue involved technology for the treatment of lymphoma. Applying the first-filed rule, the pharmaceutical corporation argued that the case should be transferred to California. Notwithstanding the fact that the cases at issue were mirror image cases where a court would be asked to construe the same patents, one of the defendants argued that the first-filed rule was inapplicable to the present situation. The court concluded that having two separate trials in mirror image cases would have defeated the purposes of the first-filed rule, namely, sound judicial administration and comity among federal courts of equal rank. Accordingly, the application of the rule weighed heavily in favor of transferring this case to California. There was no clear evidence that a non-party witness would have been unable to attend trial in the instant forum and this factor weighted against transfer. However, there was no indication that either party would be unable to produce the relevant records and documents in the instant forum. In the end, the court concluded that the balance of convenience tipped strongly in favor of transferring the action to California.

**OUTCOME:** The pharmaceutical company's alternative motion to transfer the action to California was granted

and the matter was transferred.

**CORE TERMS:** patent, first-filed, balance of convenience, weigh, licensee, litigate, convenience, lawsuit, necessary party, transferring, declaratory judgment action, place of business, mirror image, presently, lymphoma, declaratory action, attendance, tip, declaratory judgment, motion to transfer, motion to dismiss, present situation, currently pending, motion to stay, radioimmunotherapy, above-captioned, inconvenience, transferred, recommended, unavailable

**LexisNexis(R) Headnotes**

*Civil Procedure > Venue > Change of Venue in Federal Courts*
*Patent Law > Remedies > Declaratory Relief*
*Patent Law > Jurisdiction & Review > Personal Jurisdiction & Venue > General Overview*
[HN1] Where two patent lawsuits involving the same claims are filed in different jurisdictions, the federal circuit requires that the first-filed action be given preference absent special circumstances. The first-filed doctrine also serves to prevent a multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising from common matters. This doctrine applies equally well where the first-filed action is one for a declaratory judgment. noting that, where the declaratory action can resolve the various issues, a first-filed declaratory action is entitled to precedence as against a later-filed patent infringement action.

*Patent Law > Ownership > Conveyances > General Overview*
*Patent Law > Jurisdiction & Review > Personal Jurisdiction & Venue > General Overview*
[HN2] An exclusive licensee possessing fewer than all substantial rights may not sue in its own name without joinder of the patent owner.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN3] See 28 U.S.C.S. § 1404(a).

*Civil Procedure > Venue > Change of Venue Generally*
[HN4] The United States Court of Appeals for the Third Circuit provides a list of factors to assist district courts in determining whether, on balance, litigation would more conveniently proceed and the interests of justice would be better served by a transfer to a different forum. These factors include six private and five public interests which a court may consider.

*Civil Procedure > Venue > Change of Venue Generally*
[HN5] Factors determinative of whether venue should be changed include: (1) the convenience of the parties as indicated by their relative physical and financial position; (2) the convenience of the witnesses, but only to the extent that they may be unavailable for trial in one of the fora; and (3) the location of records and other documents only to the extent that these files cannot be produced in the alternate forum.

*Civil Procedure > Venue > Change of Venue Generally*
[HN6] In regards to determining whether venue should be changed, depending on the circumstances of the case, some of the "public interest" factors may play no role in the balance of convenience.

**COUNSEL:** For CORIXA CORPORATION, COULTER PHARMACEUTICAL INC., SMITHKLINE BEECHAM CORPORATION, plaintiffs: Thomas C. Grimm, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For IDEC PHARMACEUTICALS CORPORATION, defendant: Philip A. Rovner, Potter Anderson & Corroon, LLP, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory Moneta Sleet

**OPINION:**

MEMORANDUM AND ORDER

I. INTRODUCTION

On September 10, 2001, IDEC Pharmaceutical Corporation ("IDEC") filed a complaint in the Southern District of California against Coulter Pharmaceutical Inc. ("Coulter"), Corixa Corporation ("Corixa"), and the

Regents of the University of Michigan ("Michigan"). In its complaint, IDEC seeks a declaratory judgment of non-infringement and/or invalidity of five patents. On September 11, 2001, the Oncologic Drugs Advisory Committee ("ODAC") indicated that it would recommend a limited FDA approval of IDEC's drug Zevalin. On September 12, 2001, at approximately 8:33 A.M. PST, IDEC [*2] filed a first amended complaint which included a sixth patent.

On September 12, 2001, at 12:07 P.M. EST, Corixa, Coulter, and GlaxoSmithKline (GSK) (collectively "Corixa") filed the above-captioned action against IDEC. n1 Corixa alleges that IDEC is infringing U.S. Patent Nos. 6,015,542, ("the 542 patent"), 6,090,365 ("the 365 patent"), and 5,595,721 ("the 721 patent"). These patents are three of the patents involved in the California declaratory judgment action.

n1 On September 28, 2001, Michigan was added as a plaintiff in this action.

Presently before the court is IDEC's motion to stay the proceedings, or alternatively, to dismiss or transfer this action to the Southern District of California. n2 For the reasons that follow, the court will grant IDEC's motion to transfer.

n2 IDEC sought to stay the proceedings pending a ruling from the California court on a motion to dismiss. On January 30, 2002, the California court denied the motion to dismiss. IDEC's current motion to stay is therefore moot.

[*3]

II. BACKGROUND

IDEC is a Delaware corporation with its sole place of business in the San Diego area. Coulter is a Delaware corporation with its principle place of business in the San Francisco Bay area. Corixa is a Delaware corporation based in Seattle, Washington. GSK is a Pennsylvania corporation with its principle place of business in Philadelphia, Pennsylvania. The University of Michigan is a constitutional corporation of the State of Michigan, located in Ann Arbor, Michigan.

The patents at issue involve technology for the treatment of lymphoma using targeted radioimmunotherapy. Coulter and Michigan are co-owners of the 542, 365, and 721 patents. Corixa and GSK are the licensees of these patents. Both IDEC and Corixa are currently seeking FDA approval for a

commercial embodiment of their respective inventions for the treatment of lymphoma using radioimmunotherapy.

With these facts in mind, the court will now turn to the motion presently before it.

III. DISCUSSION

A. The "First-Filed" Rule

[HN1] Where two patent lawsuits involving the same claims are filed in different jurisdictions, the Federal Circuit requires that the first-filed action be given preference [*4] absent special circumstances. *See Genentech v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed. Cir. 1993). The first-filed doctrine also serves to prevent a multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising from common matters. *See id.* at 937. This doctrine applies equally well where the first-filed action is one for a declaratory judgment. *See id.* at 938 (noting that, where the declaratory action can resolve the various issues, a first-filed declaratory action is entitled to precedence as against a later-filed patent infringement action.)

Applying the first-filed rule, IDEC argues that the present case should be transferred to the Southern District of California. Notwithstanding that the cases at issue are "mirror image" cases where the court is asked to construe the same patents, Corixa argues that the first-filed rule is inapplicable to the present situation.

Corixa first argues that GSK has not been joined in the California litigation. The record before the court indicates that GSK is Coulter's licensee. It is unclear whether GSK is an exclusive licensee. However, even were the court to accept [*5] Corixa's argument that GSK is an exclusive licensee, that alone does not indicate that GSK is a necessary party to this litigation. Corixa concedes that GSK is a licensee with fewer than all substantial rights. As such, GSK, while likely a proper party to the California lawsuit, is not a necessary party. *See Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.,* 248 F.3d 1333, 1348 (Fed. Cir. 2001) (holding that [HN2] an exclusive licensee possessing fewer than all substantial rights may not sue in its own name without joinder of the patent owner.) Finally, to the extent that the parties believe that GSK is a necessary party, GSK may request permission to join the California litigation. n3

n3 Corixa expresses concern over whether the California court has subject-matter jurisdiction over an action between IDEC and GSK. As it is not the court's province to determine another court's subject matter jurisdiction, the court expresses no opinion on this.

Corixa next argues that the [*6] first-filed rule is inapplicable to the present situation because IDEC improperly "raced to the courthouse" in order to file its motion in California. In support of this contention, Corixa points out that its right to file an infringement suit against IDEC did not ripen until after ODAC recommended that the FDA approve Zevalin. However, before ODAC publicly recommended approval, but after IDEC had reason to believe they would do so, IDEC "raced" to file its declaratory judgment action.

The court acknowledges that IDEC's filing seems providential since ODAC's recommendation became public the day after IDEC filed its suit. In its November 6, 2001 Order, however, the California court specifically found that IDEC possessed a reasonable apprehension of suit when it filed its declaratory judgment action. The California court continued by stating that, "an actual controversy existed when IDEC filed the complaint under consideration. Consequently the court finds that IDEC's filing suit was not motivated by "forum shopping alone," but rather was a legitimate exercise of its opportunity under the Declaratory Judgement Act . . . ." This court sees no reason to disagree with the California court's [*7] findings.

Given the information presently before it, the court concludes that having two separate trials in mirror image cases would defeat the purposes of the first-filed rule, namely, sound judicial administration and comity among federal courts of equal rank. *See EEOC v. University of Pennsylvania,* 850 F.2d 969, 971 (3d Cir. 1988). Accordingly, the court finds that the application of the rule weighs heavily in favor of transferring this case to the Southern District of California.

B. Section 1404(a)

Transfer to the Southern District of California is also mandated under a section 1404(a) analysis. [HN3] Section 1404(a) provides that "for the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." 28 U.S.C. § 1404(a). There is no dispute that this action could have been filed in the Southern District of California. The court will, therefore, move on with inquiry as directed by the Third Circuit. *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995).

In *Jumara,* [HN4] the Third Circuit provided [*8] a list of factors to assist the district courts in determining "whether, on balance, the litigation would more

conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Id.* These factors include six private and five public interests which the court may consider. *See id.*

1. The Private Interests

The private interests most relevant to this case include: [HN5] (1) the convenience of the parties as indicated by their relative physical and financial position; (2) the convenience of the witnesses, but only to the extent that they may be unavailable for trial in one of the fora; and (3) the location of records and other documents, again, only to the extent that these files cannot be produced in the alternate forum. n4

> n4 For the reasons the court discussed in a previous opinion, it will not afford any weight to the first three *Jumara* factors, specifically, the plaintiff's initial choice of forum, the defendant's preferred venue, and whether the claim arose elsewhere. *See Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 197-201 (D. Del. 1998).* In not affording weight to these factors, the court avoids the risk of double-counting these interests and thereby throwing off the transfer analysis. *See id.* Instead, the court will consider whether the Southern District of California is a more convenient forum for the parties and the witnesses, while also serving the interests of justice. *See 28 U.S.C. § 1404(a).*

[*9]

a. The Convenience of the Parties

Geographically, California is not more inconvenient for the parties than Delaware. Michigan must travel whether the suit is in California or Delaware. GSK is one of the world's largest pharmaceutical companies, and cannot complain about location. The remainder of the parties are based on the West Coast. Furthermore, transfer to California would reduce the overall inconvenience to all parties involved. The parties must already be prepared to litigate the related case currently pending in the Southern District of California. Bringing witnesses and relevant documents to only one location, here California, minimizes the level of disruption caused to all parties by the litigation. This is certainly a more economical and efficient result than having each party moving witnesses and documents between two states, depending on which of these related actions is being litigated at that time. Thus, this factor weighs in favor of transfer.

b. The Convenience of Witnesses

Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed obligated, to procure the attendance of its [*10] own employees for trial. *See Affymetrix, 28 F. Supp. 2d at 203.* Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies because they are "usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any." *See id.* (internal citations omitted). Fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis. *See id.*

There is no evidence on the record that would indicate that Delaware would be an inconvenient forum for potential non-party witnesses. However, the court notes that all the material witnesses in this dispute, party or otherwise, will be in California already to litigate the related matter now pending in the Southern District of California. Requiring that they come to Delaware to litigate this action separately cannot be considered convenient and in the interest of justice. However, as there is no clear evidence [*11] that a non-party witness will be unable to attend trial in Delaware, this factor must weigh against transfer.

c. The Location of Records and Other Documents

The technological advances of recent years have significantly reduced the weight of this factor in the "balance of convenience" analysis. *See id. at 205.* There is no indication that either party would be unable to produce the relevant records and documents in Delaware. Thus, because this factor is relevant only insofar as the documents would be unavailable in one forum, the court finds that this factor must weigh against transfer.

From a practical standpoint, however, the court notes that any relevant documents will already be in California for the litigation of that case. The court sees no need to require that the parties move the same documents across the country. Rather, it would be much more efficient to litigate these related actions in one location. However, these considerations are more relevant to the first factor discussed *supra.*

2. The Public Factors

As other courts have noted, [HN6] depending on the circumstances of the case, some of the "public interest" factors listed in *Jumara* may play no role [*12] in the "balance of convenience." *See id. at 205.* The court thus elects to discuss only the factors most relevant to the

pending case.

a. Practical Considerations Making Trial Easy, Expeditious or Inexpensive

This factor appears to substantially repeat the "first-filed" analysis advanced by IDEC, and accepted by the court, in Section III.A, *supra*. As such, the court declines to further address this issue here, since it has already taken this argument into consideration.

b. Delaware's Interest in this Controversy

Three of the parties in this action are Delaware corporations. However, while the court is mindful of Delaware's interest, that alone will not tip the "balance of convenience" in its favor. This is so because the court can hardly describe the patents as a local controversy unique to Delaware. *See Affymetrix, 28 F. Supp. 2d at 207.* Instead, the patents deal with the treatment of lymphoma. This clearly has far-reaching implications. Accordingly, this factor does not weigh against transferring this case to California.

c. Collective Travel Time and Cost

A mirror image action is currently pending in California. Thus, to require the parties [*13] to simultaneously litigate virtually the same case on different coasts would certainly increase the collective travel time and cost. Thus, this factor weighs in favor of transfer.

IV. CONCLUSION

The court concludes that the "balance of convenience" tips strongly in favor of transferring this action to the Southern District of California.

For these reasons, IT IS HEREBY ORDERED that:

1. IDEC's alternative motion to transfer this action to the Southern District of California (D.I. 8) is GRANTED.

2. The above-captioned matter is hereby TRANSFERRED to the United States District Court for the Southern District of California.

Dated: February 25, 2002

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

LEXSEE

**DIPPOLD-HARMON ENTERPRISES, INC., Plaintiff, v. LOWE'S COMPANIES, INC., Defendant.**

**C.A. No. 01-532 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2001 U.S. Dist. LEXIS 18547**

**November 13, 2001, Decided**

**DISPOSITION:** [*1] Defendant's motion to dismiss for lack of personal jurisdiction was denied. Defendant's alternative motion to transfer action to Western District of North Carolina was granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff contractor sued defendant parent corporation. The parent's subsidiary had sued the contractor in the General Court of Justice, Superior Court Division, North Carolina. The contractor removed that action to the United States District Court for the Western District of North Carolina. The parent moved to dismiss, to transfer the case to the Western District of North Carolina, or to stay the case pending that litigation's outcome.

**OVERVIEW:** In the North Carolina action, the subsidiary alleged that the parties entered into a written agreement governing the installation of countertops in customer's homes. In the Delaware action, the contractor alleged that the parent fraudulently breached an oral exclusivity agreement. The parent argued that the court had no personal jurisdiction over it or that the action should be transferred to North Carolina. The court concluded that it had personal jurisdiction over the parent as (1) such exercise comported with due process notions of fair play and substantial justice, (2) the parent was within Delaware's long-arm statute, and (3) it had sufficient minimum contacts with the state, such as supervising the subsidiary's stores and the fact that the parent's executives traveled to the stores daily. But, the court held that the action should be transferred under the "first-filed" rule and because the "balance of convenience" tipped in favor of the transfer to North Carolina as (1) it would reduce the overall inconvenience to the parties, (2) the material witnesses were there, and (3) the agreement was not local but affected every state included in the exclusivity agreement.

**OUTCOME:** The parent's motion to dismiss for lack of personal jurisdiction was denied. The parent's alternative motion to transfer the action to the Western District of North Carolina was granted.

**CORE TERMS:** countertop, personal jurisdiction, first-filed, balance of convenience, subsidiary, customers, granite, vendor, motion to dismiss, convenience, litigate, installation, motion to transfer, transferred, purposeful, long-arm, tip, registered, displays, install, notions of fair play, written agreement, oral agreement, transferring, nonresident, distributor, weigh, inconvenience, wholly-owned, telephone

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*
[HN1] The Due Process Clause requires that, in order to subject a defendant who is not present within the territory of the forum to personal jurisdiction, the court must first make sure that the party has certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. In order to give non-residents "fair warning" that a particular activity may subject them to litigation within the forum, these "minimum contacts" must be purposeful. In other words, the defendant's contacts must be of the nature that would cause it to reasonably foresee that it might be "haled before a court" in the forum as a result of its conduct. Finally, "even if the requisite minimum contacts have been found through an application of the stream of commerce theory or otherwise, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied.

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction***

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits***

[HN2] Notwithstanding the existence of a party's purposeful minimum contacts with a forum, the forum court must consider whether the minimum requirements inherent in the concept of "fair play and substantial justice" defeat the reasonableness of the assertion of jurisdiction, even if the defendant has purposefully engaged in forum activities. This question will only be answered affirmatively if the state's and the plaintiff's interest in having the dispute adjudicated in the forum are so minimal as to be outweighed by the burden imposed by subjecting the defendant to litigation within the forum.

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction***

[HN3] The second step in a court's analysis into the propriety of subjecting a party to personal jurisdiction in the United States District Court for the District of Delaware is the determination of whether any of the provisions of Delaware's long-arm statute apply. Del. Code Ann. tit. 10, § 3104 (2001).

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction***

[HN4] Under Del. Code Ann. tit. 10, § 3104(c)(4) (2001), the court may exercise personal jurisdiction over anyone who causes injury either inside or outside of the state by an act or omission outside of the state if that individual regularly does or solicits business, engages in any other persistent course of conduct in the state or derives substantial revenue from services or things used or consumed in the state. The court interprets this language broadly, as reaching the maximum parameters of the due process clause.

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction***

[HN5] Del. Code Ann. tit. 10, § 3104(c)(2001) provides general jurisdiction over a nonresident defendant. In that instance, it is immaterial whether the jurisdictional contact is related to the claim.

***Civil Procedure > Venue > Change of Venue in Federal Courts***

[HN6] The "first-filed" rule is a judicially-created doctrine that is designed to avoid concurrent litigation of the same issues, between the same parties, in more than one federal court. As its name implies, the rule generally provides that a later-filed action should be stayed pending the resolution of an earlier filed action, or transferred to

the court in which the earlier-filed action is pending.

***Civil Procedure > Venue > Change of Venue in Federal Courts***

[HN7] 28 U.S.C.S. § 1404(a) provides that for the convenience of the parties and the witnesses, in the interest of justice, the court may transfer an action to any other district where it might have been brought.

***Civil Procedure > Venue > Change of Venue in Federal Courts***

[HN8] The United States Court of Appeals for the Third Circuit provides a list of factors to assist the district courts in determining whether, on balance, the litigation would more conveniently proceed and the interests of justice would be better served by a transfer to a different forum. These factors include six private and five public interests which the court should consider.

***Civil Procedure > Venue > Change of Venue in Federal Courts***

[HN9] Some of the private interests relevant to the determination of whether an action would more conveniently proceed and the interest of justice would be better served by a transfer to a different forum include: (1) the convenience of the parties as indicated by their relative physical and financial position; (2) the convenience of the witnesses, but only to the extent that they may be unavailable for trial in one of the fora; and (3) the location of records and other documents, again, only to the extent these files cannot be produced in the alternate forum.

***Civil Procedure > Venue > Change of Venue in Federal Courts***

[HN10] In determining whether a change of venue is appropriate, party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed obligated, to procure the attendance of its own employees for trial. Expert witnesses or witnesses who are retained by a party to testify also carry little weight in determining where the "balance of convenience" lies because they are usually selected on the basis of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor, and inconvenience, if any. Fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis.

***Civil Procedure > Venue > Change of Venue in Federal Courts***

[HN11] The technological advances of recent years reduces the weight of the location of the records and other documents relevant to the litigation as a factor in the "balance of convenience" analysis for the purpose of determining whether a change of venue is appropriate.

*Civil Procedure > Venue > Change of Venue in Federal Courts*

[HN12] Courts have noted, that depending on the circumstances of a case, some of the "public interest" factors for determining whether a change of venue may be appropriate may play no role in the "balance of convenience" analysis.

*Civil Procedure > Venue > Change of Venue in Federal Courts*

[HN13] One of the public interest factors of the "balance of convenience" analysis for determining whether a change of venue is appropriate is the collective travel time and cost allegedly associated with the potential witnesses' travel time to the forum state. This public interest factor duplicates other factors necessary to a court's transfer analysis, namely the private factors considering the convenience and availability of witnesses and the location of documents.

**COUNSEL:** For DIPPOLD-HARMON ENTERPRISES INC., plaintiff: William J. Wade, Richards, Layton & Finger, Wilmington, DE.

For LOWE'S COMPANIES INC, defendant: W. Harding Drane, Jr., Leonard S. Togman, Potter Anderson & Corroon, LLP, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

### MEMORANDUM AND ORDER

### I. INTRODUCTION

On May 23, 2001, Lowe's Home Centers, Inc. ("Home Centers"), filed a complaint against the defendant Dippold-Harmon Enterprises, Inc. ("Dippld-Harmon") in the General Court of Justice, Superior Court Division, located in North Carolina. On July 27, 2001, Dippold-Harmon removed that action to the United States District Court for the Western District of North Carolina. On August 8, 2001, Dippold-Harmon filed the above-captioned action against Lowe's Companies, Inc. ("Lowe's"), the parent corporation of

Home Centers, in Delaware.

Before the court is Lowe's' motion to dismiss, or alternatively, to transfer this case to the Western [*2] District of North Carolina, or to stay this case pending the outcome of that litigation. Lowe's argues that the court should dismiss this action because the court lacks personal jurisdiction over it. It further argues that, should the court not dismiss this action, the case should be transferred to North Carolina pursuant to the "first-filed" rule and 28 U.S.C. § 1404(a). For the reasons that follow, the court will deny Lowe's' motion to dismiss for lack of personal jurisdiction, but will grant Lowe's' motion to transfer.

### II. BACKGROUND

Dippold-Harmon is a Delaware corporation, with its principle place of business in Delaware. Lowe's is a North Carolina corporation with its principal place of business in North Carolina. It is the world's second largest home improvement retailer, serving more than five million customers weekly. Lowe's maintains that it is not, and has never been, registered or qualified to do business in Delaware. It further asserts that it does not have a registered agent for the service of process in Delaware.

Home Centers is a wholly-owned subsidiary corporation of Lowe's. It is a North Carolina corporation registered to conduct [*3] business in Delaware, although its principle place of business is in North Carolina. Lowe's maintains significant control over its subsidiary. Lowe's sends its corporate representatives to its retail stores, including Home Centers, and then directs the stores to take certain actions in accordance with Lowe's policies. Other Lowe's high-level executives admit that they "supervise" and "oversee" the retail stores and travel to these stores on almost a daily basis. Furthermore, in Lowe's advertising materials, it proudly announces that *it* has more than six-hundred and fifty store in forty states, including four in Delaware. In actuality, the four stores in Delaware are its subsidiary Home Centers.

On April 3, 1998, Home Centers entered into a written contract with Dippold-Harmon. The contract specified that Dippold-Harmon would install granite countertops for Home Centers' customers. In approximately 1998, Lowe's also hired Dippold-Harmon as a vendor for the sale and installation of granite kitchen countertops. At that time, Dippold-Harmon was one of several vendors that Lowe's utilized for the installation of these countertops. As Lowe's continued to open additional stores, it was [*4] faced with the costly proposition of installing countertop displays at each of these new stores. To ensure that the countertop displays

were properly installed in a uniform manner, Lowe's representatives sought to hire a single vendor to install these displays. It also sought to hire a single vendor to install countertops for its individual customers.

Dippold-Harmon maintains that the parties engaged in subsequent telephone negotiations aimed at making Dippold-Harmon the exclusive vendor for the installation of Lowe's countertop displays, as well as for countertops it sold to individual customers. Some of these discussions were initiated by Lowe's and were directed to Dippold-Harmon in Delaware. At a December 20, 1999 meeting with Dippold-Harmon, Lowe's executives Michael Gettler and Tammy Edson purportedly offered to make Dippold-Harmon its exclusive national vendor for the installation of granite countertops. Dippold-Harmon contends that, during the meeting, it accepted Lowe's' offer and entered into an oral "Exclusivity Agreement." The two companies also exchanged numerous letters and e-mails during this time concerning their vendor agreement.

On May 23, 2001, Home Centers filed [*5] the North Carolina complaint against Dippold-Harmon. In its complaint, Home Centers alleges that Dippold-Harmon breached their April 3, 1998 written contract. Specifically, Home Centers contended that Dippold-Harmon failed to comply with their written contract's standards in the installation of countertops in the homes of individual customers.

Dippold-Harmon filed this action against Lowe's on August 8, 2001, alleging that Lowe's breached their Exclusivity Agreement and acted fraudulently and in bad faith.

Because the court concludes that exercising personal jurisdiction over Lowe's in this instance comports with traditional notions of fair play and substantial justice as required by the Due Process Clause, and that Lowe's falls within the reach of Delaware's long-arm statute, the court will deny Lowe's' motion to dismiss. *See International Shoe Co. v. Washington, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945);* DEL. CODE. ANN. tit. 10 § 3104(c)(2001). However, because the "balance of convenience" tips in favor of Lowe's, the court will grant its motion to transfer.

## III. DISCUSSION

### A. Jurisdiction

The essence of Lowe's' argument is that, since it [*6] has not purposefully directed its activities to Delaware, the assertion of personal jurisdiction by the courts of this forum would violate the Due Process Clause. Lowe's further contends that its activities do not bring it within

the reach of Delaware's long-arm statute. While Lowe's correctly frames the inquiry the court must make, the court disagrees with its analysis and reaches a different conclusion.

### 1. Due Process

[HN1] The Due Process Clause requires that, in order to subject a defendant who is "not present within the territory of the forum" to personal jurisdiction, the court must first make sure that the party "has certain minimum contacts with [the forum] state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe, 326 U.S. at 316* (quoting *Milliken v. Meyer, 311 U.S. 457, 463, 85 L. Ed. 278, 61 S. Ct. 339 (1940)).* In order to give non-residents "fair warning" that a particular activity may subject them to litigation within the forum, these "minimum contacts" must be purposeful. *See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985).* [*7] In other words, the defendant's contacts must be of the nature that would cause it to reasonably foresee that it might be "haled before a court" in the forum as a result of its conduct. *See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980).* Finally, "even if the requisite minimum contacts have been found through an application of the stream of commerce theory or otherwise, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied." *Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1568 (Fed. Cir. 1994).*

Lowe's argues that its only contacts with Delaware are through Dippold-Harmon, which is a Delaware corporation. Specifically, Lowes' contends that its Home Centers contract with a Delaware corporation is, by itself, an insufficient basis to establish personal jurisdiction. The court agrees. *See Blue Ball Properties, Inc. v. McClain, 658 F. Supp. 1310, 1316-17 (D. Del. 1987).* However, the court finds that Lowe's has many more purposeful contacts with Delaware than it discloses [*8] in its brief.

First, with regard to the Exclusivity Agreement in issue, Lowe's communicated regularly with Dippold-Harmon by sending numerous letters and e-mails from North Carolina to Delaware. It also placed telephone calls to Dippold-Harmon in Delaware. These contacts alone would be sufficient to satisfy the minimum contacts analysis. *See Hide Power and Equip. Co. v. Strates Enters., Inc., 1993 Del. Super. LEXIS 210, WL 258701, at *1 (Del. Super. June 15, 1993)* (finding jurisdiction over a nonresident defendant based on a single visit to Delaware and two or three letters sent to

Delaware); *see also* *Mid-Atlantic Mach. & Fabric, Inc. v. Chesapeake Shipbuilding, Inc.*, 492 A.2d 250, 255 (Del. Super. 1985) (extending jurisdiction over a nonresident defendant where the negotiation and execution of the contract occurred entirely outside of Delaware, and the defendant's contacts with Delaware were limited to "an unspecified number of trips.")

However, in addition to these direct contacts with Dippold-Harmon in Delaware, Lowe's is the world's second largest home improvement retailer. This fact alone would provide a sufficient basis for the court to seriously question the legitimacy of Lowe's' [*9] position. However, as previously noted, Lowe's has a wholly-owned subsidiary; that subsidiary, Home Centers, is registered to do business in Delaware, and operates four stores in this jurisdiction. Neither in its advertising material, nor in its internal communications, does Lowe's distinguish between its corporate stores and Home Centers stores. In fact, Lowe's announces the opening of new Home Centers stores as new *Lowe's* locations. Lowe's also maintains strict control over its Home Centers operations. It sends its representatives to the Home Centers stores and then directs those stores not in compliance with Lowe's policies to take certain actions to come into compliance. Such representatives have visited the Delaware stores. Lowe's also publicly admits to otherwise "supervising and overseeing" its stores, and sending Lowe's personnel to those stores, including Delaware locations.

These facts support the conclusion that Lowe's should reasonably have anticipated being brought into court here. However, due process requires that the court make one more inquiry.

[HN2] Notwithstanding the existence of Lowe's purposeful minimum contacts with this forum, the court must consider whether [*10] the "minimum requirements inherent in the concept of 'fair play and substantial justice. . .'defeat the reasonableness of [the assertion of] jurisdiction, even [if] the defendant has purposefully engaged in forum activities." *Asahi Metal Indust. Co. v. Superior Court*, 480 U.S. 102, 116, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987). This question will only be answered affirmatively if the state's and the plaintiff's interest in having the dispute adjudicated in the forum are so minimal as to be outweighed by the burden imposed by subjecting the defendant to litigation within the forum. *See* *Beverly Hills Fan*, 21 F.3d at 1568.

Here, the answer is plainly, no. Delaware has an interest in this action. Dippold-Harmon is a Delaware corporation. Clearly this forum's interests extend to corporate citizens that have sought the protection of Delaware's laws. Moreover, Delaware has an interest in addressing those purposeful activities conducted within

its borders that result in allegations of injury. That interest extends to breaches of contract, such as that alleged here. Finally, Lowe's clearly has, through its Home Centers subsidiaries, significantly more than [*11] minimal contacts with this forum. Accordingly, the court concludes that the burden on Lowe's is not so onerous as to run afoul of traditional notions of fair play and substantial justice.

2. Delaware's Long-Arm Statute

[HN3] The second step in the court's analysis into the propriety of subjecting Lowe's to personal jurisdiction in this forum is the determination of whether any of the provisions of Delaware's long-arm statute apply. *See* DEL. CODE. ANN. tit. 10 § 3104 (2001). While Lowe's contends that it does not fall within the grasp of any of Section 3104's provisions, Dippold-Harmon contends that at least two of the provisions apply here. For purposes of this order, the court need only discuss one.

[HN4] Under subsection (c)(4), the court may exercise personal jurisdiction over anyone who causes injury either inside or outside of this State "by an act or omission outside of the State" if that individual "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services or things used or consumed in the State." DEL. CODE. ANN. tit. 10, § 3104(c)(2001). n1 The court will interpret this language broadly, as [*12] reaching the "maximum parameters of the due process clause." *See* *Jeffreys v. Exten*, 784 F. Supp. 146, 151 (D. Del. 1992).

n1 [HN5] This subsection provides general jurisdiction over the nonresident defendant. *See* *Mendelson v. Delaware River and Bay Auth.*, 56 F. Supp. 2d 436, 439 (D. Del. 1999). Accordingly, it is immaterial whether the jurisdictional contact is related to the claim. *See id.*

As discussed above, Lowe's directed telephone calls and numerous items of correspondence to Delaware in relation to the disputed Exclusivity Agreement. Through its wholly-owned subsidiary, Home Centers, Lowe's also operated, maintained, and directly supervised four stores in Delaware. Finally, Lowe's has not in any way publicly differentiated itself from the Home Centers locations in Delaware. Consequently, it cannot now complain that it should not be sued here.

Finding sufficient contacts to subject Lowe's to personal jurisdiction under both the State's long-arm statute and the Due Process [*13] Clause, the court will now move to a discussion of whether this action should

be transferred to the Western District of North Carolina. n2

> n2 In its motion to dismiss, Lowe's also alleges that this action should be dismissed for lack of venue and insufficient service of process. However, both of these claims are based solely on its argument that the court lacked personal jurisdiction. As the court has found personal jurisdiction, these arguments too must fail.

## B. Venue

As previously noted, Lowe's seeks to transfer this action pursuant to the "first-filed" rule and 28 U.S.C. § 1404(a).

### 1. The "First-Filed" Rule

[HN6] The "first-filed" rule is a judicially-created doctrine that is designed to avoid concurrent litigation of the same issues, between the same parties, in more than one federal court. See *EEOC v. University of Pennsylvania*, 850 F.2d 969, 971-72 (3d Cir. 1988). As its name implies, the rule generally provides that a later-filed action should be stayed pending the [*14] resolution of an earlier filed action, or transferred to the court in which the earlier-filed action is pending. See *Peregrine Corp. v. Peregrine Indus., Inc.*, 769 F. Supp. 169, 171 (E.D. Pa. 1991).

While Dippold-Harmon does not dispute that the North Carolina action was filed first, it argues that this rule should not apply to the present case because different parties and different issues are presented in the Delaware and North Carolina actions. The court finds this argument unpersuasive. First, Dippold-Harmon itself aggressively argued that Lowe's and Home Centers should be considered one and the same party for purposes of establishing personal jurisdiction. The court will not now find that Lowe's and Home Centers are different parties for the purposes of the "first-filed" rule. For the reasons stated in Section A.1, *supra*, the court is satisfied that Lowe's and Home Centers are effectively the same party.

Second, with regard to Dippold-Harmon's argument that different issues are presented in the Delaware and North Carolina actions, the court again disagrees. The North Carolina action concerns the breach of a written agreement between Home Centers and Dippold-Harmon. [*15] The written agreement provided that Dippold-Harmon would install granite countertops for its customers in a certain fashion. The Delaware action concerns the breach of an alleged oral agreement between Lowe's and Dippold-Harmon. This alleged oral agreement provided that Dippold-Harmon would be the exclusive distributor of those granite countertops. Both actions thus concern different facets of the same business relationship between the parties. Specifically, both actions relate to Dippold-Harmon's status as a fabricator and installer of granite countertops for Lowe's and Home Centers' customers. A decision by the North Carolina court on the validity, or breach, of the written agreement will bear directly on the alleged oral agreement concerning the same type of services. To have two separate trials on these issues would defeat the purposes of the "first-filed" rule, namely sound judicial administration and comity among federal courts of equal rank. See *EEOC*, 850 F.2d at 971. Accordingly, the court finds that the application of this rule weighs heavily in favor of transferring this case to North Carolina.

### 2. Section 1404(a)

Transfer to North Carolina is also mandated [*16] under a section 1404(a) analysis. [HN7] Section 1404(a) provides that "for the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." 28 U.S.C. § 1404(a). The parties agree that this action could have been filed in the Western District of North Carolina as a diversity action. The court will, therefore, move on with the inquiry as directed by the Third Circuit. See *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

In *Jumara*, [HN8] the Third Circuit provided a list of factors to assist the district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Id*. These factors include six private and five public interests which the court should consider. *See id*.

#### a. The Private Interests

[HN9] The private interests most relevant to this case include: (1) the convenience of the parties as indicated by their relative physical and financial position; (2) the convenience of the witnesses, but only to [*17] the extent that they may be unavailable for trial in one of the fora; and (3) the location of records and other documents, again, only to the extent these files cannot be produced in the alternate forum. n3 *See id*.

> n3 For the reasons the court discussed in a previous opinion, it will not afford any weight to the first three *Jumara* factors, specifically, the plaintiff's initial choice of forum, the defendant's preferred venue, and whether the claim arose elsewhere. See *Affymetrix, Inc. v. Synteni, Inc.*,

28 F. Supp. 2d 192, 197-201 (D. Del. 1998). In not affording weight to these factors, the court avoids the risk of double-counting these interests and thereby throwing off the transfer analysis. *See id.* Instead, the court will consider whether the Western District of North Carolina is a more convenient forum for the parties and the witnesses, while also serving the interests of justice. *See* 28 U.S.C. § 1404(a).

### 1. The Convenience of the Parties

Physically, [*18] North Carolina is moderately inconvenient for Dippold-Harmon, which is headquartered in Delaware. Thus, in order to litigate this matter in North Carolina, it must travel several hours. However, modern communication and transportation capabilities make this moderate journey far less burdensome than it would have been at one time. *See Beverly Hills Fan*, 21 F.3d at 1569 (noting that it is not unduly burdensome for a defendant organized under the laws of the People's Republic of China to litigate in Virginia.). Because it is a national distributor of granite and stone kitchen fixtures, Dippold-Harmon is also financially capable of shouldering this burden. As such, it is doubtful that litigating in North Carolina would be an undue financial burden.

Furthermore, transfer to North Carolina would reduce the overall inconvenience to all parties involved. Dippold-Harmon must already travel to North Carolina to defend itself in the first-filed action pending in the Western District of North Carolina. Bringing witnesses and relevant documents to only one location, here North Carolina, minimizes the level of disruption caused to both parties by the litigation. This is certainly [*19] a more economical and efficient result than having each party moving witnesses and documents between two states, depending on which of these related actions is being litigated at that time.

### 2. The Convenience of Witnesses

[HN10] Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed obligated, to procure the attendance of its own employees for trial. *See Affymetrix*, 28 F. Supp. 2d at 203. Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies because they are "usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any. *See id.* (internal citations omitted). Fact witnesses who posses first-hand

knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis. *See id.*

Dippold-Harmon argues that Lowe's has failed to demonstrate that transfer to North Carolina would be more [*20] convenient for potential non-party fact witnesses. The court agrees, and notes that Lowe's' bare allegations of witness inconvenience, without more, are insufficient to tip the balance in its favor. However, all the material witnesses in this dispute, party or otherwise, will be in North Carolina already to litigate the first-filed action. Requiring that they then come to Delaware to litigate this action separately cannot be considered convenient and in the interest of justice. Accordingly, the court finds that this factor also weighs in favor of transferring the action to North Carolina.

### 3. The Location of Records and Other Documents

[HN11] The technological advances of recent year have significantly reduced the weight of this factor in the "balance of convenience" analysis. *See id.* at 205. Furthermore, the relevant documents will already be in North Carolina for the litigation of the first-filed action. The court thus sees no need to require that Lowe's, Home Centers, and Dippold-Harmon move the same documents from North Carolina to Delaware. Rather, it would be much more efficient to litigate these related actions in one location.

### b. The Public Factors

As other [HN12] courts [*21] have noted, depending on the circumstances of the case, some of the "public interest" factors listed in *Jumara* may play no role in the "balance of convenience." *See id.* at 205. The court thus elects to discuss only the three factors which the parties deem relevant to the pending case.

### 1. Practical Considerations Making Trial Easy, Expeditious, or Inexpensive

This factor appears to substantially repeat the "first-filed" analysis advanced by Lowe's, and accepted by the court, in Section 2.B, *supra*. As such, the court declines to further address this issue here, since it has already taken this argument into consideration.

### 2. Delaware's Interest in Deciding This Action

Dippold-Harmon claims that Delaware has a far stronger interest in resolving this action since Dippold-Harmon is a Delaware corporation. While the court is mindful of Delaware's interest, that alone will not tip the "balance of convenience" in its favor. This is so because the court can hardly describe the alleged Exclusivity Agreement as a local controversy unique to

Delaware. *See Affymetrix*, 28 F. Supp. 2d at 207. Instead, this alleged agreement concerns Dippold-Harmon's status [*22] as Lowe's' exclusive, national distributor. By its very nature then, the agreement is not local and unique to only Delaware, but rather, affects every state included in the alleged Exclusivity Agreement. Furthermore, the court notes that Dippold-Harmon appears to concede that the alleged Exclusivity Agreement was not formed in Delaware and would not be governed by Delaware law. Accordingly, this factor does not weigh in favor of denying Lowe's motion to transfer.

### 3. Collective Travel Time and Cost

[HN13] The final public interest factor identified by Lowe's concerns the time and cost allegedly associated with the potential witnesses' travel time to Delaware. This factor, however, duplicates other factors necessary to the court's transfer analysis, namely the private factors considering the convenience and availability of witnesses and the location of documents. The court has already rejected these arguments in its earlier discussion of the "private" factors in the "balance of convenience" analysis.

## IV. CONCLUSION

For the foregoing reasons, the court concludes that Lowe's is subject to personal jurisdiction in Delaware, however, the "balance of convenience" tips strongly in favor [*23] of transferring this action to the Western District of North Carolina.

For these reasons, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that:

> 1. Lowe's motion to dismiss for lack of personal jurisdiction (D.I. 8) is DENIED, and Lowe's alternative motion to transfer this action to the Western District of North Carolina (D.I. 8) is GRANTED; and

> 2. The above-captioned matter is hereby TRANSFERRED to the United States District Court for the Western District of North Carolina.

Dated: November 13, 2001

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

LEXSEE

In re NIFEDIPINE CAPSULE PATENT LITIGATION; BAYER AG &
PFIZER, INC., Plaintiffs, v. SIEGFRIED AG & SIEGFRIED
PHARMACEUTICALS, INC., Defendants

MDL No. 774, M21-51 (JFK), No. 88 Civ. 1374 (JFK)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

1989 U.S. Dist. LEXIS 11061; 13 U.S.P.Q.2D (BNA) 1574

September 19, 1989, Decided; September 20, 1989, Filed

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff foreign corporation filed an action against defendant corporations alleging a patent infringement. The parties sought the court's intervention in the resolution of two discovery disputes.

**OVERVIEW:** Defendants requested that plaintiff make four inventors on the patent in question available for deposition. Plaintiff sought production from one of the defendant corporations of certain requested documents. Plaintiff claimed that it was powerless to compel the inventors to testify in an American-style deposition. Upon consideration, the court held that a contract between the inventors and plaintiff was clear that the inventors would testify in any legal proceedings. The court found that there was no mention of an expiration of the inventors' obligation to testify. Further, the court ruled that plaintiff had come to court as a United States plaintiff, asserted a United States patent, and therefore in the interest of justice had to proceed according to the Federal Rules of Civil Procedure. The court stated that plaintiff's action concerning the inventors did not constitute reasonable cooperation. The court decided that plaintiff's further refusal to make the inventors available for deposition pursuant to the federal rules would result in the court exercising its powers pursuant to 21 U.S.C.S. § 355(j)(4)(B)(iii).

**OUTCOME:** The court ordered that plaintiff make the four inventors available for deposition by defendants. The court ordered that defendants produce the requested documents to plaintiff by a certain date.

**CORE TERMS:** inventors, deposition, discovery, Federal Rules of Civil Procedure, patent, breach of contract, legal proceedings, expediting, relevance, cooperate, correctly

**LexisNexis(R) Headnotes**

*Patent Law > Infringement Actions > Exclusive Rights > General Overview*
[HN1] 21 U.S.C.S. § 355(j)(4)(B)(iii) requires that parties shall reasonably cooperate in expediting an action, and empowers a court to shorten the 30 month injunctive period for failure of either party to cooperate in expediting the action.

**OPINIONBY:** [*1]

KEENAN

**OPINION:**

MEMORANDUM OPINION AND ORDER

JOHN F. KEENAN, UNITED STATES DISTRICT JUDGE

Background

The parties to this multidistrict patent litigation seek the Court's intervention in the resolution of two discovery disputes. First, defendants Siegfried AG and Siegfried Pharmaceuticals, Inc. ("Siegfried") request that plaintiff Bayer AG ("Bayer"), a German corporation, make available for deposition pursuant to the Federal Rules of Civil Procedure four inventors named on the patent that is

the subject of these infringement actions. * Second, Bayer seeks production from Siegfried of certain requested documents.

> * Defendant Chase Chemical Company, by letter dated September 1, 1989, indicates its desire to participate in any depositions taken of the four inventors in this action.

While the Court intervenes in these disputes in order to expedite discovery, it wishes to impress upon the parties its unwillingness to do so in the future. It is, after all, the purpose of discovery to advance the litigation so that it may proceed in an orderly manner within reasonable time constraints. It is not the purpose of discovery to harass the adversary with subterfuge and delay. [*2] Counsel are advised to consider long and hard before entering into any further discovery disputes.

Discussion

A. Inventors

The four inventors whose depositions Siegfried wishes to obtain, Drs. Frederich Bessert, Wulf Vater, Kurt Bauer and Karl Heinz Adams, are former employees of Bayer who reside in Germany. Siegfried asserts that the four were major participants in the invention of the drug whose patent is at issue in this case. (Siegfried August 21, 1989 letter to the Court, at 2). On March 27, 1989, Siegfried served on the parties a notice of deposition of these four inventors. In a letter from Bayer to Siegfried dated April 21, 1989, Bayer notified Siegfried that the four were no longer employed with Bayer, thus Bayer presumably could not exert control over them to be deposed. (Siegfried August 21, 1989 letter to the Court, Exhs. A & B). Siegfried has demonstrated its need for deposing the inventors; their testimony is equally relevant to the determination of this action. In addition to the relevance of their testimony, the four inventors entered into a written assignment with Bayer which states in pertinent part, "we hereby agree, whenever requested, to . . . testify [*3] in any legal proceedings." (Siegfried August 21, 1989 letter to the Court, Exh. J). The Court interprets this clause to mean that the four inventors have agreed to testify in any legal proceedings, not just those proceedings in which Bayer would like them to testify.

Bayer argues that it is powerless to compel the inventors to testify in an American-style deposition and suggests that Siegfried request Letters Rogatory pursuant to German law and the Hague Convention. The Court disagrees with Bayer's position. The contract clause is clear. It makes no mention of an expiration of the inventors' obligation to testify nor does it invoke German law as controlling. Siegfried points out correctly that "Bayer . . . has come to a U.S. court, as a U.S. plaintiff, asserting a U.S. patent" (Siegfried August 6, 1989 letter to the Court, at 2), and therefore, in the interests of justice, must proceed according to the Federal Rules of Civil Procedure. The Court directs the parties to its decision in Compagnie Francaise D'Assurance v. Phillips Petroleum Co., 105 F.R.D. 16 (S.D.N.Y. 1984). In that case, two French companies brought suit in the Southern District of New York for breach of contract, [*4] then sought protection under the Hague Convention from discovery requests pursuant to the Federal Rules of Civil Procedure. This Court held, among other things, that plaintiffs were subject to discovery pursuant to the Federal Rules. The Court stated:

Plaintiffs come into this court seeking the protection of United States laws that enable injured persons to recover for breach of contract. Plaintiffs cannot avail themselves of these benefits, yet neglect their accompanying responsibility to disclose all relevant facts to their adversary.

Compagnie Francaise, 105 F.R.D. at 32. The Court finds this logic to be wholly applicable to plaintiff Bayer.

In addition, Bayer is under a statutory injunction pursuant to the Food and Drug Laws, specifically 21 U.S.C. § 355, which permits it to delay for 30 months Federal Drug Administration approval of Siegfried's pending application for permission to sell its product. Siegfried correctly indicates that 21 U.S.C. § 355(j)(4)(B)(iii) [HN1] requires that "the parties shall reasonably cooperate in expediting the action," and empowers the court to shorten the 30 month injunctive period for failure of either party to cooperate in expediting the action. [*5] The Court finds that Bayer's actions concerning the inventors does not constitute "reasonable cooperation." Bayer's further refusal to make the four inventors available for deposition pursuant to the Federal Rules of Civil Procedure will result in this Court exercising its aforementioned powers, thus shortening the period of injunctive relief which Bayer is presently enjoying.

For the reasons set forth above, Bayer is ordered to make the four inventors available for deposition by Siegfried pursuant to the Federal Rules of Civil Procedure.

B. Document Request

In a letter to the Court dated August 29, 1989, Bayer alleges difficulty in obtaining requested documents from Siegfried. To the extent that Bayer is already in possession of some of the documents at issue, the Court's

1989 U.S. Dist. LEXIS 11061, *; 13 U.S.P.Q.2D (BNA) 1574

intervention is unnecessary. However, as to those documents which Siegfried has failed to produce and to which Siegfried has admitted their "marginal relevance" (Siegfried September 12, 1989 letter to the Court), the Court orders that they be produced to Bayer no later than October 2, 1989.

SO ORDERED.

Dated: September 19, 1989, New York, New York

LEXSEE

**OMNICOM GROUP, INC., and HARRISON & STAR, INC., Plaintiffs, v.
EMPLOYERS REINSURANCE CORPORATION, Defendant.**

**C.A. No. 01-839-GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2002 U.S. Dist. LEXIS 1275**

**January 28, 2002, Decided**

**DISPOSITION:** [*1] Defendant's alternative motion to transfer this action to Southern District of New York granted. Matter transferred to United States District Court for Southern District of New York. Plaintiffs' motion for leave to file sur-reply brief declared moot.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** After defendant insurer filed a declaratory judgment action in New York state court against plaintiff insureds, the insureds brought a declaratory judgment action against the insurer in Delaware state court. The insurer removed the case to federal court, and moved to dismiss, or alternatively, to transfer the case to a district in New York, or to stay the case pending the outcome of the New York state court litigation.

**OVERVIEW:** The underlying suit against one of the insureds was for libel, fraud, civil rights violations, and intentional infliction of emotional distress. The jury awarded the plaintiff compensatory and punitive damages. The declaratory judgment suits between the insureds and insurer related to the insurer's liability to pay punitive damages in the underlying suit. The court did not consider the "first-filed" rule for transfer of venue, which applied only to the situation where both cases were in federal court. The court applied some of the factors under 28 U.S.C.S. § 1404(a), finding several factors weighed against transfer, and an equal number of factors weighed in favor of transfer that the court found were deserving of more significant weight. Particularly persuasive were the facts that: (1) Delaware had no clear connection to the instant case; (2) all of the parties had significant connections to New York; (3) the underlying action arose in New York; and (4) the identical case was currently pending in a New York court. Thus, the "balance of convenience" tipped in favor of transferring the instant case to the United States District Court for the Southern District of New York.

**OUTCOME:** The court granted the insurer's alternative motion to transfer the action, and transferred the case to the United States District Court for the Southern District of New York. In light of this ruling, the court did not address the alternative motions to stay or dismiss the instant action.

**CORE TERMS:** balance of convenience, weigh, first-filed, punitive damages, transferring, litigate, convenience, motion to transfer, transferred, concurrent, declaratory judgment action, place of business, insurance policy, inconvenience, tip, pending case, attendance, venue, public policies, declaratory judgment, causes of action, obligated to pay, expeditious, inexpensive, unavailable, convenient, depending, non-party, obligated, weighing

**LexisNexis(R) Headnotes**

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN1] The "first-filed" rule is a judicially-created doctrine that is designed to avoid concurrent litigation of the same issues, between the same parties, in more than one federal court. The rule generally provides that a later-filed action should be stayed pending the resolution of an earlier filed action, or transferred to the court in which the earlier-filed action is pending. This rule only applies to related cases filed in different federal courts, and is not applicable to the situation where one action is pending in state court.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN2] See 28 U.S.C.S. § 1404(a).

*Civil Procedure > Venue > Change of Venue in Federal Courts*

[HN3] There is a list of factors to assist the district court in determining whether, on balance, the litigation would conveniently proceed and the interests of justice would be better served by a transfer to a different forum. These factors include six private and five public interests which the court may consider. The private interests include, inter alia, (1) the convenience of the parties as indicated by their relative physical and financial position; (2) the convenience of the witnesses, but only to the extent that they may be unavailable for trial in one of the fora; and (3) the location of records and other documents; again, only to the extent these files cannot be produced in the alternate forum.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN4] Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis for transfer of venue, since each party is able, indeed obligated, to procure the attendance of its own employees for trial.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN5] In the context of transfers of venue, expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies because they are usually selected on the basis of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor, and inconvenience, if any. Fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN6] The technological advances of recent years have significantly reduced the weight of the location of records and other documents factor in the "balance of convenience" analysis when considering transfer of venue.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN7] Depending on the circumstances of the case, some of the "public interest" factors listed in Jumara may play no role in the "balance of convenience" in determining whether to transfer venue.

**COUNSEL:** For OMNICOM GROUP INC., HARRISON & STAR INC., plaintiffs: John E. James,

Potter Anderson & Corroon, LLP, Wilmington, DE.

For EMPLOYERS REINSURANCE CORPORATION, defendant: Jeffrey M. Weiner, Law Offices of Jeffrey M. Weiner, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory Moneta Sleet

**OPINION:**

### MEMORANDUM AND ORDER

### I. INTRODUCTION

On November 8, 2001, Employers Reinsurance Corporation ("ERC") filed a declaratory judgment action against Omnicom Group, Inc. ("Omnicom"), Harrison & Star ("H&S"), and Merck & Co., Inc. ("Merck"), in the New York State Supreme Court, New York County. On November 15, 2001, Omnicom and H&S filed a declaratory judgment action against ERC in the Delaware Superior Court. ERC removed the Delaware Superior Court action to the United States District Court for the District of Delaware [*2] on December 17, 2001.

Presently before the court is ERC's motion to dismiss, or alternatively, to transfer this case to the Southern District of New York, or to stay this case pending the outcome of the state court litigation in New York County. ERC argues that the court should dismiss or stay this action because a concurrent similar action exists in a New York state court. It further argues that, should the court not dismiss or stay this action, the case should be transferred to New York pursuant to 28 U.S.C. § 1404(a). For the reasons that follow, the court will grant ERC's motion to transfer. n1

> n1 The court cannot transfer this case to the New York state court. Rather, it must transfer it to the Southern District of New York. The court recognizes that such an action will not alleviate the burden of having two identical cases being tried by two courts. However, the court remains convinced that it is less costly, and more convenient, to try the cases in one district, rather than across state lines. Moreover, while the court expresses no opinion on the propriety of such an action, remand of the case from the Southern District of New York to the New York State Supreme Court, New York County, will now be an option.

[*3]

## II. BACKGROUND

Omnicom is incorporated under the laws of the State of New York, with its principle place of business in New York. It is a holding corporation for a number of other corporations, including its wholly-owned subsidiary, H&S. H&S provides marketing and advertising consultation and services. It is also incorporated under the laws of the State of New York, with its principle place of business in New York. The defendant insurer, ERC, is incorporated in the State of Missouri, and is licenced to do business in New York.

In May 1996, ERC issued an insurance policy (the "policy") in favor of Omnicom as the named insured. ERC also provided coverage to H&S under Omnicom's policy.

In January 1998, Omnicom notified ERC that "Jane Doe" had filed a lawsuit against Merck and H&S in the New York State Supreme Court, Suffolk County (the "Suffolk County action"). The complaint alleged various causes of action for libel, fraud, civil rights violations and intentional infliction of emotional distress. On September 21, 2001, the jury returned a verdict awarding Jane Doe compensatory and punitive damages.

On November 8, 2001, ERC filed a declaratory judgment action in the New [*4] York State Supreme Court, New York County, against Omnicom, Merck, H&S and Jane Doe. n2 In the complaint, ERC sought a declaratory judgment that it is not obligated to pay any portion of the punitive damages award against the named defendants in the Suffolk County action.

> n2 Jane Doe is a nominal defendant against whom no relief is sought.

Subsequently, on November 15, 2001, Omnicom and H&S filed the present action in the Delaware Superior Court. ERC removed the case to the United States District Court for the District of Delaware on December 17, 2001. In this action, Omnicom and H&S seek a declaratory judgment that ERC is obligated to pay the punitive damages arising from the Suffolk County action.

For the following reasons, the court concludes that the "balance of convenience" tips in favor of granting ERC's motion to transfer. Because it finds that transferring the case is the appropriate outcome, the court need not address the alternative motions to stay or dismiss the Delaware action.

## III. DISCUSSION [*5]

1. ERC seeks to transfer this action pursuant to the "first-filed" rule and 28 U.S.C. § 1404(a). 1.The "First-Filed" Rule

[HN1] The "first-filed" rule is a judicially-created doctrine that is designed to avoid concurrent litigation of the same issues, between the same parties, in more than one federal court. See *EEOC v. University of Peregrine, 850 F.2d 969, 971-72 (3d Cir. 1988)*. As its name implies, the rule generally provides that a later-filed action should be stayed pending the resolution of an earlier filed action, or transferred to the court in which the earlier-filed action is pending. See *Peregrine Corp. v. Peregrine Indus., Inc., 769 F. Supp. 169, 171 (E.D. Pa. 1991)*.

As this rule only applies to related cases filed in different federal courts, it is not applicable to the present situation where one action is pending in state court. Therefore, the court declines to further address the "first-filed" rule as a basis to transfer this action to New York. n3

> n3 Because the court finds other compelling reasons to transfer this case to New York, it expresses no opinion on whether the first-filed rule should apply to concurrent state and federal cases.

[*6]

2. Section 1404(a)

Transfer to New York is, however, mandated under a section 1404(a) analysis. Section 1404(a) provides that [HN2] "for the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." 28 U.S.C. § 1404(a). While Omnicom and H&S do not expressly agree that this action could have been filed in the Southern District of New York as a diversity action, there can be little dispute that this is so. The plaintiffs are incorporated in New York, with their principle places of business in the Southern District of New York. The defendant is a Missouri corporation. Further, the amount in controversy is approximately $ 250,000. Accordingly, the Southern District of New York is an appropriate venue.

Having satisfied the initial section 1404(a) requirement, the court will, therefore, move on with the inquiry as directed by the Third Circuit. See *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)*.

In *Jumara*, the Third Circuit provided [HN3] a list

of factors to assist the district court in determining "whether, on balance, [*7] the litigation would conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Id.* These factors include six private and five public interests which the court may consider. *See id.*

a. The Private Interests

The private interests most relevant to this case include: (1) the convenience of the parties as indicated by their relative physical and financial position; (2) the convenience of the witnesses, but only to the extent that they may be unavailable for trial in one of the fora; and (3) the location of records and other documents, again, only to the extent these files cannot be produced in the alternate forum. n4 *See id.*

> n4 For the reasons the court discussed in a previous opinion, it will not afford any weight to the first three *Jumara* factors, specifically, the plaintiff's initial choice of forum, the defendant's preferred venue, and whether the claim arose elsewhere. *See Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 197-201 (D. Del. 1998).* In not affording weight to these factors, the court avoids the risk of double-counting these interests and thereby throwing off the transfer analysis. *See id.* Instead, the court will consider whether the Western District of North Carolina is a more convenient forum for the parties and the witnesses, while also serving the interests of justice. *See 28 U.S.C. § 1404(a).*

[*8]

1. The Convenience of the Parties

Geographically, New York is not inconvenient for Omnicom and H&S, both of which are incorporated and headquartered in New York. Furthermore, transfer to New York would reduce the overall inconvenience to all parties involved. The parties must already be prepared to litigate the related case pending in the New York Supreme Court. Bringing witnesses and relevant documents to only one location, here New York, minimizes the level of disruption caused to both parties by the litigation. This is certainly a more economical and efficient result than having each party moving witnesses and documents between two states, depending on which of these related actions is being litigated at that time. Thus, this factor weighs in favor of transfer.

2. The Convenience of Witnesses

[HN4] Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed obligated, to procure the attendance of its own employees for trial. *See Affymeytrix, 28 F. Supp. 2d at 203.* [HN5] Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance [*9] of convenience" lies because they are "usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any." *See id.* (internal citations omitted). Fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis. *See id.*

Omnicom and H&S argue that ERC has failed to demonstrate that Delaware would be an inconvenient forum for potential non-party witnesses. The court agrees, and notes that ERC's bare allegations of witness inconvenience, without more, are insufficient to tip the balance in its favor. The court notes that all the material witnesses in this dispute, party or otherwise, will be in New York already to litigate the related state court case now pending in New York County. Requiring that they come to Delaware to litigate this action separately cannot be considered convenient and in the interest of justice. However, as there is no clear evidence that a non-party witness will be unable to attend trial in Delaware, this factor [*10] must weigh against transfer.

3. The Location of Records and Other Documents

[HN6] The technological advances of recent years have significantly reduced the weight of this factor in the "balance of convenience" analysis. *See 28 F. Supp. 2d at 205.* Neither party argues that the records and documents are voluminous in this case. Thus, neither party can claim one forum is better than another forum in this regard. However, because this factor is relevant only insofar as the documents would be unavailable in one forum, the court finds that this factor must weigh against transfer.

From a practical standpoint, however, the court notes that any relevant documents will already be in New York for the litigation of the state court case. The court sees no need to require that Omnicom, H&S and ERC move the same documents from state to state. Rather, it would be much more efficient to litigate these related actions in one location. However, these considerations are more relevant to the first factor discussed *supra.*

b. The Public Factors

As other courts have noted, [HN7] depending on the circumstances of the case, some of the "public interest" factors listed in *Jumara* may play no role in the [*11]

"balance of convenience." *See* 28 F. Supp. 2d at 205. The court thus elects to discuss only the factors most relevant to the pending case.

1. Administrative Difficulty

Omnicom and H&S argue that the Southern District of New York has many more case filings than the District of Delaware. Moreover, in 2000, Delaware had seventy civil cases that were over three years old, whereas the Southern District had over one-thousand. Thus, they argue that the Delaware court would be more able to expeditiously address this action.

The court is mindful of the court congestion that concerns Omnicom and H&S. It thus finds that Delaware's lighter caseload weighs in favor of denying the transfer to New York. However, this is but one factor in the analysis and is not alone determinative of the issue.

2. Public Policies of the Fora

The next relevant factor concerns New York and Delaware's public policies. Delaware public policy favors the insurability of punitive damages. *See Whalen v. On-Deck,* 514 A.2d 1072, 1074 (Del. 1986). New York's policy favors the uninsurability of punitive damages. *See Home Ins. Co. v. American Home Products Corp.,* 75 N.Y.2d 196, 200, 551 N.Y.S.2d 481, 550 N.E.2d 930 (N.Y. 1990). [*12]

In this action, a New York insured seeks to enforce its insurance policy against an insurer with its principle place of business in New York, for coverage based on a cause of action arising within New York's borders. New York could thus make a compelling argument that its policy should be applied. Likewise, Omnicom and H&S are within their rights to argue that Delaware's policy should be applied because the insurance policy was allegedly issued in Delaware. However, where the policy was actually issued is a disputed fact and not for the court to decide on this motion. Accordingly, the court finds that, given the equally important policies of the states, and the conflicting evidence regarding the policy in question, this factor must remain neutral.

3. Practical Considerations Making Trial Easy, Expeditious or Inexpensive

The parties do not dispute that the issue presented in both of the cases is identical. Specifically, the issue is whether ERC is obligated to insure Omnicom and H&S against punitive damages awards. To have courts in two different states each deciding this issue would not be in the interest of sound judicial administration. Nor would such a result be the most expeditious [*13] and inexpensive method of determining the parties' rights and

liabilities. The parties are already located in New York, both to litigate the pending case in the New York Supreme Court, and to conduct their daily business.

Accordingly, the court finds that this factor weighs heavily in favor of transferring this case to New York.

4. Local Interest in Deciding This Action

Finally, the court finds that Omnicom and H&S have failed to articulate any clear interest that Delaware has in this case. Rather, they briefly allude to the possibility that the insurance contract may have been issued in Delaware. The court finds that this disputed factual issue alone is not enough to conclude that Delaware has a significant interest in this action.

In contrast, New York has a great interest in the outcome of this action. The parties are either New York corporations, or are licensed to do business in New York. Further, the insurance coverage dispute emanates from Jane Doe's original Suffolk County action. As such, the causes of action in the two cases currently at issue arise from alleged wrongful acts in the State of New York.

Thus, this factor also weighs heavily in favor of transferring this [*14] case to New York.

**IV. CONCLUSION**

The court is mindful that there are several factors weighing against transferring this case to New York. However, there are an equal number of factors weighing in favor of transfer that the court finds are deserving of more significant weight. Particularly persuasive are the following facts. Delaware has no clear connection to this case. However, all the parties have significant connections to New York, the underlying action arose in New York, and the identical case is currently pending in a New York court. Thus, the court concludes that the "balance of convenience" tips in favor of transferring this action to the Southern District of New York.

For these reasons, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that:

> 1. Employers Reinsurance Corporation's alternative motion to transfer this action to the Southern District of New York (D.I. 2) is GRANTED.

> 2. The above-captioned matter is hereby TRANSFERRED to the United States District Court for the Southern District of New York.

> 3. Omnicom Group, Inc. and Harrison and Star, Inc.'s Motion For Leave to File a Sur-Reply Brief

2002 U.S. Dist. LEXIS 1275, *

(D.I. 13) is declared MOOT.

Date: January  [*15]  28, 2002

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire hereby certify that on January 9, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> William J. Marsden, Jr., Esquire
> Fish & Richardson, P.A.
> 919 N. Market Street, Suite 1100
> Wilmington, DE 19801

I further certify that on January 9, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above captioned individual and upon the following non-registered participants in the manner indicated:

> ### BY FEDERAL EXPRESS
>
> Jonathan E. Singer, Esquire
> Fish & Richardson, P.A.
> 3300 Dain Rauscher Plaza
> 60 South Sixth Street
> Minneapolis, MN 55402
>
> Juanita Brooks, Esquire
> Fish & Richardson, P.A.
> 12390 El Camino Real
> San Diego, CA 92130

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Karen E. Keller*

Josy W. Ingersoll (No. 1088)
Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
kkeller@ycst.com

Attorneys for Defendants

063534.1001